UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
                                             :

UNITED STATES OF AMERICA,          :                13 Cr. 345 (LGS)
                                             :

            – *against* –         :

ANTIONE CHAMBERS,               :

                      Defendant.     :

-------------------------------------------------------x

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ANTIONE CHAMBERS'S
PRETRIAL MOTIONS PURSUANT TO RULE 12(b), FED.R.CRIM.P.

JOSHUA L. DRATEL
LAW OFFICES OF JOSHUA L. DRATEL, P.C.
29 Broadway, Suite 1412
New York, New York 10006
(212) 732 - 0707
jdratel@joshuadratel.com

*Attorneys for Defendant Antione Chambers*

- *Of Counsel* -

Joshua L. Dratel
Whitney G. Schlimbach

TABLE OF CONTENTS

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A.    *The Indictment*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

B.    *The Criminal Complaint*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

C.    *The Application for Historical Cell Site Information*. . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT

POINT I

THE PHOTO IDENTIFICATION OF MR. CHAMBERS
SHOULD BE SUPPRESSED, AND/OR AN EVIDENTIARY
HEARING CONDUCTED, BECAUSE THE IDENTIFICATION
WAS UNDULY SUGGESTIVE AND DENIED MR. CHAMBERS
HIS FIFTH AMENDMENT RIGHT TO DUE PROCESS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

POINT II

THE HISTORICAL CELL SITE DATA FOR
717-643-6130 SHOULD BE SUPPRESSED BECAUSE
THE STORED COMMUNICATIONS ACT IS
UNCONSTITUTIONAL AS APPLIED TO MR. CHAMBERS,
AND BECAUSE THE APPLICATION FOR THE DATA DID
NOT MEET THE REQUISITE STATUTORY STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

A.    *Cumulative Historical Cell Site Evidence Is Protected By the Fourth Amendment*. . . . . 9

B.    *The SCA Is Unconstitutional As Applied to Mr. Chambers In This Case*. . . . . . . . . . . . 15

C.    *The Application for Historical Cell Site Evidence Was Not Sufficient to
      Satisfy the "Specific and Articulable" Facts Test Required Under the Staute*. . . . . . . . . 16

D.    *The Exclusionary Rule Provides the Appropriate Remedy*. . . . . . . . . . . . . . . . . . . . . . . 16

i

POINT III

COUNTS ONE AND THREE SHOULD BE DISMISSED
BECAUSE THEY FAIL TO ALLEGE THE FACTS SUFFICIENT
TO ESTABLISH THAT THE DEFENDANTS OBTAINED
ANY "PERSONAL PROPERTY". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

POINT IV

MR. CHAMBERS JOINS IN THOSE MOTIONS
MADE BY HIS CO-DEFENDANTS THAT
INURE TO HIS BENEFIT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21


CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

TABLE OF AUTHORITIES

CASES

*Caplin v. Drysdale*, 491 U.S. 617 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Davis v. United States*, ___ U.S. ___, 131 S.Ct. 2419 (2011). . . . . . . . . . . . . . . . . . . . . . . . . 17

*Dunnigan v. Keane*, 137 F.3d 117 (2d Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Foster v. United States*, 394 U.S. 440 (1969). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*In re Application of the United States*, 620 F.3d 304 (3rd Cir. 2010). . . . . . . . . . . . . . . . . . . . . 16

*In the Matter of the Application of the United States of America for an*
    *Order Authorizing the Release of Historical Cell-Site Information*,
    809 F.Supp.2d 113 (E.D.N.Y. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 14, 15

*Katz v. United States*, 389 U.S. 347 (1967). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Kennaugh v. Miller*, 289 F.3d 36 (2d Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Kyllo v. United States*, 533 U.S. 27 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Neil v. Biggers*, 409 U.S. 188 (1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Simmons v. United States*, 390 U.S. 377 (1968). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Smith v. Maryland*, 442 U.S. 735 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 14

*United States v. Bellomo*, 263 F. Supp. 561 (E.D.N.Y. 2003). . . . . . . . . . . . . . . . . . . . . . . 19, 20

*United States v. Clinton*, 260 F.Supp. 84 (S.D.N.Y. 1966). . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Concepcion*, 983 F.2d 369 (2d Cir.1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Douglas*, 525 F.3d 225 (2d Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*United States v. Gotti*, 459 F.3d 296 (2d Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*United States v. Graham*, 846 F. Supp. 2d 384 (D. Md. 2012). . . . . . . . . . . . . . . . . . 11, 12, 13, 16

*United States v. Jamison*, 299 F.3d 114 (2d Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 20

*United States v. Jones* __ U.S. __, 132 S.Ct. 945 (2012). . . . . . . . . . . . . . . . 9, 10, 11, 12, 13, 14

*United States v. Knotts*, 460 U.S. 276 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Martinez*, 83 Fed.Appx. 384, 2003 WL 22965549 (2d Cir. 2003),
        *vacated on other grounds, Calcano v. United States*, 543 U.S. 801 (2004). . . . . . . . 18, 20

*United States v. Maynard*, 615 F.3d 544 (D.C. Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*United States v. Miller*, 425 U.S. 435 (1976).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Ortiz*, ___ F. Supp.2d. ___,
        2012 WL 2951391 (E.D. Pa. July 20, 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 17

*United States v. Pagan*, 140 F. Supp. 711 (S.D.N.Y. 1955). . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Pineda-Moreno*, 617 F.3d 1120 (9th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Sekhar*, 683 F.3d 436 (2d Cir. 2012),
        *reversed on other grounds, Sekhar v. United States*, ___ U.S. ___,
        133 S.Ct. 2720 (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19, 20

*United States v. Thompson*, not reported in F. Supp.2d,
        2006 WL 1738227 (S.D.N.Y. June 23, 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Watkins v. Sowders*, 449 U.S. 341 (1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Wynehamer v. The People,* 13 N.Y. 378 (1856). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## STATUTES

U.S. Const. Amend. IV. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 13, 16, 17

U.S. Const. Amend. V. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6

18 U.S.C. §924(c)(1)(A)(ii). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. §1951(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 18, 20, 21

18 U.S.C. §1951(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 18

iv

18 U.S.C. §1951(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. §2703(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 8, 15, 16

21 U.S.C. 853(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

21 U.S.C. 881(a)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 18

Rule 12(b), Fed.R.Crim.P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**Introduction**

This Memorandum of Law is submitted in support of defendant Antione Chambers's pretrial motions, which seek:

(1)    suppression of a photo identification of Mr. Chambers, or an evidentiary hearing at the very least, because the process by which the identification occurred was unduly suggestive, and therefore denied him Due Process as guaranteed him by the Fifth Amendment;

(2)    suppression of historical cell site information for a particular telephone number, 717-743-6130, because (a) the statute under which such information was obtained, 18 U.S.C. §2703(d) of the Stored Communications Act, is unconstitutional as applied to Mr. Chambers because it permitted a warrantless search and seizure based on less than probable cause; and/or (b) the application for such information failed to satisfy the statutory standard for obtaining the information, namely that it set forth "specific and articulable facts" sufficient to demonstrate that the scope of material sought was relevant and material to an ongoing investigation of Mr. Chambers; and

(3)    dismissal of Counts One and Three because the Indictment fails to allege facts sufficient to establish an essential element of the Hobbs Act, 18 U.S.C. §1951(a), that the defendants obtained "personal property" from the purported victim.

In addition, Mr. Chambers joins in those motions made by his co-defendants that inure to his benefit. Accordingly, for the reasons detailed below, it is respectfully submitted that Mr. Chambers's pretrial motions be granted in their entirety.

1

***Statement of the Facts***

**A.     *The Indictment***

Mr. Chambers is a defendant in a four-count indictment charging him and two others,

Tyrone Brown and Steven Glisson, with conspiracy to commit robbery and robbery in violation

of 18 U.S.C. §§1951(b)(1) (Count One) & (b)(3) (Count Three), and the use of a firearm in

furtherance of the conspiracy to commit robbery in violation of 18 U.S.C. §924(c)(1)(A)(ii)

(Count Two).  *See* Indictment, attached as Exhibit 1 to the November 4, 2013, Declaration of

Joshua L. Dratel, Esq. (hereinafter "Dratel Declaration").

Count One alleges a conspiracy between Mr. Chambers and his two co-defendants to

commit a robbery of "an individual in possession of drug proceeds."  *See* Indictment, at 1.  The

Overt Acts allege that on or about March 25, 2013, Mr. Chambers and Mr. Glisson robbed an

individual of drug proceeds at gunpoint, and Mr. Brown communicated with Mr. Chambers by

telephone about the victim of the robbery.  *See* Indictment, at 2.  Count Two and Three allege the

companion substantive offenses: that Mr. Chambers, Mr. Glisson, and Mr. Brown, committed the

object robbery alleged in Count One, and brandished a firearm in furtherance of the conspiracy to

commit robbery alleged in Count One.  *Id*. at 2-3.

**B.     *The Criminal Complaint***

The June 11, 2013, Complaint (a copy of which is attached as Exhibit 2 to the Dratel

Declaration) provides additional detail, and alleges that the robbery charged in the Indictment

occurred after Victim-1 collected $800 in drug proceeds from a resident of one of the basement

level apartments at 1338 Croes Avenue, in the Bronx.  *See* Complaint, ¶ 7(a).

According to the Complaint, as Victim-1 attempted to leave the building, two men

2

wearing scarves over their faces, and alleged to be carrying firearms pushed him back inside and took the money from his pocket.  *Id*.  After the two men demanded more money, Victim-1 and the two men were driven to Victim-1's apartment by a third man, where Victim-1 was assaulted with a hammer.  *Id.*, at ¶ 7(b)-(d).

The Complaint further alleges that subsequently, one of the men, the driver, and Victim-2 traveled to Victim-2's mother's apartment, while the other man stayed behind with Victim-1.  *Id.*, at ¶ 7(d).  The three men took approximately $20,000 in cash, a portion of which was narcotics proceeds, from Victim-2's mother's house, and then drove Victim-2 back to Victim-1's home. *See Id.*, at ¶ 7(b)-(e).

Although the Complaint does not indicate when or how the offense was reported, New York City Police Department officers searched the Croes Avenue apartment March 27, 2013, and surveillance video from that location from March 25, 2013, was reviewed by the FBI.  *Id*., at ¶ 10(a)-11.  The Complaint notes that the resident of the Croes Avenue apartment (hereinafter "the Resident") was arrested on drug charges April 9, 2013, and records regarding his cell phone revealed that the only phone number with which he had substantial contact between 7 p.m. and 1 a.m. the night of the offense was labeled with the nickname "Twizzie" in the Resident's cell phone contacts.  *Id.*, at ¶ 12.

The Complaint claims that another number in the Resident's contacts, also labeled as "Twizzie," was connected to Mr. Chambers because during an undated 911 call from that number, which originated on Barnes Avenue in the Bronx, the caller gave the name "Antoine." *Id.*, ¶ 13.

Also, the Complaint continues, during a visit to an address on Barnes Avenue that Mr.

3

Chambers had provided for probation purposes, law enforcement officers observed a vehicle with a license plate that almost matched the number reported by one of the victims of the March 25, 2013, robbery.  Id., at ¶ 14-15.  The Complaint adds that further investigation revealed the vehicle was registered to the mother of Antione Chambers's newborn child.  *Id.*, at ¶ 16.  The car was subsequently searched May 27, 2013, after allegedly being found abandoned in the Bronx, and a hammer, "among other things," was recovered from the vehicle.  *Id.*, at ¶ 16.

Although Victim-2 and Victim-3 (Victim-2's relative who was staying at Victim-2's mother's apartment at the time of the offense) both indicated that one of the men removed the scarf covering his face while at Victim-2's mother's apartment, a photo array containing Antione Chambers was not shown to either victim until the end of May.  *Id*., at ¶ 7(d), n.1 & 9, n.2.

Victim-2 and Victim-3 were each shown a photo array containing Antione Chambers May 29, 2013, and neither was able to identify him positively, although both stated, "in sum and substance," that Chambers "kind of looks like him."  *Id*., at ¶ 9, n.2.  Only a week later, Victim-2 and Victim-3 were shown another photo array containing a different photograph of Antione Chambers, and both identified him as the man who had removed his scarf during the robbery.  *Id.*, ¶ 8-9.

### C. *The Application for Historical Cell Site Information*

Pursuant to 18 U.S.C. § 2703(d), the government applied June 7, 2013, in writing for disclosure of historical cell site information for a cellphone, with the telephone number 717-743-6130, believed to belong to Antione Chambers.  *See* June 7, 2013, Sealed Application for Disclosure of Historical Cell Site Information (hereinafter "Cell Site Application"), at ¶ 2.  A copy of the Cell Site Application is attached as Exhibit 3 to the Dratel Declaration.

4

In support of the Cell Site Application, the government noted that pursuant to a search of the Croes Avenue Resident's cell phone and related call records, the only number to have contact of any duration with that phone between 7 p.m. and 1:06 a.m. the night of the robbery was labeled "Twizzie" in the phone's contacts ("Target Cellphone").  *See* Cell Site Application, at ¶ 4(c).

In addition to the contact between the cell phone which is the subject of the Cell Site Application and the cellphone belonging to Croes Avenue Resident, a second phone number labeled "Twizzie" in the Croes Avenue Resident's cell phone was used to make a 911 call during which the caller identified himself as "Antoine," and which originated on Barnes Avenue in the Bronx.  *See* Cell Site Application, ¶ 4(d).

When police visited the Barnes Avenue address that Antione Chambers had provided to probation for the purpose of a home visit, they observed a car with a license plate which almost completely matched the plate number provided by the victims of the car used in the robbery.  *Id*., ¶ 4(d)-(e).  According to the Cell Site Application, that vehicle was registered to the mother of Mr. Chambers's child.  In addition, the Cell Site Application noted that the 717 area code encompassed Harrisburg, Pennsylvania, where Mr. Chambers had been arrested previously.

The government's application was approved, and it obtained the historical cell site information sought in the Cell Site Application.

**ARGUMENT**

**POINT I**

**THE PHOTO IDENTIFICATIONS OF MR. CHAMBERS
SHOULD BE SUPPRESSED, AND/OR AN EVIDENTIARY
HEARING CONDUCTED, BECAUSE THE IDENTIFICATIONS
WAS UNDULY SUGGESTIVE AND DENIED MR. CHAMBERS
HIS FIFTH AMENDMENT RIGHT TO DUE PROCESS**

The identification of Mr. Chambers from a second photo array occurring only a week after both witnesses failed to make a positive identification of Mr. Chambers from a different photo array constitutes an impermissibly suggestive identification procedure that denied Mr. Chambers his Fifth Amendment right to Due Process, requiring exclusion of the identification, or at the very least, a pre-trial evidentiary hearing to assess the admissibility of the identification evidence.

As noted **ante**, two witnesses, despite being unable to make a positive identification during an initial photo array, were shown a second photo array only a week later, containing just one slightly altered photograph in common with the first array.[1]  That procedure violated Mr. Chambers's Due Process right to be free of impermissibly suggestive pre-trial identification procedures.  *See United States v. Concepcion*, 983 F.2d 369, 377 (2d Cir.1992), *quoting Simmons v. United States*, 390 U.S. 377, 384 (1968).

Based on the limited information provided about the identification procedures employed by law enforcement in this instance, the identification evidence should be suppressed, or in the alternative, assessed during a pre-trial hearing.  *United States v. Douglas*, 525 F.3d 225, 242 (2d

---

[1] Upon information and belief, there was also a third photograph of the defendant, in prison clothing, that was shown to Mr. Chambers by an agent on this case, and which may have been used in the context of a photo array.

Cir. 2008), *citing Neil v. Biggers*, 409 U.S. 188, 198-99 (1972).

Although two witnesses told police that the man eventually identified as Mr. Chambers removed the scarf covering his face while at Victim-2's mother's apartment, the government has not provided either a description of the perpetrator, if one was prepared, or any indication whether the witnesses participated in an identification procedure before the May 29, 2013, photo array. *See* Complaint, ¶ 8-9.

Also, the second photo array was impermissibly suggestive because Mr. Chambers, who had been singled out by both witnesses as resembling the perpetrator during the first photo array, was the only individual also appearing in the next photo array, only a week later. *Id.* The combination of the failure to make a positive prior identification of Mr. Chambers and the suggestive circumstances of the second photo array made it "all but inevitable that [the witnesses] would identify" Mr. Chambers during the second, June 6, 2013, photo array. *Foster v. United States*, 394 U.S. 440, 443 (1969); *see also Kennaugh v. Miller*, 289 F.3d 36, 46-48 (2d Cir. 2002).

In addition, the government has not provided any information regarding the procedures employed June 6, 2013, when the witnesses were brought in to view the second photo array containing the more recent photo of Mr. Chambers. *See* Complaint, at ¶ 8-9. The government also has not provided either the first photo array, or the exact (verbatim) content of statements made by both witnesses May 29, 2013, during the first photo array. *Id.*, at ¶ 9, n.2.

When suggestive procedures, like those used here, have created "'a very substantial likelihood of irreparable misidentification,'" pre-trial identifications found to lack independent and "sufficient indicia of reliability" are inadmissible at trial. *Dunnigan v. Keane*, 137 F.3d 117,

128 (2d Cir. 1998). Nor has significant and essential information about the pre-trial identifications been provided as of the time of the filing of this motion. Therefore, barring exclusion of the identification evidence as a matter of law, a pre-trial hearing to determine the admissibility of the identifications is necessary. *See Watkins v. Sowders*, 449 U.S. 341 (1981).

**POINT II**

**THE HISTORICAL CELL SITE DATA FOR 717-643-6130 SHOULD BE SUPPRESSED BECAUSE THE STORED COMMUNICATIONS ACT IS UNCONSTITUTIONAL AS APPLIED TO MR. CHAMBERS, AND BECAUSE THE APPLICATION FOR THE DATA DID NOT MEET THE REQUISITE STATUTORY STANDARD**

The historical cell site evidence discussed **ante**, at 6-7, should be suppressed because it was obtained by a warrantless search that was not supported by probable cause. As a result, the Stored Communications Act (hereinafter "SCA"), and in particular 18 U.S.C. §2703(d), which permits a court to order release to the government historical cell site evidence based on less than probable cause, and was utilized to that effect in this case, is unconstitutional as applied to Mr. Chambers.

In addition, even if the Court finds the SCA constitutional as applied, the historical cell site evidence at issue here must still be suppressed because the application did not set forth "specific and articulable facts" sufficient to demonstrate that the scope of material sought was relevant and material to an ongoing investigation of Mr. Chambers.

The Fourth Amendment protects against "unreasonable searches and seizures" and guarantees that the right "shall not be violated, and no Warrants shall issue, but upon probable cause[.]" U.S. Consitution, Amend. IV. Historical cell site evidence effectively produces a map

of the telephone user's every movement. As set forth below, the use of electronic surveillance to track a person's every movement over a prolonged period of time raises Fourth Amendment concerns that must be protected by the warrant requirement.

**A.**    ***Cumulative Historical Cell Site Evidence Is Protected By the Fourth Amendment***

In *United States v. Jones* __ U.S. __, 132 S.Ct. 945 (2012), the Supreme Court held that the warrantless use of GPS tracking for a 28-day period violated the Fourth Amendment.  The use of historical cell site evidence to track a person's movements raises the same privacy concerns and is similarly protected by the Fourth Amendment.

In *Jones* the majority of the Court, in holding that the warrantless use of a GPS tracker violated the Fourth Amendment, focused on the trespassory nature of physically attaching the GPS tracker to the vehicle. *Jones*, 132 S.Ct. at 949. However, in a concurring opinion Justice Sotomayor explained that

> the Fourth Amendment is not concerned only with trespassory intrusions on property.  *See*, *e.g., Kyllo v. United States,* 533 U.S. 27, 31–33 [] (2001).  Rather, even in the absence of a trespass, "a Fourth Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable."  *Id.,* at 33, 121 S.Ct. 2038;  *see also Smith v. Maryland,* 442 U.S. 735, 740–741 [] (1979); *Katz v. United States,* 389 U.S. 347, 361, [] (1967) (Harlan, J., concurring).

132 S. Ct. 954-55 (Sotomayor, J., concurring).

> Justice Sotomayor further pointed out that
> physical intrusion is now unnecessary to many forms of surveillance. *Post,* at 961 – 963. *With increasing regularity, the Government will be capable of duplicating the monitoring undertaken in this case by enlisting factory- or owner-installed vehicle tracking devices or GPS-enabled smartphones.* See *United States v. Pineda–Moreno,* 617 F.3d 1120, 1125 (C.A.9 2010) (Kozinski, C.J., dissenting from denial of rehearing en banc). In

9

> cases of electronic or other novel modes of surveillance that do not
> depend upon a physical invasion on property, the majority
> opinion's trespassory test may provide little guidance. But
> "[s]ituations involving merely the transmission of electronic
> signals without trespass would *remain* subject to *Katz* analysis."
> *Ante*, at 953. As Justice Alito incisively observes, the same
> technological advances that have made possible nontrespassory
> surveillance techniques will also affect the *Katz* test by shaping the
> evolution of societal privacy expectations. *Post,* at 962 – 963.
> *Under that rubric, I agree with Justice Alito that, at the very least,*
> *"longer term GPS monitoring in investigations of most offenses*
> *impinges on expectations of privacy." Post,* at 964.

*Id*. at 955 (emphasis added).

Justice Alito, joined by Justices Ginsburg, Breyer, and Kagan issued a separate

concurring opinion in *Jones*, in which he cautioned against the majority's focus on the physical

trespass in part because it "will present particularly vexing problems in cases involving

surveillance that is carried out by making electronic, as opposed to physical, contact with the

item to be tracked." *Jones*, 132 S. Ct. at 962 (Alito, J., concurring).

As Justice Alito noted, in light of new technologies, focusing on the trespass did little to

protect the Fourth Amendment concerns of most people: "[p]erhaps most significant, cell phones

and other wireless devices now permit wireless carriers to track and record the location of users –

and as of June 2011, it has been reported, there were more than 322 million wireless devices in

use in the United States." *Id*., at 963.

In light of these concerns, Justice Alito concluded:

> [t]he best that we can do in this case is to apply existing Fourth
> Amendment doctrine and to ask whether the use of GPS tracking in
> a particular case involved a degree of intrusion that a reasonable
> person would not have anticipated.  Under this approach, relatively
> short-term monitoring of a person's movements on public streets
> accords with expectations of privacy that our society has

recognized as reasonable.  *See Knotts,* 460 U.S., at 281–282 [].
But the use of longer term GPS monitoring in investigations of
most offenses impinges on expectations of privacy.  For such
offenses, *society's expectation has been that law enforcement
agents and others would not – and indeed, in the main, simply
could not – secretly monitor and catalogue every single movement
of an individual's car for a very long period.*  In this case, for four
weeks, law enforcement agents tracked every movement that
respondent made in the vehicle he was driving.  We need not
identify with precision the point at which the tracking of this
vehicle became a search, for the line was surely crossed before the
4-week mark.

*Id.*, at 964 (emphasis added).

As a result of the concurring opinions in *Jones*, a District Court in Maryland has noted

that "it appears as though a five justice majority is willing to accept the principle that government

surveillance over time *can* implicate an individual's reasonable expectation of privacy."  *United*

*States v. Graham*, 846 F. Supp. 2d 384, 394 (D. Md. 2012).  Similarly, a District Court in

Pennsylvania concluded that "taken together, the installation of the GPS tracker and subsequent

monitoring constitute a significant intrusion on Fourth Amendment privacy rights."  *United*

*States v. Ortiz*, ___ F. Supp.2d. ___, 2012 WL 2951391 (E.D. Pa. July 20, 2012).

The same privacy concerns at issue in the recent GPS cases are at issue here. The

historical cell site data tracks every movement of a person over a prolonged period of time. As

Justice Sotomayor noted in *Jones*,

I would take these attributes of GPS monitoring into account when
considering the existence of a reasonable societal expectation of
privacy in the sum of one's public movements. I would ask
whether people reasonably expect that their movements will be
recorded and aggregated in a manner that enables the Government
to ascertain, more or less at will, their political and religious
beliefs, sexual habits, and so on. I do not regard as dispositive the
fact that the Government might obtain the fruits of GPS monitoring

11

through lawful conventional surveillance techniques.

*Jones*, 132 S. Ct. at 956 (Sotomayor, J., concurring).

Accordingly, despite some case law to the contrary, *see e.g. Graham*, 846 F. Supp. 2d 384, it is respectfully submitted that this Court should adopt the findings set forth in *In the Matter of the Application of the United States of America for an Order Authorizing the Release of Historical Cell-Site Information*, 809 F.Supp.2d 113 (E.D.N.Y. 2011) (hereinafter "*Cell-Site Information*").

Decided prior to *Jones*, the Court in *Cell-Site Information* denied the application for release of historical cell site evidence because he found that notwithstanding SCA's provisions, the Fourth Amendment requires a showing of probable cause and the issuance of a warrant before long-term historical cell site data could be released.  *Id*, at 127.  Relying on the D.C. Circuit's decision in *United States v. Maynard*, 615 F.3d 544 (D.C. Cir. 2010) – the underlying case in *Jones*, which was affirmed by the Supreme Court – the Court concluded that a request for long-term historical cell site data constituted a search which implicates the Fourth Amendment.

Analyzing *Maynard*, the Court in *Cell-Site Information* pointed out that

> [t]he *Maynard* court noted two important distinctions between the short-term surveillance in *Knotts* and the prolonged surveillance at issue in *Maynard*. First, the court concluded that while the individual in *Katz* did not have a reasonable expectation of privacy over his location while traveling from one place to another, the individual in *Maynard* had a reasonable expectation of privacy over the *totality* of his movements over the course of a month.  The court reasoned that the totality of one's movements over an extended time period is not actually exposed to the public "because the likelihood a stranger would observe all those movements is not just remote, it is essentially nil."  *Maynard,* 615 F.3d at 560.

12

> Second, the court concluded that people have an objectively
> reasonable expectation of privacy in the totality of their movements
> over an extended period because an individual's privacy interests in
> the totality of his movements far exceeds any privacy interest in a
> single public trip from one place to another.

*Cell-Site Information*, 809 F. Supp.2d at 118.

Adopting that reasoning, the Court in *Cell-Site Information* concluded that the cell site data at issue – a request for 113 days of records – sought information that is protected by the Fourth Amendment:  "[t]he cell-site-location records sought here captures enough of the user's location information for a long enough time period – significantly longer than the four weeks in *Maynard* – to depict a sufficiently detailed and intimate picture of his movements to trigger the same constitutional concerns as the GPS data in *Maynard.*" *Id.*, at 119.

Here, the government's request was for 61 days of records a period more than twice the 28-day period at issue in *Jones*, which Justice Sotomayor declared was certainly past the point at which a search occurred. *Jones*, 132 S. Ct. at 956 (Sotomayor, J., concurring).  Accordingly, the cell site evidence obtained by the government about Mr. Chambers was protected by the Fourth Amendment, and should not have been released without a warrant based on probable cause.

The cases to the contrary hold that a person does not have a reasonable expectation of privacy in the cell site data because that information is voluntarily provided to a third-party. *See e.g. Graham*, 846 F. Supp. 2d 384, 389 ("[t]hese courts [that have held that the Fourth Amendment does not apply to historical cell site data] have primarily relied on a line of Supreme Court cases construing the scope of Fourth Amendment rights relating to business records held by third parties.  More specifically, these courts have concluded that because people voluntarily convey their cell site location data to their cellular providers, they relinquish any

expectation of privacy over those records").

Yet, it is that very "third-party records" doctrine that Justice Sotomayor strongly suggested be re-examined in light of technological evolution and its intersection with a person's legitimate expectation of privacy:

> [m]ore fundamentally, it may be necessary to reconsider the premise that an individual has no reasonable expectation of privacy in information voluntarily disclosed to third parties. *E.g., Smith* [*v. Maryland*], 442 U.S. [735], at 742 [(1979)]; *United States v. Miller,* 425 U.S. 435, 443, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976). This approach is ill suited to the digital age, in which people reveal a great deal of information about themselves to third parties in the course of carrying out mundane tasks. People disclose the phone numbers that they dial or text to their cellular providers; the URLs that they visit and the e-mail addresses with which they correspond to their Internet service providers; and the books, groceries, and medications they purchase to online retailers. Perhaps, as Justice Alito notes, some people may find the "tradeoff" of privacy for convenience "worthwhile," or come to accept this "diminution of privacy" as "inevitable," *post,* at 962, and perhaps not. I for one doubt that people would accept without complaint the warrantless disclosure to the Government of a list of every Web site they had visited in the last week, or month, or year. But whatever the societal expectations, they can attain constitutionally protected status only if our Fourth Amendment jurisprudence ceases to treat secrecy as a prerequisite for privacy. I would not assume that all information voluntarily disclosed to some member of the public for a limited purpose is, for that reason alone, disentitled to Fourth Amendment protection.

*Jones*, 132 S. Ct. at 957 (Sotomayor, J., concurring).

Also, as the Court in *Cell-Site Information* remarked,

> [t]he cell-site-location records at issue here currently enable the tracking of the vast majority of Americans. Thus, the collection of cell-site-location records effectively enables "mass" or "wholesale" electronic surveillance, and raises greater Fourth Amendment concerns than a single electronically surveilled car trip. This further supports the court's conclusion that cell-phone users

14

> maintain a reasonable expectation of privacy in long-term cell-site
> location records and that the Government's obtaining these records
> constitutes a Fourth Amendment search.

*Cell-Site Information*, 809 F. Supp.2d at 119-20.

As a result, the Court in *Cell-Site Information* adopted "an exception to the third-party-disclosure doctrine [that] should be applied to the *cumulative* cell-site-location records[,]" *id.*, at 122, reasoning that "[t]he Supreme Court and lower appellate courts have recognized an exception to the third-party-disclosure doctrine in a subset of cases in which the content of the information communicated would be revealed through the Government's surveillance ('content exception')." *Id.*

Applying the "content exception" to cell-site evidence, the Court in *Cell-Site Information* concluded that

> cumulative cell-site-location records implicate sufficiently serious
> protected privacy concerns that an exception to the third-party-
> disclosure doctrine should apply to them, as it does to content, to
> prohibit undue governmental intrusion.  Consequently, the court
> concludes that an exception to the third-party-disclosure doctrine
> applies here because cell-phone users have a reasonable
> expectation of privacy in cumulative cell-site-location records,
> despite the fact that those records are collected and stored by a
> third party.

*Id.*, at 126.

**B.     *The SCA Is Unconstitutional As Applied to Mr. Chambers In This Case***

The SCA authorizes the release of historical cell site data to a governmental entity "only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." 18

15

U.S.C.A. § 2703(d).

However, that "'specific and articulable facts' standard contained in the Stored Communications Act is a lesser one than probable cause. *See In re Application of the United States,* 620 F.3d at 313–15 (3d Cir.2010)." *Graham,* 846 F. Supp. at 396.

Here, the SCA is unconstitutional as applied to Mr. Chambers.  The Fourth Amendment protection afforded historical cell-site information (by the cases discussed **ante**) requires a showing of probable cause and issuance of a warrant prior to production of the 61days of records. Because the SCA requires only "specific and articulable facts" – a standard below probable cause – it is unconstitutional as applied to Mr. Chambers in this case.

**C.**    ***The Application for Historical Cell Site Evidence Was Not Sufficient to Satisfy the "Specific and Articulable" Facts Test Required Under the Staute***

Even if this Court finds that the Fourth Amendment does *not* apply to historical cell-site evidence, the cell site data pertaining to Mr. Chambers must still be suppressed because the application for the order failed to meet even the reduced "specific and articulable" facts requirement set forth in the SCA.

As set forth **ante**, at 6-7, the application was based on three isolated telephone calls, a nickname, and an attenuated connection to a vehicle.  That is simply insufficient to link Mr. Chambers via "specific and articulable facts" to those telephone calls, and/or the offense under investigation.  Accordingly, because the application was insufficient to meet the SCA's "specific and articulable facts" standard, the historical cell site data should be suppressed.

16

**D.**     *The Exclusionary Rule Provides the Appropriate Remedy*

In determining whether to suppress evidence obtained in violation of the Fourth

Amendment, "the Court must apply the general standard for application of the exclusionary rule:

whether 'the benefits of deterrence . . . outweigh the costs' of the application of the exclusionary

rule." *Ortiz*, 2012 WL 2951391, at *24 (internal citations omitted).

In *Ortiz*, the Court held that the exclusionary rule provided the appropriate remedy for

warrantless GPS tracking.  *Id*.  In *Ortiz*, the government argued that the officers had

acted reasonably in good-faith reliance on what they believed to be DEA policy.  *Id.*  Rejecting

that argument, the Court in *Ortiz* held "[t]he solution is simple:  the import of [*Davis v. United*

*States*, ___ U.S. ___, 131 S.Ct. 2419 (2011)] is that officers acting without clearly applicable

binding appellate guidance should err on the side of caution and obtain a warrant."  *Id.*

Here, too, the government could, and should, have sought a warrant – based on probable

cause – as required by the Fourth Amendment, but chose instead to rely on the SCA's diminished

standard.  As in *Ortiz*, the appropriate remedy for this Constitutional violation is suppression of

the cell site data.  Accordingly, the historical cell site data should be suppressed.

**POINT III**

**COUNTS ONE AND THREE SHOULD BE
DISMISSED BECAUSE THEY FAIL TO
ALLEGE THE FACTS SUFFICIENT TO
ESTABLISH THAT THE DEFENDANTS
<u>OBTAINED ANY "PERSONAL PROPERTY"</u>**

Counts One and Three should be dismissed because the Indictment does not allege facts

sufficient to establish an unlawful taking or obtaining of personal property as required to state a

violation of the Hobbs Act.  Rather, the Indictment alleges merely that contraband, *i.e.*, drug

17

proceeds, was the object of the robbery and constituted the alleged "property" taken.

While the Second Circuit has held that contraband can serve as the "personal property" necessary to a Hobbs Act violation, Mr. Chambers presents this motion because the Circuit has done so only in an unpublished opinion, *United States v. Martinez*, 83 Fed.Appx. 384, 2003 WL 22965549 (2d Cir. 2003), *vacated on other grounds, Calcano v. United States*, 543 U.S. 801 (2004), in which the only case cited was a prior Circuit opinion, *United States v. Jamison*, 299 F.3d 114 (2d Cir. 2002), that did not address the issue, but instead involved a claim that the acts alleged did not exert a sufficient impact on interstate commerce.  *See also United States v. Thompson*, not reported in F. Supp.2d, 2006 WL 1738227 (S.D.N.Y. June 23, 2006) (relying on *Martinez* and *Jamison*).

In addition, in *Martinez* the court pointed out that an objection had not been made at trial. 83 Fed.Appx. at 387.  As a result, only the less stringent "plain error" standard applied.  Thus, the issue has not been confronted directly and dispositively by the Second Circuit.  Moreover, the Supreme Court has not addressed this issue.

Counts One and Three should be dismissed because they categorically fail to allege facts sufficient to establish that there has been a robbery – an "unlawful taking or obtaining of personal property" –  in violation of the Hobbs Act because no property right exists in the proceeds of illegal narcotics transactions.  *See* 18 U.S.C. §1951(a)-(b)(1);  *see also* 21 U.S.C. §881(a)(6) ("No property right shall exist in . . . moneys . . . or other things of value furnished . . . in exchange for a controlled substance . . . [or in] proceeds traceable to such an exchange").

In order to state an offense under the Hobbs Act, the Indictment must allege conduct demonstrating that the defendant "carried out the deprivation of a property right from another."

18

*United States v. Sekhar*, 683 F.3d 436, 440 (2d Cir. 2012), *reversed on other grounds*, *Sekhar v. United States*, ___ U.S. ___, 133 S.Ct. 2720 (2013);  *see also United States v. Gotti*, 459 F.3d 296, 324 (2d Cir. 2006).  In that context, the Supreme Court has observed that "[o]btaining property requires not only the deprivation but also the acquisition of property."  *Sekhar*, ___ U.S. at ___, 133 S.Ct. at 2725.

Also, in *United States v. Bellomo*, 263 F. Supp. 561 (E.D.N.Y. 2003), the Court explained that "[t]o understand that 'property' is the bundle of *rights to a thing rather than the thing itself* is to place 'property' in its proper context for the purpose of the Hobbs Act or otherwise[,]" *id.*, at 573 (emphasis added), adding that

> [t]he Court in the hoary case of *Wynehamer v. The People,* 13 N.Y. 378 (1856) put it succinctly at page 433, thus: "Property is the right of any person to possess, use, enjoy and dispose of a thing.  The term, although frequently applied to the thing itself, in strictness means only the rights of the owner in relation to it."

*Id*.

Here, federal law precludes a finding that the "drug proceeds" constituted the "personal property" of the drug dealer from whom they were allegedly obtained.  The property that is the subject of the deprivation in this case, the proceeds of illegal drug activity, clearly falls within "the so-called 'relation back' proviso [of the criminal forfeiture statute,] which establishes that "[a]ll right, title and interest in property' obtained by criminals via the illicit means described in the statute 'vest in the United States upon the commission of the act giving rise to the forfeiture,'" namely the illegal drug transaction from which the proceeds were derived.  *Caplin v. Drysdale*, 491 U.S. 617, 627 (1989);  *see also* 21 U.S.C. § 853(c).

Thus, as a matter of law, those "drug proceeds" cannot be treated as the "property" of the

19

drug dealer who possesses them, and that drug dealer lacks the legal authority to "possess, use, enjoy or dispose" of such proceeds. Since the drug dealer lacks *the rights* to the proceeds, it cannot be his or her personal property under the law.

Consequently, the Indictment does not allege the deprivation of a property right because from the moment the proceeds were obtained in violation of criminal law, ownership vested in the United States, excluding any subsequent possessor from holding a property right or ownership interest in those drug proceeds. *See e.g. United States v. Clinton*, 260 F.Supp. 84, 88 (S.D.N.Y. 1966) (finding that "a wrongdoer obtains no interest in property illegally obtained"); *United States v. Pagan*, 140 F. Supp. 711 (S.D.N.Y. 1955).

In holding otherwise, the Court in *Martinez*, relied simply on *Jamison* – which did not decide or even discuss this specific issue – and a reference to the common law principle that robbery of contraband could constitute robbery. 83 Fed.Appx. at 387. Yet that fails to acknowledge or confront the very particular and technical definitions of "property" set forth in U.S. federal criminal statutes, including those that govern forfeiture and are discussed above. Indeed, in some respects, such as mail fraud and even in the Hobbs Act itself, *see Bellomo*, 263 F. Supp. at 570-73, the traditional concept of "property" has been expanded under federal law (to include in some instance intangible rights), while in other respects, such as forfeiture, it has been contracted or altered materially.

Also, to the extent the Hobbs Act is ambiguous on the issue, the Rule of Lenity should apply, and compel dismissal of Counts One and Three. *See, e.g., Sekhar*, 133 S. Ct. at 2730 (". . . even if the Hobbs Act was ambiguous on this point, the rule of lenity would counsel in favor of an interpretation of the statute that does not reach so broadly").

Accordingly, because they do not allege an essential element of the charged offense, Counts One and Three of the indictment must be dismissed for failure to state a violation of 18 U.S.C. §1951(a).

**POINT IV**
**MR. CHAMBERS JOINS IN THOSE MOTIONS**
**MADE BY HIS CO-DEFENDANTS THAT**
**INURE TO HIS BENEFIT**

Mr. Chambers also joins in those motions made by his co-defendants that inure to his benefit.

**Conclusion**

Accordingly, for all the reasons set forth above, it is respectfully submitted that Mr. Chambers's motions should be granted in their entirety, and the photo identification suppressed, and/or a hearing conducted on the issue, the historical cell site information be suppressed, and Counts One and Three dismissed for failure to state an element of the charged offense.

Dated: 4 November 2013
        New York, New York

                                  Respectfully submitted,

                                  _____/S/ Joshua L. Dratel_____
                                  Joshua L. Dratel
                                  Joshua L. Dratel, P.C.
                                  29 Broadway, Suite 1412
                                  New York, New York 10006
                                  (212) 732-0707
                                  jdratel@joshuadratel.com

                                  *Attorneys for Defendant Antione Chambers*

  *– Of Counsel –*
Joshua L. Dratel
Whitney G. Schlimbach