DcbWbroC

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA,

4              v.                          13 CR 345 (LGS)

5

6  TYRONE BROWN
   STEVEN GLISSON, a/k/a "D",
7  ANTOINE CHAMBERS, a/k/a "Twizzie",

8              Defendants.

9  ------------------------------x
                                    New York, N.Y.
10                                  December 11, 2013
                                    10:30 a.m.
11
   Before:
12
                    HON. LORNA G. SCHOFIELD,
13
                                    District Judge
14

15                    APPEARANCES

16 PREET BHARARA
        United States Attorney for the
17      Southern District of New York
   AMY R. LESTER
18      Assistant United States Attorney

19 PHILIP L. WEINSTEIN
   JOHN RODRIGUEZ
20      Attorneys for Defendant Brown

21 BALLARD SPAHR STILLMAN & FRIEDMAN LLP
        Attorneys for Defendant Glisson
22 JAMES A. MITCHELL
   ELAINE KAYUKI LOU
23
   JOSHUA L. DRATEL
24      Attorney for Defendant Chambers

25

DcbWbroC

```
 1              (Case called)

 2              MS. LESTER:  Good morning, your Honor.  Amy Lester,

 3     for the government.

 4              THE COURT:  Good morning.

 5              MR. WEINSTEIN:  Phil Weinstein, for Mr. Brown, your

 6     Honor.

 7              MR. DRATEL:  Joshua Dratel, for Mr. Chambers, your

 8     Honor.

 9              MR. MITCHELL:  Jim Mitchell and Elaine Lou, for Steven

10     Glisson.

11              MR. RODRIGUEZ:  John Rodriguez, the CJA attorney

12     assigned today.

13              THE COURT:  Good morning.

14              Good morning, gentlemen, in the jury box.

15              We are here to discuss the various motions that have

16     been filed, and I want to take Mr. Brown's motion for new

17     counsel first.  I have received from Mr. Brown personally a

18     motion which was filed on ECF but which is dated October 31,

19     2013, requesting that Mr. Weinstein be replaced, and,

20     accordingly, we've asked Mr. Rodriguez to be here today.

21              Mr. Brown, I understand that you want a new attorney,

22     and we can make arrangements to do that.  I want to emphasize a

23     couple of things to you just to be sure that you understand

24     them before we do that.  One is that I know that your

25     difficulty with Mr. Weinstein, based on your letter to me, was
```

that he did not file certain motions, and I know that that led

to a lack of trust on your part, and I understand that and I

credit that.  The one thing that I need to warn you, though, is

that even with a new attorney, he may decide that as a matter

of law it's not permissible or there's no basis to file certain

motions, and so he may well disagree with you about certain

motions.  There are even circumstances when a lawyer is not

permitted to file a motion in court if there is no good faith

basis for it, so he may not even be permitted to file motions

that you want to have filed.  You just need to understand that

having a new attorney doesn't necessarily mean that he will

file motions that you think should be filed that he, because he

knows the law and the rules of the court, knows can't be filed

or advises should not be filed.

        Do you understand that?

        DEFENDANT BROWN:  Yes, ma'am.

        THE COURT:  The other thing that I want to emphasize

is that I really do not want to delay the trial in this matter.

I know that you all have been waiting a while, and I think it's

important to keep things moving, so I'm going to do everything

I can to try to keep the dates that we have agreed to.  Of

course, I need to talk to Mr. Rodriguez about that.  Do you

understand everything I've said so far?

        DEFENDANT BROWN:  Yes, ma'am.

        THE COURT:  Based on that, do either Mr. Weinstein or

DcbWbroC

1    Mr. Rodriguez know of any reason why I should not substitute

2    counsel?

3              MR. WEINSTEIN:  No, your Honor.

4              MR. RODRIGUEZ:  No, your Honor.

5              THE COURT:  I will enter an order substituting

6    Mr. Rodriguez for Mr. Weinstein, and you may be excused,

7    Mr. Weinstein.

8              MR. WEINSTEIN:  Your Honor, I'm handing over the

9    discovery and my card.

10              THE COURT:  Thank you very much.  And thank you for

11    your assistance.

12              Now, Mr. Rodriguez, I know you've just jumped into

13    this, we have a trial scheduled for February 17, 2014, and I

14    very much would like to keep that date.  What I'm prepared to

15    do is set motion dates as follows, in the event there are any

16    motions that you and your client decide need to be filed.  The

17    motions would be due, any motions, on January 13.  Any response

18    from the government by January 23, and any reply by January 28.

19    And then for all counsel, I would have the final pretrial

20    conference on February 7 at 10:45 a.m.  It is a good move to

21    look at your calendars.

22              MS. LESTER:  Your Honor, one thing that counsel were

23    discussing before the Court came out was that February 17, I

24    believe, is a federal holiday.

25              THE COURT:  Okay.

DcbWbroC

1          MS. LESTER:  I think it's President's Day or one of

2     the president's days observed by the court.

3          THE COURT:  Gee, that's odd.  I already have three

4     things scheduled that day.  Mr. Street, are you able to check?

5          If it is a holiday, we would start the next day.

6          THE DEPUTY CLERK:  Yes.  It's President's Day.

7          THE COURT:  We'll need to move everything that's on

8     that day to some other day and we'll begin this trial on the

9     18th.

10          Now what I would like to do is turn to the various

11     motions that the other defendants have filed.  I have read and

12     studied all of the papers.  I do not intend to take argument,

13     but I will read my opinion into the record.

14          First, I am going to address Mr. Glisson's motion to

15     sever Mr. Brown's narcotics charge and motion for bill of

16     particulars.  After that I will address Mr. Chambers's motion

17     to suppress photo identifications, a motion to suppress cell

18     site historical data, and a motion to dismiss two counts

19     against him as a matter of law.  Mr. Glisson and Mr. Chambers,

20     I would note, both seek to join in the other's motions to the

21     extent that it applies to them.  Mr. Brown, who has just

22     retained new counsel, has not made any motions, but to the

23     extent any motion made by one defendant applies to any other

24     defendant, I would consider it to be made on behalf of all of

25     those defendants, including Mr. Brown.

DcbWbroC

1          First, the motion to sever by Mr. Glisson; he has

2    asked to sever count four of the indictment.  The indictment

3    alleges two conspiracies, a robbery conspiracy, and a narcotics

4    conspiracy.  All three defendants are charged with conspiracy

5    to commit a Hobbs Act robbery, specifically here, to rob a

6    victim who allegedly was in possession of narcotics proceeds

7    and who allegedly had sold Mr. Brown crack cocaine in the past.

8    The government alleges that the victim was first accosted at

9    Brown's apartment where he allegedly was visiting to collect

10   money that Mr. Brown owed him from their narcotics dealings.

11   All three defendants are also charged with using firearms to

12   further the robbery conspiracy.  Two defendants, Mr. Glisson

13   and Mr. Chambers, are charged in a third count with actually

14   committing the robbery in Brown's apartment and at a second

15   location, and Mr. Brown is charged with a conspiracy to possess

16   and intent to distribute 280 grams of crack cocaine.

17          Mr. Glisson seeks to sever the three robbery-related

18   charges from Mr. Brown's narcotics charge.  He argues that he

19   will be prejudiced because the jury may believe that he was

20   part of the alleged conspiracy to sell crack.  Rule 8(a) of the

21   Federal Rules of Criminal Procedure provides for the joinder of

22   offenses when they are "of the same or similar character or are

23   based on the same act or transaction, or are connected with or

24   constitute parts of a common scheme or plan."  "Joinder is

25   proper where the same evidence may be used to prove each

1    count." United States v. Blakely, 941 F.2d 114, 116 (2d Cir.

2    1991), or if the counts have a "sufficient logical connection,"

3    United States v. Ruiz, 894 F.2d 501, 505 (2d Cir. 1990).

4         Here, the narcotics charges have a sufficient logical

5    connection to the robbery charges.  The government alleges that

6    the robbery commenced in the Brown's apartment where the victim

7    was visiting to collect money that defendant Brown owed him

8    from their narcotics dealings.  Evidence of Brown's sale of

9    crack cocaine is sufficiently related to evidence of the

10   robbery and, therefore, joinder is proper under Rule 8(a).

11        Even if the offenses are properly joined, in certain

12   circumstances, severance may be warranted.  Rule 14(a) provides

13   that where joinder of offenses for trial "appears to prejudice

14   a defendant or the government, the court may order separate

15   trials and counts ... or provide any other relief that justice

16   requires."  Federal Rule of Criminal Procedure 14(a).

17   Moreover, Rule 14 "leaves the tailoring of the relief to be

18   granted, if any, to the district court's sound discretion."

19   United States v. Page, 657 F.3d 126, 129 (2d Cir. 2011).

20        The defendant must show that nonseverance would result

21   in substantial prejudice, not merely some prejudice.  When more

22   than one defendant is accused of participating in the same act

23   or transaction or series of acts or transactions, the federal

24   system expresses a "preference" for joint trials of defendants

25   who are indicted together.  A district court should grant a

DcbWbroC

severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent a jury from making a reliable judgment about guilt or innocence.  Even in those rare instances where a defendant establishes a "high" risk of prejudice, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice."  Zafiro v. United States, 506 U.S. 534 (1993).

"Factors that a district court should consider in deciding a motion for severance include: (i) the complexity of the indictment; (ii) the estimated length of trial; (iii) disparities in the amount or type of proof offered against the defendant; (iv) disparities in the degrees of involvement by defendants in the overall scheme; (v) possible conflict between various defense theories or various trial strategies; and (vi) prejudice from evidence admitted only against codefendants but which is admissible or excluded as to a particular defendant." United States v. Lino, 2001 WL 8356 at *23 (S.D.N.Y. Jan. 2, 2001).  Weighing these factors leads me to conclude that severance is not warranted here.  The indictment is not complex.  The duration of the trial can be measured in days and not weeks.  The two alleged conspiracies are separate and not confusingly so.  Defendant Glisson's argument that he will be assumed to be Mr. Brown's coconspirator on the drug charges does not ring true.  Mr. Glisson's and Chambers's attorneys can

DcbWbroC

emphasize this fact to the Court, and the Court can as well

with a limiting instruction.  While there will be different

evidence for each count, defendant Brown's conspiracy to sell

crack cocaine seems relevant and admissible to the robbery

charge since it is factually related to the identity of the

victim, the defendant Brown's presumed knowledge that the

victim had narcotics proceeds, as well as the other defendant's

presumed knowledge that the victim had narcotics proceeds,

which they intended to take, and the victim's presence in

Brown's apartment, where he was accosted.  Thus, the jury is

likely to hear this evidence whether or not the narcotics

charge is separate from the robbery charge.  Therefore, the

motion is denied.

         Second, Mr. Glisson's bill of particulars.

Mr. Glisson seeks a bill of particulars disclosing the names of

government witnesses who will testify against Mr. Glisson, the

addresses where the conduct took place, and an order that the

government provide at this stage of the proceeding any

statements concerning the charged conduct in its possession of

witnesses and/or victims.  The request is denied.

         "The proper scope and function of a bill of

particulars is to furnish facts, supplemental to those

contained in the indictment, necessary to apprise the defendant

of the charges against him with sufficient precision to enable

them to prepare a defense, avoid unfair surprise at trial, and

DcbWbroC

preclude a second prosecution from the same offense." United States v. Binday, 908 F.Supp.2d 485, 497 (S.D.N.Y. 2012) (citing United States v. Torres, 901 F.2d, 205 234 (2d Cir. 1990)).  "A bill of particulars is required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." United States v. Walsh, 194 F.3d 37, 47 (2d Cir. 1999).  If the information the defendant seeks "is provided in the indictment or in some acceptable alternate form" then no bill of particulars is required. U.S. v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987).  In deciding a motion for a bill of particulars, the Court should determine whether the defendant has been sufficiently apprised, by means of the indictment, prior proceedings and discovery "of the essential facts of the crime for which he has been indicted." U.S. v. Salazar, 485 F.2d 1272, 1278 (2d Cir. 1973).

        Further, while it is true that the "district courts have authority to compel pretrial disclosure of the *identity* of government witnesses ... in the absence of a *specific* showing that disclosure was both material to the preparation of the defense and reasonable in light of the circumstances surrounding the case," a district court need not order the government to disclose that information. U.S. v. Bejasa, 904 F.2d, 137, 139-40 (2d Cir. 1990).  A defendant's need for such disclosure is "balanced against the possible dangers

DcbWbroC

1   accompanying disclosure (i.e. subornation of perjury, witness

2   intimidation and injury to witnesses)." United States v.

3   Kelly, 91 F.Supp.2d 580, 586 (S.D.N.Y. 2000).

4         Here, there is sufficient information in the complaint

5   and the indictment to allow the defendant to prepare his

6   defense at this stage of the litigation.  In light of the

7   allegations against the defendants, risk of injury to the

8   witnesses is of sufficient concern that I will not require

9   disclosure of witness names at this point.  I find it

10  sufficient that the government turn over the names of witnesses

11  and 3500 material a few days prior to trial, as the government

12  has represented it will.

13        The third motion is Mr. Chambers's motion regarding

14  suppression of a lineup.  I will just note that I have asked to

15  have the photo arrays that were used brought to court today.  I

16  have them here, and I'll ask a few questions about them in a

17  bit.

18        Mr. Chambers seeks to suppress witness identifications

19  made in a photo array.  Two witnesses were shown a photo array

20  and were unable to make a positive identification of

21  Mr. Chambers, stating that one photo "sort of looked like him."

22  One week later, the witnesses were shown a second photo array

23  with an older photograph of Mr. Chambers in the array.

24  Mr. Chambers's photo allegedly was the only photo that appeared

25  in both arrays.  Mr. Chambers argues this procedure was unduly

DcbWbroC

suggestive.  "A prior identification is generally admissible

under Federal Rule of Evidence 801(d)(1)(C) regardless of

whether there's been an accurate in-court identification."

U.S. v. Simmons, 923 f.2d 934,950 (2d Cir. 1991).  "Such an

identification will be excluded on constitutional grounds only

when it is so unnecessarily suggestive and conducive to

irreparable mistaken identification that the defendant was

denied due process of law."  "Moreover, even a suggestive

out-of-court identification will be admissible if, when viewed

in the totality of the circumstances, it possesses sufficient

indicia of reliability."

   I have here the originals of the photo arrays, and

just so I don't have the originals, let me give them back to

the government and ask you for copies instead.  And if you

wouldn't mind just writing on the copies which is which, so I

have some idea of what I'm looking at, then I'll read what

you've written into the record so that all counsel know that as

well.

   While you're doing that, let me just continue.

   The first step in this analysis is for the Court to

decide whether the identification was "so unnecessarily

suggestive and conducive to mistaken identification that the

defendant was denied due process.  Stovall v. Denno, 388 U.S.

293, 302 (1967).

   I have looked in the robing room at those photo

DcbWbroC

1   arrays.  I want to look at them again now, understanding what

2   each one is, to make a finding, if I can, right now, whether or

3   not they are so unnecessarily suggestive and conducive that the

4   defendant was denied due process.

5          I will be marking these as Court's Exhibits 1, 2, and

6   3.  The first one is a document labeled photo unit array No.

7   13-341, on the right, and I assume all of you can see that.

8          Court's Exhibit Nos. 2 and 3 are the same document.

9   The difference is that at the bottom, where it says "date of

10  identification," one lists the time as 11:30, and that is

11  Court's Exhibit 2, and, according to the government, that is

12  the second array that was shown to victim one.  And the third

13  document, Court's Exhibit 3, says "1230 hours" in the left-hand

14  corner.

15         Are we all on the same page?  Do we all know what

16  Court's Exhibits 1, 2, and 3 are?

17         MR. DRATEL:  Two and three, your Honor, are --

18         THE COURT:  Two and three are the same document,

19  except that they have a different time.

20         MR. DRATEL:  Right.  Two is the 11:30?

21         THE COURT:  Three is the 12:30.

22         MR. DRATEL:  Okay.

23         THE COURT:  My understanding then is that Court's

24  Exhibit 1 contains the picture of Mr. Chambers and Court's

25  Exhibit 2 contains a picture of Mr. Chambers, and because of

DcbWbroC

that, the argument is that the photo arrays were unnecessarily

suggestive, which certainly seems like a plausible argument.  I

presume that, on Court's Exhibit 2, Mr. Chambers is No. 2.  Is

that right?

MS. LESTER:  That's correct, your Honor, and in Court

Exhibit 1, he's No. 4.

THE COURT:  Okay.  I will confess to counsel that in

studying these two documents in chambers, I could not pick out

the same person in both pictures.  I could not tell that the

person who is No. 2 in Court's Exhibit 2 was even the same

person as No. 4 in Court's Exhibit 1.  Based on that, I do not

find that the photo arrays in the surrounding circumstances

were unduly suggestive and conducive to a misidentification.

Because of that, I do not need to go on to the second step and

ask whether the identification evidence nevertheless was

independently reliable based on the circumstances because I

don't find undue suggestibility in the photo array, so that

motion is denied as well.

Now I will go on to the fourth motion here,

Mr. Chambers's motion to suppress cell site data.  First, I

will say that the motion is denied.  Under the law as it now

stands, I do not find support that Fourth Amendment rights are

at stake when historical cell site data is voluntarily

disclosed to third parties like cell service providers.  While

it is true that the Supreme Court has held warrantless

DcbWbroC

placement of a GPS tracker on a car to be a search under the
Fourth Amendment in <u>United States v. Jones</u>, 132 S.Ct. 945
(2012), it did not extend that holding to cell site records
held by third parties.

　　　　The Second Circuit has not addressed the issue
directly but did note in <u>United States v. Pascual</u> 502 Fed.
App'x. 75 (2d Cir. 2012) that admission of historical cell site
data is "not plain error," and that one judge's suppression of
historical cell site data is "at least in some tension with the
law."  502 Fed. App'x. at 80 referring to Judge Garaufis's
opinion in <u>In re Application of United States</u>, 809 F.Supp.2d
113, 127 (E.D.N.Y. 2011).

　　　　In <u>Pascual</u>, the Second Circuit cited <u>Smith v.</u>
<u>Maryland</u>, 442 U.S. 735, 742-44 (1979) (holding that a customer
has no reasonable expectation of privacy in dialed telephone
numbers which were conveyed to the telephone company) and
<u>United States v. Miller</u>, 425 U.S. 435, 443 (1976) (holding that
the Fourth Amendment did not "prohibit the obtaining of
information revealed to a third party and conveyed by him to
government authorities") citing those cases, the Second Circuit
stated that admission of historical cell site data was not
plain error.

　　　　I agree with the reasoning of Judge Reiss in <u>United</u>
<u>States v. Caraballo</u>, 213 WL 4039028 (D.Vt. Aug. 7, 2013), who
also was attempting to decide what the Second Circuit would do

DcbWbroC

1    in this situation.  Her very thorough opinion stated "Smith and

2    Miller thus support a conclusion that a cell phone user

3    generally has no reasonable expectation of privacy in cell site

4    information communicated for the purpose of making and

5    receiving calls in the ordinary course of provision of cellular

6    phone service."

7              Indeed, Justice Sotomayor, in her concurrence in

8    Jones, which the defendant heavily relies upon in his briefing,

9    admits that the law as it currently stands does not support

10   Fourth Amendment rights in data disclosed to third parties,

11   writing, "More fundamentally, it may be necessary to reconsider

12   the premise that an individual has no reasonable expectation of

13   privacy in information voluntarily disclosed to third parties"

14   and citing Smith and Miller.  Justice Sotomayor went on to say,

15   "This approach is ill suited to the digital age in which people

16   reveal a great deal of information about themselves to third

17   parties in the course of carrying out mundane tasks."  Jones

18   132 S.Ct. at 945.  But the Supreme Court has not yet

19   reconsidered these opinions, and it is unclear on the face of

20   Jones that there is support for applying Fourth Amendment

21   rights to information voluntarily disclosed to third parties.

22   So, on that basis, the motion to suppress the cell site data is

23   denied.

24             An independent basis to deny the motion is that

25   Mr. Chambers has not established his standing to assert a

DcbWbroC

Fourth Amendment violation.  The defendant is correct that for analytical clarity, the Second Circuit has urged that "the better analysis forthrightly focuses on the extent of a particular defendant's rights under the Fourth Amendment, rather than on any theoretically separate, but invariably intertwined concept of standing." U.S. v. Pena, 961 F.2d 333, 336 (2d Cir. 1992).  The Fourth Amendment analysis asks a court to focus on the defendant's reasonable expectation of privacy in the object or place of the search.  Here, Mr. Chambers has not established any reasonable expectation of privacy in the data from the target cell phone, as he has not asserted that it belongs to him or even that he used it.  "The party moving to suppress bears the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." United States v. Osorio 949 F.2d 38, 40, (2d Cir. 1991).  Mr. Chambers has not submitted evidence that his Fourth Amendment rights were violated, so that is a second basis for my denying the motion to suppress the cell site data.

        Mr. Chambers argues in the alternative that the evidence should be suppressed because the application for the data failed to meet the Stored Communications Act's "specific and articulable facts" requirement.  This is argument fails. The terms of the SCA, as noted by the government, state that the remedies and sanctions for violations of the act are defined by 18 U.S.C. Section 2708, and do not provide for

DcbWbroC

suppression as a remedy." <u>United States v. Jones</u>, 908

F.Supp.2d 203, 209 (D.D.C. 2012) "(all courts that have

addressed the issue have held that the SCA does not provide for

a suppression remedy").

     Finally, I turn to Mr. Chambers's motion to dismiss.

He argues that because the alleged property at issue is

contraband -- namely, drug proceeds -- it cannot qualify as

property under the Hobbs Act.  This incorrect as a matter of

law, and the motion to dismiss is denied.  I agree with Judge

Lynch's opinion in <u>United States v. Thompson</u>, 2006 WL 1738227

(S.D.N.Y. June 23, 2006):

     Contraband can be, and often is, the subject of Hobbs

Act robberies.  "Robbery of contraband may ... support a Hobbs

Act conviction." <u>United States v. Martinez</u>, 83 F. Appx. 384

(2d Cir. 2003); see also <u>United States v. Jamison</u>, 299 F.3d 114

(2d Cir. 2002) (upholding Hobbs Act conviction where object of

robbery was proceeds from victim's illegal cocaine business).

     I think that covers all of the motions that have been

filed.  The only exception, of course, is if Mr. Brown needs to

file any additional motions.  Obviously, you should not file

any motions on subjects that I have already covered because you

know what my rulings are and they apply to Mr. Brown as well.

     Is there anything else?

     MR. MITCHELL:  Yes, your Honor, just briefly.

     I know you ruled on the bill of particulars motion.

DcbWbroC

1   We had made a request under Rule 16 for early production of the

2   statements of some of the victim statements, even if in

3   redacted form, to allow us to potentially use those in our own

4   motion with respect to the photo array or, frankly, to use them

5   in preparing the defense.  I'm not sure your Honor ruled on

6   that.  If so, I didn't hear it.

7           THE COURT:  Just for clarification, the motion is

8   denied.  I think the case law make clear that 3500 material is

9   not intended for use for advance preparation for trial, and I

10  think the government also has agreed to produce it prior to the

11  trial, only several days rather than immediately.

12          MR. MITCHELL:  To that end, your Honor, I was

13  wondering if your Honor typically would set a date firm as to

14  when before February 18 the government would be obligated to

15  produce that material.

16          THE COURT:  I'll hear from the government on that.

17          MS. LESTER:  Your Honor, I anticipate that we'd

18  certainly be able to turn it over no later than the Thursday

19  before trial, whatever that date is, and potentially earlier if

20  there's a particular concern of defense counsel.  We are

21  sensitive to not wanting to cause any delay of the trial in

22  their review of materials.  But at this point the 3500 material

23  is not voluminous at all, and I think that providing it the

24  Thursday before a Tuesday start date would be sufficient.

25          THE COURT:  Can we compromise and say a week before?

DcbWbroC

1     Is that okay?

2             MS. LESTER:  That's fine, your Honor.

3             THE COURT:  Let's do it on the 11th.  The 3500

4     material will be produced then.

5             MR. MITCHELL:  One more question, your Honor.

6             Do you have the schedule or will you set a schedule

7     when we will have the *in limine* motions pretrial?

8             THE COURT:  Yes.  I would like to address any *in*

9     *limine* motions at the final pretrial conference, if I can.  I

10    obviously may need to wait for trial.  I would like them to be

11    fully briefed by the time we have the final pretrial

12    conference.  We can back into the dates right here so there's

13    no confusion.

14            MR. MITCHELL:  Great.  Thank you.

15            THE COURT:  Why don't we do the *in limine* motions on

16    the same schedule as we're doing Mr. Brown's pretrial motions.

17    You should have those dates, but we'll put them in an order.

18    Motions by January 13, responses by January 23, and reply by

19    January 28.

20            My strong preference would be to receive a courtesy

21    copy from the party who is filing the motion of all of the

22    papers, similar to a practice I have in my individual rules on

23    the civil side, and you can look at that.  But basically if

24    you're bringing a motion *in limine*, you would be sending to my

25    chambers a paper copy in a binder that has all of the briefs

DcbWbroC

1    for a single motion together and in order so I can read them,

2    and if there's some way to get those all in one binder or just

3    in a couple, that would be my preference.

4              MR. MITCHELL:  If we're making the motion, we will

5    serve a courtesy copy on the government.

6              THE COURT:  Exactly.

7              Anything else?

8              MS. LESTER:  Your Honor, in terms of requests to

9    charge and voir dire, when would the Court like to receive

10   those?

11             THE COURT:  I would like to get those also before the

12   final pretrial conference.  I think I have something in my

13   individual rules, but I don't, frankly, recall what the timing

14   is.  Why don't I ask for those February 3.

15             MR. DRATEL:  May I make a suggestion.

16             THE COURT:  Yes.

17             MR. DRATEL:  Previously, in other cases it seems to me

18   the best practice, most efficient practice is the government

19   would provide us in a Word document its proposed requests to

20   charge and we would do our track changes so the Court can see.

21             THE COURT:  That would be great.

22             MR. DRATEL:  Rather than having to remerge them.

23             THE COURT:  In fact, if you can agree on requests to

24   charge, that would be even better.  If you could try to do

25   that, I would really appreciate it, and to the extent you can't

DcbWbroC

1    agree, something tracks changes noting your objection why, that

2    would be very helpful.

3            MR. DRATEL:  85 percent of it will probably be agreed

4    on.

5            THE COURT:  All right.  Is there anything else we

6    should address here?  If anything else comes up, the best way

7    to communicate is by letter sent to my chambers and e-mail a

8    copy to all counsel.  Thank you very much.

9            (Adjourned)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25