UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

- v. -

STEVEN GLISSON,
a/k/a "Dee,"
ANTIONE CHAMBERS,
a/k/a "Twizzie," and
TYRONE BROWN,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

S2 13 CR 345 (LGS)

**GOVERNMENT'S OPPOSITION TO THE MOTIONS *IN LIMINE* OF DEFENDANTS STEVEN GLISSON AND TYRONE BROWN**

PREET BHARARA
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Amy Lester
Negar Tekeei
Assistant United States Attorneys
-Of Counsel-

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in response to the motions *in limine* of defendants Steven Glisson and Tyrone Brown. Glisson moves *in limine* for an Order to preclude the Government from introducing into evidence at trial two magazine clips containing 9-millimeter rounds that were recovered from his arrest location on the grounds that (1) the evidence is irrelevant, and (2) even if it were relevant, any probative value would be outweighed by the substantial prejudice to Glisson. Brown similarly moves *in limine* for an Order to preclude the Government from introducing at trial various types of ammunition, a firearm case, and a magazine clip seized from his apartment pursuant to a court-authorized search warrant.[1] For the reasons stated below, the Court should deny both motions, as the evidence at issue (the "Ammunition Evidence") is relevant and highly probative of all of the charges in the Indictment, and its admission will not result in any unfair prejudice.

## ARGUMENT

### I. THE AMMUNITION EVIDENCE SHOULD BE ADMITTED AT TRIAL.

#### A. Background

The defendants in this matter—Steven Glisson, Antione Chambers, and Tyrone Brown—are charged in Indictment S2 13 Cr. 345 (the "Indictment") with:

---

[1] Brown also seeks to preclude the Government from introducing evidence of a firearm "alleged to be visible in a video produced by the government." (Brown Letter Brief dated 1/21/14 at 3). This portion of Brown's motion should be denied by the Court as moot, because the Government does not plan to take the position at trial that the surveillance video at issue depicts Brown holding a firearm.

(1) conspiring to commit a Hobbs Act robbery in or about March 2013, in violation of Title 18, United States Code, Section 1951 (all defendants);

(2) committing a Hobbs Act robbery on or about March 25, 2013, in violation of Title 18, United States Code, Sections 1951 and 2 (all defendants);

(3) kidnapping a person on or about March 25, 2013, in violation of Title 18, United States Code, Sections 1201 and 2 (Glisson and Chambers);

(4) using and carrying firearms during and in relation to, and possessing firearms in furtherance of, the robbery conspiracy charged in Count One and the kidnapping charged in Count Three, which firearms were brandished, and aiding and abetting the same, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(ii) and (2) (all defendants); and

(5) conspiring to distribute, or possess with the intent to distribute, 280 grams or more of crack cocaine, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 846 (Brown).

As described in prior submissions to the Court, the Government's evidence at trial will show, among other things, that (1) Glisson, Chambers, Brown, and at least one other person, not named in the Indictment, agreed to commit a robbery on March 25, 2013 of a victim they believed to be in possession of narcotics proceeds, (2) that they used firearms in connection with the robbery, (3) that Glisson, Chambers and the unnamed individual kidnapped a victim during the robbery, and (4) that, from approximately 2011 to 2013, Brown conspired to distribute crack cocaine. (*See generally* Government's Response to the Pretrial Motions of Defendants Steven Glisson and Antione Chambers at 3-4). In addition, the Government expects that, at trial, the male victim of the robbery will testify that he observed two firearms during the robbery: a revolver carried by Glisson and a semi-automatic carried by Chambers. A female victim of the robbery is also expected to testify that the robbers both carried firearms.

**1. Glisson's Magazine Clips Containing Ammunition**

On April 1, 2013, a criminal Complaint was filed against Glisson and a warrant issued for his arrest in connection with the conduct that led to the instant charges. *See United States* v. *Steven Glisson*, No. 13 Mag. 0859. On June 20, 2013, Glisson was arrested at his uncle's home in Brentwood, New York. The Government's evidence at trial will show, among other things, that Glisson fled to his uncle's home in Long Island in late March 2013, days after the robbery charged in the Indictment. Indeed, after being placed under arrest, Glisson admitted to law enforcement that he had been staying with his uncle "[t]he whole time," that is, since the robbery took place. Once Glisson was in custody, law enforcement obtained permission from Glisson's uncle to search his home, including the bedroom where Glisson had been staying. In that bedroom, law enforcement found two magazine clips containing a total of 20 rounds of 9-millimeter ammunition in a red and black duffel bag, which Glisson's uncle identified as belonging to Glisson. A backpack containing Glisson's clothing was also in the bedroom.

**2. Brown's Ammunition, Firearms Case and Magazine**

On March 27, 2013, two days after the robbery charged in the Indictment, law enforcement officers executed a court-authorized search warrant at Tyrone Brown's apartment—the same apartment where the robbery charged in the Indictment was initiated. During that search, law enforcement officers recovered, among other things, approximately fourteen grams of crack cocaine, a strainer of the type commonly used to prepare cocaine for sale, a firearm case and magazine, and various types of ammunition, including a box of 9-millimeter bullets, a box of .357 caliber bullets, and one .380 caliber bullet. In his post-arrest statements to law enforcement, Brown admitted that, in the past, he had possessed both a 9-millimeter firearm and a .357 firearm

at different times.

**B. Applicable Law**

**1. General Standards for Admissible Evidence**

Under Federal Rule of Evidence 401, "[e]vidence is relevant if: (a) it has *any tendency* to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401; *see also United States* v. *Quinones*, 417 Fed. Appx. 65, 68 (2d Cir. 2011) ("[R]elevant evidence" is "evidence having *any tendency* to make the existence of *any fact* that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.") (emphasis added). Federal Rule of Evidence 402, in turn, provides that "[r]elevant evidence is admissible unless any of the following provides otherwise: the United States Constitution; a federal statute; these rules; or other rules prescribed by the Supreme Court." Fed. R. Evid. 402; *see also United States* v. *Figueroa*, 548 F.3d 222, 230 (2d Cir. 2008) ("[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority.").

Moreover, the length of the chain of inferences required to show the probative value of any evidence does not determine whether the evidence is relevant. *See United States* v. *Quattrone*, 441 F.3d 153, 188 (2d Cir. 2006) ("[S]o long as a chain of inferences leads the trier of fact to conclude that the proffered submission affects the mix of material information, the evidence cannot be excluded at the threshold relevance inquiry."); *United States* v. *Ravich*, 421 F.2d 1196, 1204 n.10 (2d Cir. 1970) ("The length of the chain of inferences necessary to connect the evidence with the ultimate fact to be proved . . . does not render the evidence irrelevant."). Indeed, the mere

fact that proffered evidence came into existence *after* the events that the evidence is proffered to prove does not render the evidence irrelevant. *See United States* v. *Kelley*, 551 F.3d 171, 175–76 (2d Cir. 2009) (per curiam) (finding that fraudulent account statements sent by defendant two to four years after alleged securities violations were relevant to defendant's intent at the time of the alleged violations); *see also United States* v. *Mangual–Santiago*, 562 F.3d 411, 428–29 (1st Cir. 2009) (finding that evidence of bank account activity after a conspiracy had ended was relevant to defendant's intent to conceal funds).

Federal Rule of Evidence 403 states, in relevant part, that the Court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Generally speaking, "any proof highly probative of guilt is prejudicial to the interests of that defendant. The prejudice that Rule 403 is concerned with involves 'some adverse effect . . . beyond tending to prove the fact or issue that justified its admission into evidence.'" *United States* v. *Gelzer*, 50 F.3d 1133, 1139 (2d Cir. 1995) (quoting *Figueroa*, 618 F.2d at 943); *see also* Advisory Committee's Notes on Rule 403 ("'Unfair prejudice' within [Rule 403's] context means an undue tendency to suggest decision on an improper basis commonly, though not necessarily, an emotional one."). In these cases, Rule 403 mandates that the district court balance the probative value of evidence and its potential prejudicial effect.

**2. Rule 404(b)**

"Other acts" evidence may be admitted under Rule 404(b) so long as the evidence: (1) is advanced for a proper purpose; (2) is relevant to the crimes for which the defendant is on trial;

and (3) has probative value that is not substantially outweighed by any unfair prejudicial effect. *See United States* v. *Ortiz,* 857 F.2d 900, 903 (2d Cir. 1988) ("[O]ther acts or crimes are admissible under Rule 404(b) to prove matters other than the defendant's criminal propensity"). Rule 404(b)(2) identifies that proper purposes for other act evidence include "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.*

The Second Circuit takes an inclusionary approach to admitting evidence under Rule 404(b). *United States* v. *Lasanta*, 978 F.2d 1300, 1307 (2d Cir. 1992); *see United States* v. *Gelzer*, at 1139-40 (allowing circumstantial evidence from prior unrelated and uncharged robbery where it established defendant's connection to a weapon used in present case). The district court has broad latitude in determining whether to admit evidence pursuant to Rule 404(b), and its ruling will be reviewed only for abuse of discretion. *See United States* v. *Inserra*, 34 F.3d 83, 89 (2d Cir. 1994).

Accordingly, in *United States v. Ravich*, the Second Circuit found no abuse of discretion where the district court admitted guns and ammunition found in the defendants' possession weeks after a bank robbery, even though the evidence "connecting the guns seized [at the time of arrest] with those used in the robbery was rather attenuated." 421 F.2d 1196, 1204 (2d Cir. 1970). "Nevertheless, a jury could infer from the possession of a large number of guns at the date of arrest that at least some of them had been possessed for a substantial period of time, and therefore that the defendants had possessed guns on and before the date of the robbery. Direct evidence of such possession would have been relevant to establish opportunity or preparation to commit the crime charged, and thus would have tended to prove the identity of the robbers . . . . Circumstantial

evidence of such possession was therefore also relevant." *Id.* (citations omitted). *See also United States* v. *Fisher*, 455 F.2d 1101, 1103-04 (2d Cir. 1972) ("[P]ossession of weapons at the scene of the crime and subsequent to the crime was relevant at least to show preparation for the crime and to corroborate the testimony of a key government witness."). *Cf. United States* v. *Slaughter*, 248 F. App'x 210, 212 (2d Cir. 2007) ("Evidence showing that a defendant possessed a handgun prior to the charged crime is properly admitted to show access to such a weapon.").

**C. <u>Discussion</u>**

**1. The Ammunition Evidence Should Be Admitted as Relevant and Probative Evidence of the Charged Robbery, Kidnapping, and Firearms Offenses.**

Evidence that Glisson and Brown possessed ammunition is relevant and probative evidence of the charged robbery, kidnapping, and firearms offenses in the Indictment because firearms are tools of the armed robbery and kidnapping trades and firearms require ammunition. At trial, the Government expects to introduce testimony that Glisson and Chambers were carrying firearms during the robbery and kidnapping on March 25, 2013, as charged in the Indictment, and that Brown aided and abetted the use of firearms during the robbery and/or is responsible for the use of the firearms as a co-conspirator, under a *Pinkerton* theory of liability. As set forth above, at the time of their arrests, between the two of them, Glisson and Brown were in possession of magazine clips and multiple rounds of ammunition that could be used in at least three different firearms: 9-millimeter bullets, .357 caliber bullets, and a .380 caliber bullet. Thus, the Ammunition Evidence easily surpasses the low threshold for relevancy provided for in Federal Rule of Evidence 401, because it makes the use of firearms by the co-conspirators to commit the robbery and kidnapping more probable than it would be would be without the evidence. Fed. R.

Evid. 401 ("Evidence is relevant if: (a) it has *any tendency* to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.") (emphasis added); *see also Gonzalez*, 110 F.3d at 941 ("To be relevant, evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency.").

Contrary to the defendants' position, it makes no difference that, at this point, the Government is unable definitively to tie the particular ammunition seized from Glisson and Brown to the firearms used by Glisson and Chambers to commit the charged robbery and kidnapping. The Ammunition Evidence is still relevant. *See* 2-401 Weinstein's Federal Evidence § 401.08[3] ("Evidence, such as that offered by ballistics experts, that links defendant to the weapon actually used in committing a crime is obviously relevant. Evidence that defendant possessed weapons or other paraphernalia that may have been used in committing a crime is also relevant."). First, the fact that Glisson's ammunition was recovered nearly three months after the robbery and while Glisson was hiding at his uncle's home does not diminish its relevance. The Government expects the evidence at trial to show that Glisson fled to his uncle's home in Long Island, where the ammunition in his duffel bag was found, only days after the March 25 robbery and stayed there, in hiding, until he was arrested on June 20, 2013. That the ammunition was found concealed in Glisson's duffel bag in the bedroom where he was hiding from the authorities is powerful evidence of (1) Glisson's involvement in the robbery, and (2) his consciousness of guilt by attempting to evade law enforcement and conceal evidence of his involvement. Second, Glisson's argument that the Government "has not pointed to any evidence tying the ammunition" in Glisson's duffel bag to the March 25 robbery misses the point. While the victims of the robbery may not be able to

identify the make and model of the weapons used by the robbers, they will testify that firearms were used. Indeed, in his post-arrest statements to law enforcement, Brown himself admitted that firearms were used to commit the robbery. Thus, the Government is entitled to argue to the jury that the Ammunition Evidence may in fact be ammunition from the firearms used during the course of the robbery. And the defense is entitled to argue that it is not. Any lack of a direct link between the Ammunition Evidence and the firearms used during the robbery goes to the weight to be given the evidence—a question for the jury—not to its admissibility. *Quattrone*, 441 F.3d at 188; *Ravich*, 421 F.2d at 1204 n. 10.

Glisson's and Brown's arguments that the Ammunition Evidence is unfairly prejudicial misconstrues Rule 403, which is concerned with prejudice that involves "some adverse effect . . . beyond tending to prove the fact or issue that justified its admission into evidence." *Gelzer*, 50 F.3d at 1139 (quoting *Figueroa*, 618 F.2d at 943). Given the extremely serious nature of the charges in the Indictment—a violent armed robbery and kidnapping—evidence of the defendants' possession of ammunition does not create unfair prejudice. *Cf. United States* v. *Williams*, 205 F.3d 23, 34 (2d Cir. 2000) (evaluating the impact of evidence regarding the defendant's prior criminal conduct and finding "no undue prejudice under Rule 403" because "the evidence did not involve conduct more serious than the charged crime and the district court gave a proper limiting instruction."); *United States* v. *Pitre*, 960 F.2d 1112, 1120 (2d Cir. 1992) (admitting evidence of prior narcotics transactions in narcotics case where other acts evidence "did not involve conduct any more sensational or disturbing than the crimes with which [the defendants were] charged") (internal quotation marks omitted) (quoting *United States* v. *Roldan-Zapata*, 916 F.2d at 804)). Neither defendant can point to the type of prejudice from the Ammunition Evidence that would

have some adverse effect, or elicit an emotional response from, or otherwise inflame, the jury that exceeds the nature of the other evidence that will be presented at trial regarding the charged crimes.

Glisson cites to *United States* v. *Dames*, No. 04-1247 (PAC), 2007 WL 1129323, at *3 (S.D.N.Y. Apr. 12, 2007), as an example of a case in which a court in this district "recognize[d] the risk of unfair prejudice resulting from the introduction into evidence of firearms that have no stated connection to the alleged crime." (Glisson Memorandum of Law In Support of Motion *In Limine* at 4). *Dames* is distinguishable. In *Dames*, the defendant, who was charged with murder in furtherance of a of a narcotics conspiracy, moved to preclude evidence of two firearms: a revolver that was found on the victim's person, which the Government contended the victim used to shoot the defendant several weeks earlier, and a MAK-90 discovered in an apartment "allegedly used by [the defendant] and others in connection with their narcotics conspiracy." *Dames*, 2007 WL 1129323 at *3. The district court granted the Government's motion to admit of the revolver found on the victim's person, as evidence of a motive to kill the victim, but precluded evidence of the MAK-90 because of its "little probative value" and the "obvious" risk of unfair prejudice to the defendant. *Id.* Unlike in *Dames*, the Ammunition Evidence here was found in Glisson's duffel bag in a house where he was hiding from law enforcement, not in an apartment allegedly used by him and others in connection with the conspiracy. Furthermore, to the extent that the presence of a MAK-90, an assault rifle, carries an "obvious" prejudice, the presence of the Ammunition Evidence does not carry such an "obvious" prejudice, especially in comparison to the allegations in the Indictment.

Accordingly, the evidence of ammunition found in Glisson's duffel bag and the

ammunition, firearm case and magazine found in Brown's apartment should be admitted as direct evidence relevant to Counts One, Two, Three, and Four of the Indictment.

**2. Evidence of the Ammunition, Firearm Case, and Magazine Found in Brown's Apartment Two Days after the Robbery Should Be Admitted as Direct Evidence of the Narcotics Conspiracy Charge Against Brown.**

The firearms-related evidence discovered in Brown's apartment should also be admitted at trial as direct evidence of Brown's participation in the narcotics conspiracy charged in Count Five of the Indictment. The Second Circuit has "repeatedly approved the admission of firearms as evidence of narcotics conspiracies, because drug dealers commonly keep firearms on their premises as tools of the trade," and, as a result, has also repeatedly approved the admission of ammunition as a "tool of the trade." *United States* v. *Becerra*, 97 F.3d 669, 671-72 (2d Cir. 1996) (in a narcotics conspiracy case, finding that the district court did not abuse its discretion in admitting ammunition found in the defendant's apartment and testimony about the ammunition) (quoting *United States* v. *Vegas*, 27 F.3d 773, 778 (2d Cir. 1994), *cert. denied*, 513 U.S. 911, 115 S.Ct. 284, 130 L.Ed.2d 200 (1994) (internal quotation marks omitted). The fact that Brown had ammunition and other firearms-related items in his apartment, along with crack cocaine and drug paraphernalia, helps establish that he is in fact a drug dealer, and is therefore admissible.

**3. The Ammunition Evidence Should Also Be Admitted Under Rule 404(b) to Establish Opportunity, Preparation, Plan, Knowledge, Intent, Identity and Absence of Mistake or Misunderstanding.**

Alternatively, evidence of Glisson's and Brown's possession of magazines and ammunition fitting different types of firearms is admissible under Rule 404(b) to establish their opportunity, preparation, and/or plan to commit the robbery, kidnapping, and firearms offenses charged in the Indictment. *See United States* v. *Robinson*, 560 F.2d 507, 513 (2d Cir. 1977)

(evidence of a defendant's possession of a gun upon his arrest was admissible under Rule 404 "on the independent ground that it tended to show he had the 'opportunity' to commit the bank robbery, since he had access to an instrument similar to that used to commit it.") (citing *Ravich*, 421 F. 2d 1196); *see also United States* v. *Morrow*, 721 F.Supp. 207, 209 (S.D.N.Y. 2010) (in a Hobbs Act robbery case, finding that evidence of the defendant's possession of a firearm upon his arrest for an uncharged robbery *after* the charged offenses was "probative of intent to participate in the charged conspiracy and knowledge of the consequences of the conspiracy, including the use of the gun in relation to the conspiracy" and, further, the evidence was "highly probative" and "not substantially outweighed by the danger of unfair prejudice.").   Evidence that Glisson and Brown possessed ammunition also tends to prove the identity of the robbers.  *See Ravich*, 421 F.2d at 1204.

Furthermore, as stated above, this evidence is not *unfairly* prejudicial to the defendants. Their possession of ammunition and magazines is no worse or inflammatory than the charged robbery, robbery conspiracy, firearms, kidnapping and narcotics conspiracy offenses.   Indeed, the Government anticipates that the evidence, including eyewitness testimony, will show that Glisson and Chambers brandished firearms during the course of the robbery and kidnapping.   Therefore, there is no danger that the admission of the proffered evidence of ammunition and magazines would elicit an emotional response from, or otherwise inflame, the jury beyond what the clearly admissible evidence will do, and, accordingly, the Government should be permitted to offer such evidence.  *See Williams*, 205 F.3d at 34; *Pitre*, 960 F.2d at 1120.

## CONCLUSION

For the foregoing reasons, the Government respectfully submits that the Court should permit the Government to admit at trial the magazine clips and ammunition found in Glisson's duffel bag and the ammunition, magazine and firearms case found in Brown's apartment.

Dated: February 14, 2014
New York, New York

Respectfully submitted,

PREET BHARARA
United States Attorney

By: ________/s/____________________

Amy Lester / Negar Tekeei
Assistant United States Attorneys
(212) 637-2416 / 2482