UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                    :
UNITED STATES OF AMERICA
                                                    :
            - v. -                                         S2 13 CR 345 (LGS)
                                                    :
STEVEN GLISSON,
    a/k/a "Dee,"                                    :
ANTIONE CHAMBERS,
    a/k/a "Twizzie," and                            :
TYRONE BROWN,
                                                    :
                    Defendants.
                                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**GOVERNMENT'S REPLY IN SUPPORT OF ITS MOTIONS *IN LIMINE***


                                            PREET BHARARA
                                            United States Attorney for the
                                            Southern District of New York
                                            One St. Andrew's Plaza
                                            New York, New York 10007


Amy Lester
Negar Tekeei
Assistant United States Attorneys
  -Of Counsel-

**PRELIMINARY STATEMENT**

The Government respectfully submits this memorandum of law in further support of its motions *in limine*.  For the reasons set forth below, the Court should enter an order (1) permitting the Government to introduce defendant Tyrone Brown's post-arrest statements pursuant to *Bruton* v. *United States*, 391 U.S. 123 (1968); (2) permitting the Government to introduce as part of its case-in-chief evidence regarding the prior convictions of defendants Steven Glisson and Antione Chambers pursuant to Federal Rule of Evidence 404(b) or, in the alternative, permitting the Government to cross-examine Glisson and Chambers regarding those convictions pursuant to Federal Rule of Evidence 609(a) should either of them testify, and permitting the Government to introduce evidence regarding Glisson's possession of a gun inside of Brown's apartment approximately two months before the robbery as direct evidence of the charged offenses or, in the alternative, as "other acts" evidence pursuant to Rule 404(b); and (3) precluding cross-examination at trial of New York City Police Department ("NYPD") Detective Ellis Deloren regarding his testimony in an unrelated case before the Honorable Deborah A. Batts in 2006.

**ARGUMENT**

**I.   THE COURT SHOULD ADMIT BROWN'S POST-ARREST STATEMENTS PURSUANT TO *BRUTON* v. *UNITED STATES***

Glisson and Chambers both oppose the Government's proposed redactions to Brown's post-arrest statements and the admission of the redacted statement at trial, although for different reasons.[1]  However, under the applicable legal standards, neither Glisson nor Chambers has a

---

[1] Brown also opposes the admission of his post-arrest statements. While acknowledging that he

2

winning argument.   For the reasons set forth below, Brown's post-arrest statements are admissible in redacted form at a joint trial of all three defendants with an appropriate limiting instruction.

Glisson argues that the redactions proposed by the Government in its moving brief – substituting a neutral pronoun such as "a guy" or "the guy" for Glisson's name – are insufficient to cure the *Bruton* issue.   The Government believes that, based on the controlling cases, its initial proposal is legally sufficient to avoid the concerns raised in *Bruton* and its progeny.   *See, e.g., United States* v. *Jass*, 569 F.3d 47, 58 (2d Cir. 2009) (noting that the operative questions, when evaluating a *Bruton* claim, are "(1) did the redacted statement give any 'indication to the jury that the original statement contained actual names,' and (2) did 'the statement standing alone . . . otherwise connect co-defendants to the crimes'" (citation omitted)); *United States* v. *Tutino*, 883 F.2d 1125, 1135 (2d Cir. 1989) ("a redacted statement in which the names of co-defendants are replaced by neutral pronouns, with no indication to the jury that the original statement contained actual names, and where the statement standing alone does not otherwise connect co-defendants to the crimes, may be admitted without violating a co-defendant's *Bruton* rights").   However, in light of the recent guidance on *Bruton* redactions provided by the Second Circuit in *United States* v. *Taylor*, ___ F.3d ___, 2014 WL 814861, at *1 (2d Cir. Mar. 4, 2013) (after *reh'g*), the Government is prepared to offer the following proposal as an alternative.[2]   The Government will

---

has no standing to raise a *Bruton* claim, he seeks suppression of the statements through a separately-filed motion and urges the Court to decide that issue first.   The Government agrees that the Court should rule on Brown's suppression motion prior to determining the admissibility of the statements under *Bruton*.

[2] In *Taylor*, the Court criticized redactions of a post-arrest statement that used "awkward

have the testifying law enforcement witness—either NYPD Detective DeLoren or FBI Special Agent John Reynolds—summarize Brown's statements to include the following points with respect to the robbery on March 25, 2013:

- Brown admitted that he had bought crack cocaine from the victim of the robbery in the past and stated that, on the night of the robbery, the victim came to his apartment to deliver a quantity of crack cocaine and to collect money from a previous drug transaction.

- Brown admitted that he knew a robbery was going to take place that night, and he agreed ahead of time to invite the victim to his apartment for that purpose.

- Brown described the circumstances of the robbery, including that there were two robbers, both armed with firearms, one of which had a potato placed on the end, and that the robbers used duct tape to restrain Brown and the victim.

This proposed testimony does not present any problems under *Bruton* because it completely eliminates the use of any names from Brown's statements and does not indicate in any way that Brown told law enforcement the names of anyone else involved in the robbery. Therefore, Glisson's objections to the admission of Brown's statements should be rejected by the Court.[3]

Chambers argues that Brown's post-arrest statements should be admitted in full without any redactions because (1) portions of the statements are arguably exculpatory as to Chambers; (2) they are statements against Brown's penal interest under Federal Rule of Evidence 804(b)(3); and (3) because the common law "rule of completeness" and Federal Rule of Evidence 106 require it.

---

circumlocution" to reference other participants in the crime and retained the use of one co-conspirator's name in the statement, which the Court found "so unnatural, suggestive, and conspicuous as to offend *Bruton*, *Gray*, and *Jass*."   2014 WL 814861, at *12.

[3] As set forth in the Government's moving brief, Brown also made statements about his own crack dealing and his possession of firearms that the Government intends to introduce at trial.   Because these statements do not inculpate either of the other defendants, they do not give rise to any issue under *Bruton*.

Alternatively, Chambers requests a severance or preclusion of the statements altogether.

First, while aspects of Chambers' statements are arguably exculpatory as to Chambers—that is, because Brown names only Glisson as a participant in the robbery, states that he had telephone contact with Glisson about the robbery, and claims that he cannot identify the second robber—that does not mean that the statements should automatically be admitted in full.  There is no rule of evidence under which the entirety of the statements are admissible if offered by Chambers (even at a separate trial, as discussed below), and the Government cannot offer the entirety of the statements without violating *Bruton*.  Moreover, because the Government's proposed summary of Brown's statements does not indicate that Brown implicated any other participants in the robbery by name, there is no danger that the proposed testimony will corroborate the Government's proof of the connections between Brown and Chambers—for example, the call detail records and other evidence that Brown was in telephone contact with a phone number associated with Chambers on the night of the robbery—and therefore no concern that the admission of the statements as proposed will create a misleading impression for the jury.

Second, Chambers is wrong in claiming that the entirety of Brown's post-arrest statements constitutes a statement against penal interest and is therefore admissible under the hearsay exception of Rule 804(b)(3).  To be sure, the statements in which Brown implicates himself in the robbery conspiracy are statements against interest.  But the portions of the post-arrest statements in which Brown implicates other participants in the robbery by name, or fails to do so—the very portions that Chambers seeks to admit—are not against Brown's own penal interest, and do not fall within the hearsay exception.  *See United States* v. *Jackson*, 335 F.3d 170, 177-178 (2d Cir. 2003) (statements made by co-conspirator at his plea allocution that arguably exculpated defendant were

5

not admissible under Fed. R. Evid. 804(b)(3), because particular statements defendant sought to admit were not self-inculpatory, even if they are made within broader narrative that was generally self-inculpatory). Furthermore, Brown's statement that he was in telephone contact with Glisson on the night of the robbery is not "supported by corroborating circumstances that clearly indicate its trustworthiness," as required by the Rule. *See* Fed. R. Evid. 804(b)(3)(B). Quite the opposite. The Government expects to establish at trial through call detail records and other evidence that Brown was in telephone contact with a phone number associated with Chambers, not Glisson, on the night of the robbery. The Government also expects to prove that Chambers and Brown knew each other well enough that Brown was invited to and attended a baby shower for Chambers' child, which directly undermines the trustworthiness of Brown's statement that he did not know (or could not identify) the second robber, only Glisson. Thus, Brown's statements are not admissible in their entirety under Rule 804(b)(3).

Second, Rule 106 and the common law "rule of completeness" do not require that Brown's post-arrest statements be admitted without redactions. Rule 106 provides that "[i]f a party introduces all or part of a writing or recorded statement, *an adverse party* may require the introduction, at that time, of any other part . . . that in fairness ought to be considered at the same time." Fed. R. Evid. 106 (emphasis added). As an initial matter, because Chambers is not the person against whom Brown's statements are being introduced (that is only Brown himself, as the jury will be instructed by the Court), Chambers cannot seek admission of some portion of the statement that he views as "exculpatory" under the Rule. *See United States* v. *Guevara*, 277 F.3d 111, 127 (2d Cir. 2001) (post-arrest statements that were not admissible coconspirator's

statements were not admissible under Fed. R. Evid. 106, because rule of completeness does not "render admissible evidence that is otherwise inadmissible").

Moreover, even if Chambers could be considered an "adverse party" within the meaning of the Rule, he still would not be entitled to introduce the portions of Brown's statements that he views as exculpatory. In *United States* v. *Marin*, 669 F.2d 73 (2d Cir. 1982), the Second Circuit held that a defendant is not entitled to introduce the exculpatory portions of a post-arrest statement in order to "complete" the story simply because the Government offered an incriminating portion of the statement. The district court in *Marin* had redacted the post-arrest statement of Romero in order to protect Marin's rights under *Bruton*, but Romero argued on appeal that he should have been permitted to introduce his whole statement because the court's redaction altered the meaning of the statement to make it more inculpatory of him. The Second Circuit rejected Romero's contention, "conclud[ing] that Romero had no right to have this statement admitted into evidence because it was, as offered by Romero, hearsay, and because it was not needed, in fairness, to make complete the portions of his statement that were admitted against him." *Id.* at 84. The Court explained:

> We have interpreted this Rule [106] to require that a statement be admitted in its entirety when this is necessary to explain the admitted portion, to place it in context, or to avoid misleading the trier of fact, or to ensure "a fair and impartial understanding" of the admitted portion. The completeness doctrine does not, however, require introduction of portions of a statement that are neither explanatory of nor relevant to the admitted passages.

*Id.* at 84 (citations omitted); *see also United States* v. *Benitez*, 920 F.2d 1080, 1086-87 (2d Cir. 1990) ("although a 'rule of completeness' governs the redaction of statements, that rule is violated 'only where admission of the statement in redacted form distorts its meaning or excludes

7

information substantially exculpatory of the declarant'") (quoting *United States* v. *Alvarado*, 882 F.2d at 651).

Measured against these standards, Rule 106 does not require admission of the full text of Brown's statements. The substantive redactions proposed by the Government are the references to Glisson's name, Brown's statement that he had phone contact with Glisson on the night of the robbery, and his statement that he could not identify the second robber. Those statements are not "relevant to . . . nor necessary to explain or place in context" the admitted portions of the statement detailing Brown's involvement in the robbery plan. *Marin*, 669 F.2d at 85. Nor do the Government's proposed redactions in any way "prevent a 'fair and impartial understanding' of the statement, or render it misleading," *id.*, because the jury will be instructed that Brown's statements can only be considered against him, not against any other defendant. Finally, the redactions do not result in the exclusion of "information substantially *exculpatory of the declarant*." *Benitez*, 920 F.2d at 1086-87 (citation and internal quotation omitted) (emphasis added).

Chambers is not entitled to a severance based on this issue. There is a well-settled "preference in the federal system for joint trials of defendants who are indicted together." *Zafiro* v. *United States*, 506 U.S. 534, 537-38 (1993); *United States* v. *Jackson*, 180 F.3d 55, 75 (2d Cir. 1999); *United States* v. *Diaz*, 176 F.3d 52, 102 (2d Cir. 1999). This preference is especially strong where, as here, the defendants are alleged to have participated in a common scheme or plan. *United States* v. *Turoff*, 853 F.2d 1037, 1042-43 (2d Cir. 1988); Fed. R. Crim. P. 8(b). Courts have permitted co-defendants to face the risks inherent in a joint trial in order to conserve time, money and scarce judicial resources. *United States* v. *Figueroa*, 618 F.2d 934, 944 (2d Cir. 1980); *United States* v. *Lyles*, 593 F.2d 182, 191 (2d Cir. 1979).

Accordingly, a district court's denial of a severance motion under Fed. R. Crim. P. 14 will be reversed on appeal "only if a defendant can 'show prejudice so severe that his conviction constituted a miscarriage of justice, and that the denial of his motion constituted an abuse of discretion.'"  *United States* v. *Hernandez*, 85 F.3d 1023, 1029 (2d Cir. 1996) (quoting *United States* v. *Rosa*, 11 F.3d 315, 341 (2d Cir. 1993) (citations omitted)); *see also United States* v. *Tracy*, 12 F.3d 1186, 1194 (2d Cir. 1993); *United States* v. *Zackson*, 6 F.3d 911, 916, 922 (2d Cir. 1993).  To satisfy this "extremely difficult burden," *Casamento*, 887 F.2d at 1149 (quoting *United States* v. *Carpentier*, 689 F.2d 21, 27 (2d Cir. 1982)), it is not sufficient for the defendant to show that he suffered some prejudice or that he may have had a better chance of acquittal at a separate trial.  *Zafiro*, 506 U.S. at 540.  Instead, the defendant must show that the denial of his motion caused "substantial prejudice," *Casamento*, 887 F.2d at 1149-50, that is, "'prejudice so great as to deny him a fair trial.'"  *United States* v. *Salameh*, 152 F.3d 88, 115 (2d Cir. 1998) (quoting *United States* v. *Cardascia*, 951 F.2d 474, 482 (2d Cir. 1991)).

Chambers cannot make the showing he must under *Zafiro* to warrant a severance because, even in at a separate trial, he would not be permitted to admit Brown's statement in its entirety, for the reasons already discussed—it is inadmissible hearsay when offered by Chambers that does not fall within any other evidentiary rule.  Accordingly, Chambers cannot show that he will be denied a fair trial absent a severance in this case.

For all of these reasons, the Court should permit the Government to introduce at trial a summary of Brown's post-arrest statements such as that proposed above.

9

## II. THE COURT SHOULD PERMIT THE GOVERNMENT TO INTRODUCE EVIDENCE REGARDING PRIOR ACTS OF GLISSON AND CHAMBERS

### A. Glisson's and Chambers' Prior Narcotics Convictions Are Admissible Under Rule 404(b).

Glisson and Chambers are charged with robbing a drug dealer, kidnapping a victim related to the drug dealer in connection with that robbery, and carrying firearms in connection with both the robbery and the kidnapping. In their oppositions to the Government's Motions *In Limine*, Glisson and Chambers both argue that evidence of their prior narcotics convictions is not relevant to the crimes charged in this case and, in doing so, ignore the clear connection between the crimes charged in this case and their prior crimes.[4] Evidence of Glisson's and Chambers' prior narcotics convictions is evidence of their motive, opportunity, intent, preparation, plan, knowledge, and identity with respect to the charged robbery under Rule 404(b). Both men were (a) knowledgeable about the narcotics trade and, for example, the practices and vulnerabilities of drug dealers, (b) motivated by that knowledge and experience, and the fact that drug dealers have significant stores of cash and are less likely than other victims to involve law enforcement if targeted, and (c) more likely to be the individuals who committed this crime. Notwithstanding the defendants' arguments to the contrary, because this evidence is being advanced for a proper purpose, is relevant to the crimes for which the defendants are on trial, and has probative value

---

[4] Chambers also argues that, because he has not yet asserted a state of mind defense that would put knowledge and intent at issue, the Government's motion is premature. *See* Chambers Memo. at 4. While it may be that Chambers has not yet formally asserted a particular trial defense—although, as referenced in the Government's moving brief, Chambers did file a *pro se* motion in which he claimed that the events of March 25, 2013 did not actually constitute a robbery, but rather were the result of an attempt to thwart a murder-for-hire plot hatched by the primary victim—neither has he taken his knowledge and intent completely out of issue by conceding that he will not dispute those issues. Accordingly, the Government's motion is not premature.

10

that is not outweighed by any unfair prejudicial effect, it may be admitted under Rule 404(b). *See United States* v. *Ortiz*, 857 F.2d 900, 903 (2d Cir. 1988) ("[O]ther acts or crimes are admissible under Rule 404(b) to prove matters other than the defendant's criminal propensity").

In particular, Glisson's prior conviction for dealing drugs happened after an arrest inside an apartment located at 1780 Watson Avenue in the Bronx—approximately five city blocks, or half a mile, away from 1338 Croes Avenue, where the March 25 Robbery was initiated. Evidence of Glisson's prior conviction for dealing drugs in the same neighborhood as the March 25 Robbery is admissible 404(b) evidence of Glisson's knowledge about the narcotics trade in that neighborhood, financial motive to commit the March 25 Robbery, and identity as one of the robbers and kidnappers. Chambers' prior convictions for narcotics-related offenses, while not based on crimes he committed in the neighborhood in which the March 25 Robbery was initiated, are still admissible evidence of his knowledge, motivation and identity under Rule 404(b) because they demonstrate his knowledge of how drug dealers operate and the financial incentives to being a drug dealer (and robbing a drug dealer).

The cases cited by Chambers in his brief are unavailing. In *United States* v. *Tubol*, 191 F.3d 88, 91 (2d Cir. 1999), the defendant was charged with committing a bank robbery using a hoax bomb. At issue was the admissibility of the testimony of a Government witness stating that the defendant had admitted he planted a bomb in a residence a few weeks before the charged robberies. *Id.* at 95. The Second Circuit held that "[t]here is no proof that the hoax bomb and the [residence] bomb shared any characteristics beyond the word 'bomb' or that [the defendant] used them in similar ways" and, therefore, because the bomb planted at the residence and the charged crimes were not similar, the relevance of the defendant's admission was "slight at best."

*Id.* Here, the Government seeks to introduce evidence of Chambers' prior narcotics convictions not because of their similarity to the crimes charged in this case but because they are relevant to Chambers' knowledge, intent, motive and identity. Chambers also cites *United States* v. *Gonzalez*, No. 08 Cr. 363 (BSJ), 2009 WL 1834317, at *1 (S.D.N.Y. June 24, 2009), in which the district court excluded evidence of a defendant's three prior crack cocaine-related convictions in a case in which the defendant was charged with distributing crack cocaine, attempting to commit a Hobbs Act robbery of an electronics store, conspiring to commit a Hobbs Act robbery, and carrying and possessing a firearm during and in relation to the charged robbery. In *Gonzalez*, the district court found that the length of time between the events, which ranged from 13 to 18 years prior to the conduct with which the defendant was charged in that case, the varying quantities in varying containers of crack cocaine, and the different circumstances of the prior convictions did not suggest any similarity or connection between the defendant's prior and charged acts beyond his possession of crack cocaine. *Id.* at *2-3.[5] Here, Chambers' prior narcotics convictions range from four to seven years prior to the conduct which he is charged in this case, and, for much of the time in between, Chambers was incarcerated. Furthermore, the connection between Chambers' prior crimes and the crimes charged here—crimes committed in

---

[5] The *Gonzalez* court also excluded evidence relating to the prior convictions of a second defendant, Williams, who had been convicted for possession of a weapon and first degree robbery 13 years before the charged Hobbs Act robbery, conspiracy to commit a Hobbs Act robbery, and firearms offenses. *Id.* at *4. The district court concluded that, beyond the common category of crime, Williams' prior convictions were quite different from the charged conduct, and the passage of 13 years diminished the connection and probative value of the prior acts. *Id.* The district court's decision regarding Williams' prior convictions is distinguishable here for the same reasons as was its decision regarding Gonzalez's prior convictions—here, Chambers' prior convictions, which are much closer to the charged conduct than were the *Gonzalez* defendants' convictions, are being offered to demonstrate his familiarity with the narcotics trade and the way drug dealers operate.

12

the course of robbing a drug dealer—is his familiarity with the narcotics trade and the way drug dealers operate.

Glisson and Chambers both claim that the Government's Rule 404(b) argument regarding identity demonstrates that the Government seeks to admit evidence of their prior narcotics convictions only be to show propensity.  *See* Glisson Memo. at 8 (quoting Gov't Memo. at 19); Chambers Memo. at 5 (quoting Gov't Memo. at 14).  Contrary to the defendants' arguments, however, evidence of Glisson's and Chambers' prior narcotics convictions would not be offered as evidence of "character in order to show that on a particular occasion [they] acted in accordance with the character," Rule 404(b), but as evidence that provides important context for why Glisson and Chambers, individuals with knowledge and motive—rather than some random individuals—would be in a position to be identified as the robbers and kidnappers.

### B.  Chambers' Prior Convictions are Not So "Stale" That They Lose Probative Value.

Chambers also argues that, even assuming his prior convictions are admissible under Rule 404(b), they should be excluded because they are "stale."  Chambers Memo. at 8.  This argument overlooks the significance of the timing of Chambers' prior convictions.  On July 14, 2006, Chambers was sentenced to 57 months' imprisonment and three years' supervised release in the United States District Court for the Middle District of Pennsylvania for possessing heroin and crack cocaine with the intent to distribute.  This sentence was reduced to a sentence of time served as of March 13, 2008.  One year later, on March 13, 2009, Chambers was again arrested for narcotics violations, and, pleaded guilty in the United States District Court for the Middle District of Pennsylvania to using a communication facility to facilitate the unlawful distribution

of heroin.    On January 13, 2010, Chambers was sentenced to 46 months' imprisonment and three years' supervised release.    Chambers was released from prison on November 10, 2011.  This sequence of events is significant because it shows that, although Chambers' prior convictions were in 2006 and 2009, he was incarcerated for a significant portion of the last eight years, and, therefore, these convictions cannot be seen to be too "remote" to have a probative value.    Moreover, even in the case Chambers cites to in support of this argument, the district court admitted evidence of prior acts—not even a prior conviction—that occurred approximately 12 years before the offense conduct.    *See United States* v. *Ozsusamlar*, 428 F.Supp.2d 161, 171 (S.D.N.Y. 2006).    In *Ozsusamlar*, the defendant was charged with conspiracy to commit murder for hire, murder for hire, and conspiracy to commit extortion.    *Id.* at 163.    At issue was the admissibility of testimony that the defendant had made threats of harm in connection with the collection of a debt approximately 12 years before.    *Id.* at 164.    The district court found that the timing of the prior acts was not so remote as to diminish the probative value of the evidence as to the defendant's knowledge and intent regarding the charged offenses.    *Id.* at 171.  Similarly, Chambers' prior narcotics convictions are not so remote that they diminish their probative value as to his knowledge and intent in this case.

### C. Glisson's Possession of a Firearm When He and the Victim First Met Only Two Months Before the March 25 Robbery is Direct Proof of the Charged Robbery Conspiracy, and, in the Alternative, Admissible Under Rule 404(b).

Glisson argues that evidence of his possession of a firearm only two months before the March 25 Robbery—during which he is alleged to have used a firearm, in the apartment in which the robbery was initiated, during a narcotics-related transaction between Brown and the victim that was similar to the planned transaction between Brown and the victim on the day of the

14

robbery—is (a) not direct proof of the charged robbery conspiracy and (b) not admissible as evidence of Glisson's motive, opportunity, intent, preparation, plan, knowledge, or identity. This argument is contrary to established legal principles and the facts of this case.

First, that the circumstances of this first meeting match the circumstances of the robbery so closely makes evidence of this first meeting "inextricably intertwined with the evidence regarding the charged offense" and begins the story of the events that unfolded on the night of the March 25 Robbery. *See United States* v. *Carboni*, 204 F.3d 39, 44 (2d Cir. 2000). *United States* v. *Barret*, No. 10 Cr. 809 (S–4) (KAM), 2011 WL 6935500 (E.D.N.Y. Dec. 3, 2011), relied upon by Glisson, is inapposite. In *Barret*, the district court held that evidence of an alleged robbery that occurred more than three years before the charged conspiracy in the case might be relevant background information but it was not "part of the very act charged" nor "inextricably intertwined with the evidence regarding the charged offense[,] or . . . necessary to complete the story of the crime on trial." 2011 WL 6935500, at *3 (citations omitted). In contrast, the proffered evidence here occurred only two months before the March 25 Robbery in circumstances that closely match the circumstances of the March 25 Robbery. Glisson also relies on *United States* v. *Townsend*, No. S1 06 Cr. 34 (JFK), 2007 WL 1288597 (S.D.N.Y. May 1, 2007), for the proposition that the proposed testimony does not explain how the March 25 Robbery "necessarily stem[s] from or [is] part and parcel of" Glisson's presence in Brown's apartment. In *Townsend*, the district court found that evidence of the defendant having sold a confidential informant handguns on two occasions was not direct evidence of the charged crimes of conspiracy to distribute crack cocaine and possession of a firearm in furtherance of that conspiracy. *Townsend*, 2007 WL 1288597, at *2. The court found that, while the

15

Government had demonstrated how that evidence would be relevant to the background of the charged conspiracy, the Government had not shown how the charged offenses stemmed from or were part and parcel of the firearm sales. *Id.* Unlike in *Townsend*, the charges here stem directly from and are, in fact, part and parcel of Glisson's presence in Brown's apartment two months before the March 25 Robbery, during which he observed the relationship between Brown and the victim and met the victim for the first time. And, although the *Townsend* court rejected the Government's "direct evidence" argument, it found that the defendant's prior handgun sales *were* admissible under Rule 404(b) as "relevant background information" that would "help to explain the development of [the defendant's and the confidential informant's] criminal relationship." *Id.* at *6. Thus, as explained below, even if the Court finds that the proffered evidence is not admissible as direct evidence of the charged crimes, the evidence would be properly admitted under Rule 404(b).

Second, Glisson does not, and cannot, argue that victim's observations are not admissible to help explain (1) Glisson's motive for the robbery of the victim, (2) his opportunity to access the victim through Brown, (3) his preparation and plan for the robbery of the victim, by using information provided by Brown and carrying out the robbery at Brown's apartment, or (4) his knowledge of the victim's narcotics business. Glisson instead attempts to argue that his presence inside of Brown's apartment and with a gun "does little to shed light on the relationship between the two men," and his observation of the victim and Brown is not probative of the robbery. *See* Glisson Memo. at 8. These arguments fall flat. Glisson and Brown are charged with conspiring to rob the victim, robbing the victim, and carrying a firearm in connection with that robbery—all crimes that they are alleged to have committed together. The proffered

evidence establishes their familiarity with each other, knowledge of each other's activities and abilities, level of comfort with and knowledge of firearms, and shared knowledge about the victim and the victim's trade, among other things.  It provides "relevant background information" that would "help to explain the development of [Brown's and Glisson's] criminal relationship," and "explain the basis for the trust between" Brown and Glisson.  *See Townsend*, 2007 WL 1288597, at *6.

Finally, Glisson argues that, assuming evidence of the victim's and Glisson's first meeting *is* probative of the relationships between the defendants, evidence of Glisson's possession of a firearm at that meeting is "not necessary to such proof."  Glisson Memo. at 8. However, evidence of Glisson's possession of a firearm during that meeting is precisely the type of evidence that tends to establish knowledge, opportunity, preparation, and/or a plan to commit the robbery, kidnapping and firearms offenses charged in the Indictment.  *See United States* v. *Robinson*, 560 F.2d 507, 513 (2d Cir. 1977).  As such, evidence of Glisson's possession of a firearm on that occasion should be admitted at trial.

> **D. Evidence of Glisson's and Chambers' Prior Narcotics Convictions, and of Glisson's Possession of a Firearm When He and the Victim First Met in Brown's Apartment, Would Not Create Unfair Prejudice.**

The prior acts evidence the Government seeks to admit—evidence of Glisson's and Chambers' prior narcotics convictions, and of the first time the victim met Glisson—"did not involve conduct any more sensational or disturbing than the crimes with which [the defendants] are charged."  *United States* v. *Pitre*, 960 F.2d 1112, 1120 (2d Cir. 1992).  The defendants are charged with participating in a violent gunpoint robbery and kidnapping.  That Glisson and Chambers have previously been convicted of dealing in narcotics is not "any more sensational or

disturbing" than the crimes with which they are charged. Likewise, Glisson's presence in the midst of a drug transaction between the victim and Brown, during which Glisson was displaying a firearm, is no more prejudicial than the charges that he participated in a violent gunpoint robbery and kidnapping. In a footnote, Glisson argues that this evidence would be "incredibly prejudicial" coupled with the fact of his prior narcotics conviction. *See* Glisson Memo. at 8, n.2. However, Glisson does not—and cannot—argue that these facts, even viewed together, would be more prejudicial than the conduct with which he is charged. Accordingly, the probative value of the evidence is not at all outweighed, let alone substantially outweighed, by the risk of unfair prejudice. Therefore, there is no basis to exclude evidence of these prior acts under Rule 403, particularly when a proper limiting instruction could cure any potential risk of unfair prejudice (of which there is none). *See id.* at 1120 (admitting evidence of prior narcotics transactions in narcotics case where other acts evidence "did not involve conduct any more sensational or disturbing than the crimes with which [the appellants were] charged").

For all of these reasons, the Court should permit the Government to introduce at trial evidence of Glisson's and Chambers' prior acts.

### III.     THE COURT SHOULD PRECLUDE ANY CROSS-EXAMINATION OF DETECTIVE DELOREN REGARDING *UNITED STATES* v. *COOPER*.

Glisson and Brown argue, joined by Chambers, that they should be permitted to cross-examine Detective Deloren regarding Judge Batts' finding in *United States* v. *Cooper*, 05 Cr 1139 (DAB). Brown also adds that he should be allowed to cross-examine Detective Deloren about the same issue at "any and all pre-trial suppression hearing(s)." For the reasons stated in its moving brief, the Government believes that, pursuant to Rule 608(b) and the factors set forth in

*United States* v. *Cruz*, 894 F.2d 41 (2d Cir. 1990), and *United States* v. *Cedeño*, 644 F.3d 79 (2d Cir. 2011), the defendants should not be permitted to cross-examine Detective Deloren on matters related to Judge Batts' statements in *Cooper*.   In addition, the Government believes that any use of Judge Batts' statements during the *Cooper* hearing is prohibited by Federal Rule of Evidence 801 because the Court's findings are inadmissible hearsay—out-of-court statements that defense counsel would be attempting to use for their truth.   None of the defendants dispute that such cross-examination would elicit improper hearsay, an issue that the Second Circuit did not reach in *Cedeño* or in *United States* v. *White*, 692 F.3d 235, 249 (2d Cir. 2012), the Second Circuit's recent application of the *Cedeño* factors.[6]   Even if the Court decides to allow some cross-examination of Detective Deloren regarding his prior testimony in *Cooper*, Rules 801 and 608(b) would preclude evidence of *Judge Batts'* statements as inadmissible hearsay and inadmissible extrinsic evidence of specific instances of conduct.   For all of the reasons stated here, and for the reasons set forth in the Government's moving brief, the defendants should be precluded from cross-examining Detective Deloren regarding Judge Batts' finding in *Cooper*.

---

[6] Glisson only summarily argues that "the general hearsay rule" is something that the Second Circuit "undoubtedly had in mind" in *Cruz* and *Cedeño. See* Glisson Memo. at 13.

19

## CONCLUSION

For the foregoing reasons, the Court should issue rulings: (1) permitting the Government to introduce Brown's post-arrest statements in redacted form; (2) permitting the Government to introduce evidence regarding Glisson's and Chambers' prior narcotics convictions and Glisson's possession of a firearm; and (3) precluding cross-examination of Detective Deloren regarding his testimony in an unrelated case before Judge Batts.

Dated: March 7, 2014
       New York, New York

                                    Respectfully submitted,

                                    PREET BHARARA
                                  United States Attorney

By:          /s/
                Amy Lester / Negar Tekeei
                Assistant United States Attorneys
                (212) 637-2416 / 2482