UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
                                                                  :

UNITED STATES OF AMERICA,          :         13 Cr. 345 (LGS)

      – *against* –                    :

ANTIONE CHAMBERS,                  :

            Defendant.              :

-------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ANTIONE CHAMBERS'S MOTION FOR RECONSIDERATION

JOSHUA L. DRATEL
JOSHUA L. DRATEL, P.C.
29 Broadway, Suite 1412
New York, New York 10006
(212) 732 - 0707
jdratel@joshuadratel.com

*Attorneys for Defendant Antione Chambers*

- Of Counsel -

Joshua L. Dratel
Whitney G. Schlimbach

TABLE OF CONTENTS

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT

POINT I

THE COURT SHOULD RECONSIDER ITS
DECISION DENYING MR. CHAMBERS'S
MOTION TO SUPPRESS IDENTIFICATION
EVIDENCE BECAUSE (1) THE INFORMATION
COULD NOT HAVE BEEN DISCOVERED
THROUGH DUE DILIGENCE, AND (2) SHOWING
THE ADDITIONAL PHOTO IS A FACTOR THAT
WOULD REASONABLY ALTER THE COURT'S
PRIOR DECISION DENYING MR. CHAMBERS'S MOTION. . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.    *The Law Applicable to Motions for Reconsideration.* . . . . . . . . . . . . . . . . . . . . . . . . . . 4

POINT II

THE PRESENTATION OF THE ADDITIONAL
PHOTO TO WITNESS 1 IRREPARABLY TAINTS
THE SUBSEQUENT IDENTIFICATION OF MR.
CHAMBERS BY BOTH WITNESS 1 AND WITNESS 2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    A.    *Absent Exigent or Special Circumstances A Single Photo Identification*
           *Procedure Is Highly Suggestive and, Given the Specific Facts Here, Improper.* . . . . . . . . . 5

        1.    *The Single Photo Identification Procedure Was*
             Per Se *Suggestive Because Exigent Circumstances*
             *Did Not Exist, and the Procedure Was Not Confirmatory.*. . . . . . . . . . . . . . . . . . . 6

        2.    *The Circumstances of Witness 1's Viewing the Single*
             *Photo of Mr. Chambers Served Only to Increase the*
             *Suggestiveness of the Identification Procedures Used Here.* . . . . . . . . . . . . . . . . . 7

B.   *The Single Photo Identification Procedure – By Suggesting to Witness 1 That Mr. Chambers Was the Perpetrator, and Providing Additional Identifying Information About Mr. Chambers – Irreparably Tainted Witness 1's and Witness 2's Subsequent Identification of Mr. Chambers.* . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

C.   *The Impermissibly Suggestive Identification Procedures Employed by Law Enforcement Created a Substantial Likelihood of Misidentification Unmitigated by Any Factors Indicating That Witness 1 and/or Witness 2 Possess An Independent Basis for Reliably Identifying the Perpetrator.* . . . . . . . . . . . . . . 11

    1.   *The Witness's Opportunity to View the Perpetrator at the Time the Offense Was Committed.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    2.   *The Witness's Degree of Attention.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    3.   *The Accuracy of the Witness's Prior Description of the Criminal, Level of Certainty Demonstrated by the Witness at the Confrontation, and Length of Time Between the Crime and the Confrontation.* . . . . . . . . . . . . . . . . . . . 13

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## TABLE OF AUTHORITIES

### CASES

*Brisco v. Ercole*, 565 F.3d 90 (2d Cir. 2009).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Dunnigan v. Keane*, 137 F.3d 117 (2d Cir.1998).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Espinal v. Duncan*, ____ F.Supp.2d ____, 2000 WL 1774960
    (S.D.N.Y. December 4, 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Neil v. Biggers*, 409 U.S. 188 (1972).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Raheem v. Kelly*, 257 F.3d 122 (2d Cir. 2001).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 12

*Rock v. Conway*, 470 Fed.Appx.15 (2d Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Simmons v. United States*, 390 U.S. 377 (1968). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Bubar*, 567 F.2d 192 (2d Cir. 1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Cantres*, ____ F. Supp.2d ____, 2009 WL 2230828
    (W.D.N.Y. July 24, 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10

*United States v. Concepcion*, 983 F.2d 369 (2d Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Leaver*, 358 F.Supp.2d 273 (S.D.N.Y. 2005). . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Leonardi*, 623 F.2d 746 (2d Cir. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Moskowitz*, 581 F.2d 14 (2d Cir. 1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Reed*, ____ F.Supp.2d ____, 2012 WL 2053758
    (S.D.N.Y. June 6, 2012).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*United States v. Smith*,156 F.3d 1046 (10th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Stanley*, ____ F. Supp.2d ____, 2009 WL 5066864
    (E.D.N.Y. December 22, 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 8

*United States v. Wade*, 388 U.S. 218 (1967). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Introduction

This Memorandum of Law is submitted on behalf of defendant Antione Chambers in support of his motion for reconsideration of the Court's previous denial of Mr. Chambers's motion to suppress identification evidence because it was obtained through impermissibly suggestive procedures, thereby rendering them unreliable.

As detailed below, the motion for reconsideration is based upon a February 24, 2014, letter from the government (Docket #66), which was provided subsequent to the Court's December 11, 2013, decision denying Mr. Chambers's initial motion. That February 24, 2014, letter informed counsel of a previously undisclosed identification procedure that dispositively renders any identification of Mr. Chambers unduly suggestive. At the very least, the information in the February 24, 2014, letter compels a pre-trial hearing on the issue.

Statement of the Facts

Mr. Chambers filed pre-trial motions November 4, 2013, requesting, *inter alia*, that the Court suppress identification evidence because the procedures employed by law enforcement were so impermissibly suggestive as to render the identification by two witnesses (hereinafter "Witness 1" and "Witness 2") unreliable pursuant to the prevailing constitutional standards. Alternatively, Mr. Chambers requested a pretrial hearing to assess the reliability of the identification evidence.

The Court denied Mr. Chambers's pretrial motion December 11, 2013. However, a February 24, 2014, letter from Assistant United States Attorney Amy Lester disclosed that on May 29, 2013, the very same day Witness 1 and Witness 2 were shown the initial photo array (and failed to identify Mr. Chambers), an additional photo of Mr. Chambers was shown to

Witness 1 "for investigative purposes."[1]

According to the February 24, 2014, letter, on May 29, 2013, Witness 1 was shown a single candid photograph of Mr. Chambers, dated November 14, 2011, from the website of the Harrisburg, Pennsylvania *Patriot-News*. According to the February 24, 2014, letter, the photo

> depicts Chambers on the left-hand side of the photograph. He is wearing a black hat, blue jeans, and no shirt, and stands at an angle to the camera. Below the photograph is a caption that identifies the individuals in the picture, including Chambers, by name.

In addition, the government's February 24, 2014, letter notes that "[w]hen [Witness 1] viewed the photograph, [Witness 1] did not definitively identify Chambers."[2]

Subsequently, on June 6, 2013, after spending a week in the same residence, Witness 1 and Witness 2 identified Mr. Chambers in response to a second photo array. Aside from containing a more recent photograph of Mr. Chambers, the second photo array did not have any individuals in common with the first array. *See* Mr. Chambers's initial Memo of Law, at 6.

In its February 24, 2014, letter, the government argues that because "[t]he individual in the photograph is not at all recognizable as the same individual in the photo arrays," the Court's earlier denial of Mr. Chambers's motion should remain undisturbed. The government's February 24, 2014, letter further maintains that because the three photographs shown to Witness 1 were in

---

[1] As set forth in Mr. Chambers's initial Memo of Law, at 4, in response to the initial photo array, neither Witness 1 nor Witness 2 made a positive identification of Mr. Chambers, indicating to the police officers "in sum and substance" only that Mr. Chambers "kind of looks like him."

[2] The printout from the *Patriot-News* is attached to the government's February 24, 2014, letter as Exhibit C, included not only the captioned photograph, but also a short article, the URL of the article, as well as four thumbnail photos of Mr. Chambers and other individuals on the right hand side.

"different formats at different times," the "probability of a misidentification did not increase with each showing."

## ARGUMENT

### POINT I
### THE COURT SHOULD RECONSIDER ITS DECISION DENYING MR. CHAMBERS'S MOTION TO SUPPRESS IDENTIFICATION EVIDENCE BECAUSE (1) THE INFORMATION COULD NOT HAVE BEEN DISCOVERED THROUGH DUE DILIGENCE, AND (2) SHOWING THE ADDITIONAL PHOTO IS A FACTOR THAT WOULD REASONABLY ALTER THE COURT'S PRIOR DECISION DENYING MR. CHAMBERS'S MOTION

As set forth below, the government's February 24, 2014, letter plainly establishes sufficient basis for reconsideration of the Court's earlier decision denying Mr. Chambers's motion to suppress identification evidence. The newly discovered information that Witness 1 was shown an additional photograph of Mr. Chambers, *after, on the same day,* Witness 1 (and Witness 2) had failed to identify Mr. Chambers from the initial photo array, could not have been discovered through due diligence, as it was entirely within the government's control.

Also, the showing of the additional photo constitutes a substantial change in the circumstances surrounding the pre-trial identification of Mr. Chambers by both Witness 1 and Witness 2. As a result, Mr. Chambers has satisfied the two criteria for reconsideration.

Therefore, it is respectfully submitted that the Court should reconsider its denial of Mr. Chambers pre-trial motion to suppress the identification evidence, and grant the motion, or alternatively, order a hearing to assess the reliability of the identification evidence by determining whether the witnesses possess an independent basis for identifying Mr. Chambers.

A.       *The Law Applicable to Motions for Reconsideration*

In order to prevail on a motion for reconsideration on the basis of newly discovered evidence, the moving party must demonstrate that (1) the information "could not through due diligence reasonably have been discovered by the [moving] party," and (2) it is reasonable to expect that the new information would alter the conclusion of the court. *United States v. Leaver*, 358 F. Supp.2d 273, 279 (S.D.N.Y. 2005).

The information in the government's February 24, 2014 letter, could not have been discovered by the defense even through the exercise of due diligence. Not only was such information solely within the government's control, but even the prosecutors appear to have learned of it only during trial preparation, at which point they promptly informed defense counsel via the February 24, 2014, letter. *See id*., at 1 ("[i]n the course of trial preparation for this matter, the Government has learned that . . .").

Moreover, the nature of the new information reasonably would be expected to alter the Court's prior conclusion that the identification procedures were not so impermissibly suggestive as to warrant either suppression of the identification evidence or a hearing to explore its reliability. Contrary to the government's conclusion that the new information "does not change the calculus," an additional single photo presentation, the same day as the initial photo array that did *not* produce a positive identification, constitutes a significant alteration in the circumstances surrounding both Witness 1 and Witness 2's pre-trial identification of Mr. Chambers.

Accordingly, it is respectfully submitted that the Court should reconsider its earlier ruling on Mr. Chambers's motion to suppress identification evidence and testimony.

**POINT II**
**THE PRESENTATION OF THE ADDITIONAL**
**PHOTO TO WITNESS 1 IRREPARABLY TAINTS**
**THE SUBSEQUENT IDENTIFICATION OF MR.**
**CHAMBERS BY BOTH WITNESS 1 AND WITNESS 2**

The sequence of events culminating in the pre-trial identifications of Mr. Chambers impermissibly suggested to Witness 1 that law enforcement had concluded that Mr. Chambers was the perpetrator. Also, because Witness 1 and Witness 2 are close relatives, and spent a week in the same residence prior to their subsequent positive identification of Mr. Chambers (upon viewing a *second* photo array), Witness 1's exposure to the improperly suggestive techniques was very likely communicated to Witness 2, and thereby contaminated Witness 2's identification of Mr. Chambers. At the very least, that danger requires an evidentiary hearing.

Due Process requires that in order to protect a defendant's fundamental right to a fair trial, identification procedures employed by law enforcement must not be so "impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *See Simmons v. United States*, 390 U.S. 377, 384 (1968). It has long been recognized that eyewitness identifications may be made unreliable by a variety of factors, only some of which are under the control of law enforcement. *Id*. *See also Raheem v. Kelly*, 257 F.3d 122, 133 (2d Cir. 2001).[3]

A.   *Absent Exigent or Special Circumstances A Single Photo Identification Procedure Is Highly Suggestive and, Given the Specific Facts Here, Improper*

Single photograph identification procedures are "generally disfavored as unduly suggestive," and widely recognized as one of the "least reliable identification procedure[s.]"

---

[3] This Memo of Law will not repeat the general principles applicable to eyewitness identification, and photo array/photo identification procedures. Those principles are set forth in Mr. Chambers's initial Memo of Law, at 6-8.

5

*United States v. Stanley*, ____ F.Supp.2d ____, 2009 WL 5066864, at *4 (E.D.N.Y. 2009). Consequently, showing Witness 1 a captioned newspaper photograph of Mr. Chambers immediately after Witness 1 viewed the initial photo array, rendered that single photo identification procedure wholly unnecessary and impermissibly suggestive of Mr. Chambers's guilt. *See United States v. Cantres*, ____ F. Supp.2d ____, 2009 WL 2230828, at *4 (W.D.N.Y. July 24, 2009), *citing Dunnigan v. Keane*, 137 F.3d 117, 129 (2d Cir.1998).

The longstanding disapproval of single photo identification procedures is based on the unique risk that a single photograph naturally, and possibly even subconsciously, indicates that law enforcement has already concluded that the individual pictured committed the crime. *See United States v. Concepcion*, 983 F.2d 369 (2d Cir. 1992). Moreover, the few circumstances that may acceptably temper the resultant danger of misidentification, despite the inherently suggestive nature of a single photo identification, are not present here.

   **1.  *The Single Photo Identification Procedure Was
        Per Se Suggestive Because Exigent Circumstances
        Did Not Exist, and the Procedure Was Not Confirmatory***

Neither extenuating nor exigent circumstances existed that could have justified showing Witness 1 a single photograph of Mr. Chambers, and any argument to the contrary is precluded by the fact that law enforcement was able first to compile and show Witness 1 a photo array. *See e.g.*, *Concepcion*, 983 F.2d at 377. Indeed, the government does not suggest there were exigent circumstances that could vindicate the single photo identification procedure. *See United States v. Bubar*, 567 F.2d 192, 197 (2d Cir. 1977) ("... the singly presented photograph which, absent exigent circumstances . . . amounts to an impermissibly suggestive photographic identification procedure"); *see also United States v. Reed*, ____ F.Supp.2d ____, 2012 WL 2053758, at *5

(S.D.N.Y. June 6, 2012).

Also, the single photo identification cannot be explained as "confirmatory," as Witness 1's earlier failure (that very day) to identify Mr. Chambers from the photo array deprived law enforcement (or Witness 1) of anything to "confirm."  Instead, showing Witness 1 a single photo of the individual he had just told police "kind of looks like [the perpetrator]," would only have inappropriately bolstered an uncertain and barely even tentative identification.  *See Simmons*, 390 U.S. at 383-84 (risk of misidentification is "increased if the police display to the witness only the picture of a single individual who generally resembles the person he saw").

In addition, Witness 1 and Witness 2 were strangers to Mr. Chambers, and neither indicated to police that they recognized any of the culprits as Mr. Chambers, or that they knew him from any other context.  *See e.g., Espinal v. Duncan*, ____ F.Supp.2d ____, 2000 WL 1774960, at *3 (S.D.N.Y. December 4, 2000) ("confirmatory exception" under New York law tracks requirements of federal law), *citing United States v. Wade*, 388 U.S. 218, 241-42 & n .33 (1967).

Accordingly, there were no circumstances, exigent or otherwise, attendant to the single photo identification procedure that could have reduced the substantial danger of misidentification arising from the inherently suggestive nature of showing Witness 1 a single photo of Mr. Chambers.

    **2.**    *The Circumstances of Witness 1's Viewing the Single Photo of Mr. Chambers Served Only to Increase the Suggestiveness of the Identification Procedures Used Here*

Exposing Witness 1 to the single photo identifying Mr. Chambers significantly increased the risk that the subsequent identification by both Witness 1 and Witness 2 was tainted by the

suggestion to Witness 1 that law enforcement believed Mr. Chambers to be the perpetrator.  Even though only Witness 1 was shown the single photo by police, given the relationship between Witness 1 and Witness 2 – close relatives living in the same household – there is substantial risk that Witness 1 shared the information with Witness 2.

A single photo identification is suggestive primarily because the witness viewing the photo is made – by the isolation of the defendant in the photo – inescapably aware that the individual in the photo was *chosen* by law enforcement, rather than randomly selected by a computer, or hidden among other photos.  *See Stanley*, 2009 WL 5066864, at *5 ("[s]uch procedures are condemned because they tend to suggest the answer to the witness").

The government's claim, in its February 24, 2014, letter, that "[t]he individual in the photograph is not at all recognizable as the same individual in the photo arrays," is merely a futile attempt to bootstrap the Court's earlier basis for denying Mr. Chambers's motion, and defies logic.  Indisputably, Witness 1 was shown the photo from the *Patriot-News precisely because it looked like Mr. Chambers*.  If the person in the photo had not looked like Mr. Chambers, there would not have been any reason to show the photo to Witness 1;  indeed it would have been counter-productive.  Thus, the single photo display was a patent attempt to expose Witness 1 to repeated viewings – on the same day – of Mr. Chambers's photo in an attempt to improve the chances for a positive identification.

In contrast, the impact of an identification made from a properly constituted photo array is mitigated by the fact that a photo array, by its nature, forces a witness to compare his or her independent recollection of the perpetrator with the photos in the array.  *See e.g., United States v. Smith*,156 F.3d 1046, 1050-51 (10th Cir. 1998).  No such mitigating effect obtains when a

witness is shown a *single* photograph.

Therefore, when law enforcement provided Witness 1 the single photo of Mr. Chambers soon after the initial photo array, coupled with Mr. Chambers's name in the caption, Witness 1 could be fairly certain that he had seen the photo and learned the name of one of the individuals the police suspected had committed the crime. Also, the printout included additional photographs of Mr. Chambers that appeared as thumbnails in the right hand column on the printout, but which could be expanded to full size on the *Patriot-News*'s website.

Also, although only Witness 1 participated in the single photo identification procedure, that display created a substantial risk that the single photo identification procedure influenced the subsequent identification made by Witness 2 as well. As noted **ante,** Witness 1 and Witness 2, both of whom identified Mr. Chambers only at the second photo array, are closely related, and had ample time between the single photo display and the second photo array to discuss the single photo presented to Witness 1. Nor is there any indication that Witness 1 was in any way admonished not to share that information with Witness 2. Thus, conversation between Witness 1 and Witness was likely, if not inevitable. Only an evidentiary hearing can resolve that issue.

Accordingly, it is respectfully submitted that suppression of any identification of Mr. Chambers by Witness 1 and Witness 2 be suppressed, and any in-court identification precluded.

**B.**     *The Single Photo Identification Procedure – By Suggesting to Witness 1 That Mr. Chambers Was the Perpetrator, and Providing Additional Identifying Information About Mr. Chambers – Irreparably Tainted Witness 1's and Witness 2's Subsequent Identification of Mr. Chambers*

As discussed above, showing Witness 1 a single photograph of Mr. Chambers, after Witness 1 had just indicated during a photo array that Mr. Chambers "kind of looked like [the perpetrator]," not only suggested to Witness 1 that law enforcement had independently concluded

that Mr. Chambers was the perpetrator, but also injected false confidence into Witness 1's previously uncertain (at best) identification.

In addition to the inherent danger of misidentification that arises when law enforcement indicates to a witness that an individual is already a suspect, the mere act of showing "isolated photographs of the suspect may reinforce 'an otherwise weak or tentative identification.'" *Cantres*, 2009 WL 2230828, at *4, *quoting United States v. Leonardi*, 623 F.2d 746, 755 (2d Cir. 1980).

Boosting confidence in a tentative identification, even if not done purposefully, can cause irreversible damage to a witness' ability to recollect independently the identity of a perpetrator. *See United States v. Moskowitz*, 581 F.2d 14, 20 (2d Cir. 1978) ("the danger of irreparable misidentification is greater in cases where the witness is told that the right person or the suspect has been selected . . . because it increases the possibility that the witness will retain in his memory the image of the [person selected] rather than of the person actually seen") (internal quotations omitted).

Because Witness 1 and Witness 2 are closely related family, and there is no indication they were instructed not to discuss the identification procedures, this substantial risk of irreparable misidentification applies with equal force to Witness 2 as well. The impermissibly suggestive single photo identification procedure also provided both Witness 1 and Witness 2 an incentive, as well as the ability, to find further information about Mr. Chambers (from the *Patriot-News* website) outside the supervision and control of law enforcement.

Accordingly, the procedures employed created "a very substantial likelihood of irreparable misidentification" by both Witness 1 and Witness 2, warranting exclusion of the

positive identifications during the second photo array June 6, 2013, as well as any further (in court or outside court) identification by either Witness 1 or Witness 2, as unconstitutionally unreliable.

**C.** ***The Impermissibly Suggestive Identification Procedures Employed by Law Enforcement Created a Substantial Likelihood of Misidentification Unmitigated by Any Factors Indicating That Witness 1 and/or Witness 2 Possess An Independent Basis for Reliably Identifying the Perpetrator***

The government has failed to present any or circumstances that would permit the conclusion that either Witness 1 or Witness 2 possesses an independent basis from which either could reliably identify the perpetrator absent the impermissibly suggestive procedures employed by law enforcement. In *Neil v. Biggers*, 409 U.S. 188 (1972), the Supreme Court listed five factors to be considered in evaluating whether a witness's identification evidence is reliable despite, and independent of, suggestive identification procedures:

> (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation.

*Biggers*, 409 U.S. at 199-200. *See also Rock v. Conway*, 470 Fed.Appx.15, 17 (2d Cir. 2012).

Here, analysis of those factors compels the conclusion that neither Witness 1 nor Witness 2's ultimate identification of Mr. Chambers has been sufficiently unaffected by the suggestive procedures employed by law enforcement.

**1.** ***The Witness's Opportunity to View the Perpetrator at the Time the Offense Was Committed***

Regarding the witness's opportunity to view the perpetrator during the crime, the available information indicates only that Witness 1 and Witness 2 may have seen the

11

perpetrator's face for some limited period during the commission of the crime. For example, in the April 1, 2013, initial Complaint, only Mr. Glisson was identified by two witnesses, who claimed he removed his scarf at some point during the robbery. Yet one of the witnesses who subsequently identified Mr. Chambers was interviewed prior to filing of the April Complaint..

In the subsequent June 11, 2013, Complaint, another perpetrator is alleged, "while at the apartment," to have "removed the scarf that was covering his face," allowing the two witnesses, who later identified Mr. Chambers from the second photo array, to see the perpetrator's face. No further information has been provided regarding the circumstances under which that perpetrator removed his scarf, including how long the perpetrator's face was exposed.[4]

### 2. *The Witness's Degree of Attention*

Similarly, there is little information about the attention paid by Witness 1 and/or Witness 2 to the perpetrator during the unknown period of time during which the perpetrator had removed his scarf. Different factors, like the use of a weapon, for instance, may affect the focus of witnesses during a crime, and alter the extent to which the identify of the perpetrator can be processed. *See Raheem*, 257 F.3d at 138 ("it is human nature for a person toward whom a gun is being pointed to focus his attention more on the gun than on the face of the person pointing it"). Given the allegedly violent nature of the charged offense, the allegation that a weapon was used, and the relatively short period of time during which the perpetrator's face was purportedly exposed, the Witness 1 and/or Witness 2's ability to focus would have been seriously impaired.

---

[4] The claim that at some point during the episode *each* of the perpetrators removed his respective scarf only enhances the prospect of confusion and misidentification.

      **3.**      *The Accuracy of the Witness's Prior Description of the Criminal, Level of Certainty Demonstrated by the Witness at the Confrontation, and Length of Time Between the Crime and the Confrontation*

The final three factors weigh heavily against an independent basis for reliable identification. The government has not provided a description of the perpetrator subsequently identified as Mr. Chambers, or even indicated whether one was prepared, although the April Complaint notes that "physical descriptions" of the perpetrator eventually identified as Mr. Glisson were provided by Witness 1 and Witness 2.

Both Witness 1 and Witness 2 made a positive identification of Mr. Chambers during the second photo array one week after the suggestive single photo identification procedure, and as discussed above, after learning Mr. Chambers's name through the newspaper photograph. Prior to that single photograph display, neither Witness 1 nor Witness 2 was able identify Mr. Chambers definitively. Thus, there exists a substantial and impermissible risk that any certainty expressed by Witness 1 and/or Witness 2 during the second photo array stemmed from the repeated viewings of Mr. Chambers – in three separate photos.

In addition, the intervening period of more than two months between the crime and the identification procedures, would significantly reduce a witness's independent recall of the perpetrator's identity. *See Brisco v. Ercole*, 565 F.3d 90, 94 (2d Cir. 2009) (listing cases "within permissible time frames"). Also, the suggestive procedures, which did not produce a conclusive identification, and the second photo array were separated by only one week.

Accordingly, absent any further information, which should be assessed during a pre-trial evidentiary hearing, the evidence establishes that neither Witness 1 nor Witness 2 possesses a reliable and/or independent basis for making an identification that would have remained untainted by the impermissibly suggestive procedures employed by law enforcement.

## Conclusion

Accordingly, for all the reasons set forth above, it is respectfully submitted that the Court should reconsider its denial of Mr. Chambers's Pre-Trial Motion to suppress identification evidence, grant the motion, or, alternatively, conduct an evidentiary hearing to assess the reliability of the identification evidence.

Dated: 5 May 2014
New York, New York

Respectfully submitted,

  /S/ Joshua L. Dratel
JOSHUA L. DRATEL
JOSHUA L. DRATEL, P.C.
29 Broadway, Suite 1412
New York, New York 10006
(212) 732-0707

*Attorneys for Defendant Antione Chambers*

– Of Counsel –

Joshua L. Dratel
Whitney G. Schlimbach