UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

v. 13 CR 345 (LGS)

TYRONE BROWN, STEVEN GLISSON,
ANTOINE CHAMBERS,

Defendants.

------------------------------x

New York, N.Y.
May 21, 2014
4:20 p.m.

Before:

HON. LORNA G. SCHOFIELD,

District Judge

APPEARANCES

PREET BHARARA
United States Attorney for the
Southern District of New York
NEGAR TEKEEI
Assistant United States Attorney

ERIC M. CREIZMAN
Attorney for Defendant Brown

JAMES ALFRED MITCHELL
ELAINE KAYUKI LOU
Attorneys for Defendant Glisson

JOSHUA LEWIS DRATEL
Attorney for Defendant Chambers

(In open court; defendant present)

THE DEPUTY CLERK: All rise.

13 CR 345, United States v. Tyrone Brown, et al.

Counsel, state your appearances for the record.

MS. TEKEEI: Good afternoon, your Honor, Negar Tekeei, on behalf of the government.

THE COURT: Good afternoon.

MR. DRATEL: Joshua Dratel, for Antoine Chambers.

THE COURT: Good afternoon.

MR. MITCHELL: James Mitchell and Elaine Lou, for Steven Glisson.

MR. CREIZMAN: Eric Creizman, for Tyrone Brown.

THE COURT: We are here to try to accomplish a few things.

One, is we have new counsel for Mr. Brown, so I would like to talk about scheduling, and a trial date. We have a current trial date for June 23rd.

In addition, there are various motions outstanding, and I am prepared to rule on two of them, and so I will do that. Let me do that first.

So, the first one I'm going to deal with is Mr. Chambers' motion for reconsideration of my December 11, 2013 decision, denying his Motion to Suppress identification evidence. The motion for reconsideration is based on new information contained in a February 24th, 2014 letter in which

the government disclosed that on the same day that a witness was shown a photo array containing a photograph of Mr. Chambers from which he failed to identify him, this witness was also shown an additional photograph containing Mr. Chambers. The additional photograph was a candid shot of Mr. Chambers from the Harrisburg Patriot News. The witness was not able to identify Mr. Chambers as the perpetrator from this candid photo, either. However, a week later, the witness was able to identify Mr. Chambers from a second photo array, which contained a more recent photo of Mr. Chambers, but no other persons in common with the first photo array. Based on this new information, I am granting the motion to reconsider, but I'm still denying the Motion to Suppress this witness' identification of Mr. Chambers. And I will explain my reasoning.

I previously ruled that the fact that the two photo arrays contained no persons in common, other than Mr. Chambers was not so unduly suggestive as to be unconstitutional, as the two photographs of Mr. Chambers contained in the respective photo arrays were not identifiable as the same person. The issue, now, is whether the additional candid photos shown to the witness in between the showings of the photo arrays changes this decision. It does not. Under the same reasoning, I find that the additional candid photograph did not cause the identification procedures to be so unduly suggestive as to be

unconstitutional, as the individual in the candid photo is not recognizable as the same person as in the photos of Mr. Chambers in either photo array. Therefore, the motion for reconsideration is granted, but the Motion to Suppress is denied.

Due process requires that in order to protect a defendant's fundamental right to a fair trial, identification procedures employed by law enforcement must not be "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States 390 U.S. 377, 384(1968).

However, "Short of that point, identification evidence is for the jury to weigh, even if it contains some element of untrustworthiness." I'm quoting Manson v Brathwaite, 432 U.S.98, 116, (1977). "Counsel can both cross-examine the identification witnesses and argue in summation as to the factors causing doubt as to the accuracy of the identification including reference to any suggestibility in the identification procedure." Id. at 113, note 14.

Single-photo identifications are generally disfavored as unduly suggestive. See United States v. Concepcion, 983 F.2d 369, 377 (2d. Cir. 1992). However, the Supreme Court has made clear that, "each case must be considered on its own facts." Simmons 390 U.S. at 384. Accordingly, the Second Circuit has held that, "the display of a single photograph does

not necessarily require suppression of the identification." U.S. v. Shodeinde, 108 F.3d 1370, at *3 (2d. Cir. 1997).

Here, the defendant has failed to establish that the single candid photograph was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. Therefore, "trial identification testimony is admissible without further inquiry into the reliability of the pretrial identification." And, "any question as to the reliability of the identification goes to the weight of the evidence, not its admissibility." And that's from United States v. Maldonado-Rivera 922 F.2d 934, 973 (2d 1990). Thus, there is no need for a pretrial hearing as exploration of the identification procedure will occur at trial. See Dunnigan v. Keane, 137 F.3d 117, 128-29 (2d. Cir. 1998).

So that is my ruling with respect to the Chambers motion for reconsideration. And I will close the motion that is at docket 83.

I would like to rule on one other motion, and that is the motion of Defendant Brown to suppress evidence found in his apartment as a result of Detective Deloren's warrantless entry. That evidence includes drugs, a scale, and ammunition, among other things.

The government asserts that Detective Deloren entered the apartment under the, "emergency aid" exigency to the Fourth Amendment warrant requirement. When Detective Deloren entered

the apartment, he saw several small bags of crack cocaine in the open, which were used as the basis to obtain a warrant to search the apartment later the same day.

The government has expressed, on several occasions, including in its memorandum of law and at the conference last week, its position that an evidentiary hearing is unnecessary on the motion, presumably because there are no disputed material facts. I agree that there are no disputed material facts. However, the facts surrounding Detective Deloren's entry do not reach the requisite level of exigency. Therefore the drugs and ammunition and other items recovered in the apartment pursuant to the search warrant will be excluded. See Wong Sun, 371 U.S. at 484-85. ("The exclusionary rule has traditionally barred from trial physical, tangible materials obtained either during or as a direct result from an unlawful invasion.")

The facts as I understand them are these:

The robbery at issue in the case occurred on March 25, 2013 at approximately 1:00 a.m. At 9:30 a.m. on March 26, 2013, Detective Deloren went to Brown's apartment. According to the government, the detective went to the apartment to interview Brown about the robbery. According to the detective's report, he saw a light coming through the bottom of the door to the apartment, and heard the television on a high volume. The detective, "directed the landlord to open the door

to ensure Tyrone Brown was not injured inside. The landlord opened the door, but the room was unoccupied." The detective observed nine small bags of what appeared to be crack cocaine in plain view. The detective told the landlord to secure the apartment.

After attempting to call Mr. Brown starting at around 10:20 in the morning that day, Detective Deloren spoke with Mr. Brown at about 1:09 p.m. These times are established by telephone toll records for Mr. Brown's cell phone that the government produced at the Court's request, after the briefing on this motion was completed. And I would note that Defendant Brown's affidavit is not inconsistent with these records, as he approximated the date and time of the call, "at about 9:00 a.m. or so," and "on or about March 25th, 2013." According to Mr. Brown, he told the detective he was not at home and would return to the Bronx later that afternoon. Detective Deloren told him to go to the precinct on Simpson Street to be interviewed about the robbery when he returned to the Bronx.

A search warrant was issued for Mr. Brown's apartment based on Detective Deloren's observations at the apartment. He executed the warrant at about 4:00 p.m. the same day. Mr. Brown did not go to the precinct as instructed until April 8th, 2013 when he was arrested.

So here is my analysis, first with regard to the unreasonable search.

It is a basic tenant of Fourth Amendment law that, "searches and seizures inside a home without a warrant are presumptively unreasonable." Payton v. New York 445 U.S. 573, 586 (1980).

The Supreme Court has said, "in terms that apply equally to the seizures of property and the seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not be reasonably crossed without a warrant." Id. at 589. The Supreme Court has identified several exigencies that may justify a warrantless entry into a home. See Kentucky v. King 131 Supreme Court 1849 1856 (2011). The government maintains the Detective Deloren was justified in entering defendant's apartment under the, "emergency aid" doctrine. This doctrine is applicable when a police officer enters a home without a warrant, "to render emergency assistance to an injured occupant or to protect an occupant from eminent injury." Id. Any warrantless entry into the home must be supported by, "actual exigency." Id. at 1862. Police officers may not manufacture the exigency in order to gain warrantless entry into the home. Id. at 1857.

When reviewing the circumstances surrounding a warrantless entry into a home based on an exigency exception, the Supreme Court has said, "an action is reasonable under the Fourth Amendment regardless of the individual officer's state

of mind, as long as the circumstances viewed objectively justify the action." Brigham City v. Stuart 547 U.S. 398, 404 (2006).

"The officer's subjective motivation is irrelevant." Id. "To determine whether a law enforcement officer faced an emergency that justified acting without a warrant, a Court looks to the totality of circumstances." Missouri v. McNeely, 133 Supreme Court 1552, 1559 (2013). The government bears the burden of showing that a sufficient emergency existed to justify a warrantless entry. See Coolidge vs. New Hampshire, 403 U.S. 443, 454 (1971).

Considering the objective circumstances in this case, the government has not carried its burden that the entry was reasonable. The government argues that Detective Deloren's warrantless entry into defendant's home was supported by the fact that the defendant failed to come to the precinct the day before, and that there was no answer when the detective knocked, despite seeing a light on inside and hearing the television on a high volume. However, the phone records make clear that there was no instruction that Mr. Brown come to the precinct until after the warrantless entry and search had occurred. There was no indication that the defendant was hurt inside his home, or was otherwise in immediate need of Detective Deloren's assistance. See Kentucky, 131 Supreme Court 1849, 1856. Other scenarios are more likely. For

example, that Mr. Brown was at home and chose not to answer the door; or that Mr. Brown was not at home and had left either briefly or hurriedly and, therefore, had left on the lights and television; or that Mr. Brown was not at home, but wanted to give the appearance that he was.

Objective circumstances that would render an intrusion necessary must look more like those in Brigham City, where as officers approached the house, they heard sounds of a fight or altercation coming from inside the house, including, "thumping and crashing," and people yelling stop and get off of me. 547 U.S. at 406.

In this case, none of those obvious objective indications of trouble were present. The only fact that Detective Deloren had to justify his entry, were that the light and television were on inside the home. Without a valid emergency, Detective Deloren's entry into defendant's apartment was a violation of the Fourth Amendment.

So, in conclusion, without the illegal entry, Detective Deloren would not have had grounds to obtain a search warrant, "to safeguard Fourth Amendment rights generally, the Supreme Court has crafted the exclusionary rule requiring the exclusion of evidence when the police exhibit reckless, deliberate, or grossly negligent disregard of Fourth Amendment rights. U.S. v. Stokes, 733 F.3d 438,443 (2d Cir.2013). "The exclusionary rule applies to evidence derivatively obtained

from a violation of the Fourth Amendment," i.e. the "fruit of the poisonous tree." U.S. v. Crews, 445 U.S. 463 at 470 (1980).

Detective Deloren entered Defendant Brown's home without a warrant, and without consent, and with at least reckless, if not intentional, disregard for Brown's Fourth Amendment rights. The illegal search here provided the sole business basis for the search warrant. Therefore the evidence obtained as a result of the search, both the warrantless search as well as the search pursuant to the warrant, are therefore suppressed.

On a separate note, I would like to note that the government's argument for exigency was based in part on Brown's supposed failure to appear at the precinct the day before. This argument was based on the approximate and mistaken date in the defendant's declaration, which placed the instruction to appear at the precinct the day before the search. Telephone records which are in the record at the Court's request, show that there is no factual basis for the government's argument. The government should not have made the argument without an independent good-faith basis and without checking the facts. The question here is whether Detective Deloren had an objective, good-faith basis to believe some exigency existed based on the actual facts, and not whether some plausible argument could be fashioned that he did.

So those are my two rulings.

I know that there are motions in limine pending. I normally don't rule on motions in limine until the final pretrial conference. In this case, I think there might be some use to making an earlier ruling, so I intend to do that. But I'm not prepared to do that today.

But what I would like to do is discuss a trial date. I'm very anxious to get to trial, because this case has been pending for I think over a year. And but I do know that we have had several replacements of counsel of one of the defendants, so for that reason we have some delay. So what I would like to do is figure out, among us, the earliest possible date that we can get the trial. And so what I am going to do is I'm going to start with Mr. Creizman, because I know that you are the newest lawyer to the case. But I also hope that, with at least today's ruling, it may make your work a little bit easier, because there is less for you to do by way of a hearing or a further motion that you might have to make.

So let's talk about dates.

MR. CREIZMAN: I appreciate that, your Honor.

I still believe that early September, given my schedule until then, and what I have seen so far in terms of the records, and what I imagine the further investigation will be, I think that early September is the best time. And I have spoken to defense counsel and the government and proposed a date of September 8th. And I can let them speak to it, but I

think that they would be on board for that day, too.

THE COURT: Okay.

So, Mr. Mitchell?

MR. MITCHELL: Yes, Judge Mr. Creizman is correct. He has spoken to us. In anticipating today's conference, I spoke to Mr. Glisson. And, yes, although we do want to have a trial as soon as we can, I think there is a collective interest in having all counsel being as prepared as possible. And given that relatively short time, it is a fine date with us.

THE COURT: Thank you.

And Mr. Dratel?

MR. DRATEL: I spoke to Mr. Chambers, and counsel, and government. And September 8 is where we need to be for us, too, because I also have a trial in August for a couple of weeks, so we can -- sentencing in July that is going to be two days out of town. So September 8 is good for Mr. Chambers, as well.

THE COURT: Okay, thank you.

And the government, please?

MS. TEKEEI: Yes, your Honor, September 8 also works for the government.

THE COURT: Okay. Thank you.

So, I will set the trial date for September 8. But let me just say, now that, you know, absent an earthquake and the courthouse falling into a hole, we're going forward on that

date. So that is the plan, September 8th.

I would like to have a suppression hearing with regard to the motion to suppress the post-arrest statements of Mr. Brown. And I am proposing July 28th, 2014. I think it will probably be a short evidentiary hearing. I know that one of the witnesses was unavailable, but I think is now available. So my question is, Mr. Creizman and Ms. Tekeei, does July 28th work?

MR. CREIZMAN: Yes, your Honor.

MS. TEKEEI: Yes, your Honor.

MR. CREIZMAN: July 28, you said?

THE COURT: Yes, July 28.

MR. CREIZMAN: Yes.

THE COURT: So let's do July 28th at 10:30.

Given that, Mr. Creizman, I will give you an opportunity to file any additional motions. And here is the schedule.

Any motions by June 20th; any response by July 7th.

And Ms. Tekeei, I know that is right after Fourth of July weekend. If you would like to file it a week before that, you should feel free to file it before the holiday. Or, if you even need a couple of days after that, let me know. And then I would like the reply a week later on July 14th, okay.

So I think that is everything.

Is there anything else we should discuss while we're

here?

MR. DRATEL: Something we have been working on, and I have been on trial for almost six weeks --

THE COURT: I know.

MR. DRATEL: It was about the count that has been added, the superseder kidnapping. And we had discussions with the government about whether we were satisfied about a jurisdictional element of we're collectively not, so we are going to file something challenging that count.

THE COURT: That's fine. And if you could do that, before June 20th would actually be better. If you could do it sooner than later, that would be great.

MR. DRATEL: I think within the next two weeks, or by the end of the week after next, I think we'll be ready to get that to you.

THE COURT: And could the government respond within two weeks of receiving the motion?

MS. TEKEEI: Yes, your Honor.

THE COURT: Okay. And then a reply, if you want to file one, within on one week after that, okay?

MR. DRATEL: Thank you, your Honor.

THE COURT: Okay.

MR. MITCHELL: As far as scheduling, is it your Honor's intention to set schedules for the other pretrial items, that's 3500 material and second round of in limine

motions?

THE COURT: I thought we had already talked about 3500 material, but I could be wrong.

MR. MITCHELL: We did. Our schedule is obviously based on the prior trial. And should we just perhaps work backwards as far as those dates?

THE COURT: I'll tell you what. We'll enter an order, just so there is no confusion. Or better yet, if you don't mind, could you send me a letter or proposed order and that way we'll all be on the same page.

MR. MITCHELL: I will, your Honor, because there is one point I was gonna raise, but I'll raise it in the letter.

THE COURT: Good, thank you.

Mr. Dratel, just as an aside, I want to apologize for essentially making you file the motion only to deny it, but obviously you now have your appellate record. I know you were busy on trial and you undoubtedly were planning to do that in any event, okay, so.

MR. DRATEL: Thank you.

THE COURT: Thank you, we're adjourned.

MR. DRATEL: Thanks very much.

THE COURT: Thank you.

(Adjourned)