fUNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                        :
UNITED STATES OF AMERICA
                                                        :
           - v. -                                            S2 13 CR 345 (LGS)
                                                        :
STEVEN GLISSON,                                         :
    a/k/a "Dee,"
                                                        :
ANTIONE CHAMBERS,
    a/k/a "Twizzie,"

                          Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS ANTIONE CHAMBERS'S AND STEVEN GLISSON'S
MOTION TO DISMISS COUNT THREE OF THE INDICTMENT**


                                   PREET BHARARA
                                   United States Attorney for the
                                   Southern District of New York
                                   One St. Andrew's Plaza
                                   New York, New York 10007


Margaret Garnett
Negar Tekeei
Assistant United States Attorney
  -Of Counsel

# TABLE OF CONTENTS

**Preliminary Statement** ……………………………………...............…………………1

**Background** ……………..…………………………………………………………….2

**Discussion**…….…………..…………………………………….……………...………3

    I.      The Defendants' Motion to Dismiss Count Three of the Second Superseding Indictment for Failure To Allege the Interstate Commerce Element of the Federal Kidnapping Statute Should Be Denied ...…………………….…………….…………3

    II.     The Federal Kidnapping Statute is a Valid Exercise of Congress's Power Under the Commerce Clause ………………………………………………..………………..7

          A.  The Federal Kidnapping Statute is A Constitutional Exercise of Congress's Power to Regulate the Use of Instrumentalities of Interstate Commerce …..….. 9

          B.  Statutes Analogous to the Federal Kidnapping Statute Have Been Upheld as Valid Exercise of Congress's Power to Regulate the Use of Instrumentalities of Interstate Commerce ………..………………………………..………..11

          C.  Defendants' Argument that the Federal Kidnapping Act Must be Analyzed Under Congress's Power to Regulate Those Activities that "Substantially Affect" Interstate Commerce is Contradicted by Second Circuit Precedent…….14

          D.  The Defendants' Argument Regarding the Application of the Federal Kidnapping Statute to the Facts of This Case is Premature …………………….18

**Conclusion**.…………………………………………...…………………………………22

i

# TABLE OF AUTHORITIES

## CASES

*Blodgett v. Holden*, 275 U.S. 142 (1927).........................................................................7

*Cheek v. United States*, 498 U.S. 192 (1991).................................................................7

*Cleveland* v. *United States*, 329 U.S. 14 (1946) ......................................................17, 21

*Crowell v. Benson*, 285 U.S. 22 (1932) ..........................................................................7

*DeBartolo Corp. v. Florida Gulf Coast Building & Construction Trades Council*, 485 U.S. 568 (1988)...............................................................................................................7

*Flemming v. Nestor*, 363 U.S. 603 (1960) ......................................................................7

*Fletcher v. Peck*, 10 U.S. 87 (1810)................................................................................7

*Fullilove v. Klutznick*, 448 U.S. 448 (1980) ...................................................................7

*Giusto v. I.N.S.*, 9 F.3d 8 (2d Cir. 1993) .........................................................................8

*Hamling v. United States,* 418 U.S. 87 (1974)................................................................4

*Jones* v. *United States*, 526 U.S. 227 (1999) ..................................................................4

*Ohio* v. *Akron Center for Reproductive Health*, 497 U.S. 502 (1990) ...........................8

*Public Citizen v. Department of Justice*, 491 U.S. 440 (1989).......................................7

*Sanitation & Recycling Industry* v. *City of New York*, 107 F.3d 985 (2d Cir. 1997) ....................7

*St. Martin Evangelical Lutheran Church v. South Dakota*, 451 U.S. 772 (1981) ..........................7

*United States* v. *Alfonso,* 143 F.3d 772 (2d Cir.1998)..............................................4, 5, 6, 18, 19

*United States* v. *Augustin*, No. L09-CR-187, 2010 WL 2639966 (E.D. Tenn. June 28, 2010) .................................................................10, 11, 15, 17, 20, 21

*United States* v. *Augustin*, No. L09-CR-187, 2010 WL 2639966 (E.D. Tenn. June 28, 2010) .................................................................10, 11, 15, 17, 20, 21

*United States* v. *Ballinger*, 395 F.3d 1218 (11th Cir. 2005) ........................................12

*United States* v. *Ballinger*, 395 F.3d 1218 (11th Cir. 2005) ........................................12

*United States v. Clark*, 445 U.S. 23 (1980) ..................................................................7

*United States* v. *Davis*, No. 06 Cr. 911 (LBS), 2009 WL 637164 (S.D.N.Y. March 11, 2009*)* ..................................................................................................................19

*United States v. Dennis*, 341 U.S. 494 (1951) ................................................................7

*United States* v. *Diallo*, No. 09 Cr. 858 (SAS), 2009 WL 4277163 (S.D.N.Y. Nov. 24, 2009) ...............................................................................................................19

*United States* v. *Doe*, 63 F.3d 121 (2d Cir. 1995) ........................................................19

*United States* v. *Gil,* 297 F.3d 93 (2d Cir. 2000) ...........................................10, 12, 14, 15

*United States* v. *Gilbert*, 181 F.3d 152 (1st Cir. 1999) ..................................................14

*United States* v. *Giordano*, 442 F.3d 30 (2d Cir. 2006)...................................10, 13, 15

*United States* v. *Gluzman*, 953 F. Supp. 84 (S.D.N.Y. 1997).......................................14

*United States* v. *Goldberg,* 756 F.2d 949 (2d Cir.1985)  ...............................................5

*United States* v. *Graves*, 2014 WL 2589428 (N.D. Ga. June 9, 2014).........................10

*United States* v. *Harris*, 358 F.3d 221 (2d Cir. 2004) ...........................................16, 17

*United States* v. *Holston,* 343 F.3d 83 (2d Cir. 2003) ...........................................16, 17

*United States* v. *Hornaday*, 392 F.3d 1306 (11th Cir. 2004).......................................13

*United States* v. *Jacques*, No. 2:08-cr-117, 2011 WL 1706765 (D.Vt. May 4, 2011)…………… ...........................................................10, 11, 15, 17, 20, 21

*United States* v. *King*, 276 F.3d 109 (2d Cir.2002) ......................................................14

*United States* v. *Lanza*, 260 U.S. 377 (1922).................................................................21

*United States* v. *Lopez*, 514 U.S. 549 (1995).................................9, 11, 12, 13, 14, 15, 16, 18, 22

*United States* v. *Marek*, 238 F.3d 310 (5th Cir. 2005)...................................................17

*United States* v. *McGriff*, 287 F. App'x 916 (2d Cir. 2008) ...............................10, 11, 12

*United States* v. *Morgan*, 748 F.3d 1024 (10th Cir. 2014) ............................................9

*United States* v. *Morgan*, 748 F.3d 1024 (10th Cir. 2014) ............................................9

*United States* v. *Ochoa*, No. 8-CR-1980, 2009 WL 3878520

    (D.N.M. Nov. 12, 2009)…..………………………………………………………10, 17, 21

*United States* v. *Perez*, 414 F.3d 302 (2d Cir. 2005)......................................................11, 12, 21

*United States* v. *Pirro*, 212 F.3d 86 (2d Cir. 2000) ......................................................................4

*United States* v. *Ramos*, 12 CR 556 LTS, 2013 WL 1932110 (S.D.N.Y. May 8, 2013).........10, 20

*United States* v. *Remire*, 400 F.Supp.2d 627 (S.D.N.Y. 2005).....................................................19

*United States v. Ruing/Chambers, Dunhill Ins.*, 798 F.Supp.2d 517 (S.D.N.Y. 2011) ...................5

*United States* v. *Sage*, 92 F.3d 101 (2d Cir. 1996) .........................................................................8

*United States* v. *Salerno*, 481 U.S. 739 (1987)........................................................................7, 8

*United States v. Salman*, 378 F.3d 1266 (11th Cir. 2004) ...........................................................20

*United States* v. *Stavroulakis,* 952 F.2d 686 (2d Cir.1992) ...........................................................5

*United States* v. *Taylor*, No. 12-cr-0056, 2012 WL 3522528 (S.D.Ala. Aug. 14,
    2012)…………………………………….. ...................................................10, 11, 16, 19, 20

*United States* v. *Tramunti*, 513 F.2d 1087 (2d Cir. 1975) ...........................................................4

*United States* v. *Tykarsky*, 446 F.3d 458 (3d Cir. 2006)) ...........................................................14

*United States* v. *Van Hise*, No. S4 12 Cr. 847 (PGG), 2013 WL 6877319 (S.D.N.Y., Dec.
    31, 2013) ...................................................................................................................................5

*United States v. Walsh*, 194 F.3d 37 (2d Cir. 1999) ......................................................................4

*United States v. Williams*, 679 F.2d 504 (5th Cir.1982*)*.................................................................6

*United States v. Woodruff,* 50 F.3d 673 (9th Cir. 1995) .................................................................6

*United States v. Yannotti*, 541 F.3d 112 (2d Cir. 2008)..................................................................4

*Webster* v. *Reproductive Health Services*, 492 U.S. 490 (1989) ...................................................8

*Younger v. Harris*, 401 U.S. 37 (1971).........................................................................................7

**RULES AND STATUTES**

Federal Rule of Criminal Procedure 7 ............................................................4

Federal Rule of Criminal Procedure 12 ......................................................4, 19

Federal Rule of Criminal Procedure 29 ......................................................20

Title 18, United States Code, Section 846 ..................................................2

Title 18, United States Code, Section 924 ..................................................2

Title 18, United States Code, Section 1201 ..........................1, 3, 5, 8, 9, 19, 23

Title 18, United States Code, Section 1951 ................................................2

Title 18, United States Code, Section 1958 ..............................................11

Title 18, United States Code, Section 2251 ..............................................16

Title 18, United States Code, Section 2252 ..............................................16

Title 18, United States Code, Section 2252A ............................................16

Title 18, United States Code, Section 2422 ..........................................13, 14

Title 18, United States Code, Section 2425 ..........................................13, 15

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in opposition to defendants Antione Chambers's and Steven Glisson's joint motion to dismiss the second superseding Indictment.   Defendants ask this court to (1) dismiss Count Three of the indictment because it fails to allege with specificity that the defendants used a "means, facility, and instrumentality," an element of Title 18, United States Code, Section 1201, commonly referred to as the "Federal Kidnapping Statute"; (2) invalidate the Federal Kidnapping Statute because it "constitutes an unconstitutional exercise of Congressional Commerce Clause power; and (3) dismiss the kidnapping count in the indictment because it is "unconstitutional as applied where the use of a facility or instrumentality of interstate commerce is too attenuated from either interstate commerce or the underlying criminal conduct."   (Defendants' Memorandum ("Def. Mem.") at 1).

First, the allegations contained in the Second Superseding Indictment are alone adequate to survive a pretrial motion to dismiss.

Second, the defendants' argument that the Federal Kidnapping Statute should be invalidated has been rejected by district courts that have reached the issue because it ignores Congress's well-established authority to regulate the use of instrumentalities of interstate commerce—precisely what the kidnapping statute was enacted to do.

Third, the defendant's challenge that the Federal Kidnapping Statute, as applied to the facts in this case, would violate the Commerce Clause of the United States Constitution is procedurally premature when it comes prior to the Government's presentation of its evidence.

1

As such, the defendants' challenge to the application of Federal Kidnapping statute must also be rejected.

## BACKGROUND

On April 1, 2013, Steven Glisson, a/k/a "Dee," was charged by criminal complaint in *United States* v. *Steven Glisson*, 13 Mag. 859, in the Southern District of New York, with (1) conspiring to a Hobbs Act robbery, in violation of 18 U.S.C. § 1951, (2) committing a Hobbs Act robbery on or about March 25, 2013, and aiding and abetting the same, in violation of 18 U.S.C. §§ 1951 and 2, and (3) using and carrying firearms during and in relation to, and possessing firearms in furtherance of the robbery charged in (2), during which firearms were brandished, and aiding and abetting the same, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and (2).

On June 11, 2013, Antione Chambers, a/k/a "Twizzie," was charged by criminal complaint in *United States* v. *Antione Chambers*, 13 Mag. 1513, in the Southern District of New York, with (1) conspiring to commit and committing a Hobbs Act robbery, in violation of 18 U.S.C. § 1951, (2) committing a Hobbs Act robbery on or about March 25, 2013, and aiding and abetting the same, in violation of Title 18, United States Code, Sections 1951 and (2), and (3) using and carrying firearms during and in relation to, and possessing firearms in furtherance of the robbery charged in (2), during which firearms were brandished, and aiding and abetting the same, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(ii) and (2).

On August 13, 2013, a federal grand jury returned a superseding indictment charging Tyrone Brown with one count of conspiracy to distribute crack cocaine, in violation of 18 U.S.C. § 846, and Brown, Glisson and Chambers with conspiring to commit and committing a Hobbs Act

robbery, in violation of 18 U.S.C. § 1951, and using and carrying firearms in furtherance of the robbery conspiracy, in violation of 18 U.S.C. 924(c).

On January 23, 2014, a federal grand jury returned a second superseding indictment adding a kidnapping charge, a violation of 18 U.S.C. § 1201, against Glisson and Chambers, to the charges in the superseding indictment.   Therefore, defendants Chambers and Glisson are currently charged in four out of five counts in the Indictment, S2 13 Cr. 345 (LGS) (the "Second Superseding Indictment") as follows:

    (1)    conspiring to commit a Hobbs Act robbery in or about March 2013, in violation of Title 18, United States Code, Section 1951 (Count One);

    (2)    committing a Hobbs Act robbery on or about March 25, 2013, and aiding and abetting the same, in violation of Title 18, United States Code, Sections 1951 and (2) (Count Two);

    (3)    committing a kidnapping, on or about March 25, 2013, and aiding and abetting the same, in violation of Title 18, United States Code, Sections 1201 and 2 (Count Three); and

    (4)    using and carrying firearms during and in relation to, and possessing firearms in furtherance of the robbery conspiracy charged in Count One and the kidnapping conspiracy charged in Count Three, during which firearms were brandished, and aiding and abetting the same, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(ii) and (2) (Count Four).

The defendants are presently scheduled to begin trial on the Second Superseding Indictment on September 8, 2014.

## DISCUSSION

**I.**    **The Defendants' Motion to Dismiss Count Three of the Second Superseding Indictment for Failure To Allege the Interstate Commerce Element of the Federal Kidnapping Statute Should Be Denied.**

Chambers and Glisson argue that the indictment is defective in that it does not "allege any facts establishing the element of interstate commerce that would confer federal jurisdiction over

the alleged kidnapping."   (Def. Mem. at 2-3).   This argument is without merit.   The Second

Superseding Indictment states the essential elements of the charges against the defendants, and is

therefore sufficient to survive a pretrial motion to dismiss.

"[A]n indictment is sufficient if it, first, contains the elements of the offense charged and

fairly informs a defendant of the charge against which he must defend, and, second, enables him to

plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v.*

*United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974).   "A criminal defendant is

entitled to an indictment that states the essential elements of the charge against him." *United States*

v. *Pirro*, 212 F.3d 86, 91 (2d Cir. 2000) (citing *Jones* v. *United States*, 526 U.S. 227, 232 (1999)).

Little more is required.   *See* Fed. R. Crim. P. 7(c)(1) (describing indictment as a "concise . . .

statement of the essential facts.").   Indeed, the Second Circuit has "consistently upheld

indictments that 'do little more than to track the language of the statute charged and state the time

and place (in approximate terms) of the alleged crime.'" *United States v. Walsh*, 194 F.3d 37, 44

(2d Cir. 1999) (quoting *United States v. Tramunti*, 513 F.2d 1087, 1113 (2d Cir. 1975)); *see also*

*United States v. Yannotti*, 541 F.3d 112, 127 (2d Cir. 2008).   While an indictment must "contain[

] the elements of the offense charged and fairly inform[ ] a defendant against which he must defend

[and] enable[ ] him to plead an acquittal or conviction in bar of future prosecutions for the same

offense," it "need do little more than to track the language of the statute charged and state the time

and place (in approximate terms) of the alleged crime." *United States* v. *Alfonso,* 143 F.3d 772,

776 (2d Cir.1998) (indictment identifying date and location of alleged Hobbs Act robbery and

charging that defendants "thereby obstructed, delayed and affected commerce and the movement

of articles and commodities in commerce" held sufficient).

4

Where, as here, a defendant files a pre-trial motion to dismiss pursuant to Fed.R.Crim.P. 12(b), the Court accepts the allegations in the indictment as true, *see United States* v. *Goldberg,* 756 F.2d 949, 950 (2d Cir.1985), and focuses on the legal sufficiency of the indictment, without considering the sufficiency of the evidence or contrary assertions of fact.   *See Alfonso*, 143 F.3d at 776 ("'An indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime.'") (quoting *United States* v. *Stavroulakis,* 952 F.2d 686, 693 (2d Cir.1992); *see also United States v. Ruing/Chambers, Dunhill Ins. Serv's.*, 798 F.Supp.2d 517, 522 (S.D.N.Y. 2011).

Here, the Second Superseding Indictment charges that:

> On or about March 25, 2013, in the Southern District of New York and elsewhere, STEVEN GLISSON, a/k/a "Dee," and ANTIONE CHAMBERS, a/k/a "Twizzie," the defendants, and others known and unknown, willfully and knowingly did seize, confine, kidnap, abduct, and carry away and hold for ransom and reward and otherwise, a person, and use a means, facility, and instrumentality of interstate commerce in committing and in furtherance of the commission of the kidnapping, to wit, GLISSON and CHAMBERS kidnapped an individual for the purpose of carrying out a robbery of narcotics proceeds.

(Second Superseding Indictment, ¶ 4).   Count Three of the Second Superseding Indictment meets the basic pleading requirements outlined in *Alfonso* by (a) accurately stating the elements of the offense charged, and (b) providing the date of the kidnapping, the approximate place of the kidnapping, and the purpose of the kidnapping, thereby providing sufficient detail to allow the defendants to prepare a defense and to invoke the protection of the Double Jeopardy Clause of the Fifth Amendment against any subsequent prosecution for the same offense.   *See United States* v. *Van Hise*, No. S4 12 Cr. 847 (PGG), 2013 WL 6877319, at *6 (S.D.N.Y., Dec. 31, 2013)

5

(Gardephe, J.) (indictment charging kidnapping conspiracy, in violation of 18 U.S.C. § 1201(c), which tracked the interstate commerce language of the statute was "sufficiently specific to permit Defendants to prepare their defense and to bar future prosecutions for the same offense").

By analogy, in the context of Hobbs Act conspiracy, the Second Circuit has explicitly held that an indictment need not set forth how a robbery that the defendants conspired to commit would have "obstructed, delayed and affected commerce":

> The indictment does not specify what it was that defendants allegedly conspired to steal or precisely how the conspiracy would have affected interstate commerce. Rather, it alleges in conclusory terms that defendants conspired to commit robbery and thereby affected interstate commerce. We have never held that an indictment alleging a violation of the Hobbs Act must specify the precise nature of the effect upon interstate commerce that the government intends to prove at trial, and we decline to do so now. . . The indictment in this case is sufficiently specific to permit defendants to prepare their defense and to bar future prosecutions for the same offense. It is therefore valid on its face.

*Alfonso*, 143 F.3d at 776 (citing *United States v. Woodruff*, 50 F.3d 673, 676 (9th Cir. 1995) ("Although the indictment contained no facts alleging how interstate commerce was interfered with, and did not state any theory of interstate impact, ... the indictment was sufficient as written."); *United States v. Williams*, 679 F.2d 504, 509 (5th Cir.1982) ("An indictment which alleges the interstate commerce element of a federal offense in conclusory terms, without setting forth evidentiary detail, is not insufficient.")

The defendants have not explained why a different rule should apply here, as to the instrumentality of interstate commerce that was used and the manner in which it was used. The Second Superseding Indictment is sufficiently specific to permit the defendants to prepare their defense and to bar future prosecutions for the same offense.   The law does not require any more.

## II.   The Federal Kidnapping Statute is a Valid Exercise of Congress's Power Under the Commerce Clause.

Defendants argue that the Federal Kidnapping Statute exceeds Congress's power under the Commerce Clause.   (Def. Mem. at 1, 5-10).   This argument has been rejected by federal courts that have reached the issue, and ignores decades of Commerce Clause jurisprudence.

Determining the constitutionality of an Act of Congress remains "the gravest and most delicate duty" that a federal court can be called upon to perform, *Blodgett v. Holden*, 275 U.S. 142, 148 (1927) (Holmes, J., concurring), since it must pass "on a considered decision of the Congress and the President."   *Fullilove v. Klutznick*, 448 U.S. 448, 472-73 (1980); *see also United States v. Dennis*, 341 U.S. 494, 552 (1951) (Frankfurter, J., concurring).   As such, it is axiomatic that each Congressional Act enjoys a presumption of constitutionality, and courts, "where possible, interpret[] congressional enactments so as to avoid raising serious constitutional questions." *Cheek v. United States*, 498 U.S. 192, 203 (1991) (citing *DeBartolo Corp. v. Florida Gulf Coast Building & Construction Trades Council*, 485 U.S. 568, 575 (1988)); *see also Public Citizen v. Department of Justice*, 491 U.S. 440, 465-466 (1989); *St. Martin Evangelical Lutheran Church v. South Dakota*, 451 U.S. 772, 780 (1981); *United States v. Clark*, 445 U.S. 23, 27 (1980); *Crowell v. Benson*, 285 U.S. 22, 62 & n.30 (1932); *see also Flemming v. Nestor*, 363 U.S. 603, 617 (1960) ("'[I]t is not on slight implication and vague conjecture that the legislature is to be pronounced to have transcended its powers, and its acts to be considered as void[]'") (quoting *Fletcher v. Peck*, 10 U.S. 87, 128 (1810)).

A claim of facial unconstitutionality imposes a "heavy burden."   *Sanitation & Recycling Industry* v. *City of New York*, 107 F.3d 985, 992 (2d Cir. 1997) (citing *Younger v. Harris*, 401 U.S.

37, 52-53 (1971)). In *United States* v. *Salerno*, 481 U.S. 739 (1987), the Supreme Court recounted

the well settled governing principles:

> A facial challenge to a legislative Act is, of course, the most difficult
> challenge to mount successfully[.] [T]he challenger must establish
> that no set of circumstances exists under which the Act would be
> valid. The fact that the [relevant statute] might operate
> unconstitutionally under some conceivable set of circumstances is
> insufficient to render it wholly invalid, since [the Supreme Court
> has] not recognized an "overbreadth" doctrine outside the limited
> context of the First Amendment.

*Id.* at 745; *see also Ohio* v. *Akron Center for Reproductive Health*, 497 U.S. 502, 514 (1990);

*Webster* v. *Reproductive Health Services*, 492 U.S. 490, 524 (1989) (O'Connor, J., concurring);

*United States* v. *Sage*, 92 F.3d 101, 106 (2d Cir. 1996), *cert. denied*, 117 S. Ct. 784 (1997); *Giusto*

*v. I.N.S.*, 9 F.3d 8, 10 (2d Cir. 1993).

Title 18, United States Code, Section 1201(a)(1) provides:

> Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps,
> abducts, or carries away and holds for ransom or reward or
> otherwise any person, except in the case of a minor by the parent
> thereof, when—
>
> (1) the person is willfully transported in interstate or foreign
> commerce, regardless of whether the person was alive when
> transported across a State boundary, or *the offender* travels in
> interstate or foreign commerce or *uses the mail or any means,*
> *facility, or instrumentality of interstate or foreign commerce in*
> *committing or in furtherance of the commission of the offense*;
> . . .
> shall [be guilty of a crime] . . .

18 U.S.C. § 1201(a)(1) (emphasis added).   The Second Superseding Indictment in this case

alleges that Chambers and Glisson, "and others known and unknown, willfully and knowingly did

seize, confine, kidnap, abduct, and carry away and hold for ransom and reward and otherwise, a

person, and use a means, facility, and instrumentality of interstate commerce in committing and in furtherance of the commission of the kidnapping, to wit, GLISSON and CHAMBERS kidnapped an individual for the purpose of carrying out a robbery of narcotics proceeds."   (Second Superseding Indictment, ¶ 4).

> **A.  The Federal Kidnapping Statute is A Constitutional Exercise of Congress's Power to Regulate the Use of Instrumentalities of Interstate Commerce.**

Congress may, pursuant to its Commerce Clause power, regulate the following categories of activity: (1) the use of the channels of interstate commerce (*"Lopez* Category One"); (2) the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities (*"Lopez* Category Two"); and (3) those activities having a substantial relation to interstate commerce, i.e., those activities that substantially affect interstate commerce (*"Lopez* Category Three").  *United States* v. *Lopez*, 514 U.S. 549, 558 (1995).

Glisson and Chambers argue that the Federal Kidnapping Statute should be analyzed under *Lopez* Category Three rather than *Lopez* Category Two and that therefore the statute is unconstitutional because it does not regulate activity with a "close and substantial relationship" to interstate commerce.   (Defs. Mem. at 6-10).   Courts that have addressed the constitutionality of the Federal Kidnapping Statute, including every district court to consider the issue, however, have upheld it as a valid exercise of Congress' Commerce Clause power under *Lopez* Category Two. *See United States* v. *Morgan*, 748 F.3d 1024, 1032 n.9 (10th Cir. 2014) ("Although we are the first circuit court to address a constitutional challenge to the 2006 amendment [to the Federal Kidnapping Statute], every district court to consider the issue has held 18 U.S.C. § 1201(a)(1) fits

*Lopez*'s second category and is constitutional under the Commerce Clause.") (collecting cases, and citing *United States* v. *Ramos*, 12 CR 556 LTS, 2013 WL 1932110, at *2 (S.D.N.Y. May 8, 2013) (Swain, J.); *United States* v. *Taylor*, No. 12-cr-0056, 2012 WL 3522528 (S.D.Ala. Aug. 14, 2012); *United States* v. *Jacques*, No. 2:08-cr-117, 2011 WL 1706765 (D.Vt. May 4, 2011); *United States* v. *Augustin*, No. L09-CR-187, 2010 WL 2639966 (E.D. Tenn. June 28, 2010); *United States* v. *Ochoa*, No. 8-CR-1980, 2009 WL 3878520 (D.N.M. Nov. 12, 2009); *see also United States* v. *Graves*, 2014 WL 2589428, at *4, 6-8 (N.D. Ga. June 9, 2014) (holding that the Federal Kidnapping Statute is a constitutional exercise of Congress's Commerce Clause power to regulate the "use of instrumentalities of interstate commerce," and rejecting defendants' argument that the Federal Kidnapping Statute should be analyzed under Congress's power to regulate activities found to have a "substantial relation" to interstate commerce).   That is because "[a] showing that a regulated activity substantially affects interstate commerce (as required for the third category) is not needed when Congress regulates activity in the first two categories."   *United States* v. *Gil.* 297 F.3d 93, 100 (2d Cir. 2000).   Instead, "it is well-established that when Congress legislates pursuant to [*Lopez* Category Two] of its Commerce Clause power, it may regulate even purely intrastate use of those instrumentalities."   *United States* v. *Giordano*, 442 F.3d 30, 41 (2d Cir. 2006); *see also United States v. McGriff*, 287 F. App'x 916, 918 (2d Cir. 2008), *cert. denied*, 129 S.Ct. 1652 (2009) ("A showing that a regulated activity substantially affects interstate commerce is unnecessary when Congress regulates activity involving an instrumentality or facility of interstate commerce").

Courts routinely rely on the axiom that Congress has plenary authority to regulate instrumentalities of interstate commerce.   *Ochoa*, 2009 WL 3878520 at *3 ("Both telephones and

10

the internet are instrumentalities of interstate commerce. ... Therefore, Congress has plenary authority to regulate these devices and can forbid their use to facilitate kidnapping—even when the kidnapping itself takes place entirely within the borders of one state.") (citing *United States v. Lopez*, 514 U.S. 549, 558 (1995)); *see also Taylor*, 2012 WL 3522528, at *2 ("Analyzed under the second *Lopez* category, it is clear that Section 1201(a)(1) represents a constitutional exercise of Congress' power under the Commerce Clause, since it prohibits the use of an instrumentality of interstate commerce for the harmful purpose of furthering a kidnapping."); *Jacques*, 2011 WL 1706765, at *11 ("The Court holds that § 1201(a) is an unremarkable and facially valid exercise of Congress's long-established power to regulate the channels and instrumentalities of interstate commerce under the Commerce Clause, regardless of whether the underlying conduct is also amenable to proscription under a state's police power."); *Augustin*, 2010 WL 2639966, at *3 ("The kidnapping statute involves the regulation of instrumentalities of commerce, *e.g.*, telephones, and is authorized under Congress's plenary power.").

### B. Statutes Analogous to the Federal Kidnapping Statute Have Been Upheld as Valid Exercise of Congress's Power to Regulate the Use of Instrumentalities of Interstate Commerce.

Under the well-established principle that Congress has plenary power over interstate commerce, statutes analogous to the Federal Kidnapping Statute have been upheld as valid exercises of Congress's Commerce Clause power.   For example, the Second Circuit upheld the federal murder-for-hire statute under the Commerce Clause, which requires less connection than the Federal Kidnapping Statute between the use of a facility of interstate commerce and the bad act, i.e., the murder-for-hire.   *See McGriff*, 287 F. App'x at 916; *United States* v. *Perez*, 414 F.3d 302, 305 (2d Cir. 2005) (per curiam).

11

Specifically, Title 18, United States Code, Section 1958 provides in relevant part, "Whoever ... uses or causes another (including the intended victim) to use the mail or any facility of interstate or foreign commerce, with intent that a murder be committed in violation of the laws of any State or the United States as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value, or who conspires to do so, shall be" guilty of a crime.   The Second Circuit upheld the statute under the Commerce Clause, stating "[u]nder our caselaw, a showing that a regulated activity substantially affects interstate commerce is unnecessary when Congress regulates activity involving an instrumentality or facility of interstate commerce."   *McGriff*, 287 F. App'x at 918 (2d Cir. 2008) (citing *Gil*, 297 F.3d at 100; *Perez*, 414 F.3d at 305 ("[E]ven though Perez's calls to Casiano were wholly intrastate communications, the fact that they were made using the SNET network, a facility involved in interstate commerce, leads us to conclude that Perez was properly subject to prosecution for using interstate commerce facilities in the commission of murder-for-hire.")); *see also United States v. Ballinger*, 395 F.3d 1218, 1229 (11th Cir. 2005) (en banc) ("[18 U.S.C. § 1958, among other statutes] clearly illustrate[s] Congress' power to punish offenders ... who rely on the channels and instrumentalities of commerce in committing criminal acts."), *cert. denied*, 546 U.S. 829 (2005). "If the broad reach of the murder-for-hire statute—which makes it a federal crime to use a facility of interstate commerce merely with the intent that a murder-for-hire be committed—is a valid exercise of Congress's Commerce Clause power under Lopez's second category, then the kidnapping statute—which more narrowly makes it a federal crime to use a facility or instrumentality of interstate commerce to commit or to further the commission of the crime itself—must likewise pass muster under Lopez's second category."   *Jacques*, 2011 WL 1706765,

12

at *11.

In *Giordano*, the Second Circuit addressed the constitutionality of Title 18, United States Code, Section 2425, which provides in relevant part that "[w]hoever, using the mail or any facility or means of interstate or foreign commerce, . . . knowingly initiates the transmission of the name, address, telephone number, social security number, or electronic mail address of another individual, knowing that such other individual has not attained the age of 16 years, with the intent to entice, encourage, offer, or solicit any person to engage in any sexual activity for which the person can be charged with a criminal offense, or attempts to do so," shall be guilty of a crime.   In upholding this statute under the Commerce Clause, the Second Circuit reaffirmed the axiom that Congress has the plenary "power to regulate and protect the instrumentalities of interstate commerce 'even though the threat may only come from intrastate activities.'"   *Giordano*, 442 F.3d at 41 (quoting *Lopez*, 514 U.S. at 558).

Yet another example is Title 18, United States Code, Section 2422(b), which provides in relevant part, "Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be" guilty of a crime. As the Eleventh Circuit stated:

> Congress clearly has the power to regulate the internet, as it does other instrumentalities and channels of interstate commerce, and to prohibit its use for harmful or immoral purposes regardless of whether those purposes would have a primarily intrastate impact. . . . Congress may reach and prohibit the use of a telephone or the internet to set up the sexual abuse of children through intermediaries, just as it may prohibit the use of those instrumentalities to set up a fraudulent scheme or to arrange a contract murder.

13

*United States* v. *Hornaday*, 392 F.3d 1306, 1311 (11th Cir. 2004), *cert. denied*, 545 U.S. 1134 (2005); *accord United States* v. *Tykarsky*, 446 F.3d 458, 470 (3d Cir. 2006) (holding that § 2422(b) is a "constitutional exercise [] of Congress's Commerce Clause power to regulate the use of the channels and instrumentalities of interstate commerce"), *cert. denied*, 129 S. Ct. 1929 (2009).

As the court in *Jacques* made clear, *see* 2011 WL 1706765, at *8-11, other examples abound. *See, e.g., Gil*, 297 F.3d at 100 (holding that an amendment to the mail fraud statute extending federal jurisdiction over private or commercial interstate mail carriers was a permissible exercise of Congress's power to regulate the instrumentalities of interstate commerce); *United States* v. *Gilbert*, 181 F.3d 152, 158-59 (1st Cir. 1999) (holding that use of the telephone to make a bomb threat was sufficient to sustain jurisdiction under Congress's power to regulate the instrumentalities of interstate commerce, reasoning: "Lopez does not apply because a telephone is an instrumentality of interstate commerce and this alone is a sufficient basis for jurisdiction based on interstate commerce."); *United States* v. *Gluzman*, 953 F. Supp. 84, 91 (S.D.N.Y. 1997) (observing that the Travel Act "has long been upheld as well within Congress' authority to legislate under the Commerce Clause ... [given its] plenary power ... to regulate the channels of interstate commerce."), *aff'd*, 154 F.3d 49, 50 (2d Cir. 1998) (per curiam).

### C. Defendants' Argument that the Federal Kidnapping Act Must Be Analyzed Under Congress's Power to Regulate Those Activities that "Substantially Affect" Interstate Commerce is Contradicted by Second Circuit Precedent.

Despite this clear, well-established, and binding precedent, the defendants argue that "Federal regulation of entirely intrastate kidnapping offenses is unconstitutional when the kidnapping does not have the 'close and substantial relation' to interstate commerce necessary to

14

justify federal interference with the province of state police power and law enforcement." (Def. Mem. at 8).   They then set forth the four factors established in *Lopez* used to determine whether a regulated activity "substantially affect[s] interstate commerce," *Lopez*, 514 U.S. at 558-59. (Def. Mem. at 8).

They do so in clear contradiction of binding Second Circuit precedent.   *See, e.g., Giordano*, 442 F.3d at 41 ("But his attempt to bring this line of cases to bear on § 2425 overlooks the fact that § 2425, which explicitly proscribes 'us[e of] the mail or any facility or means of interstate ... commerce' to specified ends, is clearly founded on the second type of Commerce Clause power categorized in *Lopez*, that is, the power to regulate and protect the instrumentalities of interstate commerce 'even though the threat may only come from intrastate activities.' It is well-established that when Congress legislates pursuant to this branch of its Commerce Clause power, it may regulate even purely intrastate use of those instrumentalities." (internal citations omitted)); *Gil*, 297 F.3d at 100 ("A showing that a regulated activity substantially affects interstate commerce (as required for the third category) is not needed when Congress regulates activity in the first two categories.") (citing *United States* v. *King*, 276 F.3d 109, 112-13 (2d Cir. 2002); *King*, 276 F.3d at 112 ("It would appear that, under the district court's reading of *Morrison*, Congress cannot regulate activity that obstructs either channels of interstate commerce, or instrumentalities of and persons and things in interstate commerce-the first and second categories of the *Lopez* framework-unless the regulated commerce ... independently satisfies *Lopez*'s third prong-substantially affecting commerce-as well. We reject this expansive reading of *Morrison*."); *Jacques*, 2011 WL 1706765, at *7 ("This approach [proposed by the defendants] appears to be foreclosed by the Second Circuit's opinion in *United States v. Giordano*."); *Augustin*, 2010 WL

2639966, at *3 ("However, when Congress regulates the channels or instrumentalities of commerce in the first or second categories, it is not bound by the 'substantial effects' test and its authority is plenary.").   The defendants ignore binding Second Circuit precedent presumably because they "acknowledge that, if evaluated under the second *Lopez* category, their facial challenge [would] . . . fail," *Taylor*, 2012 WL 3522528, at *2.

The defendants' reliance on *United States* v. *Holston,* 343 F.3d 83 (2d Cir. 2003) and *United States* v. *Harris*, 358 F.3d 221 (2d Cir. 2004), for the proposition that "federal statutes regulating the possession and distribution of child pornography, at 18 U.S.C. §§ 2251, 2252 and 2252A, which contain jurisdictional language very similar to the [Federal Kidnapping Statute], are analyzed pursuant to *Lopez* Category Three" (Def. Mem. at 7-8) is misplaced.   In *Holston*, the Second Circuit addressed the constitutionality of Title 18, United States Code, Section 2251, which provides:

> (a) Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, ... with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e), [1] if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate of foreign commerce or in or affecting interstate or foreign commerce or mailed, [2] *if that visual depiction was produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer*, or [3] if such visual depiction has actually been transported or transmitted in interstate or foreign commerce or mailed.

18 U.S.C. § 2251(a) (2008) (emphasis added).   As the statute makes clear, the jurisdictional hook

16

is whether the child pornography was made with materials that were themselves transported in

interstate commerce.   Applying this principle to the Federal Kidnapping Statute, it would be as if

the kidnapping statute made it a federal crime for an offender to use a gun that traveled in interstate

commerce in furtherance of the kidnapping.   *See Jacques*, 2011 WL 1706765, at *9-10.   Thus,

the Federal Kidnapping Statute is not analogous because it makes it a crime if the offender uses an

instrumentality of interstate commerce in furtherance of the kidnapping – an entirely different

species of statute.   *See, e.g., Ochoa*, 2009 WL 3878520 at *4 ("the use of the instrumentality must

have been used 'in committing or in furtherance of the commission of the [kidnapping] offense.'"

(internal citations omitted)); *see also Augustin*, 2010 WL 2639966, at *3 ("The use of an

instrumentality of interstate commerce in any capacity is not sufficient, the offender must use the

instrumentality to further the kidnapping to satisfy a requisite element of the offense.").   As the

Supreme Court has made clear, Congress has plenary authority to regulate the use of

instrumentalities of interstate commerce.   *See, e.g., Cleveland* v. *United States*, 329 U.S. 14, 19

(1946); *see also, e.g., Giordano*, 442 F.3d at 41; *United States* v. *Marek*, 238 F.3d 310, 317 (5th

Cir. 2005) ("When it adopted § 1958, Congress was acting within the second of three broad

categories identified by the Supreme Court in *United States v. Lopez*. . . . When Congress regulates

and protects under the second *Lopez* category, ... federal jurisdiction is supplied by the nature of

the instrumentality or facility used . . . ").   Similarly, *United States* v. *Harris*, 358 F.3d 221 (2d

Cir. 2004) (Def. Mem. at 9), in which the Second Circuit addressed nearly the identical issue as it

did in *Holston*, *see Harris*, 358 F.3d at 223, is inapposite for the same reasons as *Holston*.

17

For all these reasons, the defendants' facial challenge should be rejected because the Federal Kidnapping Statute is precisely the type of statute Congress may pass to regulate the use of the instrumentalities of interstate commerce.

### III.   The Defendants' Argument Regarding the Application of the Federal Kidnapping Statute to the Facts of This Case is Premature.

The defendants argue that, as applied to the facts of this case, the Federal Kidnapping Statute is unconstitutional because the interstate nexus is too attenuated from the kidnapping itself. (Def. Mem. at 10-12).   They argue that "the alleged use of the 'instrumentality' at issue was entirely *intra*state, and purely incidental to the underlying criminal conduct alleged."   (*Id.* at 10). They further argue that the use of the instrumentality "is simply too attenuated to satisfy the Commerce Clause's requirements for federal jurisdiction, as such a remote connection with interstate commerce cannot vindicate federal jurisdiction over the underlying intrastate criminal conduct."   (*Id.*).   Remarkably, the defendants assert such arguments before trial, and before an examination of the evidence supporting the allegation in the Second Superseding Indictment that the defendants "use[d] a means, facility, and instrumentality of interstate commerce in committing and in furtherance of the commission of the kidnapping." (Second Superseding Indictment, ¶ 4). Of course, this is entirely inappropriate, and their arguments must be rejected.

The defendants' argument fails to acknowledge that at this stage of the proceedings, a proper allegation is all that is required. *See, e.g., United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 2003) (indictment "need do little more than to track the language of the statute charged and state the time and place of the alleged crime.").   In this case, that is precisely what the Indictment does. As the Second Circuit stated in *Alfonso*:

18

To the extent that the district court looked beyond the face of the indictment and drew inferences as to the proof that would be introduced by the government at trial to satisfy the Hobbs Act's jurisdictional element, we hold that, in the circumstances presented, such an inquiry into the sufficiency of the evidence was premature. Unless the government has made what can fairly be described as a full proffer of the evidence it intends to present at trial to satisfy the jurisdictional element of the offense, the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment.

*Alfonso*, 143 F.3d at 776-77; *see also United States* v. *Diallo*, No. 09 Cr. 858 (SAS), 2009 WL

4277163, at *3 (S.D.N.Y. Nov. 24, 2009) ("[I]t is only appropriate for Diallo to challenge the

Government's showing of the jurisdictional nexus after the Government has put forth all of its

evidence related to this element."); *United States* v. *Davis*, No. 06 Cr. 911 (LBS), 2009 WL

637164, at *15 (S.D.N.Y. March 11, 2009) ("defense counsel will have an opportunity to

challenge the evidence establishing jurisdiction after the government's presentation of its case at

trial." (citing *United States* v. *Remire*, 400 F.Supp.2d 627, 632 (S.D.N.Y. 2005)) .[1]

Rule 12(b) of the Federal Rules of Criminal Procedure, governing pretrial motions,

provides that "[a]ny defense, objection, or request which is capable of determination *without the*

*trial of the general issue* may be raised before trial by motion" (emphasis added). "The general

issue in a criminal trial is, of course, whether the defendant is guilty of the offense charged."

*United States* v. *Doe*, 63 F.3d 121, 125 (2d Cir. 1995). In *Taylor*, for example, the defendants,

"[i]n support of their as-applied challenge, . . . argue[d] that Section 1201(a)(1) requires that their

use of cell phones facilitate the kidnappings and that the government will be unable to show that

---

[1] Because the Government has not made a full and complete factual proffer in this case of its intended evidence demonstrating the impact of the offenses on commerce, this exception does not apply. The Government has, at the request of defense counsel, summarized, in substance and in part, what it expects the evidence at trial will show regarding Chambers's and Glisson's use of cellphones during the course of and in furtherance of the kidnapping charged in Count Three.

their use of cell phones facilitated the kidnappings as opposed to facilitating only their robberies of drug dealers." *Taylor*, 2012 WL 3522528, at *5.   That is precisely the thrust of the defendants' argument here.   (*See, e.g.*, Def. Mem. at 12 (Federal Kidnapping Statute "is unconstitutional as applied here, in which the use of an instrumentality is solely intrastate or incidental, because such limited use fails to provide a sufficient nexus between an entirely intrastate kidnapping and the impact on interstate commerce necessary to confer federal jurisdiction.")).   As the court held in *Taylor*, "[t]his is not a challenge to the constitutionality of the statute at all but only to the government's ability to prove its case under the defendants' construction of the statute." *Taylor*, 2012 WL 3522528, at *5.   The *Taylor* court correctly recognized:

> There is no summary judgment procedure in criminal cases. Nor do the rules provide for a pre-trial determination of sufficiency of the evidence." *United States v. Salman*, 378 F.3d 1266, 1268 (11th Cir. 2004) (internal quotes omitted). Instead, "[a] motion for acquittal under Rule 29 is the proper avenue for contesting the sufficiency of the evidence in criminal cases . . ." *Id.* Resolution of the defendants' challenge thus must await trial.

*Id.*; *Ramos*, 2013 WL 1932110, at *5 ("Any determination as to whether the actual use of the instrumentality was so de minimis as to support a finding that the constitutionally required interstate commerce nexus was in fact lacking must await trial and a full development of the facts."); *accord Augustin*, 2010 WL 2639966, at *4 ("The government asserts the issue of whether or not the use of the telephone during the alleged kidnapping is constitutionally sufficient for a conviction should be reserved for the jury. The Court agrees with the government's position and concludes the pretrial motions to dismiss require the court to find facts that make up the elements of the case, a determination which is improper for a court to do."); *id.* ("In the federal system, courts do no have mini-trials to determine whether the Government can prove its case at trial.").

Thus, the issue of the defendants' use of a "means, facility, and instrumentality of interstate commerce in committing and in furtherance of the commission of the kidnapping" is not suitable for determination by the Court before trial and a full development of the facts.   Accordingly, because the Government adequately alleged the jurisdictional element of the Federal Kidnapping Statute, the defendants' challenge to the application of the statute must be denied.

The defendants' arguments that "federal prosecution is unwarranted" where state law enforcement authorities could have pursued prosecution (Def. Mem. at 11) has no bearing on whether Congress is able to regulate intrastate crimes when offenders use instrumentalities of interstate commerce to commit those crimes, and has no bearing on whether, as applied here, the Federal Kidnapping Statute is unconstitutional.   *See Cleveland*, 329 U.S. at 19 ("The power of Congress over the instrumentalities of interstate commerce is plenary; ... the fact that the means used may have 'the quality of police regulations' is not consequential."); *see also Lopez*, 514 U.S. at 558 ("[Congress may regulate] the instrumentalities of interstate commerce ... *even though the threat may come only from intrastate activities*." (emphasis added)); *United States* v. *Lanza*, 260 U.S. 377, 382 (1922) ("[A]n act denounced as a crime by both national and state sovereignties is an offense against the peace of dignity of both and may be punished by each."); *Jacques*, 2011 WL 1706765, at *9 ("Like kidnapping, murder has traditionally been proscribed under state law. Yet courts have not hesitated to consider the murder-for-hire statute a valid regulation of activity involving an instrumentality of interstate commerce.").

Notably, the defendants do not appear to challenge the axiom that cellphones are instrumentalities of interstate commerce. *See, e.g.*, *Perez*, 414 F.3d at 304 (holding that intrastate use of cell phones is use of a facility or means of interstate commerce).   But they emphasize that

21

in this case "the alleged use of the 'instrumentality' at issue was entirely *intra*state, and purely incidental to the underlying criminal conduct alleged." (Def. Mem. at 10).   The Government agrees that "[m]ere use of a cell phone . . . is not sufficient; the offender must use[] the cell phone to further the kidnapping." *Ochoa*, 2009 WL 3878520, at *4; *see also Augustin,* 2010 WL 2639966 at *4 ("The plain language of the 18 U.S.C. § 1201(a)(1), requires more than an 'incidental' use of a telephone to satisfy the jurisdictional element.   Rather, the use of the instrumentality must have been used 'in committing or in furtherance of the commission of the offense.' 18 U.S.C. § 1201(a)(1). This in the Court's opinion requires more than a mere 'incidental' use.").   At this point, however, the Government need only make a proper allegation of the jurisdictional element, which it has done.

**CONCLUSION**

For the reasons set forth above, the Government respectfully requests that the Court deny Chambers's and Glisson's joint motion to dismiss Count Three of the Second Superseding Indictment.

Dated:  New York, New York
        July 14, 2014

Respectfully submitted,

PREET BHARARA
United States Attorney

By:  _____
     Margaret Garnett
     Negar Tekeei
     Assistant United States Attorneys
     (212) 637-2520 / 2482

22
