LAW OFFICES OF
# JOSHUA L. DRATEL, P.C.
A PROFESSIONAL CORPORATION

29 BROADWAY
Suite 1412
NEW YORK, NEW YORK  10006
---
TELEPHONE (212) 732-0707
FACSIMILE (212) 571-3792
E-MAIL: JDratel@JoshuaDratel.com

JOSHUA L. DRATEL
—
LINDSAY A. LEWIS
WHITNEY G. SCHLIMBACH

STEVEN WRIGHT
*Office Manager*

September 4, 2014

**BY ECF**

The Honorable Lorna G. Schofield
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007

Re: *United States v. Antione Chambers,*
S1 13 Cr. 345 (LGS)

Dear Judge Schofield:

This letter is submitted on behalf of defendant Antione Chambers, whom I represent in the above-entitled case, in opposition to the government's August 27, 2014, application for an order disclosing records related to Mr. Chambers's supervised release and in the custody of the United States Department of Probation.  *See* Docket #136.

As detailed below, the government's application should be denied because the government has not made any particularized showing, let alone made a "compelling demonstration," that disclosure is necessary to "meet the ends of justice[;]"  nor is the requested information unavailable from other sources.  *United States v. Charmer Industries, Inc.*, 711 F.2d 1164, 1175 (2d Cir. 1983).  *See also United States Dep't of Justice v. Julian*, 486 U.S. 1, 12 (1988).

Also, disclosure of the requested records would constitute a violation of Mr. Chambers' Fifth Amendment right against self-incrimination because his provision of information to his probation officer was compelled by the fact that his liberty depended on his full cooperation with probation, including truthfully relaying any information requested of him.

LAW OFFICES OF
**JOSHUA L. DRATEL, P.C.**

The Honorable Lorna G. Schofield
United States District Judge
Southern District of New York
September 4, 2014
Page 2 of 8

    In addition, for the reasons detailed below, the testimony of United States Probation Officer Teresita Contreras, proposed potentially by the government and related to the records it seeks, should be precluded pursuant to Rule 403, Fed.R.Evid. because its undue prejudicial impact substantially outweighs any probative value it may possess.  In fact, regarding the issue of USPO Contreras's prospective testimony, the government has yet to proffer any basis for its admission, much less a legitimate reason.

**Statement of the Facts**

    The government's application makes an expansive request for Antione Chambers's probation records since his transfer to the Southern District of New York, including "all chronological notes[.]"   In support of its application, the government states only that the records are requested "for purposes of obtaining evidence and 3500 material" related to his probation officer, USPO Officer Teresita Contreras, whom it "may call as a witness" at trial. Government's August 27, 2014, Letter Request for an Order Permitting Disclosure of Probation Records (Docket # 136).

    In addition to "all chronological notes," the Government seeks "all items" related to Mr. Chambers' (1)  residence during supervision, including the names of family members and individuals living with him;  (2)  phone numbers;  (3)  cars used or possessed by him during supervision;  (4)  his employment "or lack thereof," during supervision;  and (5)  "nicknames or aliases used."  *Id.*  Other than citing to the possibility that Officer Contreras will testify that Mr. Chambers "absconded from supervision" after the issuance of an arrest warrant, the Government has proffered no explanation for the necessity of the records sought.  *Id.*

**ARGUMENT**

I.    *The Government's Request for an Order Permitting Disclosure of*
       *Mr. Chambers's Probation Records Should Be Denied Because It Has*
       *Failed to Demonstrate a Compelling Need Necessary to Overcome*
       *the Fundamental Interest In Maintaining Confidentiality of the Records*

    The government's application for an order permitting the disclosure of the requested probation records is not warranted here because the government has failed to demonstrate any need for the records that would overcome the fundamental interest in maintaining confidentiality of probation records, especially since the requested information is certainly available from other sources.  *See Charmer*, 711 F.2d at 1176-77.

LAW OFFICES OF
**JOSHUA L. DRATEL, P.C.**

The Honorable Lorna G. Schofield
United States District Judge
Southern District of New York
September 4, 2014
Page 3 of 8

A.     *Disclosure of Probation Records to Third Parties Is Not Justified Without a "Compelling Demonstration" of Need Required to Justify Subverting the Confidentiality Necessary to the Effective Functioning of Probation*

Weighing heavily against disclosure in any case, but especially when records are "sought for prosecutorial purposes," is the need for "candor and openness on the part of . . . the defendant" when compiling information contained in probation records.  *In the Matter of Peter Hein Horsford*, 699 F. Supp. 463, 465 (S.D.N.Y. 1988).  *See also In the Matter of Lobel*, 2005 WL 783366, at *1 (S.D.N.Y. 2005) (expanding *Charmer*'s holding to include all probation records "prepared to assist the District Court in sentencing and in re-sentencing should a violation of probation occur").  As probation records are the primary mechanism by which courts "ensure the availability of as much information as possible to assist in sentencing" or re-sentencing an individual, the confidentiality of those records is "essential to the . . . court's ability to render a fair sentence."  *Pizzuti v. United States*, 809 F. Supp.2d 164, 195 (S.D.N.Y. 2011); *Charmer*, 711 F.2d at 1170.

Given the specialized purpose of probation records, disclosure of the records to "third parties," which are "persons or entities other than the courts, the Parole Commission, the Bureau of Prisons, and probation officers," is inappropriate unless the party's "particularized need" for the records outweighs the fundamental interest in preserving the confidentiality of those materials.  *Charmer*, 711 F.2d at 1172, 1177.

Although the decision whether disclosure of probation records to third parties is warranted rests firmly within the discretion of the court, disclosure is very rarely authorized.  *Id.*, at 1177.  The courts' demonstrated reluctance to authorize disclosure is directly related to the grave consequences of damaging the relationship of trust between probationers and their probation officers, which would undoubtedly and "adversely affect the sentencing court's ability to obtain data on a confidential basis from the accused."  *Holsford*, 699 F. Supp. at 464.

In addition, as the Court in *Holsford* cautioned, the availability of probation records "for subsequent prosecutorial or investigative use" is "incompatible" with the underlying purpose of probation as a tool of both sentencing and rehabilitation.  *Holsford*, 699 F. Supp. at 465 (*quoting* Probation Monograph, at 3).  In addition to impeding the flow of information from the defendant, the possibility that information contained in probation records could be used in future prosecutions would have a "chilling effect on the willingness" of any individuals to contribute information relevant to the purposes of probation.  *Julian*, 486 U.S. at 12.

Accordingly, because the government has not articulated any particularized or compelling need for the probation records necessary to justify damaging the essential mechanism by which

LAW OFFICES OF
**JOSHUA L. DRATEL, P.C.**

The Honorable Lorna G. Schofield
United States District Judge
Southern District of New York
September 4, 2014
Page 4 of 8

sentencing courts gather information necessary to impose fair sentences, the government's
application should be denied.

> **B.**     *An Order Permitting Disclosure of the Requested Records Is Not Warranted*
> *Because the Information Requested Is Certainly Available from Other Sources*

Beyond the Government's failure to articulate any compelling need for the information
contained in the requested records, the request should also be denied because the information is
available elsewhere.  Therefore, there is not any need to undermine the confidentiality attached to
probation activities in order to obtain it.

In *United States v. Harris*, 617 F. Supp.2d 99 (E.D.N.Y. 2007), the Court ordered
probation to disclose drug test results in a Family Court proceeding addressing whether the
defendant was endangering the welfare of her child by her continued drug use.  In addition to
citing the nature of drug test results as "unique and . . . not readily obtainable through other
measures," the Court in *Harris* noted the particular relevance of the results, given that a *prima
facie* case of neglect is established by showing impairment caused by "repeated[] misuse[ of] a
drug."  *Harris*, 617 F. Supp.2d at 102.

Here, in contrast, the information is not of that specialized or irreplaceable character.
Rather, it is information the government has not established is available only through the
Probation Department records.  Indeed, the government seeks records based on information that
is clearly derivative and obtainable through public records and/or other investigative means.

Accordingly, because the Government has not met its burden of demonstrating any
compelling or particularized need for the probation records requested, the request for an Order
permitting disclosure of the requested records should be denied.

> **II.**     *The Court Should Deny the Government's Application for an Order Permitting*
> *Disclosure of the Requested Probation Records Because Such an Order Would*
> *Impermissibly Penalize Mr. Chambers for the Exercise of a Constitutional*
> *Right, and Essentially Force a Choice By Him Between His Fifth Amendment*
> *Right to Be Free from Self-incrimination and His Due Process Right to Liberty*

Given the requirement that Mr. Chambers cooperate fully with probation or risk
revocation of his Supervised Release, permitting disclosure of the requested probation records
would be tantamount to forcing him to forfeit his Fifth Amendment right to be free from
self-incrimination in exchange for his due process right to liberty, a "choice" unequivocally
prohibited by the Constitution.  *See Simmons v. United States*, 390 U.S. 377, 393 (1968).  In

LAW OFFICES OF
**JOSHUA L. DRATEL, P.C.**

The Honorable Lorna G. Schofield
United States District Judge
Southern District of New York
September 4, 2014
Page 5 of 8

*Simmons*, the Supreme Court found it "intolerable that one constitutional right should have to be surrendered in order to assert another." *Id.*, at 394.

While the Supreme Court, in *Minnesota v. Murphy*, 465 U.S. 420 (1984), permitted a defendant's incriminating disclosures to his probation officer to be admitted at trial, the circumstances here, as detailed below, are sufficiently different that *Murphy*, as well as the Second Circuit cases following it, are clearly distinguishable.

Although generally not self-executing, *see Murphy*, 465 U.S. at 433-34, the protection of the Fifth Amendment right against self-incrimination attaches in two situations without being specifically invoked.  First, a defendant has an unqualified right at his own trial to remain silent without being required to take the stand and assert the privilege.  Also, the privilege attaches when the specter of government coercion is present in some form.  *See Salinas v. Texas*, 133 S.Ct. 2174, 2179-80 (2013).  The latter situation has been described as one in which "some form of official compulsion denies [the individual] a 'free choice to admit, to deny, or to refuse to answer.'"  *Salinas*, 133 S.Ct. at 2180, *quoting Lisenba v. California*, 314 U.S. 219, 241 (1941).

The Court's opinion and decision and *Murphy* were premised on three factors:  (1)  that the questions asked by the probation officer were deliberately and obviously designed to elicit the defendant's answers about criminal activity, thereby putting the defendant on notice that his Fifth Amendment right was implicated, *see* 465 U.S. at 432-33;  (2)  that the state could not have revoked the defendant's probation/parole solely on the basis of a valid invocation of the Fifth Amendment, which would have applied to the particular questioning at issue, *see id.*, at 432-35; and (c)  that in many jurisdictions the problem of incriminating disclosure was obviated by a tradition of immunizing such disclosures from use in subsequent separate criminal prosecutions. *Id.*, at 435 n.7.

In stark and dispositive contrast, here Mr. Chambers's invocation of the privilege at the time the information was imparted would likely *not* have been considered valid, thereby clearly exposing him to revocation of his supervised release.  *See Murphy*, 465 U.S. at 435 n.7 (asserting Fifth Amendment privilege in response to questions seeking information relevant to probation, but which "pose[s] no realistic threat of incrimination in a separate criminal proceeding," is not a valid exercise of the right against self-incrimination).  *Id.*  Not only was the information not obviously incriminating, but at the time it was provided the events at issue in this case had not even arisen.

The result is an authentic and unavoidable Catch-22:  the defendant either refuses to provide *any* information to the probation officer, thereby exposing the defendant to revocation of supervised release (because at the time the invocation of the privilege was not deemed valid), or

LAW OFFICES OF
**JOSHUA L. DRATEL, P.C.**

The Honorable Lorna G. Schofield
United States District Judge
Southern District of New York
September 4, 2014
Page 6 of 8

the defendant, desiring to remain at liberty, provides all requested information and thereby subjects himself to that information be used in a separate criminal investigation or prosecution.

That situation leaves no doubt that information provided by a person on supervised release has not been relayed by "free choice," but rather because the consequence of failing to cooperate would be revocation of probation or supervised release. *Salinas*, 133 S.Ct. at 2180.

Thus, the only way in which Mr. Chambers could have avoided incriminating himself would have been to assert the privilege *categorically*, an act which at the time no doubt would have been considered invalid, but which ultimately (if disclosure is permitted) would have exposed him to self-incrimination nonetheless.

Although the Second Circuit has held that the right against self-incrimination does not automatically attach when a probationer has failed to invoke the privilege before incriminating himself to his probation officer, those cases are similarly distinguishable from the facts present here. *See e.g. United States v. Jennings*, 652 F.3d. 290 (2d Cir. 2011);  *United States v. Ramos*, 685 F.3d 120 (2d Cir. 2012).

In addition to the reasons set forth above distinguishing this case from *Murphy*, in both Second Circuit decisions the Court emphasized that the probationer was "not 'told that he *would* lose his freedom if he invoked his Fifth Amendment privilege,'" only that failure to answer all questions "fully and truthfully" could result in a revocation of his probation. *Ramos*, 685 F.3d at 128 (emphasis in original) (*quoting Jennings*, 652 F.3d at 304).

However, the distinction between "could" and "would" is empty in the context of a request for information, as occurred here, which in and of itself is not obviously incriminating, and is part of the ordinary but requisite interchange between a probation officer and a person on supervised release.  Both *Jennings* and *Ramos* involved a probationer incriminating himself to his probation officer in response to questions that clearly were aimed at eliciting damaging information.  Thus, neither *Jennings* nor *Ramos* contemplated the implications of denying Fifth Amendment protection to any and all information obtained over the course of supervised release or probation when that ostensibly neutral information becomes arguably relevant in a criminal proceeding, and the government seeks to admit it.

Permitting disclosure here would also signal the death knell for a defendant's full disclosure to a probation officer.  Indeed, prudent, competent, informed defense counsel would be compelled to advise convicted clients that only a blanket assertion of the privilege could adequately and safely insulate the defendant from having ordinary information imparted to a probation officer be used subsequently as part of a separate criminal investigation or prosecution.

LAW OFFICES OF

**JOSHUA L. DRATEL, P.C.**

The Honorable Lorna G. Schofield
United States District Judge
Southern District of New York
September 4, 2014
Page 7 of 8

That practice would almost certainly be viewed by the Probation Department and the courts as a complete lack of cooperation with a probation officer, which would indisputably constitute grounds for revocation of supervised release.  That embodies the "classic penalty situation," in which "the state, either expressly or by implication, asserts that invocation of the privilege would lead to revocation of probation."  *Murphy*, 465 U.S. at 435.

Accordingly, an Order permitting disclosure of the requested records would result in the very situation prohibited by *Simmons*, forcing a choice between the right to be free from self-incrimination and the due process right to liberty.  Consequently, the government's application for disclosure here presents a unique factual situation not addressed in *Murphy*, *Jennings*, or *Ramos*:  the information obtained during probation was not incriminating at the time it was communicated, but is now sought to be used against Mr. Chambers in a separate criminal proceeding.

Nor is Mr. Chambers protected by the functional immunity relied upon in *Murphy*, in which the information sought by probation could have subjected the defendant to both revocation and criminal penalties, causing the Court to conclude that "a state may validly insist on answers to even incriminating questions and hence sensibly administer its probation system, as long as it recognizes that the required answers may not be used in a criminal proceeding."  465 U.S. at 435 n.7.  Indeed, here the government seeks the opposite of functional immunity for Mr. Chambers's disclosures to his Probation Officer:  it seeks to use such information as evidence against him at trial in this separate criminal prosecution.

Yet the principle espoused in *Murphy* applies just as strongly – and even stronger – when the incriminating nature of the information is not readily apparent at the time it is relayed to probation.  Given the important role that probation plays in the fair and effective functioning of the justice system, information conveyed to probation must be entitled to Fifth Amendment protection in order to preserve both the right against self-incrimination and an open discourse between probationers and the courts.

Accordingly, the government's application for an Order disclosing the requested information should be denied because permitting disclosure in this case will augur a complete collapse of the fundamental confidentiality that fuels effective supervision by the probation department, as defense counsel will be compelled to advise clients to refuse to disclose – categorically – even ostensibly harmless information for fear that it will be used in subsequent separate criminal proceedings against the client/defendant.

LAW OFFICES OF

**JOSHUA L. DRATEL, P.C.**

The Honorable Lorna G. Schofield
United States District Judge
Southern District of New York
September 4, 2014
Page 8 of 8

## Conclusion

Accordingly, for the reasons set forth above, the Government's application for an Order permitting disclosure of the requested probation records should be denied. Similarly, the testimony of Mr. Chambers's Probation Officer should be precluded.

Respectfully submitted,

Joshua L. Dratel

JLD/

cc:     Hon. Katherine B. Forrest

8