UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------x
                              :

UNITED STATES OF AMERICA,      :

                              :

            – *against* –      :     13 Cr. 345 (LGS)

                              :     (Filed Electronically)

ANTOINE CHAMBERS,          :

                              :

             Defendant.       :

                              :

-----------------------------------------------------x

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
ANTIONE CHAMBERS'S MOTION *IN LIMINE* TO PERMIT EXPERT TESTIMONY
AND FOR RECONSIDERATION OF THE PRIOR DENIAL OF HIS PRE-TRIAL MOTION
TO SUPPRESS HISTORICAL CELL SITE EVIDENCE

Joshua L. Dratel
JOSHUA L. DRATEL, P.C.
29 Broadway, Suite 1412
New York, New York 10006
(212) 732 - 0707
jdratel@joshuadratel.com

*Attorneys for Defendant Antoine Chambers*

– *Of Counsel* –

Joshua L. Dratel
Whitney G. Schlimbach

TABLE OF CONTENTS

Table of Contents.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

Table of Authorities.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

Introduction.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

ARGUMENT

POINT I

GIVEN THE CENTRAL ROLE OF THE IDENTIFICATION EVIDENCE
IN THE CASE AGAINST MR. CHAMBERS, AS WELL AS THE POWER OF
IDENTIFICATION EVIDENCE GENERALLY, MR. CHAMBERS SHOULD BE
PERMITTED TO PRESENT EXPERT TESTIMONY REGARDING FACTORS
THAT INFLUENCE THE RELIABILITY OF EYEWITNESS IDENTIFICATION,
INCLUDING THE USE OF SUGGESTIVE AND/OR SERIAL PROCEDURES. . . . . . . . . . . . 1

A.      *Expert Testimony Regarding the Reliability of Eyewitness Identifications
        Is Particularly Necessary When, as Here, the Procedures Employed By
        Law Enforcement to Obtain the Identification Were suggestive, and the
        Identification Evidence Plays a Central Role in the Case Against the Defendant.* . . . . . . 3

B.      *Expert Testimony Regarding the Reliability of Eyewitness Identification
        Is Admissible Pursuant to the Requirements of* Daubert v. Merrell Dow
        Pharmaceuticals*, 509 U.S. 579 (1992), and Rule 702, Fed.R.Evid..* . . . . . . . . . . . . . . . . . 4

        1.      *The Research Underlying Expert Testimony Regarding the Reliability of
                Eyewitness Identification Is Both Long-Standing and Well-Established.* . . . . . . . . 4

        2.      *The Susceptibility of Eyewitness Identification Evidence to Misapprehension
                Is Sufficient to Make Expert Testimony Necessary to "Assist the Trier of Fact" to
                Understand Fully the Central Evidence Against Mr. Chambers Herein.* . . . . . . . . 6

POINT II

THE HISTORICAL CELL SITE DATA FOR 717-643-6130,
OBTAINED PURSUANT TO AN ORDER ISSUED UNDER
THE STORED COMMUNICATIONS ACT ("SCA") ABSENT
A SHOWING OF PROBABLE CAUSE, SHOULD BE
SUPPRESSED BECAUSE HISTORICAL CELL SITE
EVIDENCE IS PROTECTED BY THE FOURTH AMENDMENT. . . . . . . . . . . . . . . . . . . . . 7

A.  *The Court's Reasoning In* Riley, *When Applied to Cumulative Historical Cell Site Evidence, Compels the Conclusion That Such Information Is Protected by the Fourth Amendment.* . . . . . . . . . . . . . . . . . . . . . . . . 8

    1.  *The Expectation of Privacy in the Broader Conclusions Which Can Be Drawn from Cumulative Historical Cell Site Data Is Reasonable and Warrants Protection Under the Fourth Amendment* . . . . . . . . . 9

    2.  *Alternatively, Because Location Information Obtained by Tracking a Cell Phone Has the Potential to Reveal All of An Individual's Movements, Not Just Those Knowingly Exposed to the Public, Historical Cell Site Data Itself, Regardless of Its Cumulative Nature, Is Protected Bu the Fourth Amendment.* . . . . . . . . . . . . 10

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

ii

## TABLE OF AUTHORITIES

### CASES

*Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18 (2d Cir.1996). . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579 (1992). . . . . . . . . . . . . . . . . . 4, 5, 6, 7

*In the Matter of the Application of the United States of America for an Order*
 *Authorizing the Release of Historical Cell-Site Information*,
 809 F. Supp.2d 113 (E.D.N.Y. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Katz v. United States,* 389 U.S. 347 (1967). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Kyllo v. United States*, 533 U.S. 27 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Raheem v. Kelly*, 257 F.3d 122 (2d Cir. 2001).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Riley v. California*, 134 S. Ct. 2473 (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7, 8, 9, 10, 11

*Simmons v. United States*, 390 U.S. 377 (1968). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Smith v. Maryland,* 442 U.S. 735 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Smith v. Smith*, ____ F. Supp.2d ____, 2003 WL 22290984 (S.D.N.Y. Sept. 29, 2003). . . . 3, 5, 6

*United States v. Concepcion*, 983 F.2d 369 (2d Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*United States v. Davis*, 754 F.3d 1205 (11th Cir. 2014), *reh'g granted en banc*,
 ____ Fed.Appx. ____, 2014 WL 4358411 (11th Cir. Sept. 4, 2014). . . . . . . 1, 7, 8, 10, 11

*United States v. Burrous*, 934 F.Supp. 525 (E.D.N.Y. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*United States v. Jones*, __ U.S. __, 132 S. Ct. 945 (2012). . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 11

*United States v. Jordan*, 924 F. Supp. 443 (W.D.N.Y. 1996). . . . . . . . . . . . . . . . . . . . . . . . . 2, 4

*United States v. Stevens*, 935 F.2d 1380 (3d Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Watkins v. Sowders*, 449 U.S. 341 (1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

STATUTES

U.S. Const. Amend. IV. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 9, 10, 11

18 U.S.C. §2703(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Rule 403, Fed.R.Evid.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Rule 702, Fed.R.Evid.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

OTHER

Edward B. Arnolds et al., *Eyewitness Testimony* 297 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Henry F. Fradellaa, *Why Judges Should Admit Expert Testimony on the
    Unreliability of Eyewitness Testimony*, 2 Fed. Cts. L. Rev. 1 (Fall 2007).. . . . . . . . . . . 3, 5

Jennifer L. Devenporta, Steven D. Penrod and Brian L. Cutler,
    *Eyewitness Identification Evidence: Evaluating Commonsense Evaluations*,
    3 Psychol. Pub. Pol'y & L. 338 (June/September 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . 6

iv

**Introduction**

This Memorandum of Law is submitted on behalf of defendant Antione Chambers, and in support of his motion *in limine* to permit expert testimony with respect to the reliability of eyewitness testimony.  This Memo of Law also seeks reconsideration of the Court's prior ruling denying Mr. Chambers's motion to suppress historical cell site evidence based on two decisions, one by the Supreme Court, *Riley v. California*, 134 S. Ct. 2473 (2014), and the other by the Eleventh Circuit, *United States v. Davis*, 754 F.3d 1205 (11th Cir. 2014), *reh'g granted en banc*, ____ Fed.Appx. ____, 2014 WL 4358411 (11th Cir. Sept. 4, 2014), that have been decided since the Court issued its decision in this case.

Accordingly, for the reasons set forth below, it is respectfully submitted that Mr. Chambers's motion *in limine* be granted, and that his motion for reconsideration be granted, and the historical cell site evidence suppressed.

**ARGUMENT**

**POINT I**

**GIVEN THE CENTRAL ROLE OF THE IDENTIFICATION EVIDENCE IN THE CASE AGAINST MR. CHAMBERS, AS WELL AS THE POWER OF IDENTIFICATION EVIDENCE GENERALLY, MR. CHAMBERS SHOULD BE PERMITTED TO PRESENT EXPERT TESTIMONY REGARDING FACTORS THAT INFLUENCE THE RELIABILITY OF EYEWITNESS IDENTIFICATION, INCLUDING THE USE OF SUGGESTIVE AND/OR SERIAL PROCEDURES**

As detailed in Mr. Chambers's pre-trial and reconsideration motions, the identification procedures employed here were suggestive (even if not sufficiently suggestive to warrant preclusion as a matter of law).  Consequently, the risk of misidentification is sufficiently

1

enhanced that the Court should permit Mr. Chambers to present expert testimony on the issue of eyewitness identifications.

Improving the jury's understanding of the varied factors that can exert an impact on the reliability of eyewitness identifications permits a more balanced understanding – than is possible through cross-examination – of the power of suggestive procedures on identifications already subject to the distorting influences of numerous internal and external stimuli. *See United States v. Jordan*, 924 F. Supp. 443, 448-49 (W.D.N.Y. 1996).

While the decision whether to permit such expert testimony is committed to the Court's discretion, and there are cases that permit such testimony and other decisions that preclude it, *compare, e.g.*, *Jordan*, 924 F.Supp. at 447-49, with *United States v. Burrous*, 934 F.Supp. 525, (E.D.N.Y. 1996), ultimately it is a case- and fact-specific determination. *See also Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir.1996) (per curiam). Here, it is respectfully submitted that the identification process – involving serial photo displays before a third attempt finally resulted in a positive identification of Mr. Chambers – is novel and extraordinary, thereby warranting expert testimony to provide the jury necessary context.

Accordingly, Mr. Chambers should be permitted to present an expert witness to testify regarding factors which affect the reliability of eyewitness identifications, given the suggestive circumstances surrounding the three identification procedures employed here. *See e.g. United States v. Concepcion*, 983 F.2d 369 (2d Cir. 1992); *see also Burrous*, 934 F.Supp. at 528 (holding that one of the "special considerations" which made expert testimony unnecessary was the fact that the "in-court eyewitness identification was [not] preceded by a suggestive pre-trial identification.").

A.   ***Expert Testimony Regarding the Reliability of Eyewitness Identifications Is Particularly Necessary When, as Here, the Procedures Employed By Law Enforcement to Obtain the Identification Were suggestive, and the Identification Evidence Plays a Central Role in the Case Against the Defendant***

Ensuring that a jury is aware of the inherent unreliability of eyewitness identifications is particularly important when the circumstances surrounding an identification are suggestive, even if they are not so suggestive to warrant exclusion as a matter of law.  While cross-examination of eyewitnesses may illuminate the circumstances surrounding a pre-trial identification, the role that those circumstances play in the reliability of an identification cannot be conveyed to a jury without the assistance of expert testimony.

In addition to clarifying how showing a witness a single photograph immediately following an unsure and tentative identification can have an impact on further identifications by that witness, an expert would assist to dispel the misconceptions, clothed as common sense, which invests eyewitness identification evidence with illusory dependability.  *See Smith v. Smith*, ____ F. Supp.2d ____, 2003 WL 22290984, at *10 (S.D.N.Y. Sept. 29, 2003) (explaining that although jurors understand that "certain factors can affect the accuracy of an identification . . . many do not have an understanding of the impact of other factors").

For instance, expert testimony would address the relationship between confidence and accuracy, the effect of weapons and stress on the ability to process surroundings, the higher rate of inaccuracy correlated with cross-racial identifications, and the impact on reliability of factors such as the amount of time between the event and the identification and the conditions under which the witness saw the perpetrator.  *See e.g.* Henry F. Fradellaa, *Why Judges Should Admit Expert Testimony on the Unreliability of Eyewitness Testimony*, 2 Fed. Cts. L. Rev. 1 (Fall 2007).

Presentation of expert testimony regarding the fallacy of eyewitness identification is also necessary given the tension between the inherent unreliability of eyewitness identifications and the "powerful impact" identification evidence has on a jury, as recognized by the Supreme Court in *Watkins v. Sowders*, 449 U.S. 341, 352 (1981), almost thirty years ago, as well as the central role that the identifications of the two witnesses play in the prosecution's case against Mr. Chambers here.  *See e.g. Jordan*, 924 F. Supp. at 447 (". . . cases suggest that where a prosecutor relies wholly on eyewitness identifications, such expert testimony should probably be admitted.").

**B.** *Expert Testimony Regarding the Reliability of Eyewitness Identification Is Admissible Pursuant to the Requirements of* **Daubert v. Merrell Dow Pharmaceuticals***, 509 U.S. 579 (1992), and Rule 702, Fed.R.Evid.*

Pursuant to the Federal Rules of Evidence, a qualified expert may be permitted to testify if (1) his or her "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," the testimony is (2) "based on sufficient facts or data," (3) "the product of reliable principles and methods," and (4) he or she "has reliably applied the principles and methods to the facts of the case."  Rule 702, Fed.R.Evid.; *see also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

**1.** *The Research Underlying Expert Testimony Regarding the Reliability of Eyewitness Identification Is Both Long-Standing and Well-Established*

In order to determine whether the expert's testimony is scientifically sound, the District Court is tasked with an "assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id*., at 591.  The focus of this evaluation must remain "solely on

4

principles and methodology, not on the conclusions that they generate." *Id*., at 595.

In addition, expert testimony in the area of eyewitness identification "generally . . . addresses the factors that *could* affect the accuracy of an identification," rather than opining about the reliability of the specific identifications which have taken place in a particular case. *Smith*, 2003 WL 22290984, at *9 (emphasis in original).

Research on the reliability of eyewitness identifications has spanned decades, and the numerous factors that contribute to the fallability of human perception and memory are well established among social scientists. *See Why Judges Should Admit Expert Testimony on the Unreliability of Eyewitness Testimony*, 2 Fed. Cts. L. Rev. at 5-20. Most importantly, perception, acquisition and encoding of even simple, non stressful events is subject to the warping influence of numerous internal and external circumstances. *See id*., at 7-9. Further, the additional, and very significant, influences of things like a small window of opportunity to view a stranger, the impact of stress resulting from violence or the presence of a weapon, or the interference of "cross-racial bias" with the initial encoding of an individual's face, are all understood to exert an impact on the reliability of an eyewitness identification. *Id*., at 10-15.

In addition, beyond the variances of perception, the intrusion of expectations, and the interference of external stimuli during the initial encoding and subsequent recall of events, the damage that can be done to even a well-established memory by suggestive identification procedures is well recognized both in the field of social science and within the courts. *See Why Judges Should Admit Expert Testimony on the Unreliability of Eyewitness Testimony*, 2 Fed. Cts. L. Rev. at 16-20; *see also Simmons v. United States*, 390 U.S. 377, 384 (1968); *see also Raheem v. Kelly*, 257 F.3d 122, 133 (2d Cir. 2001).

5

> **2.**     ***The Susceptibility of Eyewitness Identification Evidence to Misapprehension Is Sufficient to Make Expert Testimony Necessary to "Assist the Trier of Fact" to Understand Fully the Central Evidence Against Mr. Chambers Herein***

With respect to the requirement under *Daubert* that expert testimony "assist the trier of fact to understand or determine a fact in issue," the more complete comprehension provided by expert testimony on the factors impacting the reliability of eyewitness identifications would assist the jury in accurately assessing, not the credibility of a witness, but the reliability of his or her identification. *Daubert*, 509 U.S. at 592. For example, one of the most counterintuitive things an expert can explicate is the common sense misapprehension that witness credibility always reflects on the accuracy of an eyewitness identification. *See e.g. United States v. Stevens*, 935 F.2d 1380, 1400 (3d Cir. 1991).

Furthermore, the extent to which eyewitness identification evidence is misunderstood by the average person is in direct contrast to the heavy weight it is afforded by a jury. *See Smith*, 2003 WL 22290984, at *10 (recognizing that although "mistaken identification may result from any number of deficiencies in an observer's perception or memory[,] . . . jurors place considerable weight on the testimony of eyewitnesses") (*citing* Edward B. Arnolds et al., *Eyewitness Testimony* 297 (1984)).

Expert testimony compensates for the limits of the average person's common sense knowledge regarding the reliability of eyewitness identifications, and is consequently necessary to ensure that a jury fully understands the evidence presented. Jennifer L. Devenporta, Steven D. Penrod and Brian L. Cutler, *Eyewitness Identification Evidence: Evaluating Commonsense Evaluations*, 3 Psychol. Pub. Pol'y & L. 338, 346-53 (June/September 1997).

Finally, expert testimony in this case would not violate the strictures of Rule 403, Fed.R.Evid., as the testimony is relevant to an important issue in the case, and its probative value is *not* substantially outweighed by any potential to confuse or mislead the jury, or cause unfair prejudice or undue delay, waste time, or constitute cumulative evidence.  *See e.g. Daubert*, 509 U.S. at 592.

Accordingly, expert testimony which clarifies the role of distorting influences on eyewitness identification does not "usurp[]" the role of the jury, but rather, is based on sound and well established science, and will assist the jury in assessing commonly misunderstood evidence which has great influence generally, and especially when the identification procedures were unusual and the identification constitutes the central piece of evidence in an otherwise weak case.

### POINT II

**THE HISTORICAL CELL SITE DATA FOR 717-643-6130, OBTAINED PURSUANT TO AN ORDER ISSUED UNDER THE STORED COMMUNICATIONS ACT ("SCA") ABSENT A SHOWING OF PROBABLE CAUSE, SHOULD BE SUPPRESSED BECAUSE HISTORICAL CELL SITE <u>EVIDENCE IS PROTECTED BY THE FOURTH AMENDMENT</u>**

The Court's December 13, 2013, decision (Dkt.# 34) denying Mr. Chambers's motion to suppress the historical cell site information the government obtained via an order issued pursuant to 18 U.S.C. §2703(d) of the Stored Communications Act ("SCA") was issued prior to two extraordinarily relevant and compelling decisions:  the Supreme Court's in *Riley v. California*, 134 S. Ct. 2473 (2014) (warrantless search of cell phone data does not fall within the "search incident to arrest" exception to the warrant requirement), and the Eleventh Circuit's in *United States v. Davis*, 754 F.3d 1205 (11th Cir. 2014), *reh'g granted en banc*, ____ Fed.Appx. ____,

2014 WL 4358411 (11th Cir. Sept. 4, 2014) (warrant required to obtain historical cell site information pursuant to the SCA).

Following *Riley* and *Davis*, it is respectfully submitted that historical cell site evidence, essentially amounting to the use of electronic surveillance to track a person's movements over an extended period of time, falls within the scope of the probably cause and warrant requirements of the Fourth Amendment. *See also United States v. Jones*, __ U.S. __, 132 S. Ct. 945 (2012) (recognizing Fourth Amendment implications of warrantless and prolonged GPS tracking).

    **A.**     ***The Court's Reasoning In* Riley*, When Applied to Cumulative Historical Cell Site Evidence, Compels the Conclusion That Such Information Is Protected by the Fourth Amendment***

As Justice Sotomayor's concurring opinion in *Jones* pointed out, the Fourth Amendment's adaptation to changing expectations is apparent from its transition from protection against solely physical intrusions on property to violations of a "subjective expectation of privacy that society recognizes as reasonable." 132 S. Ct. at 954 (Sotomayor, J., concurring) (*quoting Kyllo v. United States*, 533 U.S. 27, 31–33 (2001)); *see also Smith v. Maryland,* 442 U.S. 735, 740–741 (1979) (citing *Katz v. United States,* 389 U.S. 347, 361 (1967) (Harlan, J., concurring)).

Because modern technology has evolved to permit surveillance to be conducted without any form of physical intrusion, or even contact, the importance of the Fourth Amendment protection of privacy interests is all the more urgent. *Jones*, 132 S. Ct. at 953, 961 – 963. The Supreme Court again acknowledged the need to adapt when it found in *Riley* that cell phones, which hold "vast quantities of personal information," warranted a re-balancing of the government interests in securing a scene and preventing the destruction of evidence after an arrest against an individual's privacy interest in the object searched. *Riley*, 134 S.Ct. at 2485-89.

In *Riley*, the Supreme Court held that, given the heightened privacy expectation in the information contained on the average cell phone, the qualitative, as well as the quantitative, difference in the information which can be obtained from cell phones and those objects traditionally searched during an arrest (wallets, etc.), justified excluding cell phone searches from the search incident to arrest exception. *Id*., at 2489-93.

Citing the immense storage capacity of cell phones, the Court also explained that the nature of the information which is stored on cell phones

> expose[s] to the government far more than the most exhaustive search of a house: A phone not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form—unless the phone is.

*Id*., at 2491.

From videos to applications to internet browsing history to GPS monitoring, the privacy implications of permitting a warrantless search of information that provides law enforcement with "[t]he sum of an individual's private life . . . through a thousand photographs labeled with dates, locations, and descriptions," are obvious. *Id*., at 2489.  That the Fourth Amendment warrant requirement is necessary to protect an individual from such an invasion of privacy is essentially self-evident.

       **1.**      *The Expectation of Privacy in the Broader Conclusions Which Can Be Drawn from Cumulative Historical Cell Site Data Is Reasonable and Warrants Protection Under the Fourth Amendment*

Historical cell site information implicates similar privacy interests as those underlying the reasoning in *Jones* and *Riley*.  *See Jones*, 132 S.Ct. at 955 (Sotomayor, J., concurring).  Although the majority in *Jones* relied upon physical intrusion to justify Fourth Amendment protection,

*Riley* has made clear that the Fourth Amendment is implicated when there is a privacy interest even in information that is stored or transmitted electronically, and which might not otherwise necessarily be entitled to privacy protection, but from which broader conclusions can be drawn (about a person's conduct, contacts, and communications).  134 S.Ct. at 2494-95.

In *United States v. Davis*, the Eleventh Circuit explained that an expectation of privacy in the context of cell phone data and GPS tracking arises from the fact that the information gathered paints a picture that is more than the sum of its parts.  754 F.3d at 1215-16.  Therefore, even if there is not a reasonable expectation of privacy in each individual piece of information contained on a  cell phone, or in every location someone visits, the plethora of information that can be gathered from a cell phone, just like the aggregation of GPS tracking data reveals more about an individual than any one piece could divulge.  *Id.*

Accordingly, in light of the Supreme Court's recent decision in *Riley* and the Eleventh Circuit's decision in *Davis*, it is respectfully submitted that this Court should adopt the reasoning provided in *In the Matter of the Application of the United States of America for an Order Authorizing the Release of Historical Cell-Site Information*, 809 F. Supp.2d 113 (E.D.N.Y. 2011), given that the government's request for 61 days of cell site data here certainly implicates the privacy interests protected by the Fourth Amendment.

> **2.    *Alternatively, Because Location Information Obtained by Tracking a Cell Phone Has the Potential to Reveal All of An Individual's Movements, Not Just Those Knowingly Exposed to the Public, Historical Cell Site Data Itself, Regardless of Its Cumulative Nature, Is Protected Bu the Fourth Amendment***

The Eleventh Circuit went even further in *Davis*, concluding that because of the nature of a cell phone, even a single "point of cell site location data" must be protected by the warrant and

probable cause requirements of the Fourth Amendment. *Id.*, at 1216. As the Court in *Davis*

explained, because a cell phone, "unlike an automobile, can accompany its owner anywhere," the

privacy expectation is not in the information which is revealed by an aggregation of cell site data,

but in the cell site data *itself*. *Id.* As the Court pointed out in *Davis*, using a cell phone, unlike

operating an automobile, is not necessarily an event that has been exposed to the public:

> [o]ne's car, when it is not garaged in a private place, is visible to
> the public, and it is only the aggregation of many instances of the
> public seeing it that make it particularly invasive of privacy to
> secure GPS evidence of its location . . . In contrast, even on a
> person's first visit to a gynecologist, a psychiatrist, a bookie, or a
> priest, one may assume that the visit is private if it is not
> conducted in a public way . . . Thus, the exposure of the cell site
> location information can convert what would otherwise be a
> private event into a public one.

*Id.*, at 1215-16.

However, given the government's request for records spanning 61 days, whether Fourth

Amendment protection is required for each individual point of cell site data is irrelevant here.

The principles established in *Jones* and *Riley* encourage protection of "a reasonable societal

expectation of privacy in the sum of one's public movements," which has certainly been

implicated by two months' worth of location information in the form of historical cell site data.

*Jones*, 132 S. Ct. at 956 (Sotomayor, J., *concurring*).

Accordingly, in light of the changing landscape of Fourth Amendment jurisprudence

augured in by *Riley* and *Davis*, it is respectfully submitted that because the historical cell site data

for 717-643-6130 was obtained without a showing of probable cause or a warrant, the Court

should reconsider Mr. Chambers's prior motion to suppress, and suppress the historical cell site

data.

**Conclusion**

Accordingly, for all the reasons set forth above, it is respectfully submitted that Mr.

Chambers's motions should be granted in their entirety.


 Dated: 9 September 2014
        New York, New York


                                        Respectfully submitted,

                                          /S/ Joshua L. Dratel
                                        Joshua L. Dratel
                                        Joshua L. Dratel, P.C.
                                        29 Broadway, Suite 1412
                                        New York, New York 10006
                                        (212) 732-0707
                                        jdratel@joshuadratel.com

                                        *Attorneys for Defendant Antione Chambers*


   *– Of Counsel –*
Joshua L. Dratel
Whitney G. Schlimbach