UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x

UNITED STATES OF AMERICA       :

                 - v.-         :

ANTIONE CHAMBERS,         :
       a/k/a "Twizzie,"

                         :

           Defendant.

                         :
------------------------------------------------------x

S2 13 Cr. 345 (LGS)

GOVERNMENT'S OPPOSITION TO THE DEFENDANT'S
SUPPLEMENTAL MOTIONS *IN LIMINE*

PREET BHARARA
United States Attorney for the
Southern District of New York
Attorney for the United States
of America

NEGAR TEKEEI
SANTOSH ARAVIND
Assistant United States Attorneys
      - Of Counsel -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x

UNITED STATES OF AMERICA                :

                        - v.–                :

ANTIONE CHAMBERS,                       :
        a/k/a "Twizzie,"

                                 :
                Defendant.
                                 :
------------------------------------------------------x

S2 13 Cr. 345 (LGS)

### GOVERNMENT'S OPPOSITION TO THE DEFENDANT'S SUPPLEMENTAL MOTIONS *IN LIMINE*

The Government respectfully submits this memorandum of law in opposition to the defendant's supplemental motions *in limine*.    The defendant moves *in limine* for (1) permission to present expert testimony regarding the reliability of eyewitness identification, and (2) reconsideration of the Court's denial of the defendant's pre-trial motion to suppress historical cell site evidence.

First, Chambers's proposed testimony regarding eyewitness identifications does not meet the basic requirements for expert testimony and should be precluded on that ground alone. Moreover, the proffered expert testimony will not assist the jury, will confuse the jury, and consist primarily of common sense principles that can be explored through cross-examination and reinforced with a jury instruction.

Second, Chambers's motion for reconsideration should be denied because there has been no intervening change in controlling applicable law, and even under the cases cited by Chambers, the Court's original reasoning denying Chambers's motion still applies.

For these reasons, and as detailed further below, the Court should deny both motions.

## ARGUMENT

I. **CHAMBERS'S PROPOSED EXPERT TESTIMONY REGARDING EYEWITNESS IDENTIFICATIONS DOES NOT MEET THE BASIC REQUIREMENTS FOR EXPERT TESTIMONY AND SHOULD BE PRECLUDED.**

Chambers's motion to present expert testimony regarding the reliability of eyewitness identification fails to provide (1) notice regarding the intended expert and the intended expert's qualifications, and (2) a proffer of the intended expert's testimony that includes sufficient information regarding the bases forthat testimony, so that the Court can evaluate whether the testimony consists of "scientific knowledge" and is supported by appropriate validation.   For these reasons, and for the reasons stated below, Chambers's motion to present expert testimony is meritless.   The Government reserves the right to make additional arguments regarding Chambers's request if adequate notice is provided, and to request a hearing pursuant to *Daubert* v. *Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993) in advance of trial should the Court believe that having an expert on eyewitness identification would be appropriate.

**A.   Applicable Law**

Under Federal Rule of Evidence 702, "scientific, technical, or otherwise specialized knowledge" is admissible if it "will assist the trier of fact to understand the evidence or determine a fact in issue."   Under Rule 702, a trial judge may not admit expert scientific testimony unless the proffered scientific evidence is both relevant and reliable, and its evidentiary reliability is based on scientific validity. *See Daubert* v. *Merrell Dow Pharm., Inc.,* 509 U.S. 579, 590 (1993).   In *Daubert,* the Supreme Court set forth a two-part test governing the admission of expert testimony: (1) the expert testimony must consist of "scientific knowledge"—that is, the testimony must be supported by appropriate validation; *and* (2) the evidence or testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* at 590–91.   In *Kumho Tire Co. v. Carmichael,* 526 U.S. 137 (1999), the Supreme Court held that trial courts are to apply the

requirements of *Daubert* in considering whether to admit expert testimony in non-scientific fields as well.

In *Daubert,* the Supreme Court identified four factors that trial courts should consider when evaluating the reliability prong of *Daubert/Kumho:*

(1) Whether the theory or technique used by the expert can be, and has been, tested;

(2) Whether the theory or technique has been subjected to peer review and publication;

(3) The known or potential rate of error of the method used; and

(4) The degree of the method's or conclusion's acceptance within the relevant scientific community.

*See* 509 U.S. at 593–94.

Application of these factors to the proffered testimony is accomplished to ensure that expert evidence "rests on a reliable foundation."   *See id.*   Where the proponent of the testimony fails to present enough evidence to demonstrate to the court the scientific validity of the research supporting the expert's conclusions, the trial court cannot determine whether the testimony is well-founded.   Consequently, the proponent bears a significant burden in proving reliability: "[I]t is not enough that a proffer of expert testimony include the substantive areas of the proposed testimony. A proffer must also include sufficient information regarding the bases for the expert's opinion."   *United States* v. *Jordan*, 924 F. Supp. 443, 447 (W.D.N.Y. 1996); *see also United States* v. *Brien*, 59 F.3d 274, 277–78 (1st Cir. 1995); *United States* v. *Rincon*, 28 F.3d 921, 924–25 (9th Cir. 1994).   With respect to "scientific knowledge," the proposed testimony must be supported by appropriate validation, peer review, and publication.   *Daubert*, 509 U.S. at 592. The Supreme Court has made it clear that the district court must act as the "gatekeeper" in screening expert evidence.   *General Electric Co.* v. *Joiner*, 522 U.S. 136, 142 (1997).   Second, the subject matter of the proposed testimony should be beyond the ken of the average juror.   *See Salem* v. *U.S. Lines Co.*, 370 U.S. 31, 35 (1962) (within broad discretion of district court to

exclude expert testimony because jurors are "as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training") (quotation omitted); *United States* v. *Cruz*, 981 F.2d 659, 663-64 (2d Cir. 1992).

Even when a theory or methodology satisfies the "scientific knowledge" requirement, in order to be admissible, expert testimony must also "assist the trier of fact to understand or to determine a fact in issue." *Daubert*, 113 S.Ct. at 2796. This second requirement relates primarily to relevance. *Id.* at 2795. It requires the district court to make a preliminary determination as to whether the scientific knowledge can be applied to facts of the case at hand. *Id.* at 2796. However, a determination that evidence is relevant does not end the inquiry. Rather, *Daubert* reiterates that the district court may nonetheless exclude relevant expert evidence pursuant to Rule 403 "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *Daubert*, 509 U.S. at 595 (emphasis added) (internal quotations omitted). "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of that risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses." *Id.* at 595 (quoting J. Weinstein, Rule 702 of The Federal Rules of Evidence Is Sound, 138 F.R.D. 631, 632 (1991)). *See also United States* v. *Young*, 745 F.2d 733, 766 (2d Cir. 1984) (Newman, J., concurring) (danger of confusion stems from the "aura of special reliability and trustworthiness surrounding expert testimony" (quoting *United States* v. *Fosher*, 590 F.2d 381, 383 (1st Cir. 1979)); *United States* v. *Fletcher*, 928 F.2d 495, 503-04 (2d Cir. 1991). A trial court judge, therefore, may exclude reliable scientific evidence, if the court concludes that the risk of confusing the jury is too great. As the Supreme Court explained in *Daubert*:

> We recognize that in practice, a gatekeeping role for the judge, no matter how flexible, inevitably on occasion will prevent the jury from learning of authentic insights and innovations. That nevertheless, is the balance that is struck by the Rules of Evidence

                 designed not for the exhaustive search for cosmic understanding but
                 for the particularized resolution of legal disputes.

509 U.S. at 597, 113 S.Ct. 2786.

        "Expert testimony may be appropriate on the subject of eyewitness identification because of 'dangers' associated with the reliability of the evidence." *United States* v. *Veal*, 182 F.3d 902 (2d Cir. 1999) (citing *United States* v. *Serna*, 799 F.2d 842, 850 (2d Cir. 1986), a*brogated on other grounds*, *United States* v. *DiNapoli*, 8 F.3d 909, 914 n. 5 (2d Cir. 1993) (en banc)).   "Nonetheless, the expert evidence is properly excluded in cases where the proposed testimony 'basically consisted of general pronouncements about the lack of reliability of eyewitness identification' or contained 'conclusions [that] coincided with common sense.'" *Id.* (quoting *Serna*, 799 F.2d at 850).   A district court may properly address dangers of unreliable eyewitness identification testimony by giving a jury charge appropriate to the circumstances of the case. *Id.*   (citing *United States* v. *Luis*, 835 F.2d 37, 41 (2d Cir. 1987)).

        Expert testimony concerning the reliability of eyewitness identifications is routinely excluded in cases where such testimony will not be helpful to the jury.   Generally, eyewitness identification experts may be excluded: (1) where such testimony is unnecessary (as it coincides with common sense notions about eyewitness identification); (2) because such testimony impermissibly comments on the credibility of witnesses; (3) because of Rule 403 considerations; (4) because the proffered testimony is not sufficiently tied to the facts of the case; or (5) because of a combination of these factors. *See, e.g.*, *United States* v. *Rodríguez-Berríos,* 573 F.3d 55, 70-72 (1st Cir. 2009), *cert. denied*, 130 S. Ct. 1300 (2010) (testimony regarding lighting, lack of attention, and post-event information was properly excluded because cross-examination would test the reliability of identification); *United States* v. *Carter*, 410 F.3d 942, 949-51 (7th Cir. 2005) ("[T]he credibility of eyewitness testimony is generally not an appropriate subject matter for expert testimony because it influences a critical function of the jury—determining the credibility

of witnesses.") (quotation omitted); *United States* v. *Smith*, 156 F.3d 1046, 1053-54 (10th Cir. 1998) (no error in excluding testimony, where Government's case did not rest entirely on eyewitness identification and proffered testimony touched on areas of common knowledge); *United States* v. *Smith*, 122 F.3d 1355, 1358-59 (11th Cir. 1997) (holding that cross-examination and jury instructions highlighting particular identification problems, and not introduction of expert testimony, are proper means of attacking identification); *United States* v. *Rincon*, 28 F.3d 921, 926 (9th Cir.) ("Given the powerful nature of expert testimony, coupled with its potential to mislead the jury, we cannot say that the district court erred" in precluding the testimony), *cert. denied,* 513 U.S. 1029 (1994); *United States* v. *Harris*, 995 F.2d 532, 534-36 (4th Cir. 1993) (holding that except in narrow circumstances, such as cross-racial identification or observation under stress, eyewitness expert testimony "almost by definition, can be of no assistance to the jury"); *United States* v. *Blade*, 811 F.2d 461, 465 (8th Cir. 1987) ("[W]e would be especially hesitant to find an abuse of discretion [for excluding expert testimony on eyewitness identification] unless the government's case rested exclusively on uncorroborated eyewitness testimony."); *United States* v. *Thevis*, 665 F.2d 616, 641 (5th Cir. 1982) (testimony regarding eyewitness reliability inadmissible because jury capable of making credibility determination based on cross-examination); *United States* v. *Amaral*, 488 F.2d 1148, 1153 (9th Cir. 1973) (reasoning that effective cross-examination is adequate to reveal deficiencies in identification); *see also Washington* v. *Schriver,* 255 F.3d 45, 59–60 (2d Cir. 2001) (finding that exclusion of expert testimony did not rise to level of constitutional error under the confrontation and due process clauses because the issues the expert would have testified to were presented to the jury in other ways).   In sum, with this type of unhelpful expert testimony, the expert merely points out to the jury obvious weaknesses in such identifications that any competent defense attorney could convey to the jury without the aura of an "expert."

Thus, in *United States* v. *Serna*, 799 F. 2d 842 (2d Cir. 1986), *cert. denied*, 481 U.S. 1013 (1987), the Second Circuit affirmed the trial court's exclusion of the testimony because it would only have served to "muddy the waters."   *Id.* at 850.   There, the expert's proposed testimony "basically consisted of general pronouncements about the lack of reliability of eyewitness identification, particularly cross-racial identification, and many of his conclusions coincided with common sense."   *Id.*   In addition, the Court noted that that the expert "was ignorant of the conditions under which [the witness] identified [the defendant's] photograph," and his proffered testimony consisted merely of "general pronouncements about the lack of reliability of eyewitness identification."   *Id.* at 850.

Similarly, in *United States* v. *Lumpkin*, 192 F.3d 280 (2d Cir. 1999), the Second Circuit upheld the exclusion of an expert's proposed testimony because it "confused the jury's assessment of the [eyewitnesses'] credibility."   *Id.* at 288-89.   The Court concluded that "[b]y testifying that confidence bears little or no relationship to accuracy in identifications, [the expert] would effectively have inserted his own view of the officers' credibility for that of the jurors, thereby usurping their role."   *Id.* at 289.

District courts within the Second Circuit have also recognized that, often, identification experts may serve only to displace the role of the jury in making credibility identifications.   *See, e.g.*, *United States* v. *Burrous*, 934 F. Supp. 525, 528-30 (E.D.N.Y. 1996) (excluding eyewitness identification expert in robbery trial because testimony would be "distracting and confusing," case did not turn solely on accuracy of witness's identification, and allowing expert to testify would suggest that case turned on whether jury credited testimony of defendant or witness); *Smith* v. *Graham*, No. 10 Civ. 3450 (JPO) (THK), 2012 WL 2428913, at *2 (S.D.N.Y. May 7, 2012) (noting that, in state case underlying *habeas* claim, "[t]he testimony which [the defendant] sought to introduce concerned the general reliability of eyewitnesses, but did not directly contradict any of

their testimony").

Courts have permitted eyewitness expert testimony in limited cases when the expert was not merely testifying about common sense principles that are easily understood by a layperson, but rather, was testifying regarding some circumstance that makes the assessment of the identification particularly difficult, such as when the defendant and the witness are of different races.   *See United States* v. *Brown*, 45 M.J. 514, 517-18 (Army Ct. Crim. App. 1996) (error to exclude <u>in toto</u> expert testimony where sole eyewitness made cross-racial identification following erroneous identification); *United States* v. *Norwood*, 939 F. Supp. 1132, 1135 (D.N.J. 1996) (expert testimony permitted in case involving cross-racial identifications made by victims of robbery and carjacking while under stress and at gunpoint); *United States* v. *Jordan*, 924 F. Supp. 443, 448-49 (W.D.N.Y. 1996) (expert permitted to testify where victim-teller's identification based on confrontation with gun-wielding robber).   Likewise, such testimony may be appropriate where the Government's case rests exclusively on the eyewitness identification.   *See United States* v. *Downing*, 753 F.2d 1224, 1229, 1241, 1243 (3d Cir. 1985) (error to apply blanket rule of inadmissibility in case where conviction was based exclusively on eyewitness testimony); *United States* v. *Sebetich*, 776 F.2d 412, 419-20 (3d Cir. 1985) (where case against defendant rested exclusively on challenged identification, trial court should have held *in limine* hearing to consider admitting expert testimony).   But even courts permitting such expert testimony have acknowledged that it is not appropriate in all cases.   *See United States* v. *Smith*, 122 F.3d at 1359 (noting that no court has "embraced the position that expert testimony regarding eyewitness reliability ought to be admitted wholesale in every case").

Finally, in determining whether or not to admit such evidence, the trial court should consider whether instructions tailored to guide the jury in its consideration of identification testimony are sufficient to ensure a proper evaluation of identification testimony.   As the Second

Circuit noted in *Young* v. *Conway*, the Second Circuit has affirmed a district court's exclusion of expert testimony concerning eyewitness identification in favor of "a very detailed instruction to the jury regarding the evaluation of eyewitness identification evidence," and observed that district courts "may properly address the dangers of unreliable eyewitness identification testimony by giving a jury charge appropriate to the circumstances of the case."   *See Young*, 698 F.3d at 80 (quoting *United States* v. *Veal*, No. 98-1539, 1999 WL 446783 (2d Cir. June 16, 1999)). Likewise, the First Circuit in *United States* v. *Jones*, 689 F.3d 12, 20 (1st Cir. 2012) upheld the exclusion of an expert's testimony specifically because his testimony was "aimed at providing background information—not an opinion about facts at issue here" and, while "some of [the expert's] general concerns about stress, . . . suggestive procedures and witness confidence would be useful information for a jury . . . these cautions were more efficiently, and with less risk of confusion, conveyed by the court's intended jury instructions."   *See also United States* v. *Rincon*, 28 F.3d at 925 (no error in excluding expert testimony on ground that it would cause confusion, where court conveyed the information that defendant proposed to introduce "by providing a comprehensive jury instruction to guide the jury's deliberations"); *United States* v. *Smith*, 122 F.3d at 1359 (expert testimony unnecessary in part because defendant obtained jury instruction "highlight[ing] particular problems in eyewitness recollection"); *United States* v. *Burrous*, 934 F. Supp. at 527-28 (in case where identification was corroborated by other proof, expert witness would be excluded in favor of "thorough and evenly balanced jury charge" cautioning jury about use of identification testimony); *see also United States* v. *Luis*, 835 F.2d 37, 41 (2d Cir. 1987) (endorsing a "flexible approach" to trial judges' use of "a specific eyewitness charge in order to ameliorate the concerns expressed in *Wade* relating to the dangers inherent in eyewitness testimony that may lead to misidentification").   While recognizing the dangers inherent in eyewitness identifications, the Second Circuit has endorsed a balanced approach, stating in

explicit terms:   "we caution that much eyewitness identification is reliable and is, and should be, routinely accepted by juries."   *Young*, 698 F.3d at 69; *see also United States* v. *Luis*, 835 F.2d 37, 42 (2d Cir. 1987) (finding no abuse of discretion in district court's refusal to give defense counsel's requested eyewitness identification charge in part because "[t]he [] circumstances provide strong indicia that the identification of [defendant] as a participant in the crime for which he was charged was reliable").

## II.   Discussion

### 1. Scientific Knowledge

Chambers's argument that the proffered testimony from his unnamed expert constitutes scientific knowledge is undermined by his failure to demonstrate to the court the scientific validity of the research supporting his unnamed expert's conclusions.   *See Kumho Tire Co.*, 509 U.S. at 593-594.   "[I]t is not enough that a proffer of expert testimony include the substantive areas of the proposed testimony. A proffer must also include sufficient information regarding the bases for the expert's opinion."   *United States* v. *Jordan*, 924 F. Supp. 443, 447 (W.D.N.Y. 1996).   In his motion, Chambers seeks to introduce testimony summarized as "clarifying how showing a witness a single photograph immediately following an unsure and tentative identification can have an impact on further identifications by that witness," "assist[ing] in dispel[ling] the misconceptions . . . which invests eyewitness identification evidence with illusory dependability," and "the relationship between confidence and accuracy, the effect of weapons and stress on the ability to process surroundings, the higher rate of inaccuracy correlated with cross-racial identifications, and the impact on reliability of factors such as the amount of time between the event and the identification and the conditions under which the witness saw the perpetrator."   Chambers Mem. at 3.   Yet Chambers fails to identify a single scientific study or research that would support any of his unnamed expert's proposed areas of

testimony.    Instead, Chambers cites to a law review article summarizing these arguments.

Chambers Mem. at 3-5.    These are precisely the types of general pronouncements that have

been disregarded by courts in this and other circuits when evaluating whether expert witness

testimony on eyewitness identification should be admitted.    *See United States* v. *Veal*, 182 F.3d

902 (2d Cir. 1999) (citing *United States* v. *Serna*, 799 F.2d 842, 850 (2d Cir. 1986), a*brogated on

other grounds*, *United States* v. *DiNapoli*, 8 F.3d 909, 914 n. 5 (2d Cir. 1993) (en banc)); *United

States* v. *Brien*, 59 F.3d 274, 277–78 (1st Cir. 1995); *United States* v. *Rincon*, 28 F.3d 921, 924–25

(9th Cir. 1994).    Viewed in light of established legal precedent, Chambers's proffered testimony

of an unnamed expert with unidentified qualifications and unidentified scientific bases fails to

meet short of the requisite standard for scientific knowledge.

      2.    <u>Assisting the trier of fact</u>

      Chambers's proffered eyewitness identification testimony would not assist the trier of

fact and is more likely to confuse or mislead the jury.    Added caution is necessary because

expert testimony often carries a certain aura that might lead a jury to attach more significance to

the testimony than is reasonably warranted.    "Because of this risk," held the Supreme Court in

*Daubert*, "the judge in weighing possible prejudice against probative force under Rule 403 of the

present rules exercises more control over experts than over lay witnesses." 509 U.S. at 595, 113

S.Ct. 2786.    While expert testimony on the reliability of eyewitness identification may be

appropriate in a narrow range of circumstances, jurors using common sense and their faculties of

observation can judge the credibility of an eyewitness identification, especially since deficiencies

or inconsistencies in an eyewitness's testimony can be brought out during cross-examination. *See

United States* v. *Curry*, 977 F.2d 1042, 1052 (7th Cir. 1992), *cert. denied*, 507 U.S. 947, 113

S.Ct. 1357, 122 L.Ed.2d 737 (1993); *United States* v. *Christophe*, 833 F.2d 1296, 1300 (9th Cir.

1987).

The Government believes the evidence at trial will demonstrate that two witnesses independently identified Chambers as one of the robbers and kidnappers.   One of those witnesses was a female victim who was kidnapped by Chambers and had an opportunity to view Chambers without his mask on.   The other witness viewed Chambers, unmasked, while Chambers was in the witness's home, waiting for the female victim to retrieve a bag of cash. At trial, Chambers will be free to cross-examine each witness on factors related to their identification, including his theories about the identification procedures employed.   While factors that Chambers proffers may affect the reliability of eyewitness identifications, and, presumably, factors which Chambers's unnamed expert will testify about, may be informative, they are nothing that jurors using their common sense and their faculties of observation would not be able to use to judge the credibility of the witnesses.

In this case, Chambers seeks to admit the testimony of an unnamed expert—without qualifications, record of research, or publication in the field of eyewitness identification—on a variety of general circumstances that could affect the reliability of eyewitness identification in a case that involves two eyewitness identifications and overwhelming corroborating evidence, such as cell site evidence that demonstrates that Chambers was present at the crime scene Notwithstanding any potential probative value of the unnamed expert's proffered testimony, it suffers from serious defects that affect not only its admissibility as scientific evidence, but also its likelihood of confusing or misleading the jury.   As noted above, jurors using common sense and their faculties of observation can judge the credibility of an eyewitness identification, especially since deficiencies or inconsistencies in an eyewitness's testimony can be brought out during cross-examination. *See United States* v. *Curry*, 977 F.2d 1042, 1052 (7th Cir. 1992), *cert. denied*, 507 U.S. 947, 113 S.Ct. 1357, 122 L.Ed.2d 737 (1993); *United States* v. *Christophe*, 833 F.2d 1296, 1300 (9th Cir. 1987).   Furthermore, any dangers of unreliable eyewitness

identification testimony can be addressed, if the Court deems it appropriate, by giving a jury charge appropriate to the circumstances of the case.   *United States* v. *Veal*, 182 F.3d 902, 902 (2d Cir. 1999) (citing *United States* v. *Luis*, 835 F.2d 37, 41 (2d Cir.1987)); *United States* v. *Burrous*, 934 F. Supp. 525, 527-28 (E.D.N.Y. 1996) (denying defense motion to present expert testimony regarding eyewitness identification the case did not turn solely on accuracy of witness's identification and finding that a "thorough and evenly balanced jury charge . . . was the most effective means of guiding the jury in its evaluation of the victim's testimony).

   In denying Chambers's motion for suppression of the identification evidence, the Court, having found that Chambers had "failed to establish that the single candid photograph was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification," also found that "any question as to the reliability of the identification goes to the weight of the evidence, not its admissibility."   (Transcript of May 21, 2014 Pretrial Conference at 5.).   By extension, the Government submits that, if necessary, instructions tailored to guide the jury in its consideration of identification testimony—rather than the introduction of expert testimony—would be sufficient to ensure a proper evaluation of identification testimony.    Therefore, Chambers's motion to admit expert testimony on the reliability of eyewitness identification should be denied.

## III.    CHAMBERS'S MOTION FOR RECONSIDERATION OF THE COURT'S RULING ON THE ADMISSIBILITY OF HISTORICAL CELL SITE INFORMATION SHOULD BE DENIED.

### A.  Background

   Chambers first moved for suppression of historical cell site data for the cellphone with the call number 717-643-6130 (the "6130 Cellphone") on November 4, 2013.   After extensive briefing, on December 13, 2013, the Court denied Chambers's motion for several reasons. First, after analyzing existing case law regarding the reasonable expectation of privacy in cell

site information communicated for the purpose of making and receiving calls in the ordinary course of provision of cellular phone service, the Court held that "under the law as it now stands, I do not find support that Fourth Amendment rights are at stake when historical cell site data is voluntarily disclosed to third parties like cell service providers."   (Transcript of Dec. 11, 2013 Pretrial Conference ("Dec. 11, 2013 Tr.") at 14.).   Second, the Court found that Chambers failed to establish any reasonable expectation of privacy in the data he was seeking to suppress. The Court held that Chambers "has not established his standing to assert a Fourth Amendment violation," and, nonetheless, focusing on his "reasonable expectation of privacy in the object or place of the search . . . Mr. Chambers has not established any reasonable expectation of privacy in the data from the target cell phone, as he has not asserted that it belongs to him or even that he used it."   (Dec. 11, 2013 Tr. at 16-17.).   Therefore, Chambers's failure to submit evidence that his Fourth Amendment rights were violated provided a second basis for denying his motion to suppress the cell site data.   (*Id*.).   Finally, the Court rejected Chambers's argument that the evidence should be suppressed because the application for the data did not meet the Stored Communications Act's "specific and articulable facts" requirement, because suppression was not a remedy provided for violations of the Act.   (*Id*. at 18.).

Chambers now moves for reconsideration of the Court's December 11, 2013 decision denying his motion, arguing that, "[f]ollowing *Riley* [v. *California*, 134 S. Ct. 2473 (2014)] and [*United States* v.] *Davis*[, 754 F.3d 1205 (11th Cir. 2014), *rehearing en banc granted, opinion vacated by* No. 12-12928, 2014 WL 4358411 (11th Cir., Sept. 4, 2014)], it is respectfully submitted that historical cell site evidence . . . falls within the scope of the probably [sic] cause and warrant requirements of the Fourth Amendment."   Chambers Mem. at 13.   Under the same reasoning relied upon by the Court in denying Chambers's pretrial motion to suppress, and because neither *Riley* nor *Davis* support his claim that historical cell site evidence requires a

showing a probable cause, Chambers's motion for reconsideration should be denied.

### B. Applicable Law

#### 1. Motions for Reconsideration

Although neither the Federal Rules of Criminal Procedure nor the Local Criminal Rules of this Court address the proper standard for a motion for reconsideration in criminal cases, courts in this district have applied the standard of Local Rule 6.3.   *See, e.g.*, *United States* v. *Carollo*, No. 10 Cr. 654 (HB), 2011 WL 5023241, at *2 (S.D.N.Y. Oct. 20, 2011); *United States* v. *Kerik*, 615 F.Supp.2d 256, 276 n. 27 (S.D.N.Y. 2009); *United States* v. *Leaver*, 358 F.Supp.2d 273, 277 n. 14 (S.D.N.Y. 2005).   Motions for reconsideration are strictly evaluated and "generally are 'denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'"   *Women's Integrated Network, Inc.* v. *U.S. Specialty Ins. Co.*, No. 8 Civ. 10518, 2011 WL 1347001, at *1 (S.D.N.Y. Apr. 4, 2011) (quoting *Shrader* v. *CSX Transp.*, 70 F.3d 255, 257 (2d Cir. 1995)).   A party may not re-litigate an issue already decided by the Court simply because of a disagreement with the Court's determination.   The grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence not previously available, or the need to correct a clear error or prevent manifest injustice.   *Women's Integrated Network, Inc.*, 2011 WL 1347001, at *1 (S.D.N.Y. April 4, 2011) (citing *Virgin Atl. Airways Ltd.* v. *Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)); *In re Zyprexa Products Liab. Litig.*, 653 F. Supp. 2d 181, 182 (E.D.N.Y. 2009) (citing *Doe* v. *N.Y.C. Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir. 1983)); *Nnebe* v. *Daus*, No. 06 Civ. 4991, 2006 WL 2309588, at *1 (S.D.N.Y. Aug. 7, 2006).

#### 2. Historical Cell Site Data

The Government incorporates by reference the background information, legal analysis,

and arguments regarding historical cell site data set forth in the Government's November 18,
2013 response to Chambers's original motion for suppression of historical cell site data.    In this
brief, the Government focuses on the two cases cited by Chambers—*United States* v. *Davis*, 754
F.3d 1205 (11th Cir. 2014), *rehearing en banc granted, opinion vacated by* No. 12-12928, 2014
WL 4358411 (11th Cir., Sept. 4, 2014) and *Riley* v. *California*, 134 S. Ct. 2473 (2014)—in his
motion for reconsideration.

### a.  *United States* v. *Davis*

Prior to *United States* v. *Davis*, only two United States Courts of Appeals directly
addressed the application of the Fourth Amendment to cell-site records, and both held that the
Government may permissibly obtain historical cell-site records without a warrant, albeit for
different reasons.    The Fifth Circuit refused to analyze cell-site data under cases applicable to
tracking devices and instead held that "cell site information is clearly a business record," and
Supreme Court precedent "does not recognize a situation where a conventional order for a third
party's voluntarily created business records transforms into a Fourth Amendment search or
seizure." *In re Application of U.S. for Historical Cell Site Data*, 724 F.3d 600, 614-15 (5th Cir.
2013).    The Third Circuit, by contrast, held that the SCA gives magistrate judges the option of
requiring a showing of probable cause, but that magistrate judges need not require probable
cause where, for example, based on *United States* v. *Knotts*, 460 U.S. 276, 281-82 (1983), and
*United States* v. *Karo*, 468 U.S. 705, 714 (1984), "[t]here is no evidence in the record that
historical" cell-site information may be used to approximate a person's location within "the
interior of the [person's] home."    *In re Application of U.S. for Order Directing Provider of
Elec. Commc'n Serv. to Disclose Records to Gov't*, 620 F.3d 304, 312-15 (3d Cir. 2010).

While the Second Circuit has not addressed directly whether individuals have a
reasonable expectation of privacy in historical cell-site information, it has suggested, albeit in a

summary order, that they do not, based on the "general principles" that individuals do not have a reasonable expectation of privacy in information voluntarily conveyed to third parties. *See United States* v. *Pascual*, 502 F. App'x 75, 80 & n.6 (2d Cir. 2012), *cert. denied*, 134 S. Ct. 231 (2013). Specifically, in *Pascual*, the defendant argued that "the district court improperly admitted cell-site records secured pursuant to a subpoena, without a warrant or a showing of probable cause." *Id.* at 80. Because the defendant failed to preserve the issue, the Second Circuit reviewed solely for plain error. The Second Circuit observed that the defendant's position that the cell-site records should have been suppressed was "(at the very least) in some tension with prevailing case law" that holds that individuals generally have no reasonable expectation of privacy in information voluntarily conveyed to third parties. *Id.* 80 & n.6 (citing *Smith* v. *Maryland*, 442 U.S. 735, 743-44 (1979); *United States* v. *Miller*, 425 U.S. 435, 442-44 (1976)). Accordingly, the Second Circuit concluded that it "was not plain error" for the district court to admit the cell-site evidence because "no governing precedent from this Court or the Supreme Court required exclusion" and, in fact, "the general principles adopted by those courts" regarding third-party disclosure "*pointed the other way*." *Id.* (emphasis added).

In *Davis*, the United States Court of Appeals for the Eleventh Circuit became the third Court of Appeals to address this issue and, unlike the Third and Fifth Circuits, "h[e]ld that cell site location information is within the subscriber's reasonable expectation of privacy [and t]he obtaining of that data without a warrant is a Fourth Amendment violation." 2014 WL 2599917, at *10. Even though *Davis* found a Fourth Amendment violation, *Davis* nevertheless held that, because "the law enforcement officers, the prosecution, and the judicial officer issuing the order, all acted in scrupulous obedience to a federal statute, the Stored Communications Act," the good faith exception to the exclusionary rule applied and "the trial court's denial of the motions to suppress did not constitute reversible error." 2014 WL 2599917, at *11. On September 4,

2014, the Eleventh Circuit vacated the opinion in *Davis* and ordered that the case be reheard *en banc*.   *See United States* v. *Davis*, No. 12-12928 (11th Cir. Sep. 4, 2014).

### b.  *Riley* v. *California*

In *Riley*, the Supreme Court held that the "search incident to lawful arrest" exception to the warrant requirement does not permit law enforcement to search the contents of an arrestee's cell phone without a warrant.   *Riley*, 134 S.Ct. at 2485.   In doing so, the Court first found that the governmental interests justifying the "search incident to lawful arrest" exception-protecting officer safety and preventing destruction of evidence-do not apply to the contents of a cell phone because "[d]igital data stored on a cell phone cannot itself be used as a weapon to harm an arresting officer," *id.* at 2485, and officers can prevent both the defendant and third parties from deleting any information from the cell phone, *id.* at 2486–88. The Court then analyzed a defendant's privacy interests in the contents of a cell phone compared to other objects that might be found in an arrestee's pockets, finding that the pervasive nature of personal information found on a cellphone dwarfed "the privacy concerns . . . implicated by the search of a cigarette pack, a wallet, or a purse."   *Id.* at 2488–89.   Because a defendant's privacy interests in the contents of a cell phone are so great, and the governmental interests in a warrantless search of cell phones are relatively weak, the Court found that cell phones cannot be searched incident to arrest without a warrant.   And, because the parties in *Riley* "agree[d] that these cases involve searches incident to arrest" *Riley* did not reach "the question whether the collection or inspection of aggregated digital information amounts to a search under other circumstances"—such as historical cell site data—was implicated.   *Id.* at 2489 n. 1

### C.  Discussion

As Chambers has not shown—and cannot make a showing of—any intervening change in controlling applicable law, any new evidence not previously available, or a need to correct a

clear error to prevent manifest injustice, he has failed to sustain his burden on this motion and it should be denied.   Nothing about the Eleventh Circuit's vacated decision in *Davis*, or the Supreme Court's decision in *Riley*, rises to the standard of controlling changes in case law that would permit reconsideration.   Not only is *United States* v. *Davis* not controlling law in the Second Circuit, it was vacated, and cannot be used to support Chambers's arguments.   And, even if *Davis* could be deemed to apply—which it does not—even the reasoning in *Davis* does not circumvent the applicability of the good faith exception to the exclusionary rule.   2014 WL 2599917, at *11.   Furthermore, *Davis* did not reach the issue of standing.   As the Court has previously held, Chambers failed to establish standing to seek to suppress the data on the 6310 Cellphone.   Nothing about *Davis* changes this holding.

The defendant's arguments regarding the applicability of *Riley* v. *California* are similarly unavailing.   While *Riley* may have fueled the academic debate about how the Supreme Court and other federal courts might view information—such as historical cell site information—obtained from third parties, it specifically declined to address the question of aggregated digital information such as historical cell site information.   *See United States* v. *Guerrero*, --- F.3d ----, 2014 WL 4476565 at *6-7 (5th Cir. 2014) (analyzing *Riley*'s applicability to historical cell site data obtained from third parties, and holding that the district court's decision denying defendant's motion to suppress historical cell site information was proper notwithstanding the Eleventh Circuit's vacated opinion in *Davis* or the Supreme Court's opinion in *Riley*).   Therefore, as *Riley* does not even address the issue of historical cell site information obtained from third parties, it cannot be deemed a change in controlling law.   Quite simply, cell site evidence is quite different from the contents of a cell phone.

In sum, Chambers's motion for reconsideration should be denied because there have been no intervening change in controlling applicable law that should change the Court's original

reasoning, which still applies: (1) under the law as it now stands, Fourth Amendment rights are not at stake when historical cell site data is voluntarily disclosed to third parties like cell service providers; (2) Chambers has failed to establish his standing to assert Fourth Amendment violation; and (3) suppression is not a remedy for violations of the Stored Communication Act.

<u>**CONCLUSION**</u>

For all of the foregoing reasons, the Government respectfully submits that the Court should deny the defendant's supplemental motions *in limine*.

Dated:  New York, New York
        September 16, 2014

                                Respectfully submitted,

                                PREET BHARARA
                                United States Attorney

        By:     _____/s/_____
                Negar Tekeei
                Santosh Aravind
                Assistant United States Attorneys
                Telephone: (212) 637-2482/1045