E984CHAc

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                          13 CR 345(LGS)

5    ANTOINE CHAMBERS,

6              Defendant.

7    ------------------------------x

8                                          New York, N.Y.
                                           September 8, 2014
9                                          11:10 a.m.

10
     Before:
11
                      HON. LORNA G. SCHOFIELD
12
                                           District Judge
13

14                          APPEARANCES

15
     PREET BHARARA
16        United States Attorney for the
          Southern District of New York
17   NEGAR TEKEEI
     SANTOSH ARAVIND
18        Assistant United States Attorneys

19   JOSHUA LEWIS DRATEL
          Attorney for Defendant
20

21

22

23

24

25

E984CHAc

```
 1              (Case called)

 2              THE COURT:  Good morning.

 3              So this was originally to be a suppression hearing

 4    that is now, obviously, not going to happen because Mr. Brown

 5    has pleaded guilty, but there are many motions that are open

 6    and outstanding.  So my plan during this conference is to go

 7    through the motions basically in the order that they were filed

 8    so that we know what we still need to deal with and what we

 9    don't, whether the parties' positions have changed, and so

10    forth.

11              The first motion is Mr. Glisson's motion to preclude

12    evidence.  That was Docket Number 43, and I will deny that as

13    moot since Mr. Glisson has now pleaded guilty.

14              The next motion is the government's motion in limine.

15    It is, actually, three motions.  It is Docket Number 46.  I

16    will take them in order.

17              The first application was to introduce Brown's

18    post-arrest statement, and the government originally had asked

19    to admit the statement with redactions, and Mr. Chambers had

20    asked to admit the statement in its entirety without redactions

21    as an exculpatory document or, in the alternative, to be

22    severed.

23              Let me hear from the government first.  Are you

24    withdrawing this motion, or are you still seeking to introduce

25    Mr. Brown's post-arrest statement?
```

E984CHAc

1          MS. TEKEEI:  Your Honor, may I have one moment,

2     please?

3          THE COURT:  Yes, sure.

4          Then I will ask Mr. Dratel what his position is.

5          MS. TEKEEI:  Yes, your Honor.

6          THE COURT:  Could you speak into the mike, please.

7          MS. TEKEEI:  Yes, your Honor.  I apologize.

8          We withdraw that motion.

9          THE COURT:  The government has withdrawn the motion.

10    Mr. Dratel, you had basically taken the position that you

11    wanted the statement admitted in its entirety.  Is that still

12    your application?

13         MR. DRATEL:  Yes, your Honor.

14         THE COURT:  So let me tell you what I would like to do

15    with respect to that one.  We really haven't had any briefing

16    or argument on this issue in this posture, so let me ask the

17    government whether it objects to the admission of Mr. Brown's

18    statement.

19         MS. TEKEEI:  Yes, your Honor.  It is hearsay.

20         THE COURT:  Okay.  So what I'm going to do is ask for

21    simultaneous letter briefs from the parties, due at the close

22    of business Thursday; and I would also like the government to

23    provide me with a copy of Mr. Brown's statement.  I don't know

24    if it has been provided to the other defendants; if so, I may

25    be the only person who doesn't know exactly what it says, but

E984CHAc

 1  it will be very helpful if I did.

 2          Let me tell you what my thinking is just to help you

 3  in educating me.  If the government calls Mr. Brown -- and I

 4  won't ask you to commit one way or the other right now -- then

 5  certainly Mr. Dratel can try to impeach him with the statement,

 6  and the statement may be independently admissible under

 7  Rule 801(d)(1).  I don't think there is any controversy about

 8  that.

 9          The question is if the government does not call

10  Mr. Brown and Mr. Chambers wants to introduce the statement,

11  then the question is whether Mr. Dratel is required to call

12  Brown as a witness, and he will be available as a witness,

13  having pleaded guilty, or whether Mr. Chambers may introduce

14  just the statement without calling him.  My current thinking is

15  that I am inclined to admit the statement without calling the

16  witness.  This is not a ruling.  I'm just telling you my

17  thinking, so you'll have a way to address this in a way that's

18  helpful.

19          The first question is, obviously, whether the

20  statement is hearsay.  We all know, under Rule 801, hearsay is

21  an out-of-court statement offered for the truth.  I haven't

22  seen the statement but I gather Mr. Brown doesn't mention

23  Mr. Chambers.  So we're not talking about a statement; we're

24  talking about an absence of a statement.  And it is not offered

25  for the truth of the matter asserted, it is offered for the

E984CHAc

1    truth of the matter not asserted.  Looking at the 801

2    definition, it doesn't appear to be hearsay.  Case law on that

3    subject would be of interest to me.

4          Then, I look, by analogy, to Rule 803(7), which

5    provides an exception to the hearsay rule in this kind of

6    circumstance for business records, and 803(10), which provides

7    a similar analogous exception to the hearsay rule for public

8    records.  And these rules would seem to suggest that the

9    statements are hearsay, requiring an exception.  However, I

10   read the advisory committee note, which says actually or

11   implies that the absence of information, in fact, is not

12   hearsay, and that 803(7), for example, was added just for

13   clarification but not because it was actually needed to avoid

14   inadmissibility because of hearsay.  So, based on that, and

15   particularly the advisory committee note, it seems to me that

16   it is not hearsay.

17         Now, the question is, even if it were hearsay, is

18   there some other basis by which a hearsay exception would

19   apply.  803(7) and 803(10) don't apply because they are very

20   specific to business records and public records; and since

21   Mr. Brown is available, the exceptions in Rule 804 don't apply,

22   but I believe that even if the statement is hearsay, 807, which

23   is the catchall provision for admitting hearsay, may provide a

24   basis for its admission.

25         Let me just note, Mr. Dratel, you know, of course,

6

E984CHAc

| | |
|---|---|
| 1 | that Rule 807 requires notice from you, so I would suggest you |
| 2 | put that notice in your letter.  But my thinking on 807 is |
| 3 | that, as a matter of fairness, I am inclined to believe that |
| 4 | the statement is reliable and the government should not be able |
| 5 | to object to its admissibility because it previously offered |
| 6 | the statement, although in a redacted form, but in a form that |
| 7 | still did not contain any idea of Mr. Chambers, and the |
| 8 | government was prepared to offer it in a trial that included |
| 9 | Mr. Chambers.  So it seems to me that it would be unfair for |
| 10 | the government to take the position now that the statement is |
| 11 | not reliable. |
| 12 | I am also concerned about the reliability of in-court |
| 13 | testimony, in contrast.  When the trial occurs, Brown will be |
| 14 | awaiting sentence.  He may be influenced by the perceived need |
| 15 | to curry favor with the government.  So for these reasons, it |
| 16 | seems to me that even if the statement were hearsay, Rule 807 |
| 17 | might well apply. |
| 18 | As I said, that's not a ruling.  That's just my |
| 19 | thinking.  If you can help me with the analysis or with case |
| 20 | law, I would be very interested; and as I said, I would like |
| 21 | that by close of business Thursday.  That is the first of the |
| 22 | government's motions in limine. |
| 23 | The second was a motion to introduce Mr. Glisson's and |
| 24 | Mr. Chambers' prior convictions under Rule 404(b) or 609(a), |
| 25 | and I assume that the government no longer wants a ruling as to |

E984CHAc

1    Mr. Glisson but does want a ruling as to Mr. Chambers.

2              Is that right?

3              MS. TEKEEI:  That is correct, your Honor.

4              THE COURT:  So, let me turn to that.  The question is

5    whether to admit or, in the alternative, allow

6    cross-examination of Chambers, should he take the stand, about

7    prior convictions; and my ruling is that the government's

8    motion is denied.  That information will not be admissible on

9    direct, nor can it be the subject of cross-examination, and let

10   me explain my ruling.  Rule 404(b) evidence of "crimes, wrongs,

11   or other acts" is evaluated in this circuit under an

12   inclusionary approach that allows evidence for any purpose

13   other than to show a defendant's criminal propensity.  *United*

14   *States v. McCallum*, 584 F.3d 471, 475 and 476, Second Circuit,

15   2009.  Courts may admit evidence of other acts by the defendant

16   if the evidence is relevant to an issue at trial other than the

17   defendant's character and if the risk of unfair prejudice does

18   not substantially outweigh the probative value of the evidence.

19   That is *United States v. Morrison*, 153 F.3d 34, at 57, Second

20   Circuit, 1998.

21             Here, evidence of Mr. Chambers' prior convictions

22   appears to be advanced for no purpose other than to prove

23   criminal propensity.  Nothing about the prior convictions is

24   similar to the current charges except that they involve

25   violations of the narcotics laws.  Also, the government's

E984CHAc

 1   reason for introducing the convictions is that "The

 2   circumstances leading to Chambers' prior narcotics convictions

 3   tend to establish that both men were knowledgeable about the

 4   narcotics trade, that they had a motive to commit the March 25

 5   robbery of the primary victim, a known drug dealer, and that

 6   they, rather than some other individuals, would have been

 7   likely to commit such a crime."  This is essentially an

 8   admission that the government seeks to use the evidence to

 9   establish criminal propensity, which as I said is not proper

10   under Rule 404(b).  In addition, evidence of Chambers' prior

11   convictions is far more prejudicial than probative.

12        This reasoning is equally applicable to the

13   government's application to cross-examine Chambers about his

14   prior conviction under Rule 609(a) if he decides to take the

15   stand.  609(a)(1), which governs impeachment by evidence of

16   criminal conviction, also provides that a prior conviction

17   "must be admitted if the probative value of the evidence

18   outweighs its prejudicial effect to the defendant."

19        Trial judges have broad discretion in making

20   determinations under Rule 609(a), and the "prime factor to be

21   considered is the probative value of the prior conviction as to

22   the witness's veracity." *United States v. Ortiz*, 553 F.2d 782,

23   784, Second Circuit, 1977.  "Where the prior conviction is for

24   the same offense as that at issue, the potential for prejudice

25   is greatly enhanced." *United States v. Puco*, 453 F.2d 539 at

E984CHAc

1   542, Second Circuit, 1971.

2          Where, as here, the prior convictions are generally

3   for the same offense, the potential for prejudice is high.  But

4   where the similarity between the prior convictions and the

5   current alleged offense ends there, the probative value is low.

6   Consequently, the probative value of the prior convictions does

7   not outweigh its prejudicial effect to Mr. Chambers; and the

8   application to introduce in any fashion his prior convictions

9   is denied.  So that is the second of the government's motions

10  in limine.

11         And the third is a motion to preclude

12  cross-examination of Detective Deloren about certain statements

13  and findings of Judge Batts in a prior proceeding.

14         What is the government's position in light of

15  Mr. Brown's guilty plea?  I don't know if Detective Deloren is

16  relevant to the investigation of Mr. Chambers, whether you are

17  still pursuing that motion or not.

18         MS. TEKEEI:  Yes, your Honor.  He still may testify.

19         THE COURT:  Okay.  Mr. Chambers had not opposed that

20  motion, but the other two defendants had, and I presumed that

21  Mr. Chambers was relying on that opposition.

22         MR. DRATEL:  Yes, your Honor.

23         THE COURT:  Would you like to oppose that motion?

24         MR. DRATEL:  Yes, your Honor.

25         THE COURT:  So I'm prepared to rule on that, but let

E984CHAc

```
1    me understand from the government, can you give me a better

2    idea, as I need it for my ruling, what Detective Deloren will

3    testify about Chambers.  I understood he was going to testify

4    about the search and the statements that Mr. Brown gave, but I

5    don't know what it is he has to say about Mr. Chambers.

6              MS. TEKEEI:  Your Honor, may I have one moment?

7              THE COURT:  Of course.

8              MS. TEKEEI:  Your Honor, Detective Deloren was the

9    initial case detective.  He provides the context for how the

10   investigation began and the background to the robbery.  He

11   interviewed the victims and the witnesses in the initial

12   instance, and he also interviewed other witnesses and other

13   individuals, including, for example, Mr. Chambers' family

14   members and his girlfriend, Ms. Dunbar, and so there are

15   various points and various, I guess, background information

16   that we would seek to elicit through Detective Deloren's

17   testimony.

18             THE COURT:  Okay.  So, basically, he will testify

19   about the robbery and the collection of evidence following the

20   robbery.  Is that more or less right?

21             MS. TEKEEI:  Yes, your Honor.  And the sequence of

22   events as the investigation unfolded.

23             THE COURT:  Okay.  Let me address this motion.  It is

24   the government's application for a ruling to preclude

25   cross-examination of Detective Deloren regarding his testimony
```

E984CHAc

in an unrelated 2006 case in which he was found not credible and his testimony was suppressed.  Let me first summarize the relevant facts.  The testimony and credibility determination at issue occurred in a case called *United States v. Cooper*, before the Honorable Deborah Batts.  During the hearing, Detective Deloren was questioned about the circumstances surrounding the detention and search of the defendant and the defendant's post-arrest statements.  Detective Deloren testified that the defendant appeared "nervous" and was sweating; that he appeared to be concealing something under his T-shirt and that he volunteered that he had a gun on his person.

Judge Batts concluded that it was "not clear that Officer Deloren, from his own testimony, was in a position to observe what he said he observed on the defendant.  She also questioned whether Detective Deloren could see that the defendant was nervous given that it was nighttime.  Detective Deloren was using a flashlight, and he only "leaned down for a matter of seconds."  In addition, Judge Batts found that it was "not credible" that Mr. Copper would just voluntarily say, as he's getting out of the car to be searched, "Anyway, I have a gun."  She considered the police officer's testimony to be "troublesome."

The government argues Detective Deloren's testimony and Judge Batts' determination, first, is inadmissible under Rule 608(b), and second, is hearsy under Rule 801, and it is,

E984CHAc

1    finally, not relevant.

2              Rule 608(b) of the Federal Rules of Evidence states,

3    "Except for a criminal conviction under Rule 609, extrinsic

4    evidence is not admissible to prove specific instances of a

5    witness's conduct in order to attack or support the witness's

6    character for truthfulness.  But the Court may, on

7    cross-examination, allow them to be inquired into if they are

8    probative of the character for truthfulness or untruthfulness

9    of the witness."

10             In *United States v. Cedeno*, 644 F.3d 79, Second

11   Circuit, 2011, the Second Circuit identified seven

12   non-exhaustive factors to be considered by courts assessing the

13   probative value and relevance of past judicial credibility

14   determinations under 608(b):

15             (1) "whether the prior judicial finding addressed the

16   witness's veracity in that specific case or generally";

17             (2) "whether the two sets of testimony involved

18   similar subject matter";

19             (3) "whether the lie was under oath in a judicial

20   proceeding or was made in a less formal context";

21             (4) "whether the lie was about a matter that was

22   significant";

23             (5) "how much time had elapsed since the lie was told

24   and whether there had been any intervening credibility

25   determination regarding the witness";

E984CHAc

1                  (6) "the apparent motive for the lie and whether a

2      similar motive existed in the current proceeding"; and

3                  (7) "whether the witness offered an explanation for

4      the lie and, if so, whether the explanation was plausible."

5                  Applying those factors here, I conclude that

6      cross-examination of Detective Deloren regarding his prior

7      testimony in Judge Batts' credibility determination is

8      permissible.  We're talking here about cross-examination.  Five

9      of the *Cedeno* factors weigh in favor of permitting the

10     cross-examination.  First, the credibility finding in *Cooper*

11     addressed both Detective Deloren's credibility in that case and

12     his veracity generally.  Judge Batts questioned the truth of

13     his specific statements, but she also concluded that she did

14     not believe the police officers and found their version of

15     events troublesome.  The broader implication is she had doubts

16     both about the detective's specific statements and the overall

17     veracity of the testifying police officers, including Detective

18     Deloren.  Second, the testimony in *Cooper* was similar to the

19     testimony anticipated here to the extent that, in both,

20     Detective Deloren did and would testify about the collection of

21     evidence after the arrest.  Third, the "lie" in *Cooper* was made

22     under oath in a judicial proceeding.  Fourth, the parties agree

23     that Detective Deloren's testimony concerned significant

24     matters.

25                  The fifth factor is the only factor that I believe

E984CHAc

1   weighs against the admission of testimony in question since

2   approximately eight years have passed between the testimony in

3   *Cooper* and the present case.  As for the sixth factor in both

4   *Cooper* and this case, Detective Deloren is testifying on behalf

5   of the government in support of criminal charges brought

6   against the defendant, leading to an inference that his motive

7   is the same in both cases.  As for the seventh factor, the

8   parties agree that it is impossible to evaluate any explanation

9   for the lie since the government's position is that Detective

10  Deloren did not lie in the prior proceeding.  On the whole,

11  then, *Cedeno* factors weigh in favor of permitting

12  cross-examination concerning Detective Deloren's prior

13  testimony and Judge Batts' credibility determination.

14          The government argues that testimony concerning the

15  detective's prior testimony and Judge Batts' credibility

16  determination is inadmissible hearsay pursuant to Rule 801.

17  The Second Circuit expressly declined to reach this issue in

18  *Cedeno* and the cases that followed it.  Whether or not Judge

19  Batts' credibility determination is hearsay, it is not in any

20  event admissible because of the proscription in Rule 608(b)

21  that I just described.  In other words, it is not admissible as

22  direct evidence.  Cross-examination, however, is never hearsay

23  as it is not evidentiary and it is not offered for the truth.

24  Moreover, it is expressly allowed under Rule 608(b).

25  Accordingly, the government's argument is rejected.

E984CHAc

1          The government also argues the probative value of

2     Judge Batts' statement is "minimal at best."  I disagree.

3     Judge Batts' statement about Detective Deloren's credibility is

4     very relevant to his reliability as a government witness in a

5     case where he is testifying about a crime, an alleged crime,

6     and the collection of evidence relating to that crime.

7          So for the foregoing reasons, the government's motion

8     is denied.  I will allow cross-examination concerning Judge

9     Batts' credibility determination should Detective Deloren take

10    the stand.  So that is the third of the government's motions in

11    limine, and that's Docket Number 46.

12         Next, let me turn to Chambers' motion to dismiss

13    Count three of the indictment.  I will deny that motion for

14    reasons that I will explain in a written opinion that should be

15    published in the next couple of days.

16         Fourth is Brown's motion for suppression of his

17    post-arrest statements and bill of particulars.  I will deny

18    that as moot.

19         Fifth is something I just received.  The government

20    made a letter motion for an order that the U.S. Probation

21    Office be permitted to disclose to the government the following

22    in its file regarding Chambers for the period of his three-year

23    supervision.

24         Does anyone know when that began?  It said in the

25    letter that it was transferred to the Southern District of New

E984CHAc

```
1   York, but I wasn't sure if that is also when it began or if it

2   had begun at some earlier time.

3            MR. DRATEL:  It began November 2011, I believe, your

4   Honor, but in New York, November 2012.  Initially it was in

5   Pennsylvania.

6            THE COURT:  Thank you.

7            MS. TEKEEI:  Your Honor, we had prepared to file as

8   part of our new motions in limine a briefing on this issue,

9   just so your Honor is aware, in light of Mr. Dratel's

10  opposition.

11           THE COURT:  I was not going to rule on it today.

12  Mr. Dratel gave me a fairly robust opposition.  If there is

13  anything you would like to say today in addition to what you'll

14  put in your written papers, I'm happy to hear that and happy to

15  hear from Mr. Dratel, or you can just rest on your papers.  I'm

16  sure Mr. Dratel will respond to them.

17           MR. ARAVIND:  Your Honor, I think it makes sense for

18  us to rest on our papers, just so that your Honor can see the

19  cases that we cite.  We believe that both the Supreme Court and

20  the Second Circuit has ruled in favor of the government's

21  application, and we'll be submitting that authority to your

22  Honor.

23           THE COURT:  Okay.  Thank you.

24           The one thing I had a question about -- I confess I

25  haven't read the cases, I'm not ruling -- but at least
```

E984CHAc

1    intuitively the Fifth Amendment argument seems like a

2    compelling argument.  On the other hand, we also all know that

3    probation gathers evidence from lots of places other than the

4    defendant, and so it would seem that, at the very least,

5    information provided by sources other than the defendant would

6    not be subject to many of the arguments that Mr. Dratel made.

7            So Mr. Dratel, would you like to talk about that now

8    or address it in your responsive papers?  Or you can do both.

9            MR. DRATEL:  I would like to address it in the

10   responsive papers.  I would like to flag an issue first, which

11   is that as a predicate for all this, I think it would be the

12   admissibility of the probation officer's testimony; in other

13   words, the 403 issue for us, which we flagged but didn't

14   address because the government hasn't proffered the basis for

15   admissibility to get around 403.

16           THE COURT:  I understand.  I assume the government

17   will make both arguments, not only that it wants the file but

18   it wants to call a probation officer, and then, Mr. Dratel, you

19   will respond.

20           The government, you said you thought you would be

21   filing today; is that right?

22           MS. TEKEEI:  Yes, your Honor.  The current briefing

23   schedule contemplates any additional motions in limine being

24   filed today.

25           THE COURT:  So I assume that that schedule also sets

E984CHAc

1     out when responses are due.

2                 MR. DRATEL:  Your Honor, because of the change in the

3     landscape since the last time we were together, if I could --

4     and also because of the other letter that is due Thursday -- if

5     I can get until Wednesday for our motions in limine.  We're

6     preparing them, but there may be some -- I want to make sure

7     that we haven't left any out that I thought either other

8     counsel were going to do or that now become relevant in the

9     absence of the other defendants.

10                THE COURT:  The problem is, then, I think I had given

11    the government a week, is that right, for responses?  My

12    problem is our final pretrial conference is on, I think, the

13    22nd, is that right, and I want to be sure that I have enough

14    time to consider the motions?

15                MR. DRATEL:  How about tomorrow?

16                THE COURT:  Tomorrow is fine, yes.  If the government

17    wants a one-day extension, that's fine, as well.

18                MS. TEKEEI:  Yes, thank you, your Honor.

19                THE COURT:  Okay.  Thank you.

20                All right.  Finally, number 6, I have letters from the

21    government and Mr. Chambers, Dockets 138 and 139, about the

22    schedule for the production of 3500 material and the

23    government's anticipated motion for a related confidentiality

24    order.  So what I would really like first is, Mr. Dratel -- I

25    will hear from you first -- you seem to have, perhaps, the best

E984CHAc

recollection of what the state of play was about discussions

about 3500 material.  If you would just recount that, and then

I will hear from Ms. Tekeei and see if it comports with her

recollection.

MR. DRATEL:  The question that we had at the

August 14th conference was when 3500 material would be

produced.  I don't think we had a specific date, although if we

did the math from when the trial date was supposed to be for

today and we just move that forward, I think that would end up

being the 12th of September, I think is the date that I had

moved it to.

THE COURT:  I thought it was going to be the Friday

before the trial, which would have made it the 19th, or is that

just wrong?

MR. DRATEL:  Maybe there was one week I missed there.

So the 19th.  And the government had a question about security

and safety issues of civilian witnesses, and I raised the

prospect of a protective order that would resolve that issue.

THE COURT:  I think you said we would like the

information earlier.  She said we're concerned about safety

issues.

MR. DRATEL:  Then the government circulated a

protective order.  I had a couple of revisions that I proposed

that the government apparently accepted, but the impediment was

that Mr. Brown's lawyer had a categorical objection to a

E984CHAc

1    specific paragraph, which I do not have a categorical objection

2    to.  Obviously, having made the proposal, I understood what the

3    protective order would look like.  I think the protective order

4    is not the issue.  Now the question is, because of the

5    protective order, why the need to separate civilian from

6    non-civilian witnesses and have the civilian witnesses be the

7    Friday before the trial as opposed to a week, when we get the

8    other 3500 material.

9          There's another wrinkle to that, as well.  There are

10   two wrinkles to that.  One is that the 24th -- I think actually

11   those two days, Thursday and Friday, the 25th and 26th is also

12   Rosh Hashanah.  I won't be in the office those days, which does

13   make a difference in terms of getting the material and being

14   able to prepare.  The other is that -- I don't know if the

15   Court is aware of this because this may have just been

16   discovery, which is the government has produced -- "the

17   government" meaning the prosecutors -- had this material

18   previously, but apparently August 26th, the government came

19   into possession of a wiretap of the victim, and that wiretap, I

20   think, was a New York State wiretap.  I don't believe it was a

21   federal.  Some information came from other counsel.  Some

22   information I have asked for directly.  But there is a wiretap

23   of the victim, and it is a New York State investigation into

24   that victim.  So if I'm going to get that on the 26th, that's

25   too much.  I don't know what the government's plans are.  I

E984CHAc

1   think it is all, obviously, *Giglio* material I should get now as

2   opposed to simply impeachment material because the wiretap

3   applications could have a whole range of information that could

4   be used for cross-examination that is clearly exculpatory about

5   the victim.

6           THE COURT:  It depends on what the content is, though.

7           MR. DRATEL:  It also could be about the victim and the

8   other two -- it's about the male victim, but it could also

9   implicate the two female victims, or the two other victims who

10  were mentioned in the complaint.  They could also be part of

11  this investigation, as well.  It could have rather compelling

12  importance in terms of preparing cross-examination that I

13  wouldn't want to get the weekend before.

14          THE COURT:  Just so I understand then what your

15  application is, we have a trial on the 29th, and you're

16  suggesting that you be given all of the 3500 material on the

17  19th, and you're happy to do it subject to a protective order.

18          MR. DRATEL:  Correct.

19          THE COURT:  I will hear from the government, and let

20  me just preface it by saying I'm interested in, first, what

21  your position is and, also, the reasons for your position, and

22  I just want to urge that the real reasons not have to do with

23  tactics or trial advantage and things of that sort, because I

24  think those kinds of considerations aren't appropriate in a

25  criminal case.  I mean we're really trying to do what is right,

E984CHAc

1    and the government has a special duty to do that.

2            Ms. Tekeei, I will hear from you or your colleague.

3            MR. ARAVIND:  Your Honor, the tactics in this case

4    have nothing to do with a delay of 3500 material.  The

5    government has obligations towards the victims of this very

6    violent robbery, and we certainly have some concerns that the

7    production of 3500 material and the identification of those

8    names of the victims could be used by the defendant to

9    intimidate witnesses, to cause harm to them.  In violent cases,

10   we typically have protective orders, and I understand

11   Mr. Dratel has agreed to the terms of the protective order, and

12   that's good, but the government continues to have serious

13   concerns about the threats of violence to the victims of this

14   very violent robbery, the male victim and the two other female

15   victims.

16           THE COURT:  What does the protective order provide?

17   Is it lawyers' eyes only?  How do you protect the victims with

18   this protective order?  What constraints are placed on counsel?

19           MR. ARAVIND:  The protective order, as it has been

20   agreed to by the parties, at least in substance right now, is

21   an attorneys'-eyes-only protective order.  The material, 3500

22   material, can be reviewed by the defendant in the presence of

23   the attorney or paralegal or some other official that is

24   associated with the defense team, but the defendant himself

25   cannot take that 3500 material back into the jail where we have

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

E984CHAc

1    found that 3500 material often or sometimes gets disseminated

2    throughout the jails and ultimately could be used to harass or

3    threaten or physically harm witnesses.  So that's the purpose

4    of the protective order.

5          In this case, although we have a protective order, the

6    government continues to have some concerns about our victims.

7    We're concerned about the names of those victims, and one

8    possible way to resolve this -- and I have not spoken to

9    Mr. Dratel about it -- is to have production of 3500 material

10   for the victim witnesses that's contemplated before the Friday

11   before trial but have the names of the victims redacted, and

12   then we would provide the names of those victims to defense

13   counsel shortly before trial.  That is certainly a possibility

14   that the parties could speak about and see if we can come to a

15   resolution before tomorrow's supplemental motion in limine

16   deadline.

17         THE COURT:  The other thing that I'm wondering

18   about -- and I have no idea whether this is workable or not for

19   Mr. Dratel -- is whether the information be disclosed to him on

20   the 19th, so he can begin to prepare and do what he needs to do

21   short of discussing those names with his client, and then give

22   him the ability to discuss the names with his client as of some

23   slightly later date.  But given the holiday on the 25th and the

24   26th, it seems to me that there aren't really that many days

25   between the 19th and the trial.

1              Mr. Dratel.

2              MR. DRATEL:  I'm certainly willing to discuss with the

3      government in the next 24 hours some way we could resolve it

4      without the Court having to intervene.  However, a couple of

5      things:  One, there is nothing in this case specifically that

6      is directed at witnesses in the sense of any conduct by any of

7      the defendants, much less Mr. Chambers.  While in the abstract

8      this exists, there are -- it's been going on for decades in the

9      sense of cases in which these disclosures are made because they

10     are statutorily, constitutionally required, and nothing has

11     happened.  I don't want Mr. Chambers to be damaged just by some

12     abstract notion that there is danger when, in fact, this case

13     doesn't present it on any factual level in what has occurred in

14     the long period of time.  I came in the case about a year ago,

15     but it has been on for about four or five months before that.

16             In addition, the name of one of the victims has been

17     apparent to us for a long time.  Nothing has happened.  These

18     defendants have not made any effort to obstruct justice, to put

19     it in its broadest terms, and nothing is going to happen in the

20     next three weeks before trial.

21             It is a significant impediment to operate under even

22     with the protective order that I have agreed to, which is that

23     Mr. Chambers can't have it overnight.  We have to sit with him

24     and go through it and spend real time with him to do that as

25     opposed to the preparation independently and coming back to get

E984CHAc

1    it.  So I think that's substantial enough in terms of an

2    impediment, but I'm willing to proceed that way.

3              THE COURT:  Why don't you try and work it out together

4    because it seems to me that you're both much closer to what the

5    real issues are.  The government knows how much there is and

6    what's in it.  You know what you already know.  Perhaps you can

7    work it out.  If I do, it will be a blunt instrument; whereas,

8    if you do it, it might make some sense.

9              MR. DRATEL:  I have ideas as to how we might be able

10   to resolve it.

11             MR. ARAVIND:  Just so the record is clear -- and

12   Mr. Dratel may not know this -- an associate of one of the

13   co-defendants did make some statements to one of the victims,

14   and the victims did feel intimidated by that, and so the

15   government does have some legitimate concerns here.  We're not

16   just saying it because it happens to be a robbery/kidnapping

17   case.  We do have specific concerns relating to this case.

18             THE COURT:  Okay.  Thank you.  I appreciate that.

19             So the motion in limine schedule will be adjusted as

20   we just discussed, and I will try and rule on them as quickly

21   as I can, if possible, before the final pretrial conference,

22   and certainly with respect to the timing of production of any

23   3500 material.  Okay.

24             I think that is everything that is now before me, and

25   so my plan, with the exception of the items where I have asked

E984CHAc

1    for additional briefing, is to close those motions on the

2    docket sheet.

3              Is there anything else?

4              MS. TEKEEI:  Your Honor, just one small note.

5              THE COURT:  Yes.

6              MS. TEKEEI:  Your Honor had mentioned that you had not

7    seen a copy of Mr. Brown's post-arrest statements.  It is

8    included in our motion in limine briefing as Exhibit A.  It

9    redacts the victim's name but, otherwise, it is left

10   unredacted.  We are happy to provide your Honor with another

11   copy, but I just did want to point that out.

12             THE COURT:  I apologize for missing that.  It is your

13   motion in limine Exhibit A?

14             MS. TEKEEI:  Yes, your Honor.

15             THE COURT:  Thank you.

16             Mr. Dratel.

17             MR. DRATEL:  Just logistically, with the new context

18   of the case, in other words, just Mr. Chambers, whether that

19   affects the government's estimation of the length of the trial.

20             MS. TEKEEI:  No, your Honor.

21             THE COURT:  Can you remind me what that estimate was?

22             MS. TEKEEI:  Approximately one week, your Honor.

23   However, that could change depending on the lack of or the

24   presence of stipulations.

25             THE COURT:  Okay.  Anything else?

E984CHAc

1        All right.  Thanks very much.

2        MS. TEKEEI:  Thank you, your Honor.

3        MR. DRATEL:  Thank you, Judge.

4        (Adjourned)