**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 20, 2014

**BY ECF and EMAIL**

The Honorable Lorna G. Schofield
United States District Judge
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square, Room 201
New York, New York  10007
Schofield_NYSDChambers@nysd.uscourts.gov

Re:     *United States* v. *Antione Chambers*, S2 13 Cr. 345 (LGS)

Dear Judge Schofield:

The Government respectfully writes to address issues raised in defendant Antione Chambers's September 16, 2014 memorandum of law in opposition to the Government's supplemental motions *in limine*.  The Government's reply is prompted by the defendant's motion to suppress and the issues that the defendant raises in his opposition, which the Government wanted to address in writing in advance of the final pretrial conference on September 22, 2014.

In his opposition, Chambers argues that evidence regarding his consciousness of guilt fails to satisfy the standards for admission of such evidence, includes inadmissible hearsay, and includes evidence that should be suppressed because it was obtained during an "unconstitutional stop, search and seizure."  (Def. Opp. at 2-9)  For the reasons set forth below, and as stated in its opening supplemental motions *in limine* briefing, the Government respectfully submits that, under the governing case law, (1) evidence of Chambers's flight is relevant and proper to prove his consciousness of guilt, (2) Chambers's motion to suppress evidence related to the stop of his vehicle in New Jersey only weeks after he learned that law enforcement agents in New York were trying to find him, and during which he was found to be using a fake driver's license and refused to provide his real name to law enforcement officers, should be denied, and (3) the testimony of Probation Officer Contreras is admissible.

I.     **Evidence of Chambers's Flight as Demonstrating his Consciousness of Guilt is Admissible under Established Second Circuit Precedent and Would Not Be Hearsay.**

In this case, the Government will present evidence to show the defendant's consciousness of guilt through the testimony of the following witnesses: (1) the testimony of Probation Officer Teresita Contreras, who regularly supervised Chambers until he absconded in May 2013, shortly

after the March 25 Robbery took place; (2) the testimony of FBI Special Agent John Reynolds and NYPD Detective Ellis Deloren who attempted to locate Chambers as part of the investigation and to arrest him once an arrest warrant was obtained; and (3) the testimony of a law enforcement officer who arrested the defendant on July 3, 2013, in New Jersey after the defendant was found with a fake driver's license, in a rental car that was not rented by him or by his girlfriend, Zaporia Dunbar, and refused to provide his true name when he was stopped.

**A. The Second Circuit Routinely Permits Evidence of Flight to Show Consciousness of Guilt in Circumstances Similar to the Facts of this Case.**

The evidence regarding Chambers's flight is admissible because there is a "satisfactory factual predicate" from which a reasonable jury could draw the inference of a "guilty mind from flight." *United States* v. *Mundy,* 539 F.3d 154, 156 (2d Cir. 2008); *United States* v. *Al-Sadawi*, 432 F.3d 419, 424 (2d Cir. 2005). Here, the Court should be confident that the four inferences set forth in *United States* v. *Al-Sadawi*, 432 F.3d 419, 424 (2d Cir. 2005) exist, and the Government had established a sufficient factual predicate that the inference of consciousness of guilt that could be drawn from Chambers's flight. As an initial matter, the Second Circuit has routinely permitted evidence of flight to show consciousness of guilt. *See United States* v. *Perez*, 387 F.3d 201, 209 (2d Cir. 2004) ("We have upheld the admission of various kinds of evidence on the ground that it demonstrated consciousness of guilt. For example, proof of defendant's flight after a charged crime occurred may be admissible even though that evidence might be subject to varying interpretations."). Indeed, as the Second Circuit stated in *United States* v. *Amuso*, 21 F.3d 1251, 1258 (2d Cir. 1994), where evidence of flight passes "threshold inquiry of relevance, the accepted technique is for the judge to receive the evidence and permit the defendant to bring in evidence in denial or explanation." (internal quotation marks and alterations omitted). There should be no question that the defendant engaged in flight, as evidenced by his absconding from supervised release. *See United States* v. *Wallace*, 205 F.3d 1327, *1 (2d Cir. 2000) (affirming district court's admission of flight evidence when defendant abandoned regular location selling drugs and "materialized" in another state.)

The jury could also find that such flight was a direct result of Chambers's participation in the March 25 Robbery. Although he claims that his alleged use of false identification documents was relating to "avoiding the possible consequences of being discovered to be in violation of his supervised release," (Def. Opp. at 6), what Chambers does not contest is that his violation of supervised release was a direct result of his participation in the March 25 Robbery. Again, the accepted doctrine in the Second Circuit is for this court to admit evidence of flight, and permit the defendant to explain or deny it. *Amuso*, 21 F.3d at 1258; *United States* v. *Diallo*, 461 Fed. App'x 27, *2 (2d Cir. 2012) (district court did not abuse discretion in properly admitting evidence of flight and "letting the defendant explain or deny it.").

Should Chambers be able to provide some other reason for his possession of false identification documents, or his failure to contact or meet with his probation officer, he can certainly present that evidence. In fact, the Second Circuit has rejected the very arguments advanced by Chambers – that just because there are some alternative explanation for his flight, evidence of his flight should be precluded at trial. In *United States* v. *Steele*, 390 Fed. App'x 6 (2d Cir. 2010), the defendant similarly contended that the district court improperly admitted

evidence of flight and argued on appeal that there was an alternative explanation for his flight –
namely, that the defendant had missed a meeting with his parole officer two days earlier.  The
Second Circuit affirmed the district court's decision to allow the evidence of flight and to permit
the defendant to argue an alternative explanation for the flight, citing *Amuso*.  *Id.* at *12

### B.  Under Second Circuit Law, Chambers's Possession of False Identification Documents Constitutes Evidence of Consciousness of Guilt.

The Second Circuit has routinely held that a defendant's possession of false identification
documents constitutes evidence of consciousness of guilt.  *See, e.g., United States* v. *Rubirosa*,
100 F.3d 943, *3 (2d Cir. 1996); *United States* v. *Wilson*, 11 F.3d 346, 353 (2d Cir. 1993).
Chambers attempts to distinguish this governing authority and cites an unpublished decision
from the Northern District of Iowa, *United States* v. *Roberson*, __ F. Supp. 2d ___, 2006 WL
2089944 (N.D. Iowa July 25, 2006), in support of his argument.  In that case, the district court
found that the Government had appeared to satisfy the first and second inferences – from the
defendant's behavior to flight, and from flight to consciousness of guilt.  *Id.* at *6.  The court,
however, held that there were "questionable links" in the chain with respect to the third and the
fourth inferences –that is, that the defendant's possession of false documents related to his
possession of marijuana during a traffic stop, not the narcotics conspiracy charged in the
Indictment.  *Id. Roberson* does not support the defendant's argument.  Chambers did not possess
drugs or firearms when he was stopped; rather, he had committed a traffic violation.  As
described in further detail below, the evidence will show that the officers had no idea who the
driver was until after the stop occurred and they learned his true identity.  The stop was not a
pretextual one.  During the traffic stop in New Jersey, the only *reasonable* inference is that the
defendant possessed false identification documents because of his participation in the March 25
Robbery.  As the district court found in *Roberson*, the "links in the chain of inferences become
much stronger where the defendant was purportedly aware that there was a federal warrant for
his arrest on the offense charged in this case."

Here, the evidence shows that the defendant was purportedly aware of a warrant for his
arrest, and that law enforcement agents were looking for him, based on the following factors: law
enforcement agents were interviewing his girlfriend, Zaporia Dunbar (who was in the car with
him during the New Jersey arrest), and other family members about him; he failed to respond to
routine telephone calls and text messages from his probation officer, with whom he was required
to be in contact; and his co-defendants, at least one of whom—Tyrone Brown—he had been in
contact with immediately prior to the March 25 Robbery, had been arrested.  From this evidence,
it would be reasonable for the jury to infer that the defendant was aware that authorities were
looking for him, that there was a warrant for his arrest in connection with the March 25 Robbery,
and that his attempt to avoid detection by law enforcement—by leaving the New York area,
refusing to respond to his probation officer, and using false identification—is evidence of his
consciousness of guilt.  Courts in this circuit have held, under similar facts, that such evidence is
admissible to show flight as consciousness of guilt.  *See*, *e.g., Mack* v. *People of the State of New
York*,  No. 02 Civ. 441 (JG), 2004 WL 444024, *6 (E.D.N.Y., Mar. 11, 2004) (finding that
evidence of flight and consciousness of guilt was permissible when detective visited residence of
suspect in shooting on numerous occasions, left a card, said that she was looking for suspect,
who never contacted her); *see also United States* v. *Sanchez*, 790 F.2d 245, 252 (2d Cir. 1986)

(finding that flight instruction was improper when there was not an adequate evidentiary predicate but reasoning that "[t]he nature of flight is such that often there will be evidence no more complete than that the defendant has not been seen by those to whom he is familiar, that he has left his customary evidence, that those who have sought to find him have failed, and the like. Such evidence may often suffice, if, unlike here, it clearly appears on the record.").

### C. The Evidence of Chambers's Flight that the Government Seeks to Admit is Not Hearsay.

The defendant also contends that the evidence of flight should be precluded because a "substantial portion" of the evidence proffered by the Government consists of inadmissible hearsay. The Government does not intend to introduce inadmissible hearsay at the trial. The Government in the process of issuing trial subpoenas to several of the individuals who were interviewed by law enforcement officers in their attempt to locate and arrest Chambers. The testimony of those individuals will not be hearsay. Furthermore, the testimony by Officer Contreras and law enforcement officers that they interviewed several of Chambers's family members in an attempt to locate him and could not locate him (without disclosing the substance of statements made by Chambers's family members) is not hearsay.

## II. Chambers's Motion to Suppress Evidence Related to the Stop of His Vehicle in New Jersey Should be Denied.

The Government opposes the defendant's motion to suppress and consents to a hearing (which will be limited in scope and could occur during trial, outside the presence of the jury).

### A. Background

In connection with preparing for trial in this case, the Government interviewed Sergeant Thomas Derosa, a New Jersey state police officer who arrested Chambers in New Jersey on July 3, 2013 after a traffic stop during which he learned that Chambers was using a fake driver's license and driving a rental car that Chambers did not have permission to drive. In addition to the arrest paperwork and documents related to true identity of the person whose driver's license Chambers was using, Sergeant Derosa provided the Government with a dashboard video recording of the car stop, all of which the Government produced to Chambers on August 29, 2014.

The video recording depicts the moments before law enforcement officers stopped Chambers's vehicle, and while Sergeant Derosa's car is driving behind Chambers's vehicle. The Government believes the testimony at the hearing would establish that the officers stopped a vehicle driven by Chambers after noticing that the car's windshield wipers were operating while the lights were off, a violation of New Jersey state law. When Sergeant Derosa provided Chambers with the reason for the car stop, Chambers did not dispute that he did not have the car lights on, but, instead, told Sergeant Derosa "Oh, I'm sorry . . . I didn't know that," and, later, that he had "never gotten pulled over for that before." Sergeant Derosa asked for Chambers's driver's license, and told Chambers, in sum and substance, that, if everything was O.K. with his license, Sergeant Derosa would let Chambers go with a warning. Also in Chambers's car were

Zaporia Dunbar, Chambers's girlfriend whom law enforcement agents in New York had interviewed when trying to locate Chambers in connection with the March 25 Robbery, and two small children. Chambers provided Sergeant Derosa with a Pennsylvania driver's license in the name of "Jerome Adams," and registration for the vehicle he was driving, but could not provide the officer with an insurance card or the rental agreement for the car. It was only after the officer learned that the Pennsylvania driver's license that Chambers provided—in the name "Jerome Adams"—had a driver's license number for a real license issued to an individual named "Joseph Speranza," that Sergeant Derosa initiated an arrest of Chambers. Chambers refused to provide his real name to Sergeant Derosa, who discovered that Chambers had an outstanding federal arrest warrant after processing Chambers's arrest and fingerprints.

At trial, the Government does not seek to admit the recording of Chambers's New Jersey arrest. The Government seeks to admit evidence, through testimony, that Chambers was stopped driving a rental car issued to someone else, presented a fake driver's license in the name "Jerome Adams," and refused to provide his name to law enforcement officers—direct evidence of Chambers's consciousness of guilt. The Government does not seek to admit Chambers's post-arrest statements to New Jersey state police.

## B.  The Stop of Chambers's Car was Lawful.

The Second Circuit has "held repeatedly that a traffic stop based on reasonable suspicion of a traffic violation comports with the Fourth Amendment." *United States* v. *Stewart*, 551 F.3d 187, 191 (2d Cir. 2009); *see also Jones* v. *United States*, 365 F. App'x 309, 310 (2d Cir. 2010) (holding that officers may lawfully stop a vehicle if they have reasonable suspicion that the driver committed a traffic violation). In *United States* v. *Stewart*, the court held "unambiguously that the reasonable suspicion of a traffic violation provides a sufficient basis under the Fourth Amendment for law enforcement officers to make a traffic stop." *Stewart*, 551 F.3d at 193. As long as the traffic stop is supported by specific and articulable facts of a traffic law violation, it does not violate the Fourth Amendment. *See United States* v. *Williams*, 453 F. App'x 74, 76 (2d Cir. 2011) ("To justify a traffic stop, the police must have either probable cause or a reasonable suspicion, based on specific and articulable facts, of unlawful conduct.") (citing *United States* v. *Gaines*, 457 F.3d 238, 243 (2d Cir. 2006) (internal quotation marks omitted)).

Determining whether reasonable suspicion exists is an objective inquiry, which is measured from the objective perspective of a trained and experienced law enforcement officer. *See United States* v. *Cortez*, 449 U.S. 411, 418, 421 (1981); *United States* v. *Glover*, 957 F.2d 1004, 1010 (2d Cir. 1992). The actual motivations of the individual officers involved in the stop play no role in the analysis. *Holeman* v. *City of New London*, 425 F.3d 184, 190 (2d Cir. 2005). In assessing whether an officer's suspicion was objectively reasonable, a court must consider the "totality of the circumstances," reviewing them as a whole, rather than as discrete facts. *United States* v. *Arvizu*, 534 U.S. 266, 273 (2002).

The reasonable suspicion analysis is "rather lenient," *United States* v. *Santana*, 485 F.2d 365, 368 (2d Cir. 1973), and "falls considerably short of satisfying a preponderance of the evidence standard." *Arvizu*, 534 U.S. at 274; *accord United States* v. *Tehrani*, 49 F.3d 54, 58 (2d Cir. 1995) ("The requisite level of suspicion is considerably less than proof of wrongdoing

by a preponderance of the evidence.") (internal quotations and citations omitted); *United States* v. *Echevarria*, 692 F. Supp.2d 322, 333 (S.D.N.Y. 2010). Moreover, a mistake of fact does not undermine the existence of reasonable suspicion. *Stewart*, 551 F.3d at 193 (citing *United States* v. *Jenkins*, 452 F.3d 207, 212 (2d Cir. 2006)).

At that hearing, the Government would present the testimony of a single law enforcement officer who is expected to testify that the car driven by Chambers was using windshield wipers without lights, in contravention of New Jersey law. Notably, in his moving papers, Chambers does not dispute that he had committed a traffic violation prior to the stop of the car he was driving. Nor does Chambers submit an affidavit in support of his motion. Instead, he argues that the video of the traffic stop, which shows the back of the car he was driving, does not show a traffic violation. As stated above, the same video recording demonstrates that, when confronted with the basis for the car stop, Chambers did not deny that car's lights were not on, but, instead, told the officer that he was not aware of the law that required the lights to be on when the windshield wipers were on. In short, Chambers does not—and cannot—state that he did not commit a traffic violation.

### C. Evidence Regarding the Stop of Chambers Car is Not Unduly Prejudicial.

The stop of Chambers's car was legal and evidence related to the stop and seizure is properly admissible as evidence of his consciousness of guilt for all of the reasons stated above. In his opposition papers, Chambers also argues that, even if testimony regarding his New Jersey arrest and use of false identification documents were found to be probative of consciousness of guilt, it should be excluded under Federal Rule of Evidence 403 as more prejudicial than probative. (Def. Opp. at 9-10). There is no basis to exclude the proffered evidence regarding Chambers's arrest in New Jersey under Rule 403. Such evidence does not create unfair prejudice where the other conduct is no more serious or sensational than the charged crime. *See United States* v. *Williams*, 205 F.3d 23, 34 (2d Cir. 2000) (no undue prejudice under Rule 403 when evidence regarding a defendant's criminal conduct did not involve conduct more serious than the charged crime and the district court gave a proper limiting instruction). Moreover, evidence is unfairly prejudicial "only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence." *United States* v. *Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980).

In this case, Chambers is charged with participating in a violent gunpoint robbery and kidnapping one of his victims. The fact that he was stopped in New Jersey for a traffic violation and was in possession of a fake driver's license is not "any more sensational or disturbing" than the crimes with which he is charged. Moreover, a limiting instruction explaining that the defendant is on trial only for the charges contained in the Indictment would cure any potential risk of prejudice. Accordingly, the probative value of the evidence—his consciousness of guilt, as described above—is not at all outweighed, let alone substantially outweighed, by the risk of unfair prejudice. Evidence of Chambers's New Jersey arrest for possessing false identification, weeks after he was on notice that law enforcement was looking for him in connection with the robbery and kidnapping charged in this case, is precisely the type of evidence that courts routinely admit as evidence of consciousness of guilt.

**III.     Probation Officer Testimony Is Routinely Admitted by Courts in this Circuit, and, in this Case, is Relevant to Chambers's Flight and Direct Evidence of Chambers's Participation in the Charged Offenses.**

    With respect to Officer Contreras's testimony, it is also uncontroverted that several district courts in this Circuit have admitted the testimony of probation officers in criminal trials and VOSR proceedings.  *See* Gov't Supp. Mot. *in Limine* at 12.  Chambers argues that such evidence is inadmissible because it only goes to flight, but Officer Contreras's testimony is also direct evidence of the defendant's involvement in the March 25 Robbery.  At trial, one of the victim witnesses will testify that she remembered the license plate of a black car that was used to kidnap her and transport her from her apartment to her mother's apartment to collect money.  At trial, the Government intends to show that the car belonged to Zaporia Dunbar, the defendant's girlfriend.  Dunbar's association with the defendant is a critical piece of evidence and Officer Contreras's testimony will establish such a connection.  Similarly, law enforcement agents observed the car used during the robbery at Dunbar's residence, the same residence that the defendant gave to Officer Contreras.  Officer Contreras's testimony will establish Chambers's association with the car used during the commission of the March 25 Robbery.  Therefore, the testimony of Officer Contreras is direct evidence – consisting of admissions by the defendant – of the crimes charged in the Indictment.  Officer Contreras's testimony is further admissible for the purpose of establishing consciousness of guilt.  *See, e.g., United States* v. *Vargas*, 279 Fed. App'x 56, **2 (2d Cir. 2008).   Finally, Officer Contreras's testimony would not be more prejudicial than probative, as Chambers argues in his opposition, Def. Opp. at 9-11, because (1) the Government would not seek to elicit testimony regarding the defendant's prior conviction, as per the Court's prior rulings, and (2) a limiting instruction explaining that the defendant is on trial only for the charges contained in the Indictment would cure any potential risk of prejudice.

**IV.     Conclusion**

    For all of the foregoing reasons and for the reasons stated in its supplemental motions *in limine*, the Government respectfully submits that the Court should grant the Government's supplemental motions *in limine*, and deny the defendant's motion to suppress.

                                        Respectfully submitted,

                                        PREET BHARARA
                                        United States Attorney
                                        Southern District of New York

                            By:     /s/ Negar Tekeei_____
                                        Negar Tekeei /Santosh Aravind
                                        Assistant United States Attorneys
                                        (212) 637-2482 / 1045

cc:     Joshua Dratel, Esq. (by email)