

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 27, 2014

**BY ECF and EMAIL**

The Honorable Lorna G. Schofield
United States District Judge
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square, Room 201
New York, New York  10007
Schofield_NYSDChambers@nysd.uscourts.gov

    Re:    *United States* v. *Antione Chambers*, S2 13 Cr. 345 (LGS)

Dear Judge Schofield:

    The Government respectfully writes to address issues raised in defendant Antione Chambers's September 24, 2014 letter regarding his motion to admit the testimony of an expert witness with respect to eyewitness identification.  For the reasons set forth below, and as stated in the Government's opposition to the defendant's supplemental motions *in limine*, Dr. Strange's testimony should be precluded because it will not assist the jury, it will confuse the jury, and it consists primarily of common sense principles that can be explored through cross-examination and reinforced with a jury instruction, such as the parties' jointly proposed instruction submitted earlier this week

    In his letter, Chambers states that his proposed expert, Deryn Strange, will testify regarding "(1) the impact of the immediate conditions during the witness's initial viewing; (2) the nature of cross-racial identifications; (3) the phenomenon of weapon focus or weapon distraction; (4) the impact of exposure to serial photo arrays on the reliability of an identification; (5) the impact of a single photo identification procedure, during which the name of the photographed individual is revealed, on the reliability of an identification; (6) the possibility of contamination resulting from a relationship between witnesses; and, (7) the effect of the passage of time between the event and the first identification procedure." (Chambers Letter at 1-2).  In connection with his submission, Chambers provided a copy of Dr. Strange's curriculum vita. Chambers did not provide a summary of Dr. Strange's proposed testimony on the enumerated topics, nor did Chambers provide any of the literature or scientific studies upon which Dr. Strange might rely, nor is there is an indication that Dr. Strange has previously been qualified as an expert or has testified before.  That is because to the extent that the enumerated factors are implicated in this case, they are common sense notions that any juror would readily understand without the assistance of an expert witness.  In particular, as Dr. Strange's research focuses on "how we remember and misremember traumatic events; how the media promotes and maintains memory distortions and whether we can correct those distortions; memory distortions in the courtroom; [and] the development and maintenance of false memories in children and adults"

(Strange Curriculum Vita)—none of which are listed in the proposed testimony topics—Chambers does not set forth why Dr. Strange's testimony is necessary to understand the common sense notions that defense counsel will be free to argue. Moreover, the factors addressed by Chambers's proposed topics can be addressed through an appropriate jury charge, such as the parties' joint proposed identification charge that was submitted to the court on September 25, 2014.

I.  **Chambers's proposed expert testimony does not meet the basic requirements for expert testimony.**

As stated in the Government's opposition to the defendant's supplemental motions in *limine*, and as stated by the Court in its preliminary decision denying the defendant's request, under Federal Rule of Evidence 702, "scientific, technical, or otherwise specialized knowledge" is admissible if it "will assist the trier of fact to understand the evidence or determine a fact in issue." Under Rule 702, a trial judge may not admit expert scientific testimony unless the proffered scientific evidence is both relevant and reliable, and its evidentiary reliability is based on scientific validity. *See Daubert* v. *Merrell Dow Pharm., Inc.,* 509 U.S. 579, 590 (1993). In *Daubert,* the Supreme Court set forth a two-part test governing the admission of expert testimony: (1) the expert testimony must consist of "scientific knowledge"—that is, the testimony must be supported by appropriate validation; *and* (2) the evidence or testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* at 590–91. In *Kumho Tire Co. v. Carmichael,* 526 U.S. 137 (1999), the Supreme Court held that trial courts are to apply the requirements of *Daubert* in considering whether to admit expert testimony in non-scientific fields as well. In *Daubert,* the Supreme Court identified four factors that trial courts should consider when evaluating the reliability prong of *Daubert/Kumho:*

(1) Whether the theory or technique used by the expert can be, and has been, tested;

(2) Whether the theory or technique has been subjected to peer review and publication;

(3) The known or potential rate of error of the method used; and

(4) The degree of the method's or conclusion's acceptance within the relevant scientific community.

*See* 509 U.S. at 593–94.

Chambers's proposed expert testimony does not meet these basic requirements. <u>First</u>, Chambers does not provide a summary of Dr. Strange's testimony on the topics listed in his letter. <u>Second</u>, he presents no scientific (or other) basis for Dr. Strange's testimony. That is presumably because, *inter alia*, either there is no scientific basis for Dr. Strange's testimony that Chambers seeks to elicit, the theories Dr. Strange might testify to have not been subjected to peer review or publication, or the unknown methods or conclusions are not accepted within the relevant scientific community. <u>Third</u>, he does not state how Dr. Strange's potential testimony on the listed topics would be helpful to a jury, or how the enumerated topics cannot be understood without the assistance of Dr. Strange's testimony. That is because the topics to be covered by Dr. Strange's testimony are precisely the types of topics that consist of "general

pronouncements about the lack of reliability of eyewitness identification" or "contain[] "conclusions [that] coincide[] with common sense." *United States* v. *Veal*, 182 F.3d 902 (2d Cir. 1999) (quoting *United States* v. *Serna*, 799 F.2d 842, 850 (2d Cir. 1986), a*brogated on other grounds*, *United States* v. *DiNapoli*, 8 F.3d 909, 914 n. 5 (2d Cir. 1993) (en banc)).

## II.    Chambers' proposed expert testimony would not be helpful to the jury, and would merely serve to bolster defense counsel's arguments in closing.

The jury does not need an expert to educate them about the factors that are relevant in determining the accuracy of witness identification.  Factors like the conditions during the witness's viewing, the lighting, the stress of the encounter, or the presence of a firearm, and the effect of the passage of time between the event and the first identification procedure are easily comprehended and are all highly context-specific.  These are circumstances that any defense attorney would point out in a case involving eyewitness identification, and are issues that any juror is capable of understanding without being tutored by an expert witness.  Moreover, because the conditions surrounding a witness's encounter with the defendant and the witness's subsequent identification of the defendant cannot be duplicated, any study that Dr. Strange may testify about concerning, for example, the percentage of persons who correctly identify a subject after encountering the subject for a given amount of time in a stressful event would be inapposite, and would merely confuse the jury.

Likewise, a layperson does not need an expert to explain "the possibility of contamination from a relationship between witnesses," (Chambers Letter at 2), especially when, as here, the Government expects that the testimony will establish that the two witnesses who identified Mr. Chambers did not live together at the time of the events in this case, and do not live together now.

With respect to the photo array and single photo procedures, the defendant is free to argue that aspects of any of the identifications were suggestive for various reasons, and no expert is necessary to convey this information to the jury.  As for the nature of cross-racial identifications, while the witnesses in this case are of Hispanic origin and the defendant is African-American, this is not a case that turns solely on the accuracy of the witness's identifications, and, therefore, expert testimony regarding cross-racial identifications would only serve to confuse the jury.  In fact, the First Circuit in *United States* v. *Jones*, 689 F.3d 12, 20 (1st Cir. 2012), upheld the exclusion of an expert—Steven Penrod, one of Dr. Strange's colleagues at John Jay College—on the issues of (1) the effect of stress on identification, (2) the decreased accuracy of cross-racial compared to same-race identification, and (3) the influence of suggestive identification practices.  While the district court agreed that "some aspects of Penrod's general concerns about stress, cross-racial identification, suggestive procedures and witness confidence would be useful for a jury, . . . the court held[] these cautions were more efficiently, and with less risk of confusion, conveyed by the court's intended jury instructions." *Id*.

The common sense notions about eyewitness accuracy that are implicated here do not necessitate expert testimony.  In fact, these very notions have been argued by defense attorneys to juries for years, and juries have had no trouble understanding them without additional expert guidance.  On the other hand, the likelihood of confusion engendered by Dr. Strange's testimony is considerable.  Balanced against the relatively mundane identification issues that will present

themselves at trial is the danger that Dr. Strange's testimony will inappropriately shift the jurors' focus to the scientific and technical debate over the reliability of identification testimony. Indeed, to the extent Dr. Strange intends to testify about the scientific underpinnings of the factors identified in the defendant's submission.  Such a presentation poses obvious dangers of imbuing the defense contentions with an "aura of special reliability and trustworthiness," thus bolstering defense counsel's arguments at closing into scientific certainties.  *See United States* v. *Young*, 745 F.2d 733, 766 (2d Cir. 1984) (Newman, J., concurring) (danger of confusion stems from the "aura of special reliability and trustworthiness surrounding expert testimony" (quoting United States v. Fosher, 590 F.2d 381, 383 (1st Cir. 1979))); United States v. Fletcher, 928 F.2d 495, 503-04 (2d Cir. 1991)).  Here, the factors to be considered by the jury in evaluating the witness's accuracy or credibility are easily understood without recourse to abstract studies that do not and cannot replicate the conditions of the identifications.

### III. The parties' joint proposed jury instructions are sufficient to ensure a proper evaluation of identification testimony.

District courts may properly address the dangers of unreliable eyewitness identification testimony by giving a jury charge appropriate in the circumstances of the case.  *See Young*, 698 F.3d at 80 (quoting *United States* v. *Veal*, No. 98-1539, 1999 WL 446783 (2d Cir. June 16, 1999)).  The parties' joint proposed jury instructions regarding eyewitness identification are sufficient to ensure a proper evaluation of identification testimony, and discuss the factors that Chambers proposes should be addressed by Dr. Strange—namely, a witness's ability and opportunity to see the offender at the time of the offense, whether a witness's identification has been influenced in any way, whether the identification was unfairly suggested by events that occurred since the time of the offense or by the circumstances under which the identification was made, whether the recollection was accurate, and the credibility of the witness.

### IV. Conclusion

For all of the foregoing reasons and for the reasons stated in its opposition to the defendant's supplemental motions *in limine*, the Government respectfully submits that the Court should deny the defendant's motion to admit Dr. Strange's testimony.

Respectfully submitted,

PREET BHARARA
United States Attorney
Southern District of New York

By: /s/ Negar Tekeei_____
Negar Tekeei /Santosh Aravind
Assistant United States Attorneys
(212) 637-2482 / 1045

cc: Joshua Dratel, Esq. (by email)