EA6MCHAF

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA

4            v.                          13 CR 345(LGS)

5   ANTIONE CHAMBERS,

6              Defendant.

7   ------------------------------x

8                                      New York, N.Y.
                                       October 6, 2014
9                                      9:30 a.m.

10

    Before:
11
                    HON. LORNA G. SCHOFIELD,
12
                                       District Judge
13

14                      APPEARANCES

15

    PREET BHARARA
16       United States Attorney for the
         Southern District of New York
17  SANTOSH ARAVIND
    NEGAR TEKEEI
18       Assistant United States Attorneys

19  JOSHUA L. DRATEL
    WHITNEY SCHLIMBACH
20       Attorneys for Defendant

21  ALSO PRESENT:   JOHN REYNOLDS, FBI
                    JENNIFER HANSMA, Paralegal AUSA
22

23

24

25

1          (Trial resumed; jury not present)

2          THE COURT:  I think we are just waiting for jurors.

3          (Jury present)

4          THE COURT:  Good morning, ladies and gentlemen.

5    Welcome back.  Thank you for coming this morning.  All we are

6    doing now is sending you back to begin your deliberations

7    again.  All of the instructions I gave you before still stand.

8    I won't repeat any of them.  Good luck to you.  Thank you.

9          (Jury deliberations resumed; time noted:  9:53 a.m.)

10          THE COURT:  If you leave the courtroom, please make

11    sure that Mr. Street has a way of reaching you quickly.

12          (Recess pending verdict)

13          THE COURT:  I have a note from the jury with a request

14    and I will have it marked as a court exhibit.

15          Let me read it first and then we can talk about it.

16    It reads:  Is it possible to provide identification of certain

17    phone numbers in contact with Brown's cell phone before and

18    after the robbery.  917-795-5941, 646-242-2813, 917-207 --

19    sorry.  I just realized Mr. Chambers is not here.  Do you want

20    to get him.

21          MR. DRATEL:  It may take us --

22          THE COURT:  You don't have any objection to my

23    continuing with a note in his absence?

24          MR. DRATEL:  Correct.

25          THE COURT:  The second number was 646-242-2813.  The

EA6MCHAF

1     third number is 917-207-9548, and the fourth and last number is

2     646-242-2161.

3              I'll continue reading the note.  It says:  See Exhibit

4     5001 between 23:29:41 on March 24 and 2:58:45 on March 25.

5     Also, Exhibit 200 and 201.  We would like the time stamps from

6     the video surveillance.

7              Let me ask the government, which is probably most

8     likely to know the phone numbers by heart, are people

9     associated with these phone numbers in evidence?

10              MR. ARAVIND:  We are checking right now, your Honor.

11              THE COURT:  Thank you.

12              MR. ARAVIND:  Your Honor, quite frankly, I think we

13     need to look at the transcript and see whether those phone

14     numbers have been referenced at all during the testimony of

15     Special Agent Reynolds.  I don't know the answer to that.

16     There were a number of phone numbers at issue at the trial.

17     Certainly, there were numbers that were listed in the phone

18     records during that time that were not discussed at all during

19     the testimony of Special Agent Reynolds.  I am not sure quite,

20     frankly, whether these are the numbers.  We had have to look at

21     the transcript and do a search and see if we can find what the

22     numbers reflect.

23              THE COURT:  Do you have an efficient way to do that?

24              MR. ARAVIND:  We do.  The transcripts are PDF

25     searchable.  We can quickly make that search and report back to

1    the Court hopefully in the next half an hour.  As for the time

2    stamps, there were references to Special Agent Reynolds'

3    testimony as to when he reviewed the video surveillance and saw

4    a particular time stamp, and I'm not sure if that's exactly

5    what the jury is asking for.  But we could certainly make those

6    time stamps available to the jury.

7               THE COURT:  Mr. Dratel.

8               MR. DRATEL:  We can look in the transcript for the

9    numbers.

10              The time stamps, I am not sure how to respond to that

11   in the sense of they didn't ask for specific testimony.  I just

12   have -- I am not sure --

13              THE COURT:  They are asking for time stamps from the

14   video surveillance and we saw from two separate cameras video

15   of Brown's apartment with time stamps.  Perhaps the better

16   thing to do, if it's possible and not too inefficient, is to

17   have counsel look at the video, agree on the time when various

18   things happen, and then we can report that back to the jury.

19   Does that sound okay?

20              MR. DRATEL:  It may be in the record, your Honor.

21              THE COURT:  If you can find it in the record and agree

22   on it, that would be fine.

23              MR. ARAVIND:  Your Honor, one option, and we would

24   have to check with our tech people, I think in other cases we

25   have provided the jury with a laptop that's blank.  Those

1   exhibits are on CD and are on compact disk.  We can just give

2   them a copy of the surveillance video for their own review.

3          THE COURT:  At the moment they have just asked for the

4   time stamps.  So maybe the thing to do is see if you can get

5   the time stamps out of the transcript.  That's probably faster

6   than trying to put the video on a laptop and get it back there.

7   And then go from there.  If you want, in the meantime, to put

8   the video on a laptop in case it's needed, feel free to do

9   that.

10         What I think I will do is adjourn and let counsel go

11  through the transcript and agree on the answers to these

12  questions.  Let me know when you have the answers.  And then

13  I'll come back.  I think my preference would be to put it on a

14  piece of paper.  My law clerk or I can type it up and just send

15  it back there rather than have them all come out here and tell

16  them and march them all back in.

17         (Recess pending verdict)

18         THE COURT:  So where do we stand?

19         MR. ARAVIND:  Your Honor, with respect to the four

20  numbers referenced in the jury note, there is one reference to

21  the 5941 number.  All the other three numbers are not

22  referenced in the trial transcript, although they are included

23  in that summary exhibit that is referenced in the jury note.

24         There is no specific testimony trying to identify that

25  particular phone number, but we would just ask that the Court

EA6MCHAF

1      read back the testimony referencing that number, the 594.

2               THE COURT:  What does it say?

3               MR. ARAVIND:  Starting --

4               THE COURT:  And I don't have a copy of the transcript,

5      so I will need to borrow yours if the way to handle it is to

6      bring the jury out.  Sounds as if I do.  What day is that?

7               MR. ARAVIND:  The 2nd, John Reynolds' testimony.  It's

8      568.  Starting at line 16 it says:  Again, looking at that last

9      call that's highlighted -- again, that's the outgoing call from

10     Brown to the 6130 Twizzie phone -- you notice, similar to the

11     video frame, there is a gap in activity.  So that last call is

12     at 1:05 a.m.  The phone -- I should say the phone's next

13     outgoing activity is approximately 1:35.

14     "Q.  Let's look --

15     "A.  I'm sorry.  If I may correct that, the next outbound

16     activity looks like it's 1:32.

17     "Q.  That's the 9696 Brown iPhone calling some number at 5941?

18     "A.  Yes.

19     "Q.  That would be a text message?

20     "A.  Yes."

21              That's the reference to the 5941 number.

22              Your Honor, the 646-242 number, there was testimony

23     that that number is the Sprint routing number that the Court

24     had some questions about during the testimony of Special Agent

25     Reynolds.  There is no specific testimony about those

EA6MCHAF

1    particular phone numbers being Sprint routing numbers, but

2    there was testimony about the 646-242-2813.  And so we would

3    ask that the Court read, if it is inclined to do some

4    read-back, relating to the Sprint routing numbers.  That would

5    be at page 567, the preceding page, Special Agent Reynolds'

6    testimony at lines 3 through 12 and then at 18 through 21.

7              THE COURT:  Page 567, tell me the lines again.

8              MR. ARAVIND:  3 through 12 and then 18 through 21.

9              Those are the phone issues, the government's responses

10   to the phone inquiries by the jury.

11             We also have now gone through the video

12   surveillance --

13             THE COURT:  Just one second.  I'm looking on page 567.

14   The reference is to a different 646 phone number.  And you want

15   me to read this to them so that they will infer that this is

16   also a Sprint routing number.  Is that basically it?

17             MR. ARAVIND:  I think that that's consistent, that the

18   Sprint routing number in evidence was that 646-242.  There are

19   different numbers associated with different phone calls.  And

20   so that's our belief is that that is a Sprint routing number.

21   And when you look at the actual duration of the call, it's

22   consistent with that being a Sprint routing number.

23             THE COURT:  Thank you.  And that's your position with

24   respect to the fourth phone number in the list as well?

25             MR. ARAVIND:  Correct.

EA6MCHAF

```
1                THE COURT:  Mr. Dratel.

2                MR. DRATEL:  With respect to the phone numbers, I

3    think we are in agreement on the video surveillance.

4                THE COURT:  We are not there.  What is your position

5    on the phone numbers?

6                MR. DRATEL:  I don't think the transcript citation on

7    568-69 answers the jury's question.  I don't see why that would

8    have to be read.  They asked for identification of phone

9    numbers.  There is no identification of that 5941 number,

10   regardless of what the testimony says.

11               The 646-242 numbers are not identified.  I don't think

12   we should make inferences.  They asked specific questions and

13   the answer is, there is no specific identification of the

14   people associated with those phone numbers.

15               THE COURT:  I tend to agree with you on the 5941

16   number, but I don't agree with you with respect to the 646

17   numbers.  I wouldn't do anything except read this to them and

18   say with regard to the 646 numbers.

19               MR. DRATEL:  That's sort of telling them that they

20   should infer that these numbers are the same --

21               THE COURT:  They can infer it if they want to.  They

22   obviously want to know something about these numbers.  We have

23   nothing to tell them about 5941.  There is nothing in the

24   transcript that tells them anything about it.  But with respect

25   to the 646 numbers --
```

EA6MCHAF

1          MR. DRATEL:  Then the other one, obviously, there is

2      nothing there.

3          THE COURT:  You are not talking into the mic.

4          MR. DRATEL:  I'm sorry.  The 9548 number, there is

5      nothing --

6          THE COURT:  Right.

7          MR. ARAVIND:  Your Honor, there is another reference

8      to another one of these Sprint routing numbers on page 569,

9      lines 16 through 20.  The routing number here is 646-242-2863

10     and that's referenced at line 18 on page 569.

11         THE COURT:  I think that testimony is confusing on

12     page 569.

13         What can you tell me about the video?

14         MS. TEKEEI:  Your Honor, we reviewed the video and we

15     also did so with Mr. Dratel.  We have typed up the time stamps

16     and a general summary of what occurs at each of the time stamps

17     on the video.  Our paralegal, Ms. Hansma, is attempting to

18     e-mail that document now.  But I can also show the typed-up

19     version to your Honor's law clerk on my phone, if that makes it

20     easier for a quicker turnaround.  Mr. Dratel has seen it and

21     has agreed to the time stamps and the general summaries that

22     are provided.

23         THE COURT:  Okay.

24         Here is something I'm wondering.  I'm wondering if

25     with regard to the 646 numbers and the testimony on page 567,

EA6MCHAF

```
 1   can we make a copy of page 567.  Do we have a digital version
 2   of this transcript?
 3              MR. DRATEL:  I could probably get one for the Court.
 4              MR. ARAVIND:  As can we.
 5              THE COURT:  If someone can e-mail me October 2, page
 6   567.
 7              MR. ARAVIND:  Typically, your Honor, the government,
 8   since we have the transcript, we are happy to provide that.  I
 9   can give you the page I have right now, if the Court wants to
10   make copies.
11              THE COURT:  The thing is, the copy machine is on the
12   second floor or.  We are on the 11th floor.  It's faster if the
13   e-mail will work more quickly.  But thank you.
14              If you should send it to the chambers e-mail, we
15   should get it in here.  Actually, where was Ms. Hansma sending
16   the e-mail?
17              MS. TEKEEI:  She just e-mailed it.  We are forwarding
18   it to you, your Honor.
19              THE COURT:  Ms. Farber, I am going to ask counsel what
20   they think of this language, but perhaps you can take it down
21   at the same time.
22              My thought is to send a note back to the jury that
23   says:  With regard to the telephone numbers, there is nothing
24   in the transcript that specifically references any of these
25   numbers.  With regard to the 646 numbers, you may or may not
```

EA6MCHAF

1    find helpful the transcript on page 567 of Special Agent

2    Reynolds' testimony, which is attached.  And then a new

3    paragraph that says:  With regard to the time stamps, please

4    see the additional page attached.

5            Mr. Aravind, did you want to give up your one page for

6    all time, on the theory that you could reprint it?  And then

7    there is Ms. Hansma probably with the same thing.

8            MR. ARAVIND:  She didn't get the e-mail.  But she has

9    the time stamp language.

10           THE COURT:  Is that language acceptable to everyone,

11   subject to Mr. Dratel's objection to any reference to page 567?

12           MR. ARAVIND:  Your Honor, from the government's

13   perspective I think the reference to nothing in the record

14   referencing the 5941 --

15           THE COURT:  Let's say there is nothing in the record

16   that identifies --

17           MR. ARAVIND:  The user of the 5941 number.  I think --

18           THE COURT:  Let's just say that identifies those

19   numbers because I am not sure we are really identifying users,

20   in any event.  So we will just say nothing that identifies.

21           Mr. Dratel, just so you know, on the copy of page 567

22   that I've been handed, there is a little hashmark next to line

23   3, line 12, line 18, and line 21.

24           Do you have any objection to that?  I think it's just

25   basically pointing out where the starts and stops are, but they

1    will have the whole page.

2              MR. DRATEL:  We have a clean one, actually.

3              THE COURT:  You want to swap?

4              MR. DRATEL:  Sure.

5              MS. TEKEEI:  Your Honor, we also just e-mailed our raw

6    version of the transcript from Thursday to the chambers e-mail

7    address so you have it as well.

8              THE COURT:  Great.  Thank you.

9              Counsel, the jury note has been marked as Exhibit 2.

10   So we will mark this three-page response as Court's Exhibit 2A.

11   I am going to sign Judge Schofield to the cover note to the

12   jury.

13             MR. ARAVIND:  Your Honor, I noticed that the version

14   that Mr. Dratel handed up to you was highlighted in some way.

15             THE COURT:  Let's not do that.

16             MR. DRATEL:  568 is highlighted.

17             THE COURT:  Thank you for seeing that.  Let's reprint

18   567.

19             We are adjourned again.

20             (Recess pending verdict)

21             THE COURT:  I have another request from the jury and

22   this one I'll mark as Court Exhibit 3.  It reads:  Please

23   provide the transcript of Emma Torruella leading up to and

24   including her recanting of the identification of the defendant.

25             What I propose to send back is the Torruella redirect

1    beginning on page 211, which is where the identification

2    questions start on redirect.  And it goes through 2015.  And so

3    what I would do is just print those pages and send it back.

4              MR. ARAVIND:  Your Honor, can you read back the note.

5              THE COURT:  Sure.  Please provide the transcript of

6    Emma Torruella leading up to and including her recanting of the

7    identification of the defendant.

8              MR. ARAVIND:  Your Honor, I don't see that as limited

9    to the redirect examination.  I think it would be the entirety

10   of her testimony, which starts at page 134 and then goes until

11   215, 216.  It doesn't say anything about identification.

12             THE COURT:  It says leading up to and including, and I

13   assume they would have said please provide the transcript of

14   her testimony if they had wanted all of it.  I don't have a

15   problem if both of you want me to send all of it back.  But it

16   just means that we would have go back and redact all of the

17   side bars.

18             Let me find out what Mr. Dratel wants to do.

19             MR. DRATEL:  I think it's pretty clear that the Court

20   interpreted it correctly and if they want more, they know how

21   to ask for more.

22             THE COURT:  That's what I am going to do.  I am going

23   to send those pages back.  So from 211 to --

24             MR. ARAVIND:  Your Honor, just to complete the

25   argument, I really do think that had the jury specifically said

1    we would ask for the redirect examination, they would have done

2    so.  They asked for her testimony leading up to and including

3    the recanting.  I take that as meaning her entirety of her

4    testimony from the direct, cross, and then redirect.  And to

5    respond appropriately to the jury's question, I think we need

6    to include the entirety of her testimony.

7           THE COURT:  I will change my ruling only because it's

8    also true that if they only want to see the last five pages,

9    they can just read the last five pages.  It just means a little

10   bit of time in getting them the testimony.

11          Here is a question.  What is logistically the easiest

12   way to do the redactions?

13          MR. ARAVIND:  The way I've done this in the past, your

14   Honor, we would go back to our office.  We can redact things on

15   the computer.  We would redact out just when there is an

16   objection that is sustained, and we would redact out the

17   question and the answer, and we would redact out the side bars.

18          THE COURT:  Here is another way we can do this as a

19   compromise.  We can send back the four pages, we can say we are

20   preparing the rest of the transcript for you.  It may take some

21   time.  And when it's done we will send it back to you.  Or we

22   could ask them.

23          Mr. Dratel?

24          MR. DRATEL:  The latter, which is to say, to the

25   extent there is any ambiguity.  Do you mean just that part of

1    the redirect in which the recantation occurred or do you mean

2    the entirety of her testimony?

3         THE COURT:  Why don't we do this.  Why don't we send a

4    note back that says:  Do you want all of her testimony or some

5    part?  And if you want some part, can you please be more

6    specific.  For example, do you want all of her redirect -- they

7    won't know what redirect is.

8         MR. ARAVIND:  They might know what redirect is, given

9    they have seen this --

10        THE COURT:  We have said it now for five days.  We can

11   just say, do you want all of her testimony, do you want all of

12   her redirect, or do you want some other portion?

13        MR. ARAVIND:  I think that makes sense.

14        MR. DRATEL:  Your Honor, rethinking this, if they

15   wanted all of her testimony, they would have said all of her

16   testimony.

17        THE COURT:  There is no harm in asking.

18        MR. DRATEL:  Leading up to means --

19        THE COURT:  I understand.

20        MR. DRATEL:  Your Honor, I think in terms of when they

21   say leading up, I think that's what the Court should ask them,

22   what do you mean by leading up to?  How much do you want?

23        THE COURT:  Here is what I propose.  Members of the

24   jury, in response to your second question:  "Please provide the

25   transcript of Emma Torruella leading up to and including her

EA6MCHAF

1     recanting of the identification of the defendant.  We are

2     unclear what you mean by 'leading up to.'  Would you like the

3     entire transcript of her testimony, just Mr. Aravind's

4     questioning on redirect, or some other portion?"

5               MR. ARAVIND:  That's fine, your Honor.

6               THE COURT:  Is that all right, Mr. Dratel?

7               MR. DRATEL:  I would just ask them what they mean by

8     leading up to.  That's all.

9               THE COURT:  I like my question better, so I'll send it

10    in.

11              MR. DRATEL:  Thank you, your Honor.

12              THE COURT:  I'll mark the question as Court Exhibit 3.

13    I'll mark our question back as Court Exhibit 3A.  And I'll ask

14    the marshal to wait for the response.

15              MR. DRATEL:  Your Honor, may I step out just for a

16    moment?

17              THE COURT:  Sure.

18              (Pause)

19              THE COURT:  They want the entire transcript.  So what

20    I suggest is that you work with Mr. Street and discuss the

21    redactions together at the same time so we don't have one

22    version and then have objections and then have to revise it

23    again.  I will leave you to that and I'll come back when you

24    are done.  Thank you.

25              (Recess pending verdict)

1           THE COURT:  Where are we?

2           MR. ARAVIND:  Your Honor, this may take a little bit

3    longer because Mr. Dratel and I are in disagreement as to what

4    portions of the transcript should be redacted.  In every single

5    trial I've ever been a part of, the part that gets redacted, if

6    there is an objection that's sustained, the question and the

7    answer ends up getting redacted.

8           Mr. Dratel has taken the position that certain

9    questions he asked where there was an objection and I rephrased

10   the question that that portion should be redacted, which we do

11   not agree.  It does not make sense to have those as redacted

12   since there has not been an objection sustained.

13          THE COURT:  I'll hear from Mr. Dratel.

14          MR. DRATEL:  Some of them are objection overruled, not

15   rephrase.  I think some of the rephrase we kept in.

16          THE COURT:  Objection overruled stays in.  We all

17   agree on that?

18          MR. DRATEL:  There is one about coconspirator

19   statements and I think some of that has to come out.  I

20   actually don't necessarily share that with respect to what

21   comes in or out.  I thought all extraneous comments --

22          THE COURT:  I'm sorry.  I couldn't hear your last

23   sentence.

24          MR. DRATEL:  That all extraneous comments come out.

25   More importantly, there are some that are more substantive than

849

EA6MCHAF

```
1    others.  There is at least one that has some substance to it in
2    terms of the discussion of coconspirator statement.
3              THE COURT:  There was an objection and it was a
4    presumably a hearsay objection, and then there Mr. Aravind said
5    something like, it's a statement of coconspirators and then it
6    was overruled.
7              MR. DRATEL:  But let me just go to the ones that make
8    a difference because there aren't that many.  Not as
9    complicated.
10             THE COURT:  It would be helpful if I could see them.
11             MR. DRATEL:  Page 157, lines 19 through 22.
12             THE COURT:  You want that in or out?
13             MR. DRATEL:  That I want out.
14             THE COURT:  Do you care?
15             MR. ARAVIND:  I don't care.  But I think the
16   government takes the position, we are trying to do as
17   expeditiously as possible with the fewest redactions as
18   possible.  The fact that Mr. Dratel is making an objection that
19   the Court says, I understand, but it's after the testimony, not
20   before, in essence, overruling the objection, I don't think we
21   should be making redactions for that.  This process is going to
22   take a lot longer.
23             THE COURT:  Let me ask this.  Mr. Dratel, how many of
24   these are there?
25             MR. DRATEL:  There is like one or two more.  We are
```

1    taking a longer time arguing --

2              THE COURT:  Let me hear what the one or two more are

3    and then I'll rule.

4              MR. DRATEL:  Page 165.  The government agrees that the

5    paragraph beginning at line 13 has to come out because there

6    was an objection that was sustained.  Then there is a

7    disagreement as to the bottom of the colloquy, bottom of the

8    page, the colloquy between the Court and the witness.  I

9    believe that the witness was answering the Court with respect

10   to the specific part between lines 13 and 16 that was

11   sustained, and I believe that that's corroborated by the top of

12   166 with the Court's answer which is basically that --

13             THE COURT:  Let me just read this so I remember where

14   we are.

15             With respect to this one we all agree that it gets

16   stricken from line 13 to 21 through line 6 on the next page.

17             MR. DRATEL:  That was my position, your Honor.

18             THE COURT:  For this one I would strike line 13

19   through line 6 on the next page because I think it's all part

20   of the same testimony that's being struck.

21             MR. DRATEL:  And the other one is at 181, your Honor,

22   line 18.  I don't think the government would take this out at

23   all, but I say between line 18 on 181 through line 9 on 182.

24   I'm sorry.  Through line 1 on 182.  The Court's instruction to

25   the jury should stay.

EA6MCHAF

1          THE COURT:  I would take out lines 19 through line 1

2     on the next page.

3          MR. DRATEL:  Make it 18, your Honor, my objection.

4          THE COURT:  Okay.  18.

5          MR. ARAVIND:  Your Honor, our position is that since

6     the objection was overruled, that all should come in.

7          THE COURT:  I hate to reverse my decision, but I agree

8     with the government, so I'll allow it in.

9          MR. DRATEL:  Your Honor, it's a discussion of a legal

10    ruling about a coconspirator statement.

11         THE COURT:  I know.  It happened in court.  They heard

12    it.  There was nothing struck.  I'm not going to strike it.

13    157, I am going to leave that as well.

14         So the redaction is on 165 into 166.  Is that clear?

15         MR. ARAVIND:  Then we agreed upon redactions.  We can

16    print up copies and bring them to court, if that's okay.  We

17    will bring a set for the defense, two sets for the Court, and a

18    set to give to the jury.  Is that amenable?

19         THE COURT:  Okay.  It might even be faster if you want

20    to e-mail my copy.  I don't need a hard copy.  I can look at it

21    electronically.  I don't know if Mr. Dratel wants a paper copy.

22         MR. DRATEL:  If we are not going to read it,

23    electronic copy is fine.

24         THE COURT:  Just a hard copy for the jury.

25         MR. ARAVIND:  Thank you, Judge.

1              (Recess pending verdict)

2              THE COURT:  I reviewed the redacted transcript, which

3    is Government Exhibit 3B.  I understand that the parties agreed

4    on the redactions, subject to the objections we have put on the

5    record previously, and we have sent Exhibit 3B, which is the

6    redacted transcript, back to the jury.

7              Is there anything else we should put on the record?

8              MR. ARAVIND:  I think you mentioned Government Exhibit

9    3B.  It should be Court Exhibit 3B.

10             THE COURT:  I misspoke.  Court Exhibit 3B.

11             Anything else?  We are adjourned.

12             (Recess pending verdict)

13             THE COURT:  So I have another request.  It says:

14   Please provide the testimony of Demi Torres.

15             We will have to redact everything that has to be

16   redacted and send back whatever is left.

17             I will leave it to you in the first instance to figure

18   out what that is.  Thank you.

19             (Recess pending verdict)

20             THE COURT:  Counsel, I should say that I will mark the

21   last note requesting the testimony of Demi Torres as Court

22   Exhibit 4.

23             Did you agree on redactions?

24             MR. ARAVIND:  There are a set of redactions that the

25   parties have agreed to, and then there were some additional

1   redactions that Mr. Dratel wants.

2          I'm happy to go through with the Court the ones we

3   have agreed to or we could talk about just about the disputed

4   ones.

5          THE COURT:  Let's talk about the ones that you

6   disagree about.  Let me get the transcript.

7          MR. ARAVIND:  It's October 1.

8          THE COURT:  In the meantime, I also received a note,

9   Court Exhibit 5, asking for Government Exhibits 160B, C and G.

10  I would have thought they were in the notebook.

11         MR. ARAVIND:  The CD contains Government Exhibit 160.

12  Inside are the files which are electronic.  We can certainly

13  print them out.  It may take some time to do that.

14         THE COURT:  Can we give them a laptop?

15         MR. ARAVIND:  We can give them a laptop.  I have made

16  arrangements with our IT department so that we could get one.

17         THE COURT:  A laptop with the CD, which would actually

18  be Exhibit 160?

19         MR. ARAVIND:  160 is the actual CD containing all the

20  phone records in evidence.  There are then subfolders within

21  that that are the actual phone records.

22         THE COURT:  Mr. Dratel, I have the transcript from

23  October 1.

24         MR. DRATEL:  Just to preface, all the redactions are

25  based on the fact that the Court's striking of Ms. Torres'

1    testimony.  I just think we need to protect the meaning of

2    that; in other words, not let things leak to the jury so they

3    take it in some way that they use other information for the

4    same purpose.  I think it's just so incredibly important.

5              THE COURT:  Let's look at something concrete.

6              MR. DRATEL:  465, line 24 through 466, line 2.  466,

7    line 14 through 466, line 18.

8              THE COURT:  I have 465 running over to 466.  What's

9    the second one?

10             MR. DRATEL:  466, line 14 through 466, line 18.  Then

11   467, line 11 through 468, line 1.

12             THE COURT:  Let me just read this a second.

13             MR. DRATEL:  469, line 2 through line 18.  470, line 4

14   through 470, line 19.

15             THE COURT:  Give me just a minute.  Through line 19?

16             MR. DRATEL:  Yes.  476, line 19 through 477, line 2.

17   And then 498, line 8 through line 13.

18             That's the ones that I have, your Honor, in addition

19   to the ones Mr. Aravind listed.

20             THE COURT:  Now that I have looked at them, if you can

21   just tell me the first page number of each of them.

22             MR. DRATEL:  465, 466, 467 through 468, but then the

23   next one is 469.  Then 470, 476 through 77.  And then 498.

24             THE COURT:  I'll hear your argument and then I'll hear

25   the government's argument.

1          MR. DRATEL:  It's somewhat of the proverbial 800-pound

2     gorilla in the sense of her identification because really there

3     is nothing else contested about her testimony.  There is really

4     nothing that would be of relevance in deciding these issues.

5          So I'm very concerned that there may be bits and

6     pieces that the jury will use to seize on something that is the

7     identification without basis, essentially, is what the Court

8     has found.  I was trying to sanitize it to the point where it

9     eliminated all of that.  Even from cross-examination I took out

10    anything that I thought would suggest somehow that she had an

11    adequate opportunity or all those things that go to ID,

12    regardless of just the ID itself.  I was really looking to take

13    all that out.  Frankly, I would take all of her testimony out.

14    I don't know what difference it makes in the context of this

15    case at this point because nothing else is disputed.

16          THE COURT:  I'll hear from the government.

17          MR. ARAVIND:  Your Honor, Mr. Dratel just said it.  He

18    means to eviscerate Ms. Torres' testimony and make her not

19    exist as a witness in this trial.  We certainly believe apart

20    from the Court's ruling regarding the identification testimony,

21    she is a very significant witness.  She corroborates much of

22    the testimony of Ms. Torruella.  They go to the very heart of

23    these issues, that there was a robbery and the events of March

24    25.  I think we really need to look at the testimony one by

25    one, and I ask that the Court indulge me in that regard.

1              So the first proposed redaction from the defense is on

2      465.  The answer:  The guy wasn't really looking at me, but I

3      told her who it was again and she told me it was Groovy's

4      friend and I let her in.  Again, that is relevant because it

5      provides the narrative for what happens that night.  It

6      provides that she let Ms. Torruella in with another man who she

7      didn't know.  That statement does not go to the identification

8      of the defendant.

9              The second proposed redaction at 466 talks about where

10     was the man that was in the room?  Where was he standing and

11     what was the lighting like?  Again, those are critical issues

12     for the trial in terms of corroborating Ms. Torruella's

13     testimony and explaining that this was a robbery.  The fact

14     that the individual was standing near the table and where the

15     light was I think are important issues that, again, do not go

16     specifically to the identification of the defendant, which we

17     have redacted out after conferring with Mr. Dratel.

18             Proposed redaction number 3 at 467, again, talks about

19     where the individual was, where he was standing, what he was

20     wearing, and how long she looked at him and the fact that he

21     kept looking away from him.

22             Your Honor, part of the issues at trial is the fear

23     that the victims faced, Ms. Torres testifying that the man kept

24     on looking away from her, I think, shows that this was a

25     robbery and a kidnapping.  It corroborates Ms. Torruella's fear

1    and his outfit, not the fact of who he is as a person, but his

2    outfit is important because it also corroborates the testimony.

3           One of the issues, of course, the Court is aware of is

4    the lack of DNA evidence.  The fact that Ms. Torres sees an

5    individual with black gloves corroborates the testimony and

6    shows why there is a lack of DNA evidence in this case.

7           THE COURT:  Give me just a minute on that one.

8           MR. ARAVIND:  Turning to page 469, your Honor, the

9    question there by Ms. Tekeei is about the person in the room,

10   his demeanor.  Ms. Torres answers a little nervous, I kept on

11   looking at him.  He said nothing and he just kept waiting.

12   Again, those go to the same issues that the government has been

13   talking about, corroborating Ms. Torruella's testimony and

14   explaining to the jury that this is, in fact, a robbery and a

15   kidnapping.  And the same thing with the end of that.  It does

16   not go to the identification of this witness.  It just

17   explains.

18          THE COURT:  Are 16 through 18 disputed?

19          MR. ARAVIND:  We were not planning to redact 16

20   through 18.

21          THE COURT:  So it's only line 2 through line 15.

22          MR. ARAVIND:  I don't know if Mr. Dratel has an issue.

23          MR. DRATEL:  Where?

24          THE COURT:  On page 469, Mr. Dratel wanted to exclude.

25          MR. DRATEL:  From 11 -- wrong page.  From 2 through

EA6MCHAF

1    18.

2                THE COURT:  And what about 16 through 18?  Let me just

3    ask Mr. Dratel, what about 16 through 18?

4                MR. DRATEL:  It says that the defendant, that man, the

5    defendant.

6                MR. ARAVIND:  Those two words I think the government

7    would redact.

8                MR. DRATEL:  I think the whole thing should go in

9    blank there.  Who knows what they are going to think.  They are

10   going to think it's his name.  It can't be that that is so

11   important to this case that that should jeopardize what the

12   Court has already done.  There is nothing that they said that I

13   wouldn't stipulate to.  There was a robbery.  They were all

14   afraid.  This is a backdoor way of getting in ID.  What was the

15   lighting?  How did you see him, all these things?  They are all

16   about ID.  That's the only reason it could possibly be relevant

17   at this point.

18               THE COURT:  The jury may legitimately want to know

19   what it is they are supposed to disregard.  And what I ruled

20   was, they are supposed to disregard identification evidence and

21   not anything else, whether or not it's disputed.  And so what

22   I'm trying to do here is figure out what relates to

23   identification and what does not.

24               MR. DRATEL:  All I'm saying, your Honor, is that the

25   points that the government thinks they need it in for are

1    illusory.  There is no dispute --

2              THE COURT:  I understand that.  But that's not really

3    the issue.

4              MR. DRATEL:  I think it is in this sense.  I think it

5    is the issue in the sense that if there is a balance that it

6    has an implication for ID and it has some completely de minimus

7    value for the government.  I don't think it has that value.

8    But if it has de minimus value versus it can implicate the ID

9    testimony, it has to go out.  That's our position.

10             THE COURT:  I understand.

11             Let's move to 470.

12             MR. ARAVIND:  470, your Honor, I think, again, this is

13   more about the narrative of what Ms. Torres does.  It does not

14   go to the identification of the defendant.  She says that she

15   thought she recognized him.  She went on social media.  And

16   then she spoke with officers that day.

17             The fact that she spoke with officers I think is

18   important because it goes to the fact that a crime had been

19   committed and the officers were responding to the scene and

20   conducting interviews, as they had been in the same way with

21   Ms. Torruella and Mr. Barea.  Again, this is not about

22   statements relating to this defendant.  It talks about what Ms.

23   Torres was doing at the time.

24             MR. DRATEL:  She went on social media.  If that's not

25   wrapped up in the ID, I don't know what is in the context of

EA6MCHAF

1    what has been telegraphed to the jury.  It's only going to

2    remind them of the other testimony.  They are going to be

3    confused.  There is nothing about the robbery that is relevant

4    to that social media, and it is only relevant to the ID.

5              THE COURT:  I agree with that.  Let's move on to 476.

6              MR. ARAVIND:  476, your Honor, again, it's talking

7    about the distance of where she was compared to the person in

8    the room, whether it was inside the apartment.  Again, I think

9    that is significant because it's just the narrative of what is

10   happening to this individual as she was observing things in the

11   apartment.  Her view about what the person in the room was

12   wearing is a critical issue at trial.  Her view about what her

13   mother was doing during that whole encounter is a critical

14   issue at trial.  Her view about what the person in the room,

15   how he was acting and the fact that he was not looking at her

16   is a critical issue at this trial.

17             And I understand Mr. Dratel's desire to protect the

18   record, given this Court's ruling, which we cannot disagree

19   with.  But at the same time I think it is his desire to

20   sanitize.  He is really just trying to provide the jury with a

21   completely redacted-out transcript of Ms. Torres' testimony,

22   and we think that is not fair and that's not consistent with

23   this jury note.

24             THE COURT:  I understand.

25             MR. DRATEL:  Your Honor, there is nothing about

1    Mr. Chambers that was connected to any article of clothing.

2    What that second person was wearing that night is irrelevant to

3    this testimony.  The only reason it becomes relevant is to try

4    to bolster and backdoor the ability of an ID that the Court has

5    excluded.  That is the only basis.  I don't think they

6    mentioned it their summation this is so important.  This

7    stuff --

8            THE COURT:  498.

9            MR. ARAVIND:  498 is a reference to another person, a

10   third person, asking Ms. Torres whether there was a third

11   person in the room.  If you remember from Ms. Torruella's

12   testimony, she thought that the third person, the light-eyed

13   person or the light-skinned person was waiting outside the

14   apartment.  That is precisely what Ms. Torres is saying.  She

15   is confronted with that third person.  She says, no, there was

16   no third person.

17           THE COURT:  I'll tell you my rulings.

18           MR. DRATEL:  Judge, may I respond to the last one.

19   Your Honor, I asked that question solely in relation to ID.  My

20   only cross-examination of Ms. Torres was about ID.  So that was

21   related to ID.

22           THE COURT:  I have to look at what is the language of

23   the question, not what was in your head, Mr. Dratel.

24           Let me tell you, first of all, my rationale and then I

25   will tell you my rulings.

1          When I made the ruling I ruled to exclude all of the

2     evidence that relates to identification.  There are several

3     pieces of this, many pieces of this that relate to

4     identification.  And I will not allow those portions of the

5     testimony.

6          There are portions, however, that do not relate to

7     identification in my mind and, therefore, I will -- I may have

8     misspoken and got that backward.  In any event, I will exclude

9     anything that relates to identification and I will allow

10    anything that does not.  Let me go through each one and tell

11    you what my rulings are.

12         With respect to page 465, lines 24 onto page 466, line

13    3, I will allow that.

14         On page 466, relating to where the man was standing, I

15    will allow lines 14 through 16.  But with regard to the

16    lighting I will not allow it.  So I will redact 17 and 18.

17         On 467, line 11 through 468, line 1, I will allow

18    lines 11 through 13, that he was standing by the dining room

19    table in the living room, but I will exclude everything else,

20    meaning from line 14 running over to line 1 on 468.

21         On 469, from line 2 to line 18, I will exclude from

22    line 2 to line 15.  Actually, I will exclude from line 2 to

23    line 18 because I think redacting the defendant is sort of too

24    obvious a redaction and is improper.

25         On 470, from line 4 through line 19, I will exclude

EA6MCHAF

1    from line 4 to line 12, and I will allow line 13 to line 19.

2            476, running over to 477, I will exclude.

3            498 I will allow.

4            MR. ARAVIND:  I'm sorry.  I missed that one.

5            THE COURT:  I will allow what's on 498 to come in.

6            Is there a way to make the redactions right now?

7            MR. ARAVIND:  Yes.

8            THE COURT:  Mr. Dratel is standing.  Let me just ask

9    him what his question is.

10           MR. DRATEL:  Just about the Court reiterating its

11   instruction to the jury about the limits of her testimony, in a

12   very emphatic way so we don't have any leakage with respect to

13   that.

14           THE COURT:  I think what I will do is that when we

15   send the transcript back, I will say that the redactions are

16   made consistent with my ruling, striking any testimony relating

17   to identification.

18           Mr. Street, if you could just type up a note that says

19   that that I can send back with it.

20           MR. DRATEL:  Your Honor, I think you should also add

21   that they could not consider any of this testimony relevant to

22   identification.  They cannot use anything in there --

23           THE COURT:  I agree with that.

24           Mr. Street, if you could just draft something for me

25   and I'll look at it and revise it if appropriate.

EA6MCHAF

1          MR. ARAVIND:  Your Honor, I think 467, 19 through 21,

2     which is the description of what the individual was wearing, we

3     do want that in.

4          THE COURT:  I thought I left in the line with the

5     gloves.

6          MR. ARAVIND:  No.

7          THE COURT:  467, my ruling was to exclude 22 through

8     1.  It leaves in 11 through 21.

9          MR. DRATEL:  Your Honor, there is also the part about

10     how far away.

11          THE COURT:  I'll leave it in just to show that she

12     could see that he was wearing a black skully and black bubble

13     jacket, gloves, and black jeans.

14          MR. DRATEL:  We object to that.

15          Line 21.

16          THE COURT:  467, I was excluding from line 22 over to

17     line 1 of the next page.

18          MR. DRATEL:  You're including all of that?

19          THE COURT:  I'm sorry.  Hang on a second.  So what I

20     was allowing is from 11 to 21, and then I'm excluding from 22

21     on.

22          MR. DRATEL:  To 2.  Thank you, your Honor.

23          THE COURT:  Any other questions?

24          MR. ARAVIND:  No, your Honor.

25          THE COURT:  While you work on that let me just look at

EA6MCHAF

1    the instruction.

2              The note that I proposed sending will say:  Members of

3    the jury, attached is the transcript of testimony of witness

4    Demi Torres.  The redactions were made to reflect the Court's

5    ruling, striking all of the identification testimony of Ms.

6    Torres.  You may not consider any of her testimony, including

7    what is unredacted, for the issue of identification.

8              MR. DRATEL:  Thank you, your Honor.

9              THE COURT:  My plan is to mark that note and the

10   transcript together as 4A, and is request is Court Exhibit 4.

11             Could I ask the government, how do we get from here to

12   a printed copy of the transcript?

13             MS. TEKEEI:  Your Honor, we will have to go back to

14   our office since we don't have Internet here.

15             THE COURT:  You can e-mail it to us once you have

16   agreed on the redactions with Mr. Dratel, and we could copy it

17   upstairs and just have it walked down.

18             MS. TEKEEI:  Sure.  We don't have Internet here to do

19   that.

20             THE COURT:  You don't have Internet so you can't

21   e-mail it to us.

22             MS. TEKEEI:  We can e-mail it as soon as we cross the

23   bridge and get it over here, and we will also follow up on the

24   laptop for the viewing of --

25             THE COURT:  I'll ask Mr. Street to ask the CSO or the

1    marshal, whoever is back here, to find out how late they want

2    to sit.

3              The jury wants to leave now.  So I think what we will

4    do is bring them out here, excuse them, and then in the

5    fullness of time you can print that and get the laptop and

6    everything else we need.  And I think what I'll do is, I'll

7    tell them to be here and ready to go at 9:30 tomorrow morning,

8    if that works for counsel.

9              MR. ARAVIND:  Thank you, Judge.

10             MR. DRATEL:  Thank you, your Honor.

11             (Jury present)

12             THE COURT:  Ladies and gentlemen, we are working on

13   your last two requests.  We should have them ready for you by

14   the time you get here in the morning.  Thank you for your long

15   day of service.

16             I am going to ask that you be here by 9:30 tomorrow

17   morning and ready to go, just so we get a little more time.

18             See you tomorrow morning.  Don't talk about the case

19   with anyone.  Thank you.

20             (Jury excused)

21             THE COURT:  So if counsel could be here a little

22   before 9:30 so that you can agree on the redactions consistent

23   with my rulings so when we bring them out we can actually send

24   them back with everything.

25             MR. DRATEL:  If the government could please e-mail it

EA6MCHAF

1    to me tonight, I can look it over.

2                 THE COURT:  That will avoid anybody having to come too

3    early.  Thank you.

4                 Have a good evening.

5                 (Adjourned to Tuesday, October 7, 2014, at 9:30 a.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25