**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 17, 2014

**BY HAND**
The Honorable Lorna Schofield
United States Courthouse
Southern District of New York
40 Foley Square
New York, NY 10007

Re: **Antione Chambers,** S1 13 Cr. 345 (LGS)

Dear Judge Schofield:

Enclosed please find a letter motion requesting that the Court revisit its October 3, 2014, adverse credibility finding against New York City Police Department Detective Ellis Deloren. As explained in the letter motion, the Government does not seek reconsideration of the result of the Court's ruling, the suppression of certain identification evidence, but only the credibility finding against Detective Deloren. We have spoken with Mr. Dratel and he has informed us that he intends to oppose this request. Mr. Dratel asked that he have 45 days to respond to this motion, in light of the holidays and other work commitments. We have no objection to this request. We ask that we have seven days to file reply papers, if necessary, to Mr. Dratel's opposition.

Respectfully submitted,

PREET BHARARA
United States Attorney

By: ____/s/_____
Harris Fischman/
Laurie Korenbaum/
Margaret Garnett
Assistant United States Attorneys
(212) 637-2305/2266/2520

cc:     Joshua Dratel, Esq. (by electronic mail)



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 17, 2014

**BY HAND**
The Honorable Lorna Schofield
United States Courthouse
Southern District of New York
40 Foley Square
New York, NY 10007

Re:     **Antione Chambers,** S1 13 Cr. 345 (LGS)

Dear Judge Schofield:

On October 3, 2014, the Court delivered an oral opinion granting defendant Antione Chambers' renewed motion to suppress evidence concerning Demi Torres's identification of the defendant. The Government writes to respectfully request that the Court revisit one limited aspect of its ruling granting the suppression motion. Specifically, although the Government does not request that the Court reconsider the result of its ruling, the Government respectfully submits that the Court's finding as to the credibility of New York City Police Department ("NYPD") Detective Ellis Deloren[1] was unnecessary to the result and not fully supported by the record, and should be modified. In particular, and for the reasons described below, we do not believe that Detective Deloren intended to mislead the Court or the Government. Accordingly, because of the serious collateral consequences of an adverse credibility finding for Detective Deloren's career, because the Government believes that the facts do not support a finding that Detective Deloren lied during his testimony, and because the Government believes the Court could have reached the same result as to the suppression motion without making a finding as to Detective Deloren's credibility, the Government respectfully requests that the Court consider modifying its credibility findings regarding Detective Deloren.[2]

---

[1]  Detective Deloren is a member of a joint robbery task force (the "Task Force") comprised of NYPD officers and detectives, agents from the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and members of the U.S. Marshals Service. The Task Force investigates violent armed robberies, many of which are ultimately prosecuted by our Office.

[2]  A similar request was made for a suppression order to be modified so as to remove an adverse credibility finding against an agent, and granted, in *United States* v. *Espino-Urvan*, 12 Cr. 337 (LTS), on May 21, 2013. (*See* Docket Entry No. 45).

The Hon. Lorna G. Schofield
December 17, 2014
Page 2

## Background

      In the months leading up to trial, and ultimately at trial, four separate motions were made by the defendant to suppress evidence concerning Demi Torres's identification of the defendant.  The seriatim nature of the motions was due to a variety of factors including a failure by Detective Ellis Deloren to properly memorialize the identification procedures employed in this case.[3]  The first three motions to suppress were denied, the fourth was granted.

      As described below, the fourth motion was granted after testimony from Demi Torres during cross-examination that, with respect to her memory of the photographs she was shown by Detective Deloren, significantly differed from what she had said in previous meetings with the Government and on direct examination.  Specifically, Torres testified on cross-examination:  (1) that Detective Deloren showed her a single photograph of the defendant before she identified the defendant in the photo array she signed, and (2) that Torres recognized the defendant from seeing him in a newspaper picture on the internet before seeing his image in the photo array that she signed.

### The First Motion

      Antione Chambers was arrested for his role in a March 25, 2013 robbery and kidnapping on July 15, 2013, pursuant to a criminal complaint captioned *United States* v. *Antione Chambers*, No. 13 Mag. 1513 (the "Complaint").  The Complaint alleged that, among other things, two witnesses to events on the night of the robbery, whom were later identified as Demi Torres and her mother Emma Torruella, identified the defendant as one of the robbers in a photo array that was shown to them by law enforcement on or about June 6, 2013.  (*See* Compaint at ¶¶ 8-9).  The Complaint also disclosed that on or about May 29, 2013, Torres and Torruella were shown a different photo array containing an older photograph of the defendant and did not identify him, although Torres and Torruella stated at the time, in sum and substance, that the photograph of the defendant "kind of looks like" one of the robbers.  (*See* Complaint at ¶ 9, n. 2).

      Defense counsel moved to suppress the out of court identification of the defendant on the ground that Torres was shown two different photo arrays, separated by approximately one week in time, both containing a photograph of the defendant, the second of which resulted in a positive identification of the defendant.  (*See* November 14, 2013, Memorandum in Support of Motion to Suppress, Docket Entry No. 18).

---

[3]  There is no question that Detective Deloren should have kept better records of the identification procedures employed in this case.  That is something that Detective Deloren himself now recognizes.  The Government's request for reconsideration is not premised on the notion that Detective Deloren's investigative procedures were ideal – far from it – instead the Government simply takes issue with the Court's adverse credibility finding and the necessary premise of that finding that Detective Deloren lied or intentionally misled the Court.

The Hon. Lorna G. Schofield
December 17, 2014
Page 3

Your Honor denied the motion, finding that the identification procedures were not
unduly suggestive because the two photographs of the defendant were not necessarily
recognizable as the same person.  (*See* Transcript of December 11, 2013, Ruling of the
Court at 14 ("I will confess to counsel that in studying these two [photo arrays] . . . I
could not pick out the same person in both pictures. . . . Based on that, I do not find
that the photo arrays in the surrounding circumstances were unduly suggestive and
conducive to a misidentification.")).

　　　*The Second Motion*

　　　On February 24, 2014, the Government wrote to provide the Court and defense
counsel with additional information regarding the identification procedure used by law
enforcement with respect to Torres.  (*See* Letter dated February 24, 2014, Docket
Entry No. 66).  The Government informed the Court that on or about May 29, 2013,
the same day the first photo array was shown, Torres was shown a photograph from a
newspaper website (the "Newspaper Photograph") depicting the defendant and two
other individuals.  (*Id*.)  The caption to the Newspaper Photograph identified the
individuals, including the defendant, by name.  (*Id*.)  In light of this disclosure, the
defendant renewed his motion for to suppresssuppression of the identification
evidence.  (*See* May 5, 2014, Memorandum in Support of Motion for Reconsideration,
Docket Entry No. 85).  Your Honor again denied the motion, finding that the
identification procedure was not "so unduly suggestive as to be unconstitutional, as the
individual in the [Newspaper Photograph] is not recognizable as the same person as in
the photos of Mr. Chambers in either photo array.")  (*See* Transcript of May 21, 2014,
Ruling of the Court at 3-4).

　　　*The Third Motion*

　　　Before the start of trial, scheduled for September 29, 2014, the Government
produced Rule 3500 material for, among other witnesses, Demi Torres.  (*See* Trial Tr.
at 63-64).  The Rule 3500 material for Torres reflected that she had told law
enforcement that she was shown photographs by Detective Deloren on approximately
three different occasions:  (1) at the police precinct immediately after the robbery
when she looked at hundreds of photos on a computer and did not recognize any of
them as being the defendant; (2) at the police precinct on a second occasion, at which
time she was shown the Newspaper Photograph of the defendant and a photo array
from which she did not identify the defendant; and (3) outside of a White Castle
restaurant on or about June 6, 2013, at which time she positively identified the
defendant in a photo array.  (*See, e.g.*, 3507-03 ("saw photos at precinct twice and
once @ white castle"); 3507-02 at p.003 (reflecting that there were three occasions on
which she was shown photographs ("1 computer photo arrays – hundreds of photos;"

The Hon. Lorna G. Schofield
December 17, 2014
Page 4

"2 Computer Print Out Park Photo,"[4] and "3 Photo Array – Circled + Signed"); 3507-5 (reflecting that the positive identification was made on June 6, 2013)).[5]

According to the 3500 material, while looking at photographs at the precinct immediately after the robbery, Torres recognized one photograph as being her friend's boyfriend and indicated to the police that the defendant resembled this individual. (*Id.*)   As memorialized in the 3500 material, Torres told law enforcement that after she was shown the Newspaper Photograph, she "Googled" the defendant's name.  (*See* 3507-03).  According to the 3500 material, after Torres "Googled" the defendant's name, she "saw same photo in article nothing different then when saw it in [Detective Deloren's] office."  (*Id.*)

On September 29, 2014, just before jury selection, the defendant renewed his suppression motion on the grounds that new information contained in the 3500 material indicated that the identification procedure was unduly suggestive—specifically, that (1) Torres had done an internet search for the defendant prior to identifying the defendant in the photo array, and (2) that Torres had previously thought a friend's boyfriend resembled the robber but was not in fact the robber.  (*See* Trial Tr. at 63-67).   Your Honor denied the renewed motion, finding that the disclosures contained in the 3500 material did not provide "any basis to revisit this again."  (*See* Trial Tr. at 67).

*The Fourth Motion*

During trial, Detective Deloren and Emma Torres both testified concerning, among other things, the identification procedures employed in this case.  Deloren testified first and his testimony concerning the identification procedures was generally consistent with the statements memorialized in his and Torres's 3500 material.  Torres,

---

[4]  "Park Photo" is most likely a reference to the Newspaper Photograph which depicts the defendant and two others outdoors in what appears to be a park.  (*See* Exhibit C to Letter dated February 24, 2014, Docket Entry No. 66).

[5]  As referenced earlier, because Detective Deloren failed, in large measure, to memorialize these events with contemporaneous reports it is difficult to piece together the precise chain of events leading up to the June 6, 2013 identification.  Nonetheless, Torres's 3500 materials indicate that prior to trial she had not said that there had been a fourth time Detective Deloren had shown her photographs or that Detective Deloren had shown her any photographs of the defendant other than the photographs contained in the two photo arrays and the Newspaper Photograph.  Detective Deloren's 3500 material also reflects that there were three occasions on which Torres was shown photographs (shortly after the robbery when Torres viewed hundreds of photos via the precinct's "photo manager" (*see*, *e.g.* 3502-16 at p. 18 of 56), a separate occasion when Torres reviewed a photo array containing an older picture of the defendant and did not identify him but remarked that the person in the photograph, "kind of looks like him" (*see* 3502-19); and on June 6, 2013, when Torres identified the defendant in a photo array containing a more recent photo of the defendant (*see*, *e.g.*, 3502-16 at p. 44 of 56).  Finally, Torruella's 3500 materials similarly memorialize that Torruella was shown photographs on three occasions (*see* 3506-13 ("third time shown photos – id'd the guy,") and nothing in the 3500 material suggests that Torruella was shown a single photograph of the defendant on a separate occasion.

The Hon. Lorna G. Schofield
December 17, 2014
Page 5

however, during cross-examination claimed, for the first time, that in addition to the two photo arrays and the Newspaper Photograph, she was also shown a fourth, single photograph of the defendant by Detective Deloren.  Torres also testified that she came to recognize the defendant as one of the robbers from the Newspaper Photograph, prior to seeing the final array that she signed.  After Torres's testimony the Court struck all of the evidence related to Torres's in-court and out-of-court identification of the defendant.

<u>Deloren's Testimony</u>

Detective Deloren testified that on the day of the robbery, Deloren took the victims, David Barea (who did not see the defendant's full face during the robbery), and Torruella, back to his office where they reviewed hundreds of mug shots.  (*See* Trial Tr. at 221).  Deloren testified that at his office Barea identified two of the defendant's co-conspirators and that Torruella identified one of the co-conspirators.  (*See* Trial Tr. at 221-223).  Deloren was not asked, and did not testify, about whether Torres came to the precinct that day and/or if she recognized any of the photographs she reviewed at that time.

Deloren testified that at a later date he came into possession of an old photograph of the defendant, from 2003 or 2004, and that the photograph was "on the grainy side, fuzzy."  (Trial Tr. at 245, L. 20-21; *see also* Trial Tr. at 254, L. 6 (testifying that he obtained this photograph of the defendant in or about the "last week of May")).  Deloren described how pursuant to the NYPD's photo array procedure, the photo was placed into a photo array with five other photographs on the same page, and how he showed the resulting array, separately, to Torres and Torruella.  (*See* Trial Tr. at 245-246).  Deloren testified that Torres indicated that she recognized the individual in the "grainy" photograph as the defendant.  (*See* Trial Tr. at 247, L. 10-11).[6] Deloren also testified that on the same day Torres "recognized [the defendant] in the photo array, we were able to locate [the Newspaper Photograph]," and that Deloren showed Torres the Newspaper Photograph while she was still at his office.  (Trial Tr. at 247, L. 21-25).  Deloren testified that the defendant's name appeared at the bottom of the Newspaper Photograph.  (*See* Trial Tr. at 256, L. 15-17).[7]

---

[6] This testimony is generally consistent with Deloren's 3500 material, which reflects that on December 19, 2013, Deloren told law enforcement that a "fuzzy" photograph of the defendant from about "2004" was used in the first array and that one of the victims remarked that the photograph "kind of looks like [the defendant]."  (*See* 3502-19).

[7] On cross-examination, Detective Deloren was asked on multiple occasions when he had disclosed to the Government that he had shown the Newspaper Photograph to Torres.  (*See* Trial Tr. at 255, 261).  Detective Deloren testified that he did not recall an exact date but believed that the U.S. Attorney's Office was aware that he had showed Torres the Newspaper Photograph "from the beginning," and "I don't know if it was in May of 2013, but it was certainly prior to February of 2014."  (Trial Tr. at 255, L. 11-12; 261, L. 10-11).  Detective Deloren's testimony on this point was obviously inconsistent with the representation made in the Government's February 24, 2014, letter that the Government had only recently learned about the Newspaper Photograph.  (*See* Letter dated February 24, 2014, Docket Entry

The Hon. Lorna G. Schofield
December 17, 2014
Page 6

Deloren testified that at a later date he came into possession of an "updated newer photo" of the defendant.  (Trial Tr. at 249, L. 21).  Deloren testified that he put this "newer" photograph into a photo array and on June 6, 2013, showed the resulting array, separately, to Torres and Torruella.  (*See id.*)  Deloren testified that both Torres and Torruella positively identified the defendant as one of the robbers and indicated so by circling the defendant's picture and signing the array.  (*See id.*)

<u>Torres's Testimony</u>

Torres testified near the end of trial and, as described more fully below, her testimony on cross-examination about the photographs of the defendants that she remembered seeing differed significantly from what she had told law enforcement before trial and what she testified to on direct examination.  On direct examination, Torres testified that a day or two after the robbery she went with Detective Deloren to look at photographs at a police precinct.  (*See* Trial Tr. at 470, L. 13-21).  Torres testified that at that time she did not see anyone she recognized as one of the robbers. (*See* Trial Tr. at 470, L. 22-24).  Torres testified that she was later shown a photo array but she did not identify any of those individuals as one of the robbers.  (*See* Trial Tr. at 472, L. 3-6).  Torres testified that she ultimately identified the defendant as one of the robbers when she was shown the photo array marked Government Exhibit 1001, which she signed and dated on June 6, 2013.  (*See* Trial Tr. at 471 L. 2-22).

After Torres described her positive identification on June 6, 2013, she was asked the following questions and gave the following answers:

Q:  Were you shown any other photographs before you saw this photo array?

A:  Yes.

Q:  And can you describe for the jury what that was?

A:  It was an article online that I've seen in the precinct with Detective [Deloren].

Q:  And what - - when did that happen?

---

No. 66).  As a result, the Government and defense counsel stipulated that:  "Members of the United States Attorney's Office were not aware that [the Newspaper Photograph] was shown by Detective Deloren to Demi Torres until on or about January 24, 2014, when Demi Torres told members of the United States Attorney's Office."  (Government Exhibit 2007).  Although we believe that Detective Deloren was incorrect in his recollection on this issue, we do not believe that his testimony on this point was deliberately false.

The Hon. Lorna G. Schofield
December 17, 2014
Page 7

A:  It was a few months after the first time I was in the precinct.

(Trial Tr. 472 L. 7 – 15).  Torres then testified that she "Googled" the name of the
defendant, which appeared in the newspaper article.  (Trial Tr. at 472 L. 22-25; 473 at
L. 16-20).

Significantly, in response to being asked whether she was shown any other
photographs prior to identifying the defendant in a photo array on June 6, 2013—aside
from the photographs she reviewed the day or two after the robbery and the photo
array she viewed in or around late May—she testified that she had been shown the
Newspaper Photograph and nothing else.  Torres made no mention on direct
examination of seeing a separate singular photograph of the defendant on a separate
visit to the precinct.

On cross-examination, however, Torres testified that in addition to reviewing
the photographs she described on direct examination, Detective Deloren also showed
her a single photograph of the defendant on a computer screen at the precinct.  (Trial
Tr. at 486-487).  Torres testified that she saw this single photograph of the defendant
at some point prior to seeing the Newspaper Photograph and making the positive
identification of the defendant on June 6, 2014.  (*Id.*).[8]  Torres testified:

Q:  So he provided you with a single screen shot of [the defendant], right?

A:  Yes, that was the second time I went there.

Q:  He did that for you?

A:  It was already there.

Q:  It was already there?

A:  Yes.

. . . .

Q:  Of him alone, just Mr. Chambers?

A:  Yes.

Q:  Single shot, single screen?

---

[8]  As described earlier, Torres's 3500 material contains no record of her having previously told law
enforcement that she was shown this single photograph.  Similarly, there is no record of Torreulla, in
her 3500 material or her testimony, ever being shown this single photograph by Detective Deloren.

The Hon. Lorna G. Schofield
December 17, 2014
Page 8


A:  Yes.

(Trial Tr. at 501 L. 3-11; L. 19-22).

Torres also testified on cross-examination that she came to recognize the defendant as one of the robbers from viewing the Newspaper Photograph, rather than from the final photo array she was shown on June 6, 2013.  (*See* Trial Tr. at 491 L. 6-7 ("once I saw [the Newspaper Photograph], I said that's a better photo and that's him").[9] Finally, Torres testified that when she "Googled" the defendant's name, she had found a total of four photographs of the defendant on the internet.  (Trial Tr. at 492, L. 3-12).

<u>Decision on the Fourth Motion</u>

In light of Torres's testimony, the defendant moved that Torres's identification testimony be stricken or that the case be dismissed.  Defense counsel explained, "The conduct, I don't attribute it to the prosecutors because, I mean, he never gave them a fourth photo.  There's a photo that nobody has seen that he's shown her, that he's shown her a single photograph upon her arrival." (Trial Tr. at 507, L. 5-8).[10]  The Government and defense counsel submitted briefing on the issue.  The Government offered, in its brief and in court, to have Detective Deloren recalled so he could be questioned about Torres's testimony concerning the single photograph.  (*See* Trial Tr. at 672, L. 15-18; Letter dated October 2, 2014, Docket Entry No. 171).

The Court granted the defendant's motion to strike all evidence of Torres's in-court and out-of-court identification of the defendant.  *(See* Trial Tr. at 700).  The Court declined to have Detective Deloren recalled to address Torres's testimony regarding an apparent single photograph.  (*See* Trial Tr. at 705).

---

[9]  Torres did not explain, and was not asked, why if she saw a single photograph of the defendant before seeing the Newspaper Photograph it wasn't until she saw the Newspaper Photograph that she recognized the defendant.

[10]  That no previous reference to this single photograph had been made by Torres or anyone else is reflected in the following colloquy immediately after Torres finished testifying, at page 509, lines 9 through 12 of the trial transcript: "THE COURT:  That's a shot we didn't know about before today, right?  MR. DRATEL:  Single shot, no, no one has talked about that."  Similarly, as the Government told the Court in response to a question concerning Torres's testimony on this point:  "Honestly, we were completely confused by it and we're not sure and still remain unsure.  And we have spent a bulk of last night looking through the materials to see what it could possibly have been.  We really don't know.  It was the very first time that we heard anything like that.  We looked through 3500 materials just to verify that in case for some reason something had slipped.  Of course, we would have notified Mr. Dratel and the Court had we known."  (Trial Tr. at 698, L. 9-16).

The Hon. Lorna G. Schofield
December 17, 2014
Page 9

        In granting the motion, the Court identified five "significant differences
between the factual account which were the basis for [the Court's] prior rulings and
the current evidence."  (Trial Tr. at 704).  The Court explained:

> "First, Ms. Torres met with Detective Deloren on four or five
> occasions and not three.  Second, she was shown another single
> photo of [the defendant] that we learned about during her testimony.
> Third, she was not shown the [Newspaper Photograph] on the same
> day that she was shown the initial array.  Fourth, she first identified
> [the defendant] from the [Newspaper Photograph], rather than from
> the final array.  And fifth, she saw three additional pictures of [the
> defendant] online before the final array and the, quote, 'official'
> positive identification."

Trial Tr. at 704, L. 21 – 705, L. 5).

        The Court also made an adverse credibility finding against Detective Deloren.
The Court identified three reasons for doubting the credibility of Deloren's testimony:

> "First, the facts of the identification procedure [have] been
> constantly evolving, resulting in now four separate motions to quash
> the identification testimony.  Second, Detective Deloren failed to
> make any kind of record of the two most suggestive occasions when
> he showed Ms. Torres photos of [the defendant] – when he showed
> her the single photo I did not learn about until the testimony; and
> when he showed her the [Newspaper Photograph].  Third, when on
> cross, it was suggested that Detective Deloren had intended to
> conceal that he had shown Ms. Torres the [Newspaper Photo], he
> insisted [] that he had told the prosecutors and FBI about showing
> Ms. Torres the [Newspaper Photograph] around the time she viewed
> it, and in any event much closer to May 2013 than January [2014].
> This statement is directly contrary to the government's written
> representation to the Court in February 2014 that they had just
> learned about the [Newspaper Photograph].  The government, as it is
> ethically required to do, corrected Detevice Deloren's testimony by
> stipulation now in evidence, stating that they did not know about the
> [Newspaper Photograph] until January 24, 2014.  It appears that they
> first learned about the [Newspaper Photograph], not from Detective
> Deloren, but rather from when they interviewed Ms. Torres."

Trial Tr. at 703, L. 19 – 704, L. 17.

The Hon. Lorna G. Schofield
December 17, 2014
Page 10

## **Argument**

The Government respectfully submits that, on this record, the facts underpinning the Court's credibility assessment – and in particular the facts concerning the fourth, single photograph – are sufficiently unclear so as to caution against finding Detective Deloren to have lied. Moreover, the adverse credibility finding against Detective Deloren was not necessary to the Court's determination to strike Torres's testimony. As such, the Government respectfully request that the Court consider revising its ruling so as to withdraw the adverse credibility finding.

As recounted above, a key development at trial that led to the adverse credibility finding was Torres's testimony concerning a fourth, single photograph. As is clear from the record, Torres did not mention this single photograph to law enforcement at any of her debriefings or trial preparation sessions. Similarly, Torres did not mention seeing this photograph on direct examination. There is also no mention in Detective Deloren's Rule 3500 material, or trial testimony, of this single photograph. Finally, Torruella who generally testified to a similar, albeit separate identification procedure with Detective Deloren, did not testify that she was ever shown a single photograph of the defendant. Similarly, Torruella's Rule 3500 material makes no mention of a single photograph.

Indeed, the only reference to the single photograph came from Torres under the stress of cross-examination in a line of questions and answers that are singularly hard to follow. Simply put, the record gives one significant reason to question whether Torres accurately remembered the identification procedures during cross-examination or was able to clearly and accurately convey those memories in the context of arguably confusing questions. If Torres was indeed shown that single photograph, why didn't she ever mention this fact before? If Torres saw this single photograph and recognized the individual in the photograph as the defendant, why didn't she identify the defendant as one of the robbers until later when she saw the Newspaper Photograph and the final photo array? Also, if Detective Deloren showed Torres this single photograph, why didn't he show it to Torruella as well? It doesn't make sense.

Additionally, Detective Deloren was never asked about this single photograph at trial. After Torres testified, the Government offered to have Detective Deloren recalled, at which time he could have been asked about this single photograph, but the Court rejected that request. No doubt the Court felt it was armed with sufficient evidence to make a ruling on the identification motion; however, the Government believes that the Court's decision not to allow Deloren to be recalled concerning the single photograph – either in front of or outside of the presence of the jury – should give the Court some pause in making an adverse credibility finding against Deloren premised in part on Torres's testimony concerning the single photograph.

Relatedly, the Court relied upon Detective Deloren's alleged failure to memorialize the occasion on which he allegedly showed Torres the single, fourth

The Hon. Lorna G. Schofield
December 17, 2014
Page 11

photograph, as a ground for the adverse credibility finding.  (*See* Trial Tr. at 703, L. 24
– 704, L. 3).  However, that assumes that Torres was in fact shown that single
photograph.  As described earlier, there is significant reason to question whether that
in fact happened.

      Moreover, while the Government agrees that Detective Deloren should rightly
be criticized for failing to contemporaneously memorialize the various identification
procedure – something that has unquestionably contributed to his potential confusion
as to the circumstances and timing of events –it is not a solid ground upon which to
conclude that he intentionally lied on the witness stand.  Detective Deloren's lack of
diligence in record keeping, a factor that left witnesses without contemporaneous
documents with which to refresh their recollections, should not be equated with
knowingly lying on the witness stand.

      The Court also based its adverse credibility finding on Deloren's testimony,
under cross-examination, about when he disclosed to the U.S. Attorney's Office and/or
the FBI that he had shown Torres the Newspaper Photograph.  As noted earlier,
Deloren's testimony that he had informed the Government of his showing Torres the
Newspaper Photograph significantly prior to February 2014 was obviously
inconsistent with the Government's belief as to when it learned about the Newspaper
Photograph. (*See* Letter dated February 24, 2014, Docket Entry No. 66; Gov. Ex.
2007)).  However, that does not mean that Detective Deloren was intentionally
misleading the Court.  Deloren's recollection as to when he told the U.S. Attorney's
Office and/or the FBI could easily have been mistaken or confused.[11]   A witness's
potentially mistaken recollection as to the specific time when he disclosed something
to the U.S. Attorney's Office – especially where his testimony about the substance of
the disclosure is objectively truthful – is an uncertain, and collateral, basis upon which
to make an adverse credibility finding that would significantly damage a law
enforcement officer's career.

      Finally, the Court's ruling does not turn in any necessary respect on a finding
that Detective Deloren was not credible.  As outlined in Your Honor's ruling, there
were at least two significant new facts adduced at trial, which had nothing to do with
Detective Deloren's credibility, that Your Honor could have independently relied upon
to strike the identification testimony.

      First, Torres' testimony that she initially identified the defendant from the
Newspaper Photograph – in which he is named, standing next to people who do not
look like him, and wearing a hat as he was on the night of the robbery – and not the

---

[11]  It would be quite another thing if he had denied the objective, material facts about the Newspaper
Photograph, but he did not.  Deloren confirmed on the stand that he had in fact shown Torres the
Newspaper Photograph, and that the defendant's name appeared at the bottom of the Newspaper
Photograph.  (*See* Trial Tr. 247, l. 21-25; Tr. 256, L. 15-17).

The Hon. Lorna G. Schofield
December 17, 2014
Page 12

final photo array, (*see* Trial Tr. at 491 L. 6-7), was a potential ground to strike the identification testimony. (*See* Trial Tr. at 705, L. 1-3). Second, and relatedly, Torres testified at trial that she saw three additional photographs on the internet of the defendant before she made the positive identification in the final photo array. (*See* Trial Tr. at 492, L. 3-12). In light of this testimony, in combination or alone, Your Honor could have concluded that, "Torres has never identified [the defendant] without the taint of impressible suggestiveness," and struck the testimony. (Trial Tr. at 711, L. 5-6). Presumably, these independent facts that formed the basis for the decision contributed to Your Honor's decision not to allow the Government to recall Deloren and give him an opportunity to explain himself.

\* \* \*

As the Court may well understand, an adverse credibility finding can have serious and lasting negative effects on a law enforcement officer's career. Certainly there are instances where resolution of the issues presented by a motion fairly compels a Court (i) to make a credibility finding, and (ii) to find that an officer was not just mistaken in his testimony, but intentionally provided false testimony. But in this case, the Government respectfully submits neither step was necessary or justified by the facts. In *United States* v. *Espino-Urvan*, 12 Cr. 337 (LTS), in circumstances similar to this, Judge Swain vacated an order suppressing certain evidence and finding a law enforcement witness not credible and issued a revised opinion that suppressed the evidence in question but contained no credibility finding. The Government respectfully submits that a similar result is appropriate here. The Government requests that the Court revise its October 3, 2014 ruling to modify the adverse credibility finding that it made against Detective Deloren.

Respectfully submitted,

PREET BHARARA
United States Attorney

By: ____/s/_____
    Harris Fischman/
    Laurie Korenbaum/
    Margaret Garnett
    Assistant United States Attorneys
    (212) 637-2305/2266/2520

cc:    Joshua Dratel, Esq. (by electronic mail)