```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
ANTIONE CHAMBERS,                                             :
                                    Petitioner,               :    20 Civ. 1457 (LGS)
                                                              :    13 Cr. 345 (LGS)
                     -against-                                :
                                                              :    OPINION AND ORDER
UNITED STATES OF AMERICA,                                     :
                                    Respondent.               :
------------------------------------------------------------- X
```

LORNA G. SCHOFIELD, District Judge:

Petitioner Antione Chambers brings this Petition to vacate, set aside or correct his sentence and also to seek a new trial after being convicted and sentenced to 240 months' imprisonment on December 21, 2015. *See* 28 U.S.C. § 2255. For the reasons stated below, the Petition is denied.

## I. BACKGROUND

This opinion assumes familiarity with the facts and procedural history of this case. *See United States v. Chambers*, 113 F. Supp. 3d 729 (S.D.N.Y. 2015). The key facts and evidence relevant to the Petition are summarized below.

On October 10, 2014, Petitioner was convicted after a 10-day jury trial of conspiracy to rob, robbery and kidnapping, and acquitted of possession of a firearm during a crime of violence, all violations of the Hobbs Act or the Federal Kidnapping Act. *See* 18 U.S.C. §§ 924(c), 1201, 1951. On December 21, 2015, Petitioner was sentenced to a below-Guidelines sentence of 240 months imprisonment.

The parties agreed that the key issue at trial was the identity of the perpetrator, who was one of four co-conspirators who kidnapped and robbed victims David Barea and his common law wife Emma Toruella. Petitioner's trial commenced on September 29, 2014, before this Court,

and the Government relied on two eyewitnesses and substantial circumstantial evidence to identify Petitioner as the perpetrator of the kidnapping and robbery.

The Government offered eleven witnesses. The first was Toruella, one of the two victims. She narrated the events that took place during the early morning hours of March 25, 2013. She had a difficult time on the stand. She made an in-court identification of Petitioner on direct and described her pre-trial identification of him. During cross-examination, Toruella admitted that the in-court identification was a "no-brainer" given that Petitioner was the only African American man at the courtroom tables. She described the car used in the kidnapping and recalled the last four digits of its license plate, which matched the plate of the car registered to Petitioner's girlfriend. During her redirect, Toruella recanted her in-court identification by saying, "It's not him."

The second eyewitness to identify Petitioner was Toruella's daughter Demi Torres. Torres' identification testimony -- both pretrial and in-court -- was struck because it had been a product of impermissibly suggestive procedures.

The Government introduced cellphone and cell site evidence to place Petitioner near co-conspirator Tyron Brown's apartment just before Toruella was kidnapped from there, and also to show that Petitioner was in communication with Brown. To prove that the phone, ending in number 6130, belonged to Petitioner, the Government introduced testimony and a stipulation to show that Petitioner was known as "Twizzie," a name on Brown's cellphone associated with the 6130 number. Kentrell Ferguson, a childhood friend of Petitioner, testified at trial and reluctantly admitted that he called Petitioner by the nickname "twin" and saved his number as "Twizzy," and finally admitted that the Petitioner's nickname was "Twizzie." The parties also stipulated that on February 2, 2013, about two months before the robbery, a man named

"Antwan" called 911 from a number ending with 3425 -- which Brown's cellphones list as a number for "Twizzie" --  to call an ambulance to 4782 Barnes Avenue, the same address where Petitioner (Antione Chambers) lived with his girlfriend.

Additional evidence included a hammer recovered from the car of Petitioner's girlfriend, which matched in substantial part Toruella's description of the car used to kidnap her. The perpetrator had beat Barea with a hammer during the course of the robbery. Finally, Petitioner could not be found for more than three months following the robbery and kidnapping. In July, 2013, Petitioner was arrested in a rental car in New Jersey near Pennsylvania after providing false identification. This incident was offered as evidence of flight and consciousness of guilt.

Petitioner did not call any defense witnesses, and the jury began deliberating on October 3, 2014. After five days of deliberation, Petitioner was found guilty of conspiracy to commit Hobbs Act robbery, substantive Hobbs Act robbery and kidnapping. His motions for judgment of acquittal and, in the alternative, a new trial, pursuant to Rules 29 and 33 were denied.

Petitioner was sentenced on December 21, 2015. At sentencing, Petitioner did not object to the Guidelines calculation, which included an enhancement for Career Offender status, and resulted in a Guidelines recommendation of 360 months to life. The Court noted that, without the Career Offender status, the Guidelines range would have been 210 to 260 months. Petitioner was sentenced to a below-Guidelines sentence of 240 months imprisonment to run concurrently on all three counts of conviction.

Petitioner appealed and on March 30, 2017, the Second Circuit affirmed Petitioner's conviction. *United States v. Chambers*, 681 F. App'x 72, 75 (2d Cir. 2017). On appeal Petitioner did not challenge the Guidelines calculation or his sentencing. Petitioner then filed a petition for panel rehearing, or in the alternative, for rehearing *en banc*, which the Second Circuit

3

denied.  Order, *United States v. Chambers*, No. 16-163, Dkt. No. 90 (2d Cir. May 22, 2017).  Petitioner filed a petition for *writ of certiorari*, renewing his claim that the Government violated his Fourth Amendment rights by acquiring historical cell-site data, and on June 28, 2018, the United States Supreme Court granted the petition for *writ of certiorari*, vacated the Second Circuit's judgment and remanded the case to the Second Circuit for further consideration in light of *Carpenter v. United States*, 138 S. Ct. 2206 (2018).  *Chambers v. United States*, 138 S. Ct. 2705 (2018).  On September 21, 2018, the Second Circuit again affirmed Petitioner's conviction.  *United States v. Chambers*, 751 F. App'x 44, 46 (2d Cir. 2018) (summary order), *cert. denied*, 139 S. Ct. 1209 (2019).  Petitioner filed the present Petition through counsel on February 24, 2020.

## II.     LEGAL STANDARD

"Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack."  *Salemo v. United States*, 187 F. Supp. 3d 402, 413 (S.D.N.Y. 2016) (internal quotation marks omitted) (quoting *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010)).

A federal prisoner may move to vacate, set aside, or correct his sentence on four grounds pursuant to § 2255:

> (1) 'that the sentence was imposed in violation of the Constitution or laws of the United States, or [(2)] that the court was without jurisdiction to impose such sentence, or [(3)] that the sentence was in excess of the maximum authorized by law, or [(4)] is otherwise subject to collateral attack.'

*United States v. Hoskins*, 905 F.3d 97, 102 (2d Cir. 2018) (alteration in original) (quoting U.S.C. § 2255(a)).  "In ruling on a motion under § 2255, the district court is required to hold a hearing 'unless the motion and the files and records of the case conclusively show that the prisoner is

entitled to no relief.'" *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013) (quoting 28 U.S.C. § 2255(b)). "To warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the petitioner] to relief." *Id*. at 131.

### III. DISCUSSION

Petitioner raises two sets of claims. He claims, first, failure to provide exculpatory material and information under *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972), and second, that subsequent Supreme Court decisions have rendered his classification and subsequent sentencing as a Career Offender illegal.

#### A. The *Brady* Claims

The Petition alleges four separate instances of non-disclosure of *Brady* and/or *Giglio* material: (1) Brown's disclosure during his proffer statement that Toruella sold him drugs and was aware that Barea sold drugs; (2) any undisclosed benefits provided by New York State or the Government to Toruella; (3) the circumstances in which Toruella positively identified Petitioner before the trial and (4) law enforcement's improper threats allegedly made to Ferguson and his wife. None of these arguments is persuasive as explained below.

"*Brady* violations have three elements: 'the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.'" *United States v. Alston*, 899 F.3d 135, 147-48 (2d Cir. 2018) (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)). "The suppression of exculpatory or impeaching evidence does not constitute a constitutional violation unless the evidence is 'material.' Undisclosed evidence is 'material' only if there is a reasonable probability that, had the evidence been disclosed to the

5

defense, the result of the proceeding would have been different." *United States v. Stillwell*, 986 F.3d 196, 200 (2d Cir. 2021) (internal quotation marks omitted).

### 1. Information that Toruella Sold Drugs and Knew About Barea's Drug-Selling

The Petition alleges that co-defendant Brown, during his proffer to the Government, stated that he purchased drugs from Toruella and that she was aware of Barea's drug operations. The Petition argues that this information "could not be more material" because "Toruella's credibility was an essential component" and this information would have cast her testimony in a "dramatically different light." The Petition fails to state a *Brady* claim because this information was not suppressed by the Government and is not material.

First, Petitioner has not sustained his burden of showing that the Government suppressed this information about Toruella, because he has not shown that the Government knew what amounts to third-party speculation about Toruella. The Government spoke with Brown only once, during a single safety-valve proffer, limited to the subject of Brown's own drug trafficking conduct. The contemporaneous records of that session show that Brown did not discuss Toruella.

Second, Petitioner has not shown that this information about Toruella is material, i.e., that had the information been disclosed, the result at trial would have been different. *See United States v. Stillwell*, 986 F.3d at 200. Toruella testified completely inconsistently -- first on direct that Petitioner was the perpetrator, and then on redirect that he was not. It is impossible to know how the jury evaluated this testimony. As the Court of Appeals noted, "When we view the record in the light most favorable to the jury's verdict, we must assume that that the jury found Toruella's trial identification of defendant . . . credible and rejected her subsequent recantation." *United States v. Chambers*, 681 F. App'x at 75. However, when evaluated against the standard

6

here -- whether Petitioner has shown a reasonable probability that the allegedly suppressed information would have changed the jury verdict -- it is just as likely that the jury disregarded Toruella's inconsistent testimony entirely, or decided that her recanting was outweighed by the totality of the evidence supporting conviction. In any event, even assuming that the Government somehow knew about Brown's assertions and disclosed them to the defense, Petitioner has not shown a reasonable probability that additional impeachment of Toruella would have changed the jury's verdict. She completely and effectively impeached herself, negating her identification by giving flatly contradictory testimony. Any additional impeachment during cross-examination about her knowledge or involvement in her husband's drug trafficking would likely have had minimal impact when measured against the drama and confusion of Toruella's impactful redirect testimony, recanting her prior identification, and when measured against the totality of evidence supporting conviction.

### 2. Secret Benefits Toruella Might Have Received

The Petition argues that, because Brown informed the Government that Toruella sold him drugs on one occasion and that she was aware of Barea's drug-selling, she had "criminal exposure" and must had some kind of undisclosed agreement with the Government because she was not prosecuted. This *Brady* argument fails because it is purely speculative. As discussed above, there is no evidence that the Government -- whether the prosecutors or the police -- had information that Toruella was engaged in drug trafficking, much less that there was a resulting secret agreement not to prosecute her. Mere speculation by a defendant that the Government has not fulfilled its disclosure obligations is not enough to establish a *Brady* violation. *United States v. Halloran*, 821 F.3d 321, 341 (2d Cir. 2016); *United States v. Walsh*, 774 F. App'x 706, 707 (2d Cir. 2019) (summary order).

### 3. Information About the Toruella Identification Procedures

The Petition relies on allegedly new and undisclosed information about the Toruella identification procedures to assert a *Brady* violation. On July 7, 2016, almost two years after the trial and three years after the events, Toruella's attorney, Joseph Grob, emailed three brief answers to three questions from Petitioner's counsel. Two of these are at issue here. In response to the question whether the detective showed Toruella photo arrays that she was not asked about at trial, Mr. Grob answered "She looked at a book, not arrays." In response to the question whether the detective ever showed Toruella only a single photo of the perpetrator, Mr. Grob answered that "he came to her job and showed her a 3 picture line up but not a single photo." Mr. Grob's email further states, "She does not want to talk to you or testify about anything." At trial, Toruella had referenced neither a "book" of photos nor a three-photo array, but instead described a "photo array" and a six-photo spread. The Petition argues that the new information about Toruella's identification of Mr. Petitioner was not disclosed to the defense and are material.

Petitioner has not shown any *Brady* violation with respect to Toruella's identification procedures. First, the "new" information is unreliable as it was elicited two years after the trial and three years after the events. It is much more probable, after the passage of time and outside the setting of trial preparation and trial, that Toruella's memory of the details have faded. Toruella's pre-trial identification of Petitioner was the subject of extensive questioning at trial on both direct and cross, and there is no reason to think that any facts were hidden. Second, Mr. Grob's brief report of Toruella's answers is second-hand, and without detail or context.

In addition, Petitioner has shown no reasonable probability that even if the "new" information about Toruella's pre-trial identification had been disclosed, it would have changed

the outcome of the trial. As explained above, any ancillary impeachment of Toruella's identification on cross-examination likely would not have made much difference, given both the dramatic and inconsistent nature of her testimony on redirect.

### 4. Alleged Threats Made to Kentrell Ferguson

The Petition alleges that Ferguson was "threatened by law enforcement officers that if he did not appear to testify the next day, not only would he be jailed, but that his wife's children would be taken from her." Petitioner asserts that that the Government suppressed this information and that, had it been disclosed, defense counsel would have been able to discredit Ferguson by showing a motive to testify as the Government wanted.

Even assuming that Ferguson was threatened as he attests, Petitioner has failed to show that non-disclosure of these threats was material. Ferguson's testimony was limited to two facts -- (1) that he knows Petitioner from school and (2) that Petitioner is the "Twizzie" referenced in Ferguson's cell phone contacts. This evidence was used to tie Petitioner to the cell cite data. Petitioner has not shown that this testimony was influenced by any threat. Neither Petitioner nor Ferguson asserts that Ferguson's testimony was false. In his testimony, Ferguson plainly was not seeking to curry favor with the Government; he was obviously unforthcoming and only begrudgingly admitted that Petitioner was "Twizzie" when confronted with an image of the Twizzie contact from his phone. Under these circumstances, Petitioner has failed to show a reasonable probability that the result at trial would have been different had the alleged threats been disclosed.

### B. Classification of Petitioner as a Career Offender

The Petition asserts that Petitioner would have received a "shorter prison sentence" in this case and a prior case had he not been "incorrectly designated as a Career Offender" here and

9

in the earlier case, based on his convictions for offenses that were wrongly categorized as "crimes of violence." The Petition fails to state a claim for relief for two reasons. First, the claim was procedurally defaulted because Petitioner did not challenge his classification as a career offender under the Guidelines until the present Petition. Indeed, his sentencing submission conceded that Petitioner "qualifies as a Career Offender." Second, the claim fails on the merits because kidnapping qualifies as a "crime of violence" under Guideline § 4B1.2(a), and Defendant meets the other criteria for a career offender under Guideline § 4B1.1 of the Applicable Sentencing Guidelines.

### 1. Procedural Default

The claim that Petitioner was incorrectly classified as a "career offender" for purposes of his sentencing guidelines calculation was not previously raised and therefore is "procedurally defaulted" and cannot be raised for the first time on habeas review. "[A] collateral challenge may not do service for an appeal." *Gupta v. United States*, 913 F.3d 81, 84 (2d Cir. 2019) (quoting *United States v. Frady*, 456 U.S. 152, 165, (1982)). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent." *Id*. (internal quotation marks and citations omitted). "[T]he question is not whether subsequent legal developments have made counsel's task easier, but whether at the time of the default the claim was 'available' at all." *Id*. at 85.

Petitioner relies only on the "cause" and "prejudice" exception to the procedural default rule. The Petition asserts that that two cases that lay the foundation for challenging the classification as a Career Offender -- *United States v. Davis*, 139 S. Ct. 757 (2019), and *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018) -- were decided after Petitioner was sentenced in 2015, which

establish "cause and prejudice." The Petition is incorrect that the challenge was not reasonably available at the time of Petitioner's original conviction in December 2015. The Second Circuit held in December 2014 that the residual clause of the career offender sentencing guideline was not unconstitutionally vague, relying by analogy on Supreme Court case law interpreting an identical clause in the ACCA. *United States v. Van Mead*, 773 F.3d 429, 432-33, 437 (2d Cir. 2014) (citing *Begay v. United States*, 553 U.S. 137, 141 (2008); *James v. United States*, 550 U.S. 192, 208 (2007); *Sykes v. United States*, 564 U.S. 1, 11-12 (2011)). But the Supreme Court overturned that case law in June 2015 in *Johnson v. United States*, and held that the identical language in the ACCA is unconstitutionally vague. 576 U.S. 591, 597-601, 606 (2015). Based on *Johnson*, Petitioner had a reasonable basis to challenge his classification and sentencing as a career offender based on the residual clause under the Guidelines. *Cf.*, *Petrillo v. United States*, 147 F. Supp. 3d 9, 21 (D. Conn. 2015) (in November 2015, vacating a sentence after *Johnson* where the petitioner's counsel had acquiesced to the Guidelines career offender designation).

### 2. The Career Offender Challenge Fails on the Merits

Petitioner clarified in his reply memorandum of law that he is not challenging his sentencing based on a Guideline that was void on vagueness grounds, as the Supreme Court foreclosed that argument two years after his sentencing. *See Beckles v. United States,* 137 S. Ct. 886, 894-95 (2017) (holding that, "[b]ecause they merely guide the district court's discretion, the Guidelines are not amenable to a vagueness challenge . . . under the Due Process Clause and that § 4B1.2(a)'s residual clause is not void for vagueness"). Petitioner's argument is that the Guideline range calculated for his sentencing was based on the erroneous conclusion that he was a Career Offender and that the error may have resulted in his receiving a greater sentence. Even if this claim were not procedurally defaulted, it fails on the merits.

At the time of sentencing, Petitioner met the requirements to be considered a "career offender" for purposes of the Guidelines sentencing recommendation. The "Career Offender" classification in the 2015 Sentencing Guidelines Manual (the applicable manual) requires that "at least two prior felony convictions" and "the instant offense" are "either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1 (2015). Here, Petitioner's two prior felony convictions from 2006 and 2009 are drug offenses, which satisfy the prior felony conviction requirement. *See id*. § 4B1.2(b) (2015).

Petitioner's conviction for kidnapping in this case qualifies as a crime of violence, which satisfies the instant offense requirement. The 2015 Guidelines Manual defined "crime of violence" to include an offense that "presents a serious potential risk of physical injury to another." The Application Notes to § 4B1.2 further defined "crime of violence" to include kidnapping, a crime for which Petitioner was convicted in this case.[1] Petitioner does not dispute that kidnapping, either in the abstract or as it occurred in this case, "presents a serious potential risk of injury." Accordingly, the Petition fails to show that Petitioner's classification as a Career Offender under the Sentencing Guidelines was incorrect or led to an incorrect sentencing recommendation.

Petitioner requests that the challenge to his sentence be held in abeyance until the disposition of his "upcoming challenge" to his 2004 Pennsylvania conviction for burglary. This request is denied because, as explained above, the challenge to Petitioner's Guidelines calculation is procedurally defaulted and also fails on the merits for reasons that have nothing to

---

[1] In the wake of *Johnson*, *supra*, the 2015 Guidelines were amended by a Supplement dated August 1, 2016, to eliminate the residual clause and enumerate particular crimes of violence, including kidnapping. *See* § 4B1.2(a)(2) (2015, Aug. 1, 2016 Suppl.). The current Guidelines do the same. *See* § 4B1.2(a)(2) (2018).

12

do with his 2004 conviction for burglary.  Although the 2004 conviction would ordinarily add two points to his criminal history score and potentially affect his Criminal History Category, the 2004 conviction is irrelevant here.  As a Career Offender, Petitioner's Criminal History Category is VI, regardless of the 2004 conviction.

The Petition also seeks an evidentiary hearing.  Courts have discretion to grant or deny such a hearing.  See Chang v. United States, 250 F.3d 79, 85–86 (2d Cir. 2001).  An evidentiary hearing is warranted only if it would "offer any reasonable chance of altering its view of the facts."  Id. at 86.  As explained above, the Court finds that "the motion and the files and records of the case conclusively show that [Petitioner] is entitled to no relief."  28 U.S.C. § 2255(b).  Accordingly, because no "plausible" claims exist, the Petitioner's request for an evidentiary hearing is also denied.  See Puglisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009).

### IV. CONCLUSION

For the reasons above, the Petition is denied.  Because Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue.  See 28 U.S.C § 2253.  This Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Opinion and Order would not be taken in good faith, and so in forma pauperis status is denied.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).

The Clerk of Court is respectfully directed to (1) close case number 20 Civ. 1475, (2) close the motion at Docket No. 269 in case number 13 Cr. 345 and (3) mail a copy of this Opinion and Order to Petitioner and note the mailing on the public docket.

Dated: November 17, 2021
      New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE